UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

2019 REVISIONS

TO

# PATTERN

# CRIMINAL JURY INSTRUCTIONS

# FOR THE DISTRICT COURTS

# OF THE FIRST CIRCUIT

DISTRICT OF MAINE INTERNET SITE EDITION

Updated 6/24/19 by Chief District Judge Nancy Torresen

# PATTERN CRIMINAL JURY INSTRUCTIONS
## FOR THE FIRST CIRCUIT

**Preface to 1998 Edition**

**Citations to Other Pattern Instructions**

**How to Use the Pattern Instructions**

**Part 1—Preliminary Instructions**

1.01        Duties of the Jury
1.02        Nature of Indictment; Presumption of Innocence
1.03        Previous Trial
1.04        Preliminary Statement of Elements of Crime
1.05        Evidence; Objections; Rulings; Bench Conferences
1.06        Credibility of Witnesses
1.07        Conduct of the Jury
1.08        Notetaking
1.09        Outline of the Trial

**Part 2—Instructions Concerning Certain Matters of Evidence**

2.01        Stipulations
2.02        Judicial Notice
2.03        Impeachment by Prior Inconsistent Statement
2.04        Impeachment of Witness Testimony by Prior Conviction
2.05        Impeachment of Defendant's Testimony by Prior Conviction
2.06        Evidence of Defendant's Prior Similar Acts
2.07        Weighing the Testimony of an Expert Witness
2.08        Caution as to Cooperating Witness/Accomplice/Paid Informant
2.09        Use of Tapes and Transcripts
2.10        Flight After Accusation/Consciousness of Guilt
2.11        Statements by Defendant
2.12        Missing Witness
2.13        Spoliation
2.14        Witness (Not the Defendant) Who Takes the Fifth Amendment
2.15        Definition of "Knowingly"
2.16        "Willful Blindness" As a Way of Satisfying "Knowingly"
2.17        Definition of "Willfully"
2.18        Taking a View
2.19        Character Evidence
2.20        Testimony by Defendant
2.21        Failure to Provide Evidence to Investigators
2.22        Eyewitness Identification Instruction
2.23        Testing Procedures and Failure to Conduct Certain Tests

**Part 3—Final Instructions: General Considerations**

| | |
|---|---|
| 3.01 | Duty of the Jury to Find Facts and Follow Law |
| 3.02 | Presumption of Innocence; Proof Beyond a Reasonable Doubt |
| 3.03 | Defendant's Constitutional Right Not to Testify |
| 3.04 | What Is Evidence; Inferences |
| 3.05 | Kinds of Evidence: Direct and Circumstantial |
| 3.06 | Credibility of Witnesses |
| 3.07 | Cautionary and Limiting Instructions as to Particular Kinds of Evidence |
| 3.08 | What Is Not Evidence |

**Part 4—Final Instructions: Elements of Specific Crimes** [Organized by Statutory Citation]

    **A.**    **Offenses Under Title 8**

| | |
|---|---|
| 4.08.1325 | Immigration Through Fraudulent Marriage, 8 U.S.C. § 1325(c) |
| 4.08.1326 | Re-entry and Attempted Re-entry After Deportation, 8 U.S.C. § 1326 |

    **B.**    **Offenses Under Title 16**

| | |
|---|---|
| 4.16.3372 | Receiving Fish, Wildlife, Plants Illegally Taken (Lacey Act), 16 U.S.C. §§ 3372(a)(2)(A), 3373(d)(1)(B), (2) |

    **C.**    **Offenses Under Title 18**

| | |
|---|---|
| 4.18.00 | Attempt |
| 4.18.02(a) | Aid and Abet, 18 U.S.C. § 2 |
| 4.18.02(b) | Causing an Act to be Done Through Another |
| 4.18.03 | Accessory After the Fact, 18 U.S.C. § 3 |
| 4.18.152(1) | Bankruptcy Fraud, Concealment, 18 U.S.C. § 152(1) |
| 4.18.152(2), (3) | Bankruptcy Fraud, False Oath/Account and False Declaration, 18 U.S.C. § 152(2), 152(3) |
| 4.18.152(4) | Bankruptcy Fraud, False Claim, 18 U.S.C. § 152(4) |
| 4.18.152(5) | Bankruptcy Fraud, Receipt with Intent to Defraud, 18 U.S.C. § 152(5) |
| 4.18.152(6) | Bankruptcy Fraud, Bribery and Extortion, 18 U.S.C. § 152(6) |
| 4.18.152(7) | Bankruptcy Fraud, Transfer of Property in Personal Capacity or as Agent or Officer, 18 U.S.C. § 152(7) |
| 4.18.152(8) | Bankruptcy Fraud, False Entries, 18 U.S.C. § 152(8) |
| 4.18.152(9) | Bankruptcy Fraud, Withholding Recorded Information, 18 U.S.C. § 152(9) |
| 4.18.157 | Bankruptcy Fraud, Scheme or Artifice to Defraud, 18 U.S.C. § 157 |
| 4.18.228(a)(1), (3) | Willful Failure to Pay Child Support, 18 U.S.C. § 228(a)(1), (3) |
| 4.18.371(1) | Conspiracy, 18 U.S.C. § 371; 21 U.S.C. § 846 |
| 4.18.371(2) | Pinkerton Charge |
| 4.18.371(3) | Conspiracy to Defraud |
| 4.18.472 | Possession of Counterfeit Currency, 18 U.S.C. § 472 |
| 4.18.641 | Theft of Government Money or Property, 18 U.S.C. § 641 |
| 4.18.656 | Misapplication or Embezzlement of Bank Funds, 18 U.S.C. § 656 |
| 4.18.751 | Escape from Custody, 18 U.S.C. § 751 |

4.18.752   Assisting Escape, 18 U.S.C. § 752

4.18.875   Interstate Communications—Threats, 18 U.S.C. § 875(c)

4.18.922(a)   False Statement in Connection With Acquisition of a Firearm, 18 U.S.C. § 922(a)

4.18.922(g)   Possession of a Firearm or Ammunition in or Affecting Commerce by a Convicted Felon, 18 U.S.C. § 922(g)(1), (4)

4.18.922(g)(9)   Possession of a Firearm By a Person Previously Convicted of a Misdemeanor Crime of Domestic Violence, 18 U.S.C. § 922(g)(9)

4.18.922(j)   Possession of a Stolen Firearm, 18 U.S.C. § 922(j)

4.18.922(k)   Possession of a Firearm With an Obliterated or Removed Serial Number, 18 U.S.C. § 922(k)

4.18.922(v)   Possession of Semiautomatic Assault Weapons, 18 U.S.C. § 922(v)

4.18.924   Using or Carrying a Firearm During and in Relation to Drug Trafficking or Crime of Violence, 18 U.S.C. § 924(c)

4.18.982   Money Laundering – Forfeiture, 18 U.S.C. § 982(a)(1)

4.18.1001   Making a False Statement to a Federal Agency, 18 U.S.C. § 1001

4.18.1014   Making a False Statement or Report, 18 U.S.C. § 1014

4.18.1028A   Aggravated Identity Theft

4.18.1029   Access Device or Credit Card Fraud, 18 U.S.C. § 1029(a)(2)

4.18.1035   False Statements re Health Care Matters, 18 U.S.C. § 1035

4.18.1072   Harboring or Concealing an Escaped Prisoner, 18 U.S.C. § 1072

4.18.1341   Mail Fraud, 18 U.S.C. § 1341

4.18.1343   Wire Fraud, 18 U.S.C. § 1343

4.18.1344   Bank Fraud, 18 U.S.C. § 1344(1), (2)

4.18.1346   Honest Services Fraud, 18 U.S.C. § 1346

4.18.1347   Health Care Fraud, 18 U.S.C. § 1347

4.18.1349   Conspiracy, 18 U.S.C. § 1349

4.18.1462   Use of Interactive Computer Service for Obscene Matters, 18 U.S.C. § 1462

4.18.1470   Transfer of Obscene Materials to Minors, 18 U.S.C. § 1470

4.18.1512(a)(1)(C)   Witness Tampering—Killing or Attempted Killing to Prevent Communication with Federal Law Enforcement, 18 U.S.C. § 1512(a)(1)(C)

4.18.1512(b)(1)   Witness Tampering—Knowingly Corruptly Persuading Another Person with the Intent to Influence, Delay or Prevent the Testimony of Any Person in an Official Proceeding, 18 U.S.C. § 1512(b)(1)

4.18.1542   False Statement in Application for United States Passport, 18 U.S.C. § 1542

4.18.1546   False Statement in Document Required by Immigration Law, 18 U.S.C. § 1546(a)

4.18.1623   False Declaration in Grand Jury Testimony, 18 U.S.C. § 1623

4.18.1832   Theft of Trade Secrets (Economic Espionage Act), 18 U.S.C. § 1832

4.18.1951   Interference with Commerce by Robbery or Extortion (Hobbs Act), 18 U.S.C. § 1951

4.18.1952            Travel Act, 18 U.S.C. § 1952
4.18.1956(a)(1)(A)    Money Laundering—Promotion of Illegal Activity or
                     Tax Evasion, 18 U.S.C. § 1956(a)(1)(A)
4.18.1956(a)(1)(B)(i)  Money Laundering—Illegal Concealment,
                     18 U.S.C. § 1956(a)(1)(B)(i)
4.18.1956(a)(1)(B)(ii) Money Laundering—Illegal Structuring,
                     18 U.S.C. § 1956(a)(1)(B)(ii)
4.18.1956(h)         Conspiracy to Commit Money Laundering
4.18.1957            Money Laundering—Engaging in Monetary Transactions
                     in Property Derived from Specific Unlawful Activity,
                     18 U.S.C. § 1957
4.18.2113(a)         Unarmed Bank Robbery, 18 U.S.C. § 2113(a)
4.18.2113(a), (d)    Armed or Aggravated Bank Robbery, 18 U.S.C. § 2113(a), (d)
4.18.2119            Carjacking, 18 U.S.C. § 2119
4.18.2251(a)         Sexual Exploitation of Children, 18 U.S.C. § 2251(a)
4.18.2252            Possession of Child Pornography, 18 U.S.C. § 2252A(a)(5)(B)
4.18.2261A           Interstate Stalking, 18 U.S.C. § 2261A
4.18.2314            Interstate Transportation of Stolen Money or Property,
                     18 U.S.C. § 2314
4.18.2422(b)         Coercion and Enticement, 18 U.S.C. § 2422(b)

### D.  Offenses Under Title 21

4.21.841(a)(1)A      Possession with Intent to Distribute a Controlled Substance,
                     21 U.S.C. § 841(a)(1)
4.21.841(a)(1)B      Distribution of a Controlled Substance, 21 U.S.C. § 841(a)(1)
4.21.841(a)(1)C      Manufacture of a Controlled Substance,
                     21 U.S.C. §§ 841(a)(1), 802(15)
4.21.843(b)          Use of a Communication Facility to Commit a Controlled Substance
                     Felony
4.21.844             Possession of a Controlled Substance, 21 U.S.C. § 844
4.21.846             Conspiracy, 21 U.S.C. § 846
4.21.853             Drugs-Forfeiture, 21 U.S.C. § 853
4.21.952             Importation of a Controlled Substance, 21 U.S.C. §§ 952, 960
4.21.963             Conspiracy, 21 U.S.C. § 963

### E.  Offenses Under Title 26

4.26.5861(d)         Possession of an Unregistered Firearm, 26 U.S.C. 5861(d)
4.26.7201            Income Tax Evasion, 26 U.S.C. § 7201
4.26.7203            Failure to File a Tax Return, 26 U.S.C. § 7203
4.26.7206            False Statements on Income Tax Return, 26 U.S.C. § 7206(1)
4.26.7212 [1]        Attempts to Interfere with Administration of Internal Revenue Laws,
                     26 U.S.C. § 7212(a)—Intimidation
4.26.7212 [2]        Attempts to Interfere with Administration of Internal Revenue Laws,
                     26 U.S.C. § 7212(a)—Obstruction Under the Omnibus Clause

### F.  Offenses Under Title 31

4.31.5322      Money Laundering—Illegal Structuring, 31 U.S.C. §§ 5322, 5324

**G.**      **Offenses Under Title 42**

4.42.408(a)(7)(B)      Social Security Fraud

**H.**      **Offenses Under Title 46**

4.46.1903      Possessing a Controlled Substance on Board a Vessel Subject
to United States Jurisdiction with Intent to Distribute,
46 U.S.C. App. § 1903

**Part 5**      **Final Instructions: Defenses and Theories of Defense**

5.01      Alibi
5.02      Mental State That Is Inconsistent with the Requisite Culpable State of Mind
5.03      Intoxication
5.04      Justification:  Self-Defense, Duress, Necessity
5.05      Entrapment
5.06      Insanity [18 U.S.C. § 17]
5.07      Abandonment

**Part 6**      **Final Instructions: Deliberations and Verdict**

6.01      Foreperson's Role; Unanimity
6.02      Consideration of Evidence
6.03      Reaching Agreement
6.04      Return of Verdict Form
6.05      Communication with the Court
6.06      Charge to a Hung Jury

**Afterword:  How to Draft a Charge**

## PREFACE TO 1998 EDITION

At the First Circuit Judicial Conference on October 1, 1997, the assembled federal judges voted to approve the publication of these pattern instructions. Although we believe that the pattern instructions and, in particular, the commentary that accompanies them will be helpful in crafting a jury charge in a particular case, it bears emphasis that no district judge is required to use the pattern instructions, and that the Court of Appeals has not in any way approved the use of a particular instruction.

It is our hope to keep these pattern instructions updated as the law develops. As a result, we welcome any suggested modifications or improvements. In addition, we invite the submission of pattern charges for any other commonly charged crimes in the First Circuit.

Particular thanks are due to Professor Melvyn Zarr of the University of Maine School of Law and John Ciraldo of Perkins, Thompson, Hinckley & Keddy who co-chaired the drafting committee, as well as to each of the members of that committee who worked diligently to produce these pattern instructions.

D. Brock Hornby
United States Chief District Judge
District of Maine

11/97

## CITATIONS TO OTHER PATTERN INSTRUCTIONS

We have abbreviated our citations to other pattern instructions as follows:

Fifth Circuit Instruction . . . . .   Fifth Circuit District Judges Association Pattern Jury Instructions Committee, Pattern Jury Instructions, Criminal Cases (2001)

Sixth Circuit Instruction . . . . .   Sixth Circuit District Judges Association Pattern Criminal Jury Instructions Committee, Pattern Criminal Jury Instructions (1991)

Eighth Circuit Instruction . . . . .   Eighth Circuit Committee on Model Criminal Jury Instructions, Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit (2012)

Ninth Circuit Instruction . . . . .   Ninth Circuit Committee on Model Criminal Jury Instructions, Manual of Model Criminal Jury Instruction for the District Courts of the Ninth Circuit (2010)

Eleventh Circuit Instruction . . . . .   Eleventh Circuit District Judges Association Pattern Jury Instructions Committee, Pattern Jury Instructions, Criminal Cases (1985)

Federal Judicial Center
  Instruction . . . . .   Federal Judicial Center, Pattern Criminal Jury Instructions (1988)

Sand, et al., Instruction . . . . .   Leonard B. Sand et al., Modern Federal Jury Instructions (2000)

8

## HOW TO USE THE PATTERN INSTRUCTIONS

These instructions will function best if specific references to the case being tried are inserted. For example, every time we have put the word "defendant" in brackets we intend the instructing judge to substitute the defendant's actual name. The same holds true when the word "witness" is bracketed. General studies of juror understanding suggest that juries understand better when actual names are used rather than terms like "defendant" or "witness." On the same rationale, we have used the term "I" rather than the third person "the court" when referring to the judge. Finally, where we have given alternatives, select the alternative(s) that best fit(s) the evidence in your case.

## PART 1        PRELIMINARY INSTRUCTIONS

1.01        Duties of the Jury                                                [Updated: 10/5/12]

1.02        Nature of Indictment; Presumption of Innocence                    [Updated: 7/27/07]

1.03        Previous Trial                                                    [Updated: 10/5/12]

1.04        Preliminary Statement of Elements of Crime                        [Updated: 6/14/02]

1.05        Evidence; Objections; Rulings; Bench Conferences                  [Updated: 6/14/02]

1.06        Credibility of Witnesses                                          [Updated: 6/14/02]

1.07        Conduct of the Jury                                               [Updated: 4/29/10]

1.08        Notetaking                                                        [Updated: 6/14/02]

1.09        Outline of the Trial                                              [Updated: 6/14/02]

**1.01**         **Duties of the Jury**

[Updated: 10/5/12]

Ladies and gentlemen: You now are the jury in this case, and I want to take a few minutes to tell you something about your duties as jurors and to give you some instructions.  At the end of the trial I will give you more detailed instructions.  Those instructions will control your deliberations.

It will be your duty to decide from the evidence what the facts are.  You, and you alone, are the judges of the facts.  You will hear the evidence, decide what the facts are, and then apply those facts to the law I give to you.  That is how you will reach your verdict.  In doing so you must follow that law whether you agree with it or not.  The evidence will consist of the testimony of witnesses, documents and other things received into evidence as exhibits, and any facts on which the lawyers agree or which I may instruct you to accept.

You should not take anything I may say or do during the trial as indicating what I think of the believability or significance of the evidence or what your verdict should be.

## **Comment**

(1)        This instruction is derived from Ninth Circuit Instruction 1.1.

(2)        "[J]urors may have the power to ignore the law, but their duty is to apply the law as interpreted by the court, and they should be so instructed." United States v. Boardman, 419 F.2d 110, 116 (1st Cir. 1969) (citing Sparf v. United States, 156 U.S. 51 (1895)); see also United States v. Appolon, 695 F.3d 44, 65 (1st Cir. 2012) (holding that "a district court may instruct a jury that it has a duty to return a guilty verdict if convinced beyond a reasonable doubt of a defendant's guilty on a particular charge").  Thus, while a jury may acquit an accused for any reason or no reason, see Horning v. District of Columbia, 254 U.S. 135, 138 (1920) ("[T]he jury has the power to bring in a verdict in the teeth of both law and facts."), abrogation on other grounds recognized in United States v. Gaudin, 515 U.S. 506 (1995), trial judges may not instruct the jurors about this power of nullification.  United States v. Manning, 79 F.3d 212, 219 (1st Cir. 1996); United States v. Sepulveda, 15 F.3d 1161, 1190 (1st Cir. 1993) (citing United States v. Desmarais, 938 F.2d 347, 350 (1st Cir. 1991) (collecting cases)); see also United States v. Garcia-Rosa, 876 F.2d 209, 226 (1st Cir. 1989) (this position "is consistent with that of every other federal appellate court that has addressed this issue"), vacated on other grounds, 498 U.S. 954 (1990); United States v. Trujillo, 714 F.2d 102, 105-06 (11th Cir. 1983) (collecting cases).  Furthermore, "[t]his proscription is invariant; it makes no difference that the jury inquired, or that an aggressive lawyer managed to pique a particular jury's curiosity by mentioning the subject in closing argument, or that a napping prosecutor failed to raise a timely objection to that allusion." Sepulveda, 15 F.3d at 1190.

During the closing arguments in Sepulveda one of the defendants' attorneys invited the jury to "send out a question" concerning jury nullification; the jury did so, requesting the trial judge to "[c]larify the law on jury nullification."  Id. at 1189.  The judge responded with the following, which was affirmed by the First Circuit:

> Federal trial judges are forbidden to instruct on jury nullification, because they are required to instruct only on the law which applies to a case.  As I have indicated to you, the burden in each instance which is here placed upon the Government is to prove each element of the offenses . . . beyond a reasonable doubt, and in the event the Government fails to sustain its burden of proof beyond a reasonable doubt as to any essential element of any offense charged against each defendant, it has then failed in its burden of proof as to such defendant and that defendant is to be acquitted.  In short, if the Government proves its case against any defendant, you *should* convict that defendant.  If it fails to prove its case against any defendant you *must* acquit that defendant.

Id. at 1189-90 (emphases added).  Judge Selya explained that the "contrast in directives" in the last two sentences, "together with the court's refusal to instruct in any detail about the doctrine of jury nullification, left pregnant the possibility that the jury could ignore the law if it so chose."  Id. at 1190.  In United States v. Bunchan, 626 F.3d 29, 33 (1st Cir. 2010), the trial judge said to the jury:

> So, Ladies and Gentlemen, let's turn to how you go about your business.  As I told you, you don't have to follow my instructions anymore; in fact, that's the critical part of this.  We expect you to, but, then, we send you into a room, we close the door, and we can't tell whether or not you're doing what we ask you to do.

The First Circuit said that the language was "unusual when read in isolation" and "the district court could have been more circumspect with its choice of words," but concluded that in light of other instructions to follow the law, the charge as a whole "did not encourage jury nullification."  Id. at 34 & n.3.

**1.02**            **Nature of Indictment; Presumption of Innocence**

[Updated: 7/27/07]

This criminal case has been brought by the United States government.  I will sometimes refer to the government as the prosecution.  The government is represented at this trial by an assistant United States attorney, [_____]. The defendant, [_____], is represented by [his/her] lawyer, [_____].  [*Alternative:* The defendant, [_____], has decided to represent [him/herself] and not use the services of a lawyer.  [He/She] has a perfect right to do this.  [His/Her] decision has no bearing on whether [he/she] is guilty or not guilty, and it should have no effect on your consideration of the case.]

[Defendant] has been charged by the government with violation of a federal law.  [He/She] is charged with [*e.g.*, having intentionally distributed heroin].  The charge against [defendant] is contained in the indictment.  The indictment is simply the description of the charge against [defendant]; it is not evidence of anything.  [Defendant] pleaded not guilty to the charge and denies committing the crime.  [He/She] is presumed innocent and may not be found guilty by you unless all of you unanimously find that the government has proven [his/her] guilt beyond a reasonable doubt.

[*Addition for multi-defendant cases:* The defendants are being tried together because the government has charged that they acted together in committing the crime of [_____].  But you will have to give separate consideration to the case against each defendant.  Do not think of the defendants as a group.]

## **Comment**

(1)    This instruction is derived from Federal Judicial Center Instruction 1.  "[W]e note that judges should be scrupulous in avoiding any possibility of inference that allegations in the indictment be treated as facts."  United States v. Martínez-Vives, 475 F.3d 48, 52 n.3 (1st Cir. 2007).

(2)    A "statement [in a jury instruction] that a 'larger jury' had found probable cause, if considered in isolation, could mislead a petit jury into according significance to the grand jury's action."  United States v. McFarlane, 491 F.3d 53, 60 (1st Cir. 2007).

**1.03**        **Previous Trial**

[Updated: 10/5/12]

You may hear reference to a previous trial of this case. A previous trial did occur.  But [defendant] and the government are entitled to have you decide this case entirely on the evidence that has come before you in this trial.  You should not consider the fact of a previous trial in any way when you decide whether the government has proven, beyond a reasonable doubt, that the defendant committed the crime.


## <u>Comment</u>

(1)     This instruction is derived from Ninth Circuit Instruction 2.15, Federal Judicial Center Instruction 14, and Sand, et al., Instruction 2-13.  The commentary to the Federal Judicial Center instructions recommends that this instruction not be given unless specifically requested by the defense, while the commentary to the Ninth Circuit instructions suggests that "a preferable practice is to avoid all reference to prior trials."  <u>See also</u> <u>United States v. Seals</u>, 987 F.2d 1102, 1109-10 (5th Cir. 1993) (finding it was not error to fail to instruct the jury when defense counsel refused trial court's offer to give instruction following inadvertent references to the defendant's previous trial).

(2)     The District of Columbia Circuit has suggested that the following cautionary instruction be given at the *outset* of a retrial:  "The defendant has been tried before.  (If there has been a mistrial, so state.)  You have no concern with that.  The law charges you to render a verdict solely on the evidence in this trial."  <u>Carsey v. United States</u>, 392 F.2d 810, 812 (D.C. Cir. 1967) (finding defense counsel's mention of "mistrials" did not substantially prejudice the prosecution and prevent a fair trial, so that the trial judge should have handled the matter through a cautionary instruction instead of declaring a mistrial); <u>see also</u> <u>United States v. Hykel</u>, 461 F.2d 721, 726 (3d Cir. 1972) (affirming instruction given after mention during jury selection of previous mistrial; instruction cautioning jury that "[T]he fact that this is the second trial of this case should mean nothing to you. Do you understand that?  No inference of any kind should be drawn from that."); <u>cf</u>. <u>United States v. Faulkner</u>, 17 F.3d 745, 763-64 (5th Cir. 1994) (affirming court's statement to jury about true reason for mistrial in context of newscasts erroneously reporting that previous trial ended in mistrial due to jury tampering).

**1.04**          **Preliminary Statement of Elements of Crime**

[Updated: 6/14/02]

In order to help you follow the evidence, I will now give you a brief summary of the elements of the crime[s] charged, each of which the government must prove beyond a reasonable doubt to make its case:

> First, [_____];
> Second, [_____];
> Third, [_____];
> etc.

[The description of the crime in this preliminary instruction should not simply track statutory language but should be stated in plain language as much as possible.]

You should understand, however, that what I have just given you is only a preliminary outline. At the end of the trial I will give you a final instruction on these matters. If there is any difference between what I just told you, and what I tell you in the instruction I give you at the end of the trial, the instructions given at the end of the trial govern.

**Comment**

This instruction is derived from Eighth Circuit Instruction 1.02 and Ninth Circuit Instruction 1.2.

**1.05**          **Evidence; Objections; Rulings; Bench Conferences**

[Updated: 6/14/02]

I have mentioned the word "evidence."  Evidence includes the testimony of witnesses, documents and other things received as exhibits, and any facts that have been stipulated—that is, formally agreed to by the parties.

There are rules of evidence that control what can be received into evidence.  When a lawyer asks a question or offers an exhibit into evidence, and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.  This simply means that the lawyer is requesting that I make a decision on a particular rule of evidence.

Then it may be necessary for me to talk with the lawyers out of the hearing of the jury, either by having a bench conference here while the jury is present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working.  The purpose of these conferences is to decide how certain evidence is to be treated under the rules of evidence, and to avoid confusion and error.  We will, of course, do what we can to keep the number and length of these conferences to a minimum.

Certain things are not evidence.  I will list those things for you now:

(1)     Statements, arguments, questions and comments by lawyers representing the parties in the case are not evidence.

(2)     Objections are not evidence.  Lawyers have a duty to their client to object when they believe something is improper under the rules of evidence.  You should not be influenced by the objection.  If I sustain an objection, you must ignore the question or exhibit and must not try to guess what the answer might have been or the exhibit might have contained.  If I overrule the objection, the evidence will be admitted, but do not give it special attention because of the objection.

(3)     Testimony that I strike from the record, or tell you to disregard, is not evidence and must not be considered.

(4)     Anything you see or hear about this case outside the courtroom is not evidence, unless I specifically tell you otherwise during the trial.

Furthermore, a particular item of evidence is sometimes received for a limited purpose only.  That is, it can be used by you only for a particular purpose, and not for any other purpose.  I will tell you when that occurs and instruct you on the purposes for which the item can and cannot be used.

Finally, some of you may have heard the terms "direct evidence" and "circumstantial evidence." Direct evidence is testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is indirect evidence, that is, it is proof of one or more facts from which one can find or infer another fact.  You may consider both direct and circumstantial evidence.  The law permits you to give equal weight to both, but it is for you to decide how much weight to give to any evidence.

16

## **<u>Comment</u>**

This instruction is derived from Federal Judicial Center Instruction 1, Eighth Circuit Instructions 1.03, 1.07 and Ninth Circuit Instructions 1.5, 1.6.

**1.06**          **Credibility of Witnesses**

[Updated: 6/14/02]

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You may believe everything a witness says or only part of it or none of it.

In deciding what to believe, you may consider a number of factors, including the following: (1) the witness's ability to see or hear or know the things the witness testifies to; (2) the quality of the witness's memory; (3) the witness's manner while testifying; (4) whether the witness has an interest in the outcome of the case or any motive, bias or prejudice; (5) whether the witness is contradicted by anything the witness said or wrote before trial or by other evidence; and (6) how reasonable the witness's testimony is when considered in the light of other evidence which you believe.

**<u>Comment</u>**

This instruction is derived from Eighth Circuit Instruction 1.05 and Ninth Circuit Instruction 1.7.

## 1.07            Conduct of the Jury

[Updated: 4/29/13]

To insure fairness, you as jurors must obey the following rules:

First, do not talk among yourselves about this case, or about anyone involved with it, until the end of the case when you go to the jury room to decide on your verdict;

Second, do not talk with anyone else about this case, or about anyone who has anything to do with it, until the trial has ended and you have been discharged as jurors. "Anyone else" includes members of your family and your friends. You may tell them that you are a juror, but do not tell them anything about the case until after you have been discharged by me;

Third, do not let anyone talk to you about the case or about anyone who has anything to do with it. If someone should try to talk to you, please report it to me immediately;

Fourth, during the trial do not talk with or speak to any of the parties, lawyers or witnesses involved in this case—you should not even pass the time of day with any of them. It is important not only that you do justice in this case, but that you also give the appearance of doing justice. If a person from one side of the lawsuit sees you talking to a person from the other side—even if it is simply to pass the time of day—an unwarranted and unnecessary suspicion about your fairness might be aroused. If any lawyer, party or witness does not speak to you when you pass in the hall, ride the elevator or the like, it is because they are not supposed to talk or visit with you;

Fifth, do not read any news stories or articles about the case or about anyone involved with it, or listen to any radio or television reports about the case or about anyone involved with it;

Sixth, do not do any research on the internet about anything in the case or consult blogs or dictionaries or other reference materials, and do not make any investigation about the case on your own;

Seventh, do not discuss the case or anyone involved with it, or your status as a juror on any social media or look up any of the participants there.

Eighth, if you need to communicate with me simply give a signed note to the [court security officer] to give to me; and

Ninth, do not make up your mind about what the verdict should be until after you have gone to the jury room to decide the case and you and your fellow jurors have discussed the evidence. Keep an open mind until then.

**Comment**

(1)     This instruction is derived from Eighth Circuit Instruction 1.08 and Ninth Circuit Instruction 1.8, but enlarged to deal with online research and discussion.  The Judicial Conference Committee on Court Administration and Case Management has a lengthier, more detailed instruction that it recommends.  See http://www.uscourts.gov/uscourts/News/2012/jury-instructions.pdf.

(2)     In United States v. Jadlowe, 628 F.3d 1, 15 (1st Cir. 2010), the First Circuit held that it is "unmistakably erroneous" to tell the jury that they can discuss the case among themselves, before formal deliberations begin.  The trial judge instructed the jury as follows before opening statements:

> I just have a few special instructions about your conduct as jurors.  The first one is the hardest.  You are not to discuss the case with each other or anyone else until you retire to the jury room at the end of the case to deliberate on your verdict.
>
> This rule is not as strict as it sounds.  When I say you are not to discuss the case, I mean it in this sense.  You are not to express an ultimate opinion about the outcome of the case.
>
> Personally, even this rule, the way I state it, I don't think is a terribly good rule.  I understand the reason for it.  The thought is that because some of us tend to be more opinionated and assertive than others, jurors who are more assertive will tend to influence the opinions of fellow jurors if jurors are talking about the case before they hear all of the evidence.  I think this, in fact, underestimates the intelligence of almost all the jurors that I have worked with over the years, but, nonetheless, this is the federal rule.  It's been abolished in a number of states, but it is the federal rule.  So we have to respect it.  Like I say, whether we agree with the wisdom of a rule or not, it is the rule, the rule we follow.
>
> But, again, don't over-interpret what I said.  Of course you'll talk about interesting things that happened during the course of the trial, idiosyncrasies of the judge and the lawyers, interesting things witnesses say, significant pieces of evidence.  Just do not express an opinion about the case, again, until you begin deliberations and each have an opportunity to make your opinions known.

Id. at 14-15.  The First Circuit also stated:

> Although this case does not require us to impose an affirmative requirement that courts tell jurors not to discuss the case until deliberations formally begin, such an instruction is unquestionably the better practice.

Id. at 19 n.31.

**1.08**          **Notetaking**

[Updated: 6/14/02]

I am going to permit you to take notes in this case, and the courtroom deputy has distributed pencils and pads for your use.  I want to give you a couple of warnings about taking notes, however.  First of all, do not allow your note-taking to distract you from listening carefully to the testimony that is being presented.  If you would prefer not to take notes at all but simply to listen, please feel free to do so.  Please remember also from some of your grade-school experiences that not everything you write down is necessarily what was said.  Thus, when you return to the jury room to discuss the case, do not assume simply because something appears in somebody's notes that it necessarily took place in court.  Instead, it is your collective memory that must control as you deliberate upon the verdict.  Please take your notes to the jury room at every recess.  I will have the courtroom deputy collect them at the end of each day and place them in the vault.  They will then be returned to you the next morning.  When the case is over, your notes will be destroyed.  These steps are in line with my earlier instruction to you that it is important that you not discuss the case with anyone or permit anyone to discuss it with you.

## **Comment**

(1)     "The decision to allow the jury to take notes and use them during deliberations is a matter within the discretion of the trial court."  United States v. Porter, 764 F.2d 1, 12 (1st Cir. 1985).  The trial judge, however, should explain to jurors that the notes should only be used to refresh their recollections of the evidence presented and "not prevent [them] from getting a full view of the case." United States v. Oppon, 863 F.2d 141, 148 n.12 (1st Cir. 1988).

(2)     The district court is within its discretion to limit when the jurors may take notes during the trial.  United States v. Darden, 70 F.3d 1507, 1537 (8th Cir. 1995) (affirming trial court's decision to allow jurors to take notes only when viewing exhibits so as not to distract them from live testimony).

**1.09**          **Outline of the Trial**

[Updated: 6/14/02]

The first step in the trial will be the opening statements.  The government in its opening statement will tell you about the evidence that it intends to put before you, so that you will have an idea of what the government's case is going to be.

Just as the indictment is not evidence, neither is the opening statement evidence.  Its purpose is only to help you understand what the evidence will be and what the government will try to prove.

[After the government's opening statement, [defendant]'s attorney may, if [he/she] chooses, make an opening statement.  At this point in the trial, no evidence has been offered by either side.]

Next the government will offer evidence that it says will support the charge[s] against [defendant].  The government's evidence in this case will consist of the testimony of witnesses, and may include documents and other exhibits.  In a moment I will say more about the nature of evidence.

After the government's evidence, [defendant]'s lawyer may [make an opening statement and] present evidence in the [defendant]'s behalf, but [he/she] is not required to do so.  I remind you that [defendant] is presumed innocent, and the government must prove the guilt of [defendant] beyond a reasonable doubt.  [Defendant] does not have to prove [his/her] innocence.

After you have heard all the evidence on both sides, the government and the defense will each be given time for their final arguments.  I just told you that the opening statements by the lawyers are not evidence.  The same applies to the closing arguments.  They are not evidence either.  In their closing arguments the lawyers for the government and [defendant] will attempt to summarize and help you understand the evidence that was presented.

The final part of the trial occurs when I instruct you about the rules of law that you are to use in reaching your verdict.  After hearing my instructions, you will leave the courtroom together to make your decisions.  Your deliberations will be secret.  You will never have to explain your verdict to anyone.

## **Comment**

(1)      This instruction is derived from Federal Judicial Center Instruction 1.

(2)      The third paragraph should be omitted if the defense reserves its opening statement until later.  The judge should resolve this issue with the lawyers before giving the instruction.

22

**PART 2**        **INSTRUCTIONS CONCERNING CERTAIN MATTERS OF EVIDENCE**

2.01    Stipulations                                                    [Updated: 6/3/09]

2.02    Judicial Notice                                                 [Updated: 6/14/02]

2.03    Impeachment by Prior Inconsistent Statement                     [Updated: 6/14/02]

2.04    Impeachment of Witness Testimony by Prior Conviction            [Updated: 1/23/15]

2.05    Impeachment of Defendant's Testimony by Prior Conviction        [Updated: 6/14/02]

2.06    Evidence of Defendant's Prior Similar Acts                      [Updated: 7/28/14]

2.07    Weighing the Testimony of an Expert Witness                     [Updated: 3/25/15]

2.08    Caution as to Cooperating Witness/Accomplice/Paid Informant     [Updated: 4/1/15]

2.09    Use of Tapes and Transcripts                                    [Updated: 11/7/12]

2.10    Flight After Accusation/Consciousness of Guilt                  [Updated: 11/22/13]

2.11    Statements by Defendant                                         [Updated: 5/18/17]

2.12    Missing Witness                                                 [Updated: 1/6/15]

2.13    Spoliation                                                      [Updated: 10/5/12]

2.14    Witness (Not the Defendant) Who Takes the Fifth Amendment       [Updated: 10/5/12]

2.15    Definition of "Knowingly"                                       [Updated: 10/5/12]

2.16    "Willful Blindness" As a Way of Satisfying "Knowingly"          [Updated: 12/15/17]

2.17    Definition of "Willfully"                                       [Updated: 6/4/14]

2.18    Taking a View                                                   [Updated: 6/14/02]

2.19    Character Evidence                                              [Updated: 6/14/02]

2.20    Testimony by Defendant                                          [New: 1/24/06]

2.21    Failure to Provide Evidence to Investigators                    [New: 10/14/11]

2.22    Eyewitness Identification Instruction                           [Updated: 12/21/18]

2.23    Testing Procedures and Failure to Conduct Certain Tests         [New: 10/23/13]

## Introductory Comment

Instructions concerning evidence may be used during the trial, or in the final instructions or at both times.  They are collected here for easy reference.

**2.01**          **Stipulations**

[Updated: 6/3/09]

The evidence in this case includes facts to which the lawyers have agreed or stipulated.  A stipulation means simply that the government and the defendant accept the truth of a particular proposition or fact.  Since there is no disagreement, there is no need for evidence apart from the stipulation.  You must accept the stipulation as fact to be given whatever weight you choose.

## Comment

(1)     The stipulation should be admitted into evidence before the record is closed, not merely placed in the instructions:

> Technically, the court erred by first presenting the subject matter of the stipulation to the jury in its jury instructions, after the close of evidence.  Ordinarily, unless there is a contrary agreement between the parties, district courts should ensure that a stipulation, or the content thereof, is presented to the jurors prior to the close of evidence.  This presentation may take various forms: the stipulation itself could be entered into evidence, the court could read the stipulation into evidence, or the parties could agree that one of them will publish the stipulation to the jury.  The presentation will often include an explanation by the court that the stipulation means that the government and the defendant accept the truth of a particular proposition of fact, and, hence, there is no need for evidence apart from the stipulation itself.

United States v. Pratt, 568 F.3d 11, 15-16 (1st Cir. 2009).

(2)     Where there are stipulations that are legal as well as factual, it is safest to include them in the jury instructions.  The First Circuit has said:  "[W]e express no opinion on whether the government's duty to prove each element of a crime beyond a reasonable doubt is diluted impermissibly if the jury instructions do not submit the stipulation for the jury's consideration.  This thorny question has divided the courts of appeals. . . ."  United States v. Meade, 175 F.3d 215, 224 n.2 (1st Cir. 1999) (citations omitted).

**2.02**          **Judicial Notice**

[Updated: 6/14/02]


I believe that [judicially noticed fact] [is of such common knowledge] [can be so accurately and readily determined] that it cannot be reasonably disputed.  You may, therefore, reasonably treat this fact as proven, even though no evidence has been presented on this point.

As with any fact, however, the final decision whether or not to accept it is for you to make.  You are not required to agree with me.


## <u>Comment</u>

Use of an instruction like this was approved in <u>United States v. Bello</u>, 194 F.3d 18, 25-26 (1st Cir. 1999); <u>see also</u> Fed. R. Evid. 201(f).

**2.03          Impeachment by Prior Inconsistent Statement**

[Updated: 6/14/02]

You have heard evidence that before testifying at this trial, [witness] made a statement concerning the same subject matter as [his/her] testimony in this trial.  You may consider that earlier statement to help you decide how much of [witness's] testimony to believe.  If you find that the prior statement was not consistent with [witness's] testimony at this trial, then you should decide whether that affects the believability of [witness's] testimony at this trial.

**<u>Comment</u>**

This instruction is for use where a witness's prior statement is admitted only for impeachment purposes.  Where a prior statement is admitted substantively under Fed. R. Evid. 801(d)(1), this instruction is not appropriate.  Once a prior statement is admitted substantively as non-hearsay under Rule 801(d)(1), it is actual evidence and may be used for whatever purpose the jury wishes. No instruction seems necessary in that event, but one may refer to Federal Judicial Center Instructions 33 and 34.

26

**2.04**          **Impeachment of Witness Testimony by Prior Conviction**

[Updated: 1/23/15]

You have heard evidence that [witness] has been convicted of a crime.  You may consider that evidence, together with other pertinent evidence, in deciding how much weight to give to that witness's testimony.

### <u>Comment</u>

(1)      This instruction is adapted from Eighth Circuit Instruction 2.18, Ninth Circuit Instruction 4.8 and Federal Judicial Center Instruction 30, all of which are very similar.

(2)      In <u>United States v. Noone</u>, 913 F.2d 20, 33 n.20 (1st Cir. 1990), the First Circuit noted that an instruction on impeachment by prior conviction should be given where witness credibility was an important part of the defenses and where the court potentially misled the jury at *voir dire* by stating its intention to give an instruction on prior conviction at trial but such an instruction was not ultimately given.

(3)      In <u>United States v. González-Pérez</u>, 778 F.3d 3, 15-16 (1st Cir. 2015) (citing the pattern with approval), the First Circuit held that giving this instruction "does not require that the witness first deny the prior criminal conviction."

**2.05**          **Impeachment of Defendant's Testimony by Prior Conviction**

[Updated: 6/14/02]

You have heard evidence that [defendant] was convicted of a crime.  You may consider that evidence in deciding, as you do with any witness, how much weight to give [defendant]'s testimony.  The fact that [defendant] was previously convicted of another crime does not mean that [he/she] committed the crime for which [he/she] is now on trial.  You must not use that prior conviction as proof of the crime charged in this case.

## <u>Comment</u>

This instruction is adapted from the Fifth Circuit Instruction 1.11 and Federal Judicial Center Instruction 41.  It is intended for use when the defendant's prior conviction is admitted under Fed. R. Evid. 609.  If the evidence of the prior act was admitted under Rule 404(b), see Instruction 2.06.

**2.06**         **Evidence of Defendant's Prior Similar Acts**

[Updated: 7/28/14]

You have heard [will hear] evidence that [defendant] previously committed acts similar to those charged in this case.  You may not use this evidence to infer that, because of [his/her] character, [defendant] carried out the acts charged in this case.  You may consider this evidence only for the limited purpose of deciding:

(1)      Whether [defendant] had the state of mind or intent necessary to commit the crime charged in the indictment;

or

(2)      Whether [defendant] had a motive or the opportunity to commit the acts charged in the indictment;

or

(3)      Whether [defendant] acted according to a plan or in preparation for commission of a crime;

or

(4)      Whether [defendant] committed the acts [he/she] is on trial for by accident or mistake.

Remember, this is the only purpose for which you may consider evidence of [defendant]'s prior similar acts.  Even if you find that [defendant] may have committed similar acts in the past, this is not to be considered as evidence of character to support an inference that [defendant] committed the acts charged in this case.

## **Comment**

(1)      See Fed. R. Evid. 105; Huddleston v. United States, 485 U.S. 681, 691-92 (1988) ("[T]he trial court shall, upon request, instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted.").  "Perhaps the safe course for a district court, wherever the matter is in doubt, is (where asked) to give a closing general instruction that bad character is not a permissible inference."  United States v. Randazzo, 80 F.3d 623, 630 (1st Cir. 1996).  Randazzo contains a discussion of the "distinction between 'direct evidence' and 'other crimes' or 'Rule 404(b)' evidence."  Id.; see also United States v. Santagata, 924 F.2d 391, 393-95 (1st Cir. 1991); United States v. McGauley, 279 F.3d 62, 72-73 (1st Cir. 2002).

(2)      This instruction is based upon Fifth Circuit Instruction 1.30 and Eighth Circuit Instruction 2.08.

(3)     Courts should encourage counsel to specify and limit the purpose or purposes for which prior act evidence is admitted.  One or more of the above instructions should be given only for the corresponding specific purpose for which the evidence was admitted.  Instructions for purposes other than that for which the specific evidence was admitted should not be given.

(4)     Note that in several older cases, the First Circuit has said both that Rule 404(b) objections can be raised "only by the person whose 'other crimes, wrongs, or acts' are attempted to be revealed," United States v. David, 940 F.2d 722, 736 (1st Cir. 1991); accord United States v. Procopio, 88 F.3d 21, 29 n.1 (1st Cir. 1996) (quoting David, supra); United States v. Isabel, 945 F.3d 1193, 1200 (1st Cir. 1991), and that it "does not exclude evidence of prior crimes of persons other than the defendant."  United States v. Gonzalez-Sanchez, 825 F.2d 572, 583 (1st Cir. 1987). In United States v. Ulloa, 760 F.3d 113, 116 (1st Cir. 2014), the court "assume[d] without deciding" that it was error to deny a defense request for an instruction that the jury *could* consider from a witness's previous crimes that the *witness* had a propensity to commit crimes.

**2.07**          **Weighing the Testimony of an Expert Witness**

[Updated: 3/25/15]

You have heard testimony from persons described as experts.  An expert witness has special knowledge or experience that allows the witness to give an opinion.

You may accept or reject such testimony.  In weighing the testimony, you should consider the factors that generally bear upon the credibility of a witness as well as the expert witness's education and experience, the soundness of the reasons given for the opinion and all other evidence in the case.

Remember that you alone decide how much of a witness's testimony to believe, and how much weight it should be given.

## Comment

(1)      This instruction is based upon Eighth Circuit Instruction 4.10.

(2)      In <u>United States v. Fermin</u>, 771 F.3d 71, 80 (1st Cir. 2014), the First Circuit stated: "Although the district court errantly advised the jury that expert testimony 'should not be disregarded lightly,' the instruction in its entirety apprised the jury of its proper role vis-à-vis expert witnesses."  "It is the province of the jury to determine the proper weight to assign to expert testimony.  Testimony is not entitled to deference simply because it derives from an expert."  <u>Id</u>. (citations omitted).

**2.08**     **Caution as to Cooperating Witness/Accomplice/Paid Informant/ Immunized Witness**

[Updated: 4/1/15]

You have heard the testimony of [name of witness].  [He/She]:

(1)     provided evidence under agreements with the government;

[and/or]

(2)     participated in the crime charged against [defendant];

[and/or]

(3)     received money [or . . .] from the government in exchange for providing information;

[and/or]

(4)     testified under a grant of immunity.

["Immunity" means that [witness]'s testimony may not be used against [him/her] in any subsequent criminal proceeding.  However, if [he/she] testified untruthfully, [he/she] could be prosecuted for perjury or making a false statement, even though [he/she] was testifying under a grant of immunity.]

Some people in this position are entirely truthful when testifying.  Still, you should consider the testimony of [name of witness] with particular caution.  [He/She] may have had reason to make up stories or exaggerate what others did because [he/she] wanted to help [him/her]self.  [You must determine whether the testimony of such a witness has been affected by any interest in the outcome of this case, any prejudice for or against the defendant, or by any of the benefits [he/she] has received from the government as a result of being immunized from prosecution.] [You may consider their guilty pleas in assessing their credibility, but you are not to consider their guilty pleas as evidence against this defendant in any way.]

## Comment

(1)     "Though it is prudent for the court to give a cautionary instruction [for accomplice testimony], even when one is not requested, failure to do so is not automatic error especially where the testimony is not incredible or otherwise insubstantial on its face."  United States v. Wright, 573 F.2d 681, 685 (1st Cir. 1978); see also United States v. House, 471 F.2d 886, 888 (1st Cir. 1973) (same for paid-informant testimony).  The language varies somewhat.  United States v. Paniagua-Ramos, 251 F.3d 242, 245 (1st Cir. 2001) ("no magic words that must be spoken"); United States v. Hernandez, 109 F.3d 13, 17 (1st Cir. 1997) (approving "with greater caution" or "with caution"); United States v. Brown, 938 F.2d 1482, 1486 (1st Cir. 1991) (referring to the standard accomplice instruction as "with caution and great care"); United States v. Skandier, 758

F.2d 43, 46 (1st Cir. 1985) ("scrutinized with particular care"); United States v. Hickey, 596 F.2d 1082, 1091 n.6 (1st Cir. 1979) (approving "greater care" instruction).  The standard is the same for witnesses granted immunity, United States v. Newton, 891 F.2d 944, 950 (1st Cir. 1989) (jury should be instructed that such "testimony must be received with caution and weighed with care"), and for paid informants, United States v. Cresta, 825 F.2d 538, 546 (1st Cir. 1987) ("the jury must be specifically instructed to weigh the witness' testimony with care").

(2)     If a co-defendant has pleaded guilty, the jury must be told they are not to consider that guilty plea as any evidence against the defendant on trial.  United States v. Foley, 783 F.3d 7, 17-18 (1st Cir. 2015) (no abuse of discretion where court admitted the fact of co-defendant's guilty plea and gave an "appropriate limiting instruction"); United States v. Gonzalez-Gonzalez, 136 F.3d 6, 11 & n.4 (1st Cir. 1998).  It is incorrect to say that the guilty plea "is not evidence in and of itself of the guilt of any other person."  Id. at 11; United States v. Falu-Gonzalez, 205 F.3d 436, 444 (1st Cir. 2000).

(3)     In United States v. Paniagua-Ramos, 251 F.3d 242, 248 n.3 (1st Cir. 2001), the court said in a footnote that, although a jury need not believe every government witness beyond a reasonable doubt, "where the accomplice's uncorroborated testimony is the only evidence of guilt, an admonition that the testimony must be believed beyond a reasonable doubt, if requested, would be advisable to guide the jury's deliberations."

(4)     The jury charge for the testimony of immunized witnesses is based largely upon United States v. Simonelli, 237 F.3d 19, 29 (1st Cir. 2001).  The purpose of this instruction—just as with cautions regarding the testimony of a cooperating witness, an accomplice, or any other witness with a personal interest in the case—is to caution the jury to view the witness's testimony with "greater care and caution than the testimony of ordinary witnesses."  United States v. Angiulo, 897 F.2d 1169, 1208 (1st Cir. 1990). Thus, if a district court has properly cautioned the jury regarding the credibility of an immunized witness, it is not error for the court to decline to give an additional accomplice-witness instruction or an additional cooperating-witness instruction.  See Simonelli, 237 F.3d at 29 (affirming district court's refusal to give an additional accomplice instruction where sufficient immunized-witness instruction was given); United States v. Newton, 891 F.2d 944, 950 (1st Cir. 1989) ("There is no significant distinction between a cautionary instruction on the testimony of an accomplice and a cautionary instruction on a witness granted immunity. In both instances, the jury is instructed that the testimony must be received with caution and weighed with care.") (citation omitted); United States v. Glantz, 847 F.2d 1, 11 (1st Cir. 1988) (finding no error in the district court's failure "to specifically warn the jury that it should also consider the relative credibility of a witness . . . who had agreed to cooperate with the government . . . in exchange for a plea bargain in an unrelated case" where the court "gave very emphatic instructions that the testimony of immunized witnesses or those that have committed prior acts of perjury should be examined with the greatest of care, with particular consideration given to whether the testimony was affected by personal interest, prejudice, or antagonism toward the defendant.").

(5)     The First Circuit has expressed skepticism regarding the appropriateness of a generalized instruction regarding the credibility of witnesses who are substance abusers.  See United States v. Williams, 809 F.2d 75, 86-88 (1st Cir. 1986) (such an instruction would be "overbroad in that [it would] impugn[] the testimony of all addicts" and is unnecessarily superfluous if the court gives a

"detailed accomplice-witness instruction").  A "generalized instruction regarding the credibility of persons who use or abuse narcotics" differs from a special instruction for "addict-informant" witnesses who may have an "incentive for mendacity provided by the addict's interest in avoiding incarceration so that he or she may continue to obtain drugs," which may be appropriate under certain circumstances.  Id. at 87 (citing United States v. Rosa, 705 F.2d 1375, 1381 (1st Cir. 1983)).

(6)     The First Circuit "view[s] the practice of conditioning a witness's benefits upon the incidence of future indictments or convictions as pernicious" and as raising due process concerns.  United States v. Melvin, 730 F.3d 29, 35-6 (1st Cir. 2013).  But where a prosecutor promptly discontinued the incentive arrangement upon discovering it (law enforcement had arranged it) and where the arrangement and its discontinuance were "fully disclosed to the jury" and the trial judge instructed the jury to consider the testimony of the cooperating witness "with particular caution" and to consider "whether his testimony has been affected by his interest in maintaining his relationship with the government or by any of the benefits he has received from the government," the testimony was admissible and did not result in a due process violation.  Id.

**2.09**        **Use of Tapes and Transcripts**
           *[Not to be used if the recordings are not in English]*

[Updated: 11/7/12]

At this time you are going hear conversations that were recorded.  This is proper evidence for you to consider.  In order to help you, I am going to allow you to have a transcript to read along as the tape is played.  The transcript is merely to help you understand what is said on the tape.  If you believe at any point that the transcript says something different from what you hear on the tape, remember it is the tape that is the evidence, not the transcript.  Any time there is a variation between the tape and the transcript, you must be guided solely by what you hear on the tape and not by what you see in the transcript.

[In this case there are two transcripts because there is a difference of opinion as to what is said on the tape.  You may disregard any portion of  either or both transcripts if you believe they reflect something different from what you hear on the tape.  It is what you hear on the tape that is evidence, not the transcripts.]

## Comment

(1)      This instruction is based upon a trial court instruction approved in United States v. Mazza, 792 F.2d 1210, 1227 (1st Cir. 1986).

(2)      The First Circuit has stated that "[w]e believe that it is advisable for the district court to try to obtain a stipulated transcript from the parties before trial or, at least, before a transcript is used."  United States v. Rengifo, 789 F.2d 975, 983 (1st Cir. 1986).

(3)      If the parties are unable to stipulate to the accuracy of a transcript, "each party should be allowed to introduce its own transcript of the recording provided that it is properly authenticated." Rengifo, 789 F.2d at 983.  The instruction for two transcripts is based upon Rengifo.  Id.

(4)      There is abundant First Circuit caselaw concerning the admissibility  of tapes, particularly when there is a dispute over their audibility and coherence.  "This court has acknowledged the importance of ensuring that a transcript offered for use as a jury aid be authenticated 'by testimony as to how they were prepared, the sources used, and the qualifications of the person who prepared them.'"  United States v. DeLeon, 187 F.3d 60, 65 (1st Cir. 1999) (citations omitted); but see United States v. Anderson, 452 F.3d 66, 77 (1st Cir. 2006) (holding that transcripts can be authenticated by individuals other than the transcriber).  But ultimately the matter is left to the trial court's "broad discretion" to decide "whether 'the inaudible parts are so substantial as to make the rest [of the tape] more misleading than helpful.'"  United States v. Jadusingh, 12 F.3d 1162, 1167 (1st Cir. 1994) (quoting United States v. Font-Ramirez, 944 F.2d 42, 47 (1st Cir. 1991)); see also United States v. DiSanto, 86 F.3d 1238, 1250-54 (1st Cir. 1996); United States v. Saccoccia, 58 F.3d 754, 781 (1st Cir. 1995); United States v. Carbone, 798 F.2d 21, 24 (1st Cir. 1986).

        The First Circuit has provided guidelines for the use of wiretap transcripts by the jury.  "The district court, in an exercise of its discretion, should decide whether properly authenticated transcripts should be admitted as evidence and go to the jury room initially along with the rest of

the exhibits.  If the jury requests the transcripts after it has started its deliberations, it is within the district court's discretion to decide whether the jury's request should be granted."  <u>Rengifo</u>, 789 F.2d at 983.  If the judge permits the transcripts in the jury room, the judge should "make[ ] clear that the tapes, not the transcript, constitute the evidence in the case." <u>United States v. Ademaj</u>, 170 F.3d 58, 65 (1st Cir. 1999); <u>United States v. Young</u>, 105 F.3d 1, 10 (1st Cir. 1997); <u>United States v. Campbell</u>, 874 F.2d 838, 849 (1st Cir. 1989) (citing <u>Rengifo</u>, 789 F.2d at 980).  "When the jury receives two transcripts of the same recording, it should, of course, be instructed that there is a difference of opinion as to the accuracy of the transcripts and that it is up to them to decide which, if any, version to accept.  The jurors should also be instructed that they can disregard any portion of the transcript (or transcripts) which they think differs from what they hear on the tape recording. Further limiting instructions will depend on the circumstances of each case."  <u>Rengifo</u>, 789 F.2d at 983.

(5)     "[A]n instruction that the jury should consider only what is on the tape and not what is in the English transcript would not be appropriate."  <u>United States v. Morales-Madera</u>, 352 F.3d 1, 9 (1st Cir. 2003).

**2.10**       **Flight After Accusation/Consciousness of Guilt**

[Updated: 11/22/13]

Intentional flight by a defendant after he or she is accused of the crime for which he or she is now on trial, may be considered by you in the light of all the other evidence in the case. The burden is upon the government to prove intentional flight. Intentional flight after a defendant is accused of a crime is not alone sufficient to conclude that he or she is guilty. Flight does not create a presumption of guilt. At most, it may provide the basis for an inference of consciousness of guilt. But flight may not always reflect feelings of guilt. Moreover, feelings of guilt, which are present in many innocent people, do not necessarily reflect actual guilt. In your consideration of the evidence of flight, you should consider that there may be reasons for [defendant]'s actions that are fully consistent with innocence.

It is up to you as members of the jury to determine whether or not evidence of intentional flight shows a consciousness of guilt and the weight or significance to be attached to any such evidence.

## <u>Comment</u>

(1)     This instruction is based on <u>United States v. Hyson</u>, 721 F.2d 856, 864 (1st Cir. 1983); <u>accord</u> <u>United States v. Benedetti</u>, 433 F.3d 111, 116 (1st Cir. 2005); <u>United States v. Camilo Montoya</u>, 917 F.2d 680, 683 (1st Cir. 1990); <u>United States v. Hernandez-Bermudez</u>, 857 F.2d 50, 54 (1st Cir. 1988); <u>United States v. Grandmont</u>, 680 F.2d 867, 869-70 (1st Cir. 1982). "Evidence of an accused's flight may be admitted at trial as indicative of a guilty mind, so long as there is an adequate factual predicate creating an inference of guilt of the crime charged." <u>Hernandez-Bermudez</u>, 857 F.2d at 52; <u>see also</u> <u>United States v. Zanghi</u>, 189 F.3d 71, 83 (1st Cir. 1999); <u>United States v. Luciano-Mosquera</u>, 63 F.3d 1142, 1156 (1st Cir. 1995).

(2)     A flight instruction also can be given when the flight in question was from the crime scene. <u>Luciano-Mosquera</u>, 63 F.3d at 1153, 1156; <u>United States v. Hernandez</u>, 995 F.2d 307, 314-15 (1st Cir. 1993).

(3)     If there is more than one defendant, the instruction should clearly specify that the absence of a particular defendant from the trial cannot be attributed to the others and is not to be considered in determining whether the others are guilty or not guilty. <u>United States v. Rullan-Rivera</u>, 60 F.3d 16, 20 (1st Cir. 1995); <u>Hyson</u>, 721 F.2d at 864-65.

(4)     The First Circuit has highlighted the need to engage in a Fed. R. Evid. 403 evaluation before admitting evidence of flight. <u>Hernandez-Bermudez</u>, 857 F.2d at 54 ("[I]t is a species of evidence that should be viewed with caution; it should not be admitted mechanically, but rather district courts should always determine whether it serves a genuinely probative purpose that outweighs any tendency towards unfair prejudice." (citation omitted)). Evidence of threats to a witness deserves the same treatment. <u>See</u> <u>United States v. Burnett</u>, 579 F.3d 129, 133-34 (1st Cir. 2009); <u>United States v. Rosa</u>, 705 F.2d 1375, 1377-79 (1st Cir. 1983); <u>United States v. Gonsalves</u>, 668 F.2d 73, 75 (1st Cir. 1982); <u>United States v. Monahan</u>, 633 F.2d 984, 985 (1st Cir. 1980); <u>see also</u> <u>United States v. Rosario-Diaz</u>, 202 F.3d 54, 70 (1st Cir. 2000).

(5)     A similar instruction can be given when attempts to conceal or falsify identity might justify an inference of consciousness of guilt.  See United States v. Wallace, 461 F.3d 15, 25-26 (1st Cir. 2006) (use of alias); United States v. Otero-Mendez, 273 F.3d 46, 54 n.3 (1st Cir. 2001); United States v. Tracy, 989 F.2d 1279, 1285 (1st Cir. 1993);

(6)     The First Circuit has also approved expanding the instruction to include "intentional hiding or evasion" when the evidence so warrants.  United States v. Candelaria-Silva, 162 F.3d 698, 707 (1st Cir. 1998).

(7)     The First Circuit found no "error in the court's consciousness of guilt instruction, let alone plain error," for the following charge:

> When a defendant voluntarily . . . makes a statement tending to establish his innocence, and such . . . statement is later shown to be proven beyond a reasonable doubt knowingly false in whole or in part, the jury may consider whether this circumstantial evidence points to a consciousness of guilt as to the civil rights violation.  No one can be convicted of a crime on the basis of consciousness of guilt alone.

United States v. Pagán-Ferrer, 736 F.3d 573, 594 (1st Cir. 2013).

**2.11**        **Statements by Defendant**

[Updated: 5/18/17]

You have heard evidence that [defendant] made a statement in which the government claims [he/she] admitted certain facts.

It is for you to decide (1) whether [defendant] made the statement, and (2) if so, how much weight to give it.  In making those decisions, you should consider all of the evidence about the statement, including the circumstances under which the statement may have been made [and any facts or circumstances tending to corroborate or contradict the version of events described in the statement].

## **Comment**

(1)        The instruction uses the word "statement" to avoid the more pejorative term "confession."

(2)        A judge is required to give this instruction if the defendant has raised "a genuine factual issue concerning the voluntariness of such statements . . ., whether through his own or the Government's witnesses[.]"  United States v. Fera, 616 F.2d 590, 594 (1st Cir. 1980).  Under 18 U.S.C. § 3501(a), "[i]f the trial judge determines that the confession was voluntarily made it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances."  Dickerson v. United States, 530 U.S. 428 (2000), held that 18 U.S.C. § 3501 did not displace the constitutional requirements of Miranda v. Arizona, 384 U.S. 436 (1966), but Dickerson did not say that section 3501 has no effect at all.  It seems safer, therefore, to charge in light of section 3501 even if Miranda requirements are satisfied.  See also Crane v. Kentucky, 476 U.S. 683, 687-91 (1986) (holding exclusion of testimony about circumstances of confession deprived defendant of a fair opportunity to present a defense).  The First Circuit has held that, "[o]nce the judge makes the preliminary finding of voluntariness, the jury does not make another independent finding on that issue.  Under this procedure, the jury only hears evidence on the circumstances surrounding the confession to aid it in determining the *weight or credibility* of the confession."  United States v. Campusano, 947 F.2d 1, 6 (1st Cir. 1991) (quoting United States v. Nash, 910 F.2d 749, 756 (11th Cir. 1990) (quoting United States v. Robinson, 439 F.2d 553, 575 (D.C. Cir. 1970) (McGowen, J., dissenting))); United States v. Díaz-Rosado, 857 F.3d 116, 124 (1st Cir. 2017) (it is not necessary for the court to instruct that in deciding how much weight to give the defendant's statement the jury can opt for no weight at all); United States v. Feliz, 794 F.3d 123, 130-31 (1st Cir. 2015) ("the defendant generally retains the freedom to 'familiarize a jury with circumstances that attend the taking of his confession, including facts bearing upon its weight and voluntariness.'  That is so because the jury is empowered to 'assess the truthfulness of confessions,' . . . —their credibility—as part of their decision on 'the ultimate factual issue of the defendant's guilt or innocence.'" (citations omitted)).

(3)        In addition to determining whether a defendant's statement was voluntarily made, the court must "make[ ] a preliminary determination as to whether testimony about the confession is sufficiently trustworthy for the jury to consider the confession as evidence of guilt."  United States

v. Singleterry, 29 F.3d 733, 737 (1st Cir. 1994) (citations omitted).  "The general rule is that a jury cannot rely on an extrajudicial, post-offense confession, even when voluntary, in the absence of 'substantial independent evidence which would tend to establish the trustworthiness of [the] statement.'"  Id. (alteration in original) (quoting Opper v. United States, 348 U.S. 84, 93 (1954)). If evidence of the statement is admitted, "the court has the discretion to determine that the question of trustworthiness is such a close one that it would be appropriate to instruct the jury to conduct its own corroboration analysis."  Id. at 739. That is the purpose of the bracketed language in the instruction.  "[A] judge has wide latitude to select appropriate, legally correct instructions to ensure that the jury weighs the evidence without thoughtlessly crediting an out-of-court confession."  Id.

(4)     Where there was no objection to the jury charge, it was not clear error to omit this instruction where

> [v]iewed, as a whole, the jury instructions here fairly—indeed plainly—told the jury that it could decide for itself the weight and significance to be given any testimony or exhibits, specifically including the recorded statements given by [the defendant] at the police station.   The trial court further made clear that the significance and weight of such testimony and exhibits should depend on the jury's evaluation of all the facts and circumstances.

United States v. Colon, 744 F.3d 752, 757 (1st Cir. 2014).

**2.12**        **Missing Witness**

[Updated: 1/6/15]

If it is peculiarly within the power of the government to produce a witness who could give material testimony, or if a witness, because of [his/her] relationship to the government, would normally be expected to support the government's version of events, the failure to call that witness may justify an inference that [his/her] testimony would in this instance be unfavorable to the government. You are not required to draw that inference, but you may do so. No such inference is justified if the witness is equally available to both parties, if the witness would normally not be expected to support the government's version of events, or if the testimony would merely repeat other evidence.

**<u>Comment</u>**

(1)        According to <u>United States v. Ramos-González</u>, 775 F.3d 483 (1st. Cir. 2015); <u>United States v. Pagan-Santini</u>, 451 F.3d 258, 267 (1st Cir. 2006); <u>United States v. Perez</u>, 299 F.3d 1, 3 (1st Cir. 2002); <u>United States v. DeLuca</u>, 137 F.3d 24, 38 (1st Cir. 1998); <u>United States v. Lewis</u>, 40 F.3d 1325, 1336 (1st Cir. 1994); and <u>United States v. Welch</u>, 15 F.3d 1202, 1214 (1st Cir. 1993), the decision to give this instruction is a matter of court discretion. <u>See also</u> <u>United States v. Arias-Santana</u>, 964 F.2d 1262, 1268 (1st Cir. 1992); <u>United States v. St. Michael's Credit Union</u>, 880 F.2d 579, 597 (1st Cir. 1989). Thus, the proponent of such an instruction must demonstrate that the witness would have been "either 'favorably disposed' to testify on behalf of the government by virtue of status or relationship or 'peculiarly available' to the government." <u>Perez</u>, 299 F.3d at 3 (citation omitted). The court must then "consider the explanation (if any) for the witness's absence and whether the witness, if called, would be likely to provide relevant, non-cumulative testimony." <u>Id</u>. <u>See also</u> <u>United States v. Anderson</u>, 452 F.3d 66, 81 (1st Cir. 2006).

(2)        Where it is a confidential informant who is undisclosed by the government, if he or she is a mere tipster—*i.e.*, if the person was not in a position to amplify, contradict or clear up inconsistencies in the government witnesses' testimony—his or her identity need not be disclosed. Indeed, in that circumstance the witness instruction would be improper, and presumably an abuse of discretion, because the informant is not essential to the right to a fair trial and the government has an interest in maintaining the confidentiality of identity. <u>Lewis</u>, 40 F.3d at 1336 (citing <u>United States v. Martínez</u>, 922 F.2d 914, 921, 925 (1st Cir. 1991)). Where a defendant has not previously sought disclosure of the confidential informant's identity, he or she is not entitled to the instruction. <u>Anderson</u>, 452 F.3d at 81-83; <u>Perez</u>, 299 F.3d at 4.

(3)        All the missing witness instruction cases in the First Circuit appear to have been missing *government* witnesses. The cases often speak in terms of a "party," however, and this instruction might be revised accordingly. But a judge should exercise extreme caution in granting the government's request for such an instruction against a defendant. The Federal Judicial Center recommends that the instruction "not be used against the defendant who offers no evidence in his defense." Comment to Federal Judicial Center Instruction 39. Even if the defendant does put on a case and the instruction is given against the defendant, the following supplemental instruction may be warranted:

You must, however, bear in mind that the law never compels a defendant in a criminal case to call any witnesses or produce any evidence in his behalf.

Sand, et al., Instruction 6-6.

**2.13**          **Spoliation**

[Updated: 10/5/12]

If you find that [party] destroyed or obliterated a document that it knew would be relevant to a contested issue in this case and knew at the time it did so that there was a potential for prosecution, then you may infer (but you are not required to infer) that the contents of the destroyed evidence were unfavorable to [party].

<u>**Comment**</u>

(1)      "A 'spoliation' instruction, allowing an adverse inference, is commonly appropriate in both civil and criminal cases where there is evidence from which a reasonable jury might conclude that evidence favorable to one side was destroyed by the other."  <u>United States v. Laurent</u>, 607 F.3d 895, 902 (1st Cir. 2010) (citing 4 L. Sand et al., Modern Federal Jury Instructions § 75.01 (instruction 75-7), at 75-16 to -18 (2010)).  "The burden is upon the party seeking the instruction to establish such evidence."  <u>Id</u>. (citing 4 L. Sand et al., Modern Federal Jury Instructions § 75.01, at 75-18; <u>United States v. Lopez-Lopez</u>, 282 F.3d 1, 18 (1st Cir. 2002)).  Likewise, "[i]n some circumstances, a party's failure to produce evidence may justify an inference that the evidence would have been unfavorable to the non-producing party.  This general rule of evidence encompasses everything from the decision not to call a witness to the intentional destruction of documents.  The party seeking the instruction has the burden of laying an appropriate evidentiary foundation."  <u>United States v. Santana-Perez</u>, 619 F.3d 117, 124 (1st Cir. 2010) (citing <u>Laurent</u>, 607 F.3d at 902).  I have not discovered a specifically criminal spoliation instruction and have based this instruction upon what is commonly used in civil cases.

In the criminal context, the First Circuit has stated that the spoliation instruction "usually makes sense only where the evidence permits a finding of bad faith destruction; ordinarily, *negligent* destruction would not support the logical inference that the evidence was favorable to the defendant."  <u>Laurent</u>, 607 F.3d at 902 (1st Cir. 2010) (emphasis in original).  But then it adds: "But the case law is not uniform in the culpability needed for the instruction and, anyway, unusual circumstances or even other policies might warrant exceptions.  Consider, for example, negligent destruction of a particular piece of evidence likely to be exculpatory or routine destruction of a class of such evidence . . . ."  <u>Id</u>. at 902-03.

Other circuit courts have held that a spoliation instruction is not warranted without a threshold showing of bad faith imputable to the government and prejudice to the defendant from the loss or destruction of the evidence.  <u>United States v. Wise</u>, 221 F.3d 140, 156 (5th Cir. 2000) (district court properly declined to give a spoliation instruction where there was no evidence of bad faith conduct by the government); <u>United States v. Jennell</u>, 749 F.2d 1302, 1308 (9th Cir. 1984) (adverse inference instruction warranted only when there is (1) evidence of bad faith on the part of the government, and (2) prejudice suffered by the defendant from the loss or destruction of evidence); <u>United States v. Romo-Chavez</u>, 681 F.3d 955, 961 (9th Cir. 2012) (confirming <u>Jennell</u>'s bad faith and prejudice elements); <u>United States v. Artero</u>, 121 F.3d 1256, 1259 (9th Cir. 1997) (same).

(2)      Other circuits say that the instruction is discretionary with the trial judge, <u>Wise</u>, 221 F.3d at 156, and that is the position the First Circuit has taken in civil spoliation cases.  <u>See, e.g.</u>, <u>Booker</u>

v. Mass. Dep't of Public Health, 612 F.3d 34, 46 (1st Cir. 2010) (citing United States v. St. Michael's Credit Union, 880 F.2d 579, 597 (1st Cir. 1989)), as well as in criminal missing witness instructions, United States v. Arias-Santana, 964 F.2d 1262, 1268 (1st Cir. 1992); St. Michael's Credit Union, 880 F.2d at 579.

(3)    Generally, with respect to permissive inference instructions, the Supreme Court has stated:

> The most common evidentiary device is the entirely permissive inference or presumption, which allows-but does not require-the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and which places no burden of any kind on the defendant. . . .  Because this permissive presumption leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, it affects the application of the "beyond a reasonable doubt" standard only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference.

County Court of Ulster County, N. Y. v. Allen, 442 U.S. 140, 157 (1979).

**2.14**         **Witness (Not the Defendant) Who Takes the Fifth Amendment**

[Updated: 10/5/12]


You heard [witness] refuse to answer certain questions on the ground that it might violate [his/her] right not to incriminate [himself/herself].  You may, if you choose, draw an adverse inference from this refusal to answer and may take the refusal into account in assessing this witness's credibility and motives, but you are not required to draw that inference.


## Comment

(1)      This instruction is based upon United States v. Berrio-Londono, 946 F.2d 158, 160-62 (1st Cir. 1991), and United States v. Kaplan, 832 F.2d 676, 683-85 (1st Cir. 1987).  The First Circuit seems to stand alone in explicitly permitting this type of instruction.  But see United States v. Jiménez, 419 F.3d 34, 44 (1st Cir. 2005) (holding that defendant was not entitled to a missing witness instruction when the witness invoked his privilege against self-incrimination).  Other circuits seem to disagree. See, e.g., United States v. Lizza Indus., Inc., 775 F.2d 492, 496-97 & n.2 (2d Cir. 1985); United States v. Nunez, 668 F.2d 1116, 1123 (10th Cir. 1981).

(2)      It is within the discretion of the court to refuse to allow a witness to take the stand where it appears that the witness intends to claim the privilege as to essentially all questions.  United States v. Johnson, 488 F.2d 1206, 1211 (1st Cir. 1973); accord United States v. Gary, 74 F.3d 304, 311-12 (1st Cir. 1996); Kaplan, 832 F.2d at 684.

## 2.15        Definition of "Knowingly"

[Updated: 10/5/12]

The word "knowingly," as that term has been used from time to time in these instructions, means that the act was done voluntarily and intentionally and not because of mistake or accident.

### Comment

In <u>United States v. Tracy</u>, 36 F.3d 187, 194-95 (1st Cir. 1994), the First Circuit acknowledged a split of authority over how to define the term "knowingly." The Fifth and Eleventh circuits use the instruction stated above, emphasizing the voluntary and intentional nature of the act. <u>Id.</u> at 195. The Sixth, Seventh and Ninth circuits, on the other hand, embrace an instruction to the effect that "'knowingly' . . . means that the defendant realized what he was doing and was aware of the nature of his conduct, and did not act through ignorance, mistake or accident." <u>Id.</u> (quoting Seventh Circuit Instruction 6.04); <u>see also</u> Model Penal Code § 2.02(2)(b)(i).

Although the First Circuit in <u>Tracy</u> approved of the trial court's "voluntary and intentional" instruction under the circumstances of the case, it did not expressly adopt or reject either definition of "knowingly." 36 F.3d at 194-95. There may be cases when, given the evidence, the alternative instruction will be more helpful to the jury. <u>See, e.g.</u>, <u>United States v. Lizardo</u>, 445 F.3d 73, 85 (1st Cir. 2006) (in context of willful blindness instruction, court instructed jury that "[a]n act is done knowingly by a defendant if the defendant realizes what he or she is doing and does not act through ignorance, mistake, or accident.") But the term "nature" in the alternative instruction might incorrectly suggest to the jury that the actor must realize that the act was wrongful.

46

**2.16**          **"Willful Blindness" As a Way of Satisfying "Knowingly"**

[Updated: 12/15/17]

In deciding whether [defendant] acted knowingly, you may infer that [defendant] had knowledge of a fact if you find that [he/she] deliberately closed [his/her] eyes to a fact that otherwise would have been obvious to [him/her]. In order to infer knowledge, you must find that two things have been established. First, that [defendant] was aware of a high probability of [the fact in question]. Second, that [defendant] consciously and deliberately avoided learning of that fact. That is to say, [defendant] willfully made [himself/herself] blind to that fact. It is entirely up to you to determine whether [he/she] deliberately closed [his/her] eyes to the fact and, if so, what inference, if any, should be drawn. However, it is important to bear in mind that mere negligence, recklessness or mistake in failing to learn the fact is not sufficient. There must be a deliberate effort to remain ignorant of the fact.

## Comment

(1)      This instruction is drawn from the instructions approved in United States v. Gabriele, 63 F.3d 61, 66 n.6 (1st Cir. 1995), and United States v. Brandon, 17 F.3d 409, 451-52 & n.72 (1st Cir. 1994). The First Circuit quoted and approved the last seven sentences (without mention of "recklessness") in United States v. Jesús-Viera, 655 F.3d 52, 59 (1st Cir. 2011). The instruction was also approved in United States v. Denson, 689 F.3d 21 (1st Cir. 2012), where the court reiterated: "[t]he focus of [a] willful blindness instruction must be on the particular defendant and not on the hypothetical reasonable person." Id. at 24 (quoting United States v. Griffin, 524 F.3d 71, 80 (1st Cir. 2008)). Indeed, it is erroneous to use "reasonable person" language. United States v. Bray, 853 F.3d 18, 24, 30 (1st Cir. 2017) (Although not finding plain error, the court stated that an instruction that a "reasonable person in [the defendant's] shoes would certainly have known" mistakenly suggested that the jury could find the defendant guilty even if the defendant had not "consciously and deliberately avoided learning" about the violation.).

(2)      Although in United States v. Anthony, 545 F.3d 60, 66 (1st Cir. 2008), the First Circuit said that it was not error to omit reference to "recklessness," we have nevertheless added the statement that "recklessness" in failing to learn a fact is not enough because of the Supreme Court's decision in Global-Tech Appliances, Inc. v. SEB S.A., 131 S. Ct. 2060 (2011). Although Global-Tech was a patent case, it described the doctrine of willful blindness as "well established in criminal law," id. at 2068, and spoke approvingly of the circuits' approach as "giv[ing] willful blindness an appropriately limited scope that surpasses recklessness and negligence." Id. at 2070. In Denson, 689 F.3d at 24-25, the First Circuit recognized the authority of Global-Tech for a willful blindness instruction, but the issue there was not about recklessness. Following Global-Tech, the Fourth Circuit has agreed that recklessness is not sufficient. United States v. Jinwright, 683 F.3d 471, 480 (4th Cir. 2012); see also United States v. Goffer, 531 Fed. Appx. 8, 20-21 (2d Cir. 2013) (endorsing the standard that recklessness is insufficient, but finding that the jury instruction satisfied that standard without using the term "reckless").

(3)     The rule in the First Circuit is that:

> A willful blindness instruction is warranted if (1) the defendant claims lack of knowledge; (2) the evidence would support an inference that the defendant consciously engaged in a course of deliberate ignorance; and (3) the proposed instruction, as a whole, could not lead the jury to conclude that an inference of knowledge was mandatory.

Gabriele, 63 F.3d at 66 (citing Brandon, 17 F.3d at 452, and United States v. Richardson, 14 F.3d 666, 671 (1st Cir. 1994)); accord United States v. Valbrun, 877 F.3d 440, 445 (1st Cir. 2017); United States v. Figueroa-Lugo, 793 F.3d 179, 191 (1st Cir. 2015); United States v. Appolon, 695 F.3d 44, 63 (1st Cir. 2012); United States v. Mitrano, 658 F.3d 117, 123 (1st Cir. 2011); United States v. Coviello, 225 F.3d 54, 70 (1st Cir. 2000); United States v. Camuti, 78 F.3d 738, 744 (1st Cir. 1996).  "The danger of an improper willful blindness instruction is 'the possibility that the jury will be led to employ a negligence standard and convict a defendant on the impermissible ground that he should have known [an illegal act] was taking place.'"  Brandon, 17 F.3d at 453 (quoting United States v. Littlefield, 840 F.2d 143, 148 n.3 (1st Cir. 1988)).

"[T]he government is not required to prove willful blindness by direct evidence."  United States v. Valbrun, 877 F.3d 440, 446 (1st Cir. 2017).  The government "may satisfy its burden of production by adducing evidence that red flags existed that the defendant consciously avoided investigating."  Id.

(4)     The First Circuit has said that proof of intent to join a conspiracy "is not established by willful blindness."  United States v. Lizardo, 445 F.3d 73, 86 (1st Cir. 2006).

(5)     The First Circuit says that "[t]he circuits are uniform in approving willful blindness instructions for specific intent criminal offenses."  Griffin, 524 F.3d at 79 n.6.

(6)     It is not necessary that willful blindness be motivated by a desire to preempt prosecution.  Griffin, 524 F.3d at 79.

(7)     "We have never required that willful blindness instructions contain . . . a statement [that the defendant had actual knowledge]."  Griffin, 524 F.3d at 80.  The First Circuit does not require that a willful blindness instruction include an "actual belief caveat."  Anthony, 545 F.3d at 66 ("An actual belief caveat informs the jury that a showing of mistake, negligence, carelessness, or recklessness could not support a finding of willfulness and that, although knowledge may be inferred from willful blindness to the existence of a fact, the jury must find the defendant had actual knowledge.").

(8)     "[E]vidence of direct knowledge . . . does not preclude a willful blindness instruction . . . . [W]hat the 'separate and distinct' requirement means is that when the evidence presented at trial provides the jury with only a binary choice between actual knowledge and innocence, a willful blindness instruction is inappropriate. . . . 'Separate and distinct' evidence of willful blindness exists where . . . the jury could take one view of the evidence and reasonably conclude that the defendant had actual knowledge or, alternatively, reject that view of the evidence but still reasonably conclude instead that the defendant was willfully blind."  United States v. Azubike, 564 F.3d 59, 67-68 (1st Cir. 2009).  The First Circuit "has never read the phrase 'separate and

distinct' . . . to create a requirement that the set of evidence supporting an inference of willful blindness cannot be contained within a larger set of evidence that, in the alternative, could support a finding of actual knowledge, or even that the two sets cannot completely overlap." Id. at 68; see also Appolon, 695 F.3d at 64.

**2.17**          **Definition of "Willfully"**                    [Updated: 6/4/14]

To act "willfully" means to act voluntarily and intelligently and with the specific intent that the underlying crime be committed—that is to say, with bad purpose, either to disobey or disregard the law—not to act by ignorance, accident or mistake.

## Comment

(1)      The definition of "willfully" comes from United States v. Monteiro, 871 F.2d 204, 208-09 (1st Cir. 1989) (citing United States v. Pomponio, 429 U.S. 10, 11-12 (1976)).  For alternate definitions see United States v. Porter, 764 F.2d 1, 17 (1st Cir. 1985), and United States v. Drape, 668 F.2d 22, 26 (1st Cir. 1992).  Specific intent is preferred.  United States v. Yefsky, 994 F.2d 885, 899 (1st Cir. 1993).

(2)      In United States v. Sasso, 695 F.3d 25, 30 (1st Cir. 2012), the First Circuit disapproved language that "you may infer that the person acted willfully if his actions were deliberate and intentional and had the natural and probable effect of interfering with the aircraft operator" because jurors might improperly convict "regardless of whether the defendant *knew* that interference was a natural and probable effect of the action."

(3)      The First Circuit says:  "The statutory term 'willfully' is a chameleon, what the Supreme Court has called 'a word of many meanings whose construction is often dependent on the context in which it appears.'"  United States v. Marshall, 753 F.3d 341, 345 (1st Cir. 2014), citing Bryan v. United States, 524 U.S. 184, 191 (1998).  It has referred to "the Supreme Court's suggestion in Bryan (dealing with firearms sales by a vendor having no license as required) that criminal willfulness generally requires knowledge that the action charged was unlawful, albeit less specific knowledge than [financial anti-structuring law, tax evasion where awareness of the specific provision violated is required]."  Id. at *4.  It also has referred to that as the position taken by the Government in Russell, 728 F.3d 23, 30-32 (1st Cir. 2013), vacated, 134 S. Ct. 1872 (2014), now on remand to the First Circuit.  But the Circuit declined to decide whether that more stringent requirement would apply to prosecutions under 18 U.S.C. § 1701 (willfully obstructing the passage of mails).

**2.18**        **Taking a View**

[Updated: 6/14/02]


I am going to allow you to go to [insert location].  However, I instruct you that, while you are there, and on the way there and back, you are not to talk about what you see there or anything else relating to the case.  You must simply observe.  Do not do any independent exploration or experimentation while you are there.


## Comment

United States v. Gray, 199 F.3d 547, 549-50 (1st Cir. 1999), held that a view is admissible evidence, thereby overruling Clemente v. Carnicon-Puerto Rico Mgmt. Assocs., 52 F.3d 383 (1st Cir. 1995).  The instruction is based on the court's approving quotation of a phrase from a law review note, Hulen D. Wendorf, Some Views on Jury Views, 15 Baylor L. Rev. 379 (1963).  Gray suggests a number of advisable precautions in conducting a view.

**2.19**          **Character Evidence**

[Updated: 6/14/02]

[Defendant] presented evidence to show that [he/she] enjoys a reputation for honesty, truthfulness and integrity in [his/her] community.  Such evidence may indicate to you that it is improbable that a person of such character would commit the crime[s] charged, and, therefore, cause you to have a reasonable doubt as to [his/her] guilt.  You should consider any evidence of [defendant]'s good character along with all the other evidence in the case and give it such weight as you believe it deserves.  If, when considered with all the other evidence presented during this trial, the evidence of [defendant]'s good character creates a reasonable doubt in your mind as to [his/her] guilt, you should find [him/her] not guilty.

### Comment

This instruction is based upon United States v. Winter, 663 F.2d 1120, 1146-49 (1st Cir. 1981), abrogated on other grounds by Salinas v. United States, 522 U.S. 52 (1997), and United States v. Lachmann, 469 F.2d 1043, 1046 (1st Cir. 1972).  The First Circuit explicitly rejects the instruction that good character evidence "standing alone" is sufficient to acquit.  Winter, 663 F.2d at 1148.

**2.20**          **Testimony by Defendant**

[New: 1/24/06]

## Comment

(1)     There is no suggested instruction for paying special attention to testimony by the defendant. In the past, the First Circuit has cautioned about the use of such instructions.  See United States v. Dwyer, 843 F.2d 60, 63 (1st Cir. 1988); United States v. Rollins, 784 F.2d 35, 36-38 (1st Cir. 1986). But more recently, in United States v. Gonsalves, 435 F.3d 64, 72 (1st Cir. 2006), the First Circuit said that "[t]he caution is still good law in this circuit but cannot be pressed too far."  In Gonsalves, the trial court had charged:

> In this case, the defendant decided to testify. You should examine and evaluate his testimony just as you would the testimony of any witness with an interest in the outcome of the case.
>
> You should not disregard or disbelieve his testimony simply because he is charged as a defendant in the case.

Trial Tr., Jury Charge at 41, Mar. 16, 2004 (D.R.I. 03-cr-00063, Docket Item 95), cited in Gonsalves, 435 F.3d at 72 (alterations made to text of jury charge).  Recognizing that the Supreme Court "expressly approved an instruction calling attention to the testifying defendant's interest in the outcome" in Reagan v. United States, 157 U.S. 301, 305-06 (1895), the First Circuit stated: "We think the instruction was not error and decline to extend Dwyer beyond its present reach." Gonsalves, 435 F.3d at 72.

**2.21**          **Failure to Provide Evidence to Investigators**

[New: 10/14/11]


A person has no legal obligation to voluntarily provide information or things requested by investigators.  There may be reasons why such a person may decline to provide such information or things.  You should not conclude or infer that [the defendant] was guilty or predisposed to commit criminal acts because of [his/her] alleged refusal to voluntarily provide such information or things.  You may only consider the evidence presented on this issue within the context of the particular circumstances of this case.


## Comment

This instruction is based upon a trial court instruction approved in United States v. Harris, 660 F.3d 47, 52 (1st Cir. 2011), and the First Circuit's statement that "[i]t would have been clearer to mention inference of guilt as well [in the third sentence]."  Id. at 53.  In Harris, the refusal involved DNA evidence.

2.22          **Eyewitness Identification Instruction**

[Updated: 12/21/18]

Testimony by a witness as to identity must be received with caution and scrutinized with care. The government's burden of proof extends to every element of each crime charged, including the burden of proving beyond a reasonable doubt the identity of an alleged perpetrator of an offense.

You may consider the following in evaluating the accuracy of an eyewitness identification: [risks of cross-racial identification] [risks of identification under stress] [at best, weak correlation between the witness's confidence and accuracy of the identification] [the influence of suggestive identification practices].

## **Comment**

(1)      The first two sentences of this instruction were approved as "substantively correct" in United States v. Angiulo, 897 F.2d 1169, 1205 (1st Cir. 1990), and in United States v. Kavanagh, 572 F.2d 9, 12 (1st Cir. 1978) ("requested charge would have been appropriate"). They are for "cases where the evidence suggests a possible misidentification." Kavanagh, 572 F.2d at 10; Wright v. Marshall, 656 F.3d 102, 110 (1st Cir. 2011) (quoting Kavanagh, 572 F.2d at 10). They also apply to voice identifications. Wright, 656 F.3d at 111 (citing Angiulo, 897 F.2d at 1204-05). (Wright noted that there may be a lessened concern when the identifying witness had a pre-existing relationship with the defendant or was familiar with the defendant's voice.)

Recently the First Circuit approved the use of more detailed instructions on eyewitness identification testimony when there are issues of cross-racial identification, identification under stress, the relevance of witness confidence, and the use of suggestive identification practices by law enforcement. United States v. Jones, 689 F.3d 12, 19-20 (1st Cir. 2012). The court did not say when a more detailed instruction is required, and did not endorse particular language.

The Supreme Court also recently endorsed the use of jury instructions concerning the risks of eyewitness identification in the course of rejecting the argument that due process requires pretrial screening (for reliability) of eyewitness identification in the absence of improper law enforcement activity. See Perry v. New Hampshire, 565 U.S. 228 (2012) (emphasis added):

> When no improper law enforcement activity is involved, we hold, it suffices to test reliability through the rights and opportunities generally designed for that purpose, notably, the presence of counsel at postindictment lineups, vigorous cross-examination, protective rules of evidence, and *jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt.*

Perry repeated the reference to such instructions later in the opinion: "Eyewitness-specific jury instructions, which many federal and state courts have adopted, likewise warn the jury to take care in appraising identification evidence." Id. at 728-29. The Court then listed many of the pattern instructions, id. at n.7, and quoted United States v. Telfaire, 469 F.2d 552, 558-59 (D.C. Cir. 1972) (perhaps the foundational case for a cautionary instruction where unfairly suggestive identification

procedures were used; interestingly, in Telfaire Judges Bazelon and Leventhal disagreed over whether a cross-racial instruction should be given and the per curiam recommendation of a model instruction did not include it). Except for the Third Circuit, none of the federal patterns deals with cross-racial identification, the weak link between confidence and accurate identification, and the effect of stress. An amicus brief filed in Perry by the American Psychological Association states that empirical studies show that the following factors affect the accuracy of eyewitness identification: passage of time (greater memory decay early on, with the rate of decay lessening over time); witness stress; exposure duration; distance; weapon focus; and cross-race bias. Brief for American Psychological Association as Amicus Curiae Supporting Petitioner, Perry v. New Hampshire, 565 U.S. 228 (2012). Interestingly, the Utah Supreme Court has concluded that jury instructions on the risks of eyewitness identification are ineffective and that expert testimony is often more helpful. State v. Clopten, 223 P.3d 1103, 1110-11 (Utah 2009).

Neither the Supreme Court nor the First Circuit has endorsed particular language for a more detailed instruction. See Jones, 689 F.3d at 20 (referring to the instructions used, but complaining that the government had not been helpful in commenting on them and that in the future it might "argue for, and provide supporting information, in favor of different language"). (The instructions that District Judge Young used in Jones are at the end of this comment.) The First Circuit did refer, Jones, 689 F.3d at 20, to the ABA Policy on Cross-Racial Identification, which urges that "trial judges have available model jury instructions that inform juries of all of the factors that may enhance or detract from the reliability of an eyewitness identification, one of which may be the cross-racial nature of the identification." American Bar Association Policy 104D: Cross-Racial Identification, 37 Sw. U. L. Rev. 917 (2008). The underlying report to the ABA recommended the following model instruction:

> In this case, the identifying witness is of a different race than the defendant. You may consider, if you think it is appropriate to do so, whether the fact that the defendant is of a different race than the witness has affected the accuracy of the witness' original perception or the accuracy of a later identification. You should consider that in ordinary human experience, some people may have greater difficulty in accurately identifying members of a different race that they do in identifying members of their own race. You may also consider whether there are other factors present in this case which overcome any such difficulty of identification. [For example, you may conclude that the witness had sufficient contacts with members of the defendant's race that [he] [she] would not have greater difficulty in making a reliable identification.]

Id. at 921.

A Third Circuit Pattern instruction addresses some of the Jones issues:

> In addition, as you evaluate a witness' identification testimony you should consider the following questions as well as any other questions you believe are important *(include only those called for by the facts of the case)*:

*(First)*, you should ask whether the witness was able to observe and had an adequate opportunity to observe the person who committed the crime charged. Many factors affect whether a witness has had an adequate opportunity to observe the person committing the crime; the factors include the length of time during which the witness observed the person, the distance between the witness and the person, the lighting conditions, how closely the witness was paying attention to the person, whether the witness was under stress while observing the person who committed the crime, whether the witness knew the person from some prior experience, whether the witness and the person committing the crime were of different races, and any other factors you regard as important.

*(Second)*, you should ask whether the witness is positive in the identification and whether the witness' testimony remained positive and unqualified after cross-examination. If the witness' identification testimony is positive and unqualified, you should ask whether the witness' certainty is well-founded.

Third Circuit Pattern Instruction 4.15 (emphasis original). Note that part *Second* of the Third Circuit Pattern could be interpreted as inconsistent with the social science empirical evidence that shows only a weak relationship, if any, between the witness's affirmative confidence in the identification and the accuracy of the identification. According to the First Circuit, "the witness' lack of confidence is certainly a reliable warning sign, while the presence of confidence is probably closer to a neutral factor." Jones, 689 F.3d at 18.

In United States v. Jones, Judge Young instructed the jury:

You may take into account the strength of the later identification and the circumstances under which the later identification was made. . . . Was the photographic identification procedure conducted afterwards suggestive in any way. For example, an identification made when a witness chooses a photo from a group of photos tends to be more reliable than an identification made from a single photograph. It is not forbidden by the law to identify from a single photograph. But you heard the stipulation about [sic] we don't treat police officers any different, or at least there's nothing in the manuals that say treat police officers any different. And I do tell you that it's generally believed that an identification of a person made from a group of photographs tends to be more reliable than one made from a single photograph.
. . .
You may consider these other things. What was the witness's state of mind at the time of observation. There are studies that show that if a witness is afraid, distracted, under stress, then the witness's capacity to perceive what he says the perceives and remember it, that's reduced. Were the witness, the eyewitness witness and the person he's identifying, were they of different races.

57

> There are studies that tend to show that when a witness and the person he is identifying are of different races the identification tends to be less reliable than if both persons are of the same race. These studies reveal that even people with no prejudice against other races and people who have substantial contact with persons of other races will experience some difficulty in accurately identifying members of a different race. And quite often people don't recognize this difficulty in themselves.
>
> Lastly, or last on this list, you can also consider that studies show that the reliability of an identification doesn't really depend upon how positive the person is. The reliability depends on all the circumstances.
>
> Now, I make mention of studies . . . studies are of groups of people, a statistically significant group of people generally. They're not the people in this case. No study has been done or could be conducted about the people in this case. And you see that's what's left to the jury. It's up to you decide. I need you to understand the parameters, the strengths and the concerns of eyewitness testimony, but how that applies in this case is left to you under oath as jurors.

762 F. Supp. 2d 270, 278 n.5 (D. Mass. 2010).

In 2012, the New Jersey Supreme Court issued expansive new jury instructions addressing such issues as stress, duration, lighting, distance, weapon focus, cross-racial identification, and police practices. Criminal Jury Charges: Non 2C Charges, http://www.judiciary.state.nj.us/criminal/juryindx.pdf (last visited Oct. 22, 2012). These instructions were developed in the wake of the New Jersey Supreme Court's decision in State v. Henderson, 27 A.3d 872 (N.J. 2011), in which the court, following the report of a Special Master who held hearings on the empirical studies of eyewitness reliability, revised its standard for admissibility of eyewitness testimony to reflect that research.

(2)    When reviewing a state habeas corpus petition, the First Circuit stated "[w]e share the SJC's discomfort with the use of all-suspect arrays, which lack 'filler' photographs. The use of only suspects' photos in arrays necessarily increases the difficulty in assessing whether any particular selection from the array is a false or mistaken one, as would be readily apparent if "fillers" were included and one of the 'fillers' were selected. Moreover, because the presentation of the array itself may suggest that those depicted in it are more likely to have been involved in the offense than those not depicted, the fact that there are no 'fillers' to serve as checks on such false or mistaken selections is all the more troubling." Walker v. Medeiros, 911 F.3d 629, 635–36 (1st Cir. 2018).

**2.23**        **Testing Procedures and Failure to Conduct Certain Tests**

[New: 10/23/13]

<u>**Comment**</u>

(1)        In <u>United States v. Lassend</u>, 545 Fed. Appx. 3 (1st Cir. 2013), the First Circuit found no "plain error" in the following instruction:

> You have heard testimony that law enforcement conducted certain testing procedures, and you have heard the results of those tests.  You may consider that testimony as you would any other evidence, and give it such weight as you believe it may deserve under the circumstances.  Likewise, you may make reasonable inferences from the fact that certain tests were inconclusive, that certain tests were not conducted, or that certain investigative techniques were not used.  Any such inferences, however, should not be based on unfounded speculation or conjecture about what the results of such tests or techniques might have been.  There is no legal requirement that the government use any specific investigative tests or techniques or all possible tests or techniques to prove its case.

<u>United States v. Lassend</u>, 4:10-CR-40019-FDS (D. Mass), Trial Day 5 Tr. at 124-25 (ECF No. 113).

## PART 3          FINAL INSTRUCTIONS: GENERAL CONSIDERATIONS

3.01          Duty of the Jury to Find Facts and Follow Law          [Updated: 6/14/02]

3.02          Presumption of Innocence; Proof Beyond a Reasonable Doubt          [Updated: 4/8/16]

3.03          Defendant's Constitutional Right Not to Testify          [Updated: 2/10/16]

3.04          What Is Evidence; Inferences          [Updated: 8/10/07]

3.05          Kinds of Evidence: Direct and Circumstantial          [Updated: 6/14/02]

3.06          Credibility of Witnesses          [Updated: 6/14/02]

3.07          Cautionary and Limiting Instructions as to Particular Kinds of Evidence          [Updated: 6/14/02]

3.08          What Is Not Evidence          [Updated: 7/27/07]

**3.01**          **Duty of the Jury to Find Facts and Follow Law**

[Updated: 6/14/02]

It is your duty to find the facts from all the evidence admitted in this case.  To those facts you must apply the law as I give it to you.  The determination of the law is my duty as the presiding judge in this court.  It is your duty to apply the law exactly as I give it to you, whether you agree with it or not. You must not be influenced by any personal likes or dislikes, prejudices or sympathy.  That means that you must decide the case solely on the evidence before you and according to the law. You will recall that you took an oath promising to do so at the beginning of the case.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important.  You must not read into these instructions, or into anything I may have said or done, any suggestions by me as to what verdict you should return—that is a matter entirely for you to decide.

### Comment

On jury nullification see Comment (2) to Instruction 1.01.

**3.02**          **Presumption of Innocence; Proof Beyond a Reasonable Doubt**

[Updated: 4/8/16]

It is a cardinal principle of our system of justice that every person accused of a crime is presumed to be innocent unless and until his or her guilt is established beyond a reasonable doubt.  The presumption is not a mere formality.  It is a matter of the most important substance.

The presumption of innocence alone may be sufficient to raise a reasonable doubt and to require the acquittal of a defendant.  The defendant before you, [_____], has the benefit of that presumption throughout the trial, and you are not to convict [him/her] of a particular charge unless you are persuaded of [his/her] guilt of that charge beyond a reasonable doubt.

The presumption of innocence until proven guilty means that the burden of proof is always on the government to satisfy you that [defendant] is guilty of the crime with which [he/she] is charged beyond a reasonable doubt.  It is a heavy burden, but the law does not require that the government prove guilt beyond all possible doubt; proof beyond a reasonable doubt is sufficient to convict.  This burden never shifts to [defendant].  It is always the government's burden to prove each of the elements of the crime[s] charged beyond a reasonable doubt by the evidence and the reasonable inferences to be drawn from that evidence.  [Defendant] has the right to rely upon the failure or inability of the government to establish beyond a reasonable doubt any essential element of a crime charged against [him/her].

If, after fair and impartial consideration of all the evidence, you have a reasonable doubt as to [defendant]'s guilt of a particular crime, it is your duty to find [him/her] not guilty of that crime.  On the other hand, if, after fair and impartial consideration of all the evidence, you are satisfied beyond a reasonable doubt of [defendant]'s guilt of a particular crime, you should find [him/her] guilty of that crime.

## **Comment**

(1)     United States v. Jones, 674 F.3d 88, 93 (1st Cir. 2012), said that use of this pattern reasonable doubt language "was not error at all."  But Jones also described it as "laconic" and said that "more defendant-friendly language is often added (such as . . . 'heavy burden' . . .) or by instead beginning the definition with an 'unless' formulation rather than an 'if' . . . ."  Id. at 94 (citation omitted).  As a result we have added the "heavy burden" language in the third paragraph. For those who want to use "unless," the following might serve as a substitute for the fourth paragraph:

> Unless, after fair and impartial consideration of all the evidence, you are persuaded beyond a reasonable doubt of [defendant]'s guilt of a particular crime, it is your duty to find [him/her] not guilty of that crime.  But if, after fair and impartial consideration of all the evidence, you are persuaded beyond a reasonable doubt of [defendant]'s guilt of a particular crime, you should find [him/her] guilty of that crime.

(2)     "We have previously explained that reasonable doubt is difficult to define and that a court need not define reasonable doubt for a jury. . . . We have, in the past, warned against attempts to define reasonable doubt noting that such attempts often result in further obfuscation of the concept. . . . We emphasize that courts must exercise the utmost care when instructing a jury as to reasonable doubt.  In that vein, we note that there is value in consulting the First Circuit [Criminal] Pattern Jury Instruction, § 3.02, and in using it for the guidance it is intended to provide." United States v. Van Anh, 523 F.3d 43, 58-59 (1st Cir. 2008) (internal quotation and citations omitted). "Reasonable doubt is a fundamental concept that does not easily lend itself to refinement or definition."  United States v. Vavlitis, 9 F.3d 206, 212 (1st Cir. 1993); see also United States v. Cassiere, 4 F.3d 1006, 1024 (1st Cir. 1993) ("[A]n instruction which uses the words reasonable doubt without further definition adequately apprises the jury of the proper burden of proof." (quoting United States v. Olmstead, 832 F.2d 642, 646 (1st Cir. 1987)); United States v. Campbell, 874 F.2d 838, 843 (1st Cir. 1989); accord United States v. Taylor, 997 F.2d 1551, 1558 (D.C. Cir. 1993) ("[T]he greatest wisdom may lie with the Fourth Circuit's and Seventh Circuit's instruction to leave to juries the task of deliberating the meaning of reasonable doubt.").  The constitutionality of this practice was reaffirmed by the Supreme Court in Victor v. Nebraska, 511 U.S. 1, 5-6 (1994). It is not reversible error to refuse further explanation, even when requested by the jury, so long as the reasonable doubt standard was "not 'buried as an aside' in the judge's charge."  United States v. Littlefield, 840 F.2d 143, 146 (1st Cir. 1988) (quoting Olmstead, 832 F.2d at 646).  "Our decisions hold that 'reasonable doubt does not require definition.' . . . Rather, '[t]he term reasonable doubt itself has a self-evident meaning comprehensible to the lay juror,' and '[m]ost efforts at clarification result in further obfuscation of the concept.'"  United States v. Fields, 660 F.3d 95, 97 (1st Cir. 2011) (citations omitted).

(3)     This instruction does not use a "'guilt or innocence' comparison" warned against by the First Circuit.  United States v. DeLuca, 137 F.3d 24, 37 (1st Cir. 1998); United States v. Andujar, 49 F.3d 16, 24 (1st Cir. 1995).  A "guilt and non-guilt" comparison is "less troublesome," but still "could  risk undercutting the government's burden by suggesting that the defendant is guilty if they do not think he is not guilty."  United States v. Ranney, 298 F.3d 74, 79-80 (1st Cir. 2002). Accord United States v. Georgiadis, 819 F.3d 4, 16-17 (1st Cir. 2016); United States v. O'Shea, 426 F.3d 475, 483 (1st Cir. 2005).

(4)     Those judges who nevertheless undertake to define the term "reasonable doubt" should consider the following.  Some circuits have defined reasonable doubt as that which would cause a juror to "hesitate to act in the most important of one's own affairs."  Federal Judicial Center, Commentary to Instruction 21.  The First Circuit has criticized this formulation, see Gilday v. Callahan, 59 F.3d 257, 264 (1st Cir. 1995); Vavlitis, 9 F.3d at 212; Campbell, 874 F.2d at 841, as has the Federal Judicial Center.  See Federal Judicial Center, Commentary to Instruction 21 ("[D]ecisions we make in the most important affairs of our lives—choosing a spouse, a job, a place to live, and the like—generally involve a very heavy element of uncertainty and risk-taking. They are wholly unlike decisions jurors ought to make in criminal cases.").  The First Circuit has also criticized "[e]quating the concept of reasonable doubt to 'moral certainty,'" Gilday, 59 F.3d at 262, or "fair doubt," Campbell, 874 F.2d at 843, stating that "[m]ost efforts at clarification result in further obfuscation of the concept."  Campbell, 874 F.2d at 843.  The Federal Judicial Center has attempted to clarify the meaning of reasonable doubt by the following language:

> If, based on your consideration of the evidence, you are *firmly convinced* that the defendant is guilty of the crime charged, you must find him guilty.  If on the other hand, you think there is a *real possibility* that he is not guilty, you must give him the benefit of the doubt and find him not guilty.

Federal Judicial Center Instruction 21 (emphasis added).  Previously, the First Circuit joined other circuits in criticizing this pattern instruction for "possibly engender[ing] some confusion as to the burden of proof" if used without other clarifying language.  United States v. Gibson, 726 F.2d 869, 874 (1st Cir. 1984); see also United States v. Woodward, 149 F.3d 46, 69 n.15 (1st Cir. 1998); United States v. Porter, 821 F.2d 968, 973 (4th Cir. 1987) (instruction introduces "unnecessary concepts"); United States v. McBride, 786 F.2d 45, 52 (2d Cir. 1986).  But later, it approved it. United States v. Rodriguez, 162 F.3d 135, 146 (1st Cir. 1998); accord Taylor, 997 F.3d at 1556-57.  Nevertheless, the words "'reasonable doubt' do not lend themselves to accurate definition," and "any attempt to define 'reasonable doubt' will probably trigger a constitutional challenge." Gibson, 726 F.2d at 874.

(5)     The First Circuit has approved the following formulation by Judge Keeton:

> As I have said, the burden is upon the Government to prove beyond a reasonable doubt that a defendant is guilty of the charge made against the defendant.  It is a strict and heavy burden, but it does not mean that a defendant's guilt must be proved beyond all possible doubt.  It does require that the evidence exclude any reasonable doubt concerning a defendant's guilt.

> A reasonable doubt may arise not only from the evidence produced but also from a lack of evidence.  Reasonable doubt exists when, after weighing and considering all the evidence, using reason and common sense, jurors cannot say that they have a settled conviction of the truth of the charge.

> Of course, a defendant is never to be convicted on suspicion or conjecture.  If, for example, you view the evidence in the case as reasonably permitting either of two conclusions—one that a defendant is guilty as charged, the other that the defendant is not guilty—you will find the defendant not guilty.

> It is not sufficient for the Government to establish a probability, though a strong one, that a fact charged is more likely to be true than not true.  That is not enough to meet the burden of proof beyond reasonable doubt.  On the other hand, there are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt.

> Concluding my instructions on the burden, then, I instruct you that what the Government must do to meet its heavy burden is to establish the truth

of each part of each offense charged by proof that convinces you and leaves you with no reasonable doubt, and thus satisfies you that you can, consistently with your oath as jurors, base your verdict upon it.  If you so find as to a particular charge against a defendant, you will return a verdict of guilty on that charge.  If, on the other hand, you think there is a reasonable doubt about whether the defendant is guilty of a particular offense, you must give the defendant the benefit of the doubt and find the defendant not guilty of that offense.

United States v. Cleveland, 106 F.3d 1056, 1062-63 (1st Cir. 1997), aff'd sub nom. Muscarello v. United States, 524 U.S. 125 (1998).  The First Circuit found no reversible error in telling the jury:  "The jury must never find the defendant guilty on mere suspicion, conjecture or guess," while otherwise refusing to define reasonable doubt.  United States v. Burnette, 375 F.3d 10, 20-21 (1st Cir. 2004), vacated on other grounds, 543 U.S. 1181 (2005); see also United States v. Wallace, 461 F.3d 15, 30 (1st Cir. 2006) (no reversible error, considering the charge as a whole, in stating: "You know what 'reasonable' means and you know what 'a doubt' means.  Therefore it is up to you to decide whether the Government has proved the defendant guilty beyond a reasonable doubt.").  When a jury asked the trial court "[c]an suspicion, with lack of evidence, regarding or toward any person other than the accused in the case be used to formulate reasonable doubt?" the First Circuit held the following instruction was correct as a matter of law:  "The verdict must be based on the evidence and the reasonable inferences to be drawn from the evidence.  However, you should never speculate."  United States v. Silva, 554 F.3d 13, 20-21 (1st Cir. 2009).

(6)  The jury may not be instructed that it has a power to nullify.  Instead, the First Circuit has held "explicitly . . . that a district court may instruct a jury that it has a duty to return a guilty verdict if convinced beyond a reasonable doubt of a defendant's guilt on a particular charge."  United States v. Appolon, 695 F.3d 44, 65 (1st Cir. 2012).

**3.03**        **Defendant's Constitutional Right Not to Testify**

[Updated: 2/10/16]

[Defendant] has a constitutional right not to testify and no inference of guilt, or of anything else, may be drawn from the fact that [defendant] did not testify.  For any of you to draw such an inference would be wrong; indeed, it would be a violation of your oath as a juror.

## Comment

(1)      An instruction like this must be given if it is requested.  Carter v. Kentucky, 450 U.S. 288, 299-303 (1981); Bruno v. United States, 308 U.S. 287, 293-94 (1939); see also United States v. Medina-Martinez, 396 F.3d 1, 9 (1st Cir. 2005); United States v. Ladd, 877 F.2d 1083, 1089 (1st Cir. 1989) ("We do not, however, read Carter as requiring any exact wording for such an instruction.").  It must contain the statement that no adverse inference may be drawn from the fact that the defendant did not testify, or that it cannot be considered in arriving at a verdict.  United States v. Brand, 80 F.3d 560, 567 (1st Cir. 1996).  It is not reversible error to give the instruction even over the defendant's objection.  Lakeside v. Oregon, 435 U.S. 333, 340-41 (1978).  However, "[i]t may be wise for a trial judge not to give such a cautionary instruction over a defendant's objection." Id. at 340.

(2)      If there is evidence of the defendant's silence during non-custodial questioning, an additional clarifying instruction may be in order.  In Salinas v. Texas, 570 U.S. ___, 2013 WL 2922119 (June 17, 2013), a divided Supreme Court held that the government's introduction at trial of evidence of a defendant's silence in response to earlier noncustodial police questioning does not violate the Fifth Amendment.  Three Justices concluded that the defendant's Fifth Amendment claim failed because he did not expressly invoke the privilege in response to the officer's questioning, see id. at *3 (opinion of Alito, J.), while two other Justices concluded that a Fifth Amendment claim would fail in any event because the prosecutor's comment regarding the defendant's silence did not "compel" him to give self-incriminating testimony, see id. at *9 (Thomas, J., concurring).  See also United States v. Zarauskas, 814 F.3d 509, 516 n.7 (1st Cir. 2016) (Court held that prosecutor's comments on the defendant's pre-custodial silence did not violate the defendant's Fifth Amendment rights after the trial judge reiterated the general instruction that the defendant has a constitutional right not to testify.  The court noted, however, that "[i]t would have been preferable for the curative instruction to direct the jury to disregard the references to [the defendant's] silence, and to remind jurors that [the defendant] was under no obligation to say (or not say) anything at the . . . [i]nterview, but ultimately [the defendant] never requested these instructions, nor objected to their omission.").

**3.04**          **What Is Evidence; Inferences**

[Updated: 8/10/07]

The evidence from which you are to decide what the facts are consists of sworn testimony of witnesses, both on direct and cross-examination, regardless of who called the witness; the exhibits that have been received into evidence; and any facts to which the lawyers have agreed or stipulated. A stipulation means simply that the government and [defendant] accept the truth of a particular proposition or fact. Since there is no disagreement, there is no need for evidence apart from the stipulation. You must accept the stipulation as fact to be given whatever weight you choose.

Although you may consider only the evidence presented in the case, you are not limited in considering that evidence to the bald statements made by the witnesses or contained in the documents. In other words, you are not limited solely to what you see and hear as the witnesses testify. You are permitted to draw from facts that you find to have been proven such reasonable inferences as you believe are justified in the light of common sense and personal experience.

## <u>Comment</u>

> Technically, the court erred by first presenting the subject matter of the stipulation to the jury in its jury instructions, after the close of evidence. Ordinarily, unless there is a contrary agreement between the parties, district courts should ensure that a stipulation, or the content thereof, is presented to the jurors prior to the close of evidence. This presentation may take various forms: the stipulation itself could be entered into evidence, the court could read the stipulation into evidence, or the parties could agree that one of them will publish the stipulation to the jury. The presentation will often include an explanation by the court that the stipulation means that the government and the defendant accept the truth of a particular proposition of fact, and, hence, there is no need for evidence apart from the stipulation itself.

<u>United States v. Pratt</u>, 496 F.3d 124, 127 (1st Cir. 2007), <u>vacated on other grounds</u>, 129 S. Ct. 991 (2009).

**3.05**          **Kinds of Evidence: Direct and Circumstantial**

[Updated: 6/14/02]

There are two kinds of evidence: direct and circumstantial.  Direct evidence is direct proof of a fact, such as testimony of an eyewitness that the witness saw something.  Circumstantial evidence is indirect evidence, that is proof of a fact or facts from which you could draw the inference, by reason and common sense, that another fact exists, even though it has not been proven directly.  You are entitled to consider both kinds of evidence.  The law permits you to give equal weight to both, but it is for you to decide how much weight to give to any evidence.

## **Comment**

See Ninth Circuit Instruction 1.5.

**3.06**     **Credibility of Witnesses**

[Updated: 6/14/02]

Whether the government has sustained its burden of proof does not depend upon the number of witnesses it has called or upon the number of exhibits it has offered, but instead upon the nature and quality of the evidence presented.  You do not have to accept the testimony of any witness if you find the witness not credible.  You must decide which witnesses to believe and which facts are true.  To do this, you must look at all the evidence, drawing upon your common sense and personal experience.

You may want to take into consideration such factors as the witnesses' conduct and demeanor while testifying; their apparent fairness or any bias they may have displayed; any interest you may discern that they may have in the outcome of the case; any prejudice they may have shown; their opportunities for seeing and knowing the things about which they have testified; the reasonableness or unreasonableness of the events that they have related to you in their testimony; and any other facts or circumstances disclosed by the evidence that tend to corroborate or contradict their versions of the events.

**3.07**         **Cautionary and Limiting Instructions as to Particular Kinds of Evidence**

[Updated: 6/14/02]


A particular item of evidence is sometimes received for a limited purpose only.  That is, it can be used by you only for one particular purpose, and not for any other purpose.  I have told you when that occurred, and instructed you on the purposes for which the item can and cannot be used.


## **Comment**

(1)      <u>See</u> Eighth Circuit Instruction 1.03.

(2)      Cautionary and limiting instructions as to particular kinds of evidence have been collected in Part 2 for easy reference.  They may be used during the trial or in the final instructions or in both places.

**3.08**      **What Is Not Evidence**

[Updated: 7/27/07]

Certain things are not evidence.  I will list them for you:

1.      Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them from the evidence differ from the way the lawyers have stated them, your memory of them controls.

2.      Questions and objections by lawyers are not evidence.  Lawyers have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by my ruling on it.

3.      Anything that I have excluded from evidence or ordered stricken and instructed you to disregard is not evidence.  You must not consider such items.

4.      Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at trial.

5.      The indictment is not evidence.  This case, like most criminal cases, began with an indictment.  You will have that indictment before you in the course of your deliberations in the jury room.  That indictment was returned by a grand jury, which heard only the government's side of the case.  I caution you, as I have before, that the fact that [defendant] has had an indictment filed against [him/her] is no evidence whatsoever of [his/her] guilt.  The indictment is simply an accusation.  It is the means by which the allegations and charges of the government are brought before this court. The indictment proves nothing.

## <u>Comment</u>

(1)      A "statement [in a jury instruction] that a 'larger jury' had found probable cause, if considered in isolation, could mislead a petit jury into according significance to the grand jury's action."  <u>United States v. McFarlane</u>, 491 F.3d 53, 60 (1st Cir. 2007).

(2)      "[W]e note that judges should be scrupulous in avoiding any possibility of inference that allegations in the indictment be treated as facts."  <u>United States v. Martínez-Vives</u>, 475 F.3d 48, 52 n.3 (1st Cir. 2007).

**PART 4        FINAL INSTRUCTIONS: ELEMENTS OF SPECIFIC CRIMES
                [Organized by Statutory Citation]**

**A.        Offenses Under Title 8**

4.08.1325        Immigration Through Fraudulent Marriage, 8 U.S.C. § 1325(c)        [Updated: 10/5/12]

4.08.1326        Re-entry and Attempted Re-entry After Deportation,        [Updated: 6/24/15]
                 8 U.S.C. § 1326

**B.        Offenses Under Title 16**

4.16.3372        Receiving Fish, Wildlife, Plants Illegally Taken (Lacey Act)        [Updated: 6/14/02]
                 16 U.S.C. §§ 3372(a)(2)(A), 3373(d)(1)(B), (2)

**C.        Offenses Under Title 18**

4.18.00        Attempt        [Updated: 10/5/12]

4.18.02(a)        Aid and Abet, 18 U.S.C. § 2        [Updated: 6/26/18]

4.18.02(b)        Causing an Act to be Done Through Another        [Updated: 4/13/16]

4.18.03        Accessory After the Fact, 18 U.S.C. § 3        [Updated: 10/5/12]

4.18.152(1)        Bankruptcy Fraud, Concealment, 18 U.S.C. § 152(1)        [Updated: 6/14/02]

4.18.152(2),(3)        Bankruptcy Fraud, False Oath/Account and False Declaration,        
                 18 U.S.C. § 152(2), 152(3)        [Updated: 9/20/12]

4.18.152(4)        Bankruptcy Fraud, False Claim, 18 U.S.C. § 152(4)        [Updated: 6/14/02]

4.18.152(5)        Bankruptcy Fraud, Receipt with Intent to Defraud,        
                 18 U.S.C. § 152(5)        [Updated: 6/14/02]

4.18.152(6)        Bankruptcy Fraud, Bribery and Extortion, 18 U.S.C. § 152(6)        [Updated: 6/14/02]

4.18.152(7)        Bankruptcy Fraud, Transfer of Property in Personal Capacity        
                 or as Agent or Officer, 18 U.S.C. § 152(7)        [Updated: 6/14/02]

4.18.152(8)        Bankruptcy Fraud, False Entries, 18 U.S.C. § 152(8)        [Updated: 6/14/02]

4.18.152(9)        Bankruptcy Fraud, Withholding Recorded Information,        
                 18 U.S.C. § 152(9)        [Updated: 6/14/02]

| | | |
|---|---|---|
| 4.18.157 | Bankruptcy Fraud, Scheme or Artifice to Defraud, 18 U.S.C. § 157 | [New: 10/24/18 |
| 4.18.228(a)(1), (3) | Willful Failure to Pay Child Support, 18 U.S.C. § 228(a)(1), (3) | [Updated: 10/5/12] |
| 4.18.371(1) | Conspiracy, 18 U.S.C. § 371; 21 U.S.C. § 846 | [Updated: 5/9/18] |
| 4.18.371(2) | <u>Pinkerton</u> Charge | [Updated: 10/5/12] |
| 4.18.371(3) | Conspiracy to Defraud, 18 U.S.C. § 371 | [Updated: 5/12/16] |
| 4.18.472 | Possession of Counterfeit Currency, 18 U.S.C. § 472 | [Updated: 2/5/14] |
| 4.18.641 | Theft of Government Money or Property, 18 U.S.C. § 641 | [Updated: 7/24/12] |
| 4.18.656 | Misapplication or Embezzlement of Bank Funds, 18 U.S.C. § 656 | [Updated: 12/5/03] |
| 4.18.751 | Escape from Custody, 18 U.S.C. § 751 | [Updated: 10/5/12] |
| 4.18.752 | Assisting Escape, 18 U.S.C. § 752 | [Updated: 6/14/02] |
| 4.18.875 | Interstate Communications—Threats, 18 U.S.C. § 875(c) | [Updated: 6/1/15] |
| 4.18.922(a) | False Statement in Connection With Acquisition of a Firearm, 18 U.S.C. § 922(a) | [Updated: 6/16/14] |
| 4.18.922(g) | Possession of a Firearm or Ammunition in or Affecting Commerce by a Convicted Felon, 18 U.S.C. § 922(g)(1), (4) | [Updated: 6/21/19] |
| 4.18.922(g)(9) | Possession of a Firearm By a Person Previously Convicted of a Misdemeanor Crime of Domestic Violence, 18 U.S.C. § 922(g)(9) | [New: 12/14/17] |
| 4.18.922(j) | Possession of a Stolen Firearm, 18 U.S.C. § 922(g)(9) | [New: 6/21/19] |
| 4.18.922(k) | Possession of a Firearm With an Obliterated or Removed Serial Number, 18 U.S.C. § 922(k) | [Updated: 10/5/12] |
| 4.18.922(o) | Possession of Machinegun, 18 U.S.C. § 922(o) | [Updated: 7/20/10] |
| 4.18.924 | Using or Carrying a Firearm During and in Relation to Drug Trafficking or Crime of Violence, 18 U.S.C. § 924(c) | [Updated: 3/28/14] |
| 4.18.982 | Money Laundering—Forfeiture, 18 U.S.C. § 982(a)(1) | [Updated: 10/5/12] |
| 4.18.1001 | Making a False Statement to a Federal Agency, 18 U.S.C. § 1001 | [Updated: 4/21/14] |

4.18.1014    Making a False Statement or Report, 18 U.S.C. § 1014                [Updated: 8/15/18]

4.18.1028A   Aggravated Identity Theft                                           [Updated: 6/24/19]

4.18.1029    Access Device or Credit Card Fraud, 18 U.S.C. § 1029(a)(2)         [Updated: 4/15/11]

4.18.1035    False Statements re Health Care Matters, 18 U.S.C. § 1035          [New: 4/21/14]

4.18.1072    Harboring or Concealing an Escaped Prisoner, 18 U.S.C. § 1072      [Updated: 6/14/02]

4.18.1341    Mail Fraud, 18 U.S.C. § 1341                                       [Updated: 5/5/17]

4.18.1343    Wire Fraud, 18 U.S.C. § 1343                                       [Updated: 12/14/18]

4.18.1344    Bank Fraud, 18 U.S.C. § 1344(1), (2)                               [Updated: 2/14/18]

4.18.1346    Honest Services Fraud, 18 U.S.C. § 1346                            [Updated: 8/21/13]

4.18.1347    Health Care Fraud, 18 U.S.C. § 1347                                [Updated: 6/10/15]

4.18.1349    Conspiracy, 18 U.S.C. § 1349                                       [Updated: 6/10/15]

4.18.1462    Use of Interactive Computer Service for Obscene Matters,
             18 U.S.C. § 1462                                                   [New: 9/3/04]

4.18.1470    Transfer of Obscene Materials to Minors, 18 U.S.C. § 1470          [New: 9/3/04]

4.18.1512(a)(1)(C)  Witness Tampering—Killing or Attempted Killing to Prevent
             Communication with Federal Law Enforcement,
             18 U.S.C. § 1512(a)(1)(C)                                          [New: 6/3/15]

4.18.1512(b)(1)  Witness Tampering—Knowingly Corruptly Persuading Another
             Person with the Intent to Influence, Delay or Prevent the Testimony
             of Any Person in an Official Proceeding, 18 U.S.C. § 1512(b)(1)    [Updated: 2/14/18]

4.18.1542    False Statement in Application for United States Passport,
             18 U.S.C. § 1542                                                   [New: 10/30/07]

4.18.1546    False Statement in Document Required by Immigration Law,
             18 U.S.C. § 1546(a)                                                [Updated: 10/22/08]

4.18.1623    False Declaration in Grand Jury Testimony, 18 U.S.C. § 1623        [Updated: 8/25/06]

4.18.1832    Theft of Trade Secrets (Economic Espionage Act),
             18 U.S.C. § 1832                                                   [Updated: 6/14/02]

| 4.18.1951 | Interference with Commerce by Robbery or Extortion (Hobbs Act), 18 U.S.C. § 1951 | [Updated: 6/24/19] |
|---|---|---|
| 4.18.1952 | Travel Act, 18 U.S.C. § 1952 | [Updated: 10/14/05] |
| 4.18.1956(a)(1)(A) | Money Laundering—Promotion of Illegal Activity or Tax Evasion, 18 U.S.C. § 1956(a)(1)(A) | [Updated: 4/1/15] |
| 4.18.1956(a)(1)(B)(i) | Money Laundering—Illegal Concealment, 18 U.S.C. § 1956(a)(1)(B)(i) | [Updated:4/1/15] |
| 4.18.1956(a)(1)(B)(ii) | Money Laundering—Illegal Structuring, 18 U.S.C. § 1956(a)(1)(B)(ii) | [Updated: 4/1/15] |
| 4.18.1956(h) | Conspiracy to Commit Money Laundering | [Updated: 8/26/09] |
| 4.18.1957 | Money Laundering—Engaging in Monetary Transactions in Property Derived from Specific Unlawful Activity, 18 U.S.C. § 1957 | [Updated: 3/6/17] |
| 4.18.2113(a) | Unarmed Bank Robbery, 18 U.S.C. § 2113(a),(e) | [Updated: 8/2/17] |
| 4.18.2113(a), (d) | Armed or Aggravated Bank Robbery, 18 U.S.C. § 2113(a),(d),(e) | [Updated: 8/2/17] |
| 4.18.2119 | Carjacking, 18 U.S.C. § 2119 | [Updated: 9/17/12] |
| 4.18.2251(a) | Sexual Exploitation of Children, 18 U.S.C. § 2251(a) | [New: 6/17/16] |
| 4.18.2252 | Possession of Child Pornography, 18 U.S.C. § 2252A(a)(5)(B) | [Updated: 7/17/15] |
| 4.18.2261A | Interstate Stalking, 18 U.S.C. § 2261A | [Updated: 10/24/18] |
| 4.18.2314 | Interstate Transportation of Stolen Money or Property, 18 U.S.C. § 2314 | [Updated: 6/14/02] |
| 4.18.2422(b) | Coercion and Enticement, 18 U.S.C. § 2422(b) | [Updated: 2/1/19] |

## D.    Offenses Under Title 21

| 4.21.841(a)(1)A | Possession with Intent to Distribute a Controlled Substance, 21 U.S.C. § 841(a)(1) | [Updated: 1/13/17] |
|---|---|---|
| 4.21.841(a)(1)B | Distribution of a Controlled Substance, 21 U.S.C. § 841(a)(1) | [Updated: 8/27/15] |
| 4.21.841(a)(1)C | Manufacture of a Controlled Substance, 21 U.S.C. §§ 841(a)(1), 802(15) | [Updated: 8/27/15] |
| 4.21.843(b) | Use of a Communication Facility to Commit a Controlled Substance Felony, 21 U.S.C. § 843(b) | [New: 8/29/12] |

| 4.21.844 | Possession of a Controlled Substance, 21 U.S.C. § 844 | [New:  10/23/06] |
|---|---|---|
| 4.21.846 | Conspiracy, 21 U.S.C. § 846 | [Updated: 12/22/14] |
| 4.21.853 | Drugs-Forfeiture, 21 U.S.C. § 853 | [Updated: 10/5/12] |
| 4.21.952 | Importation of a Controlled Substance, 21 U.S.C.  §§ 952, 960 | [Updated: 3/26/08] |
| 4.21.963 | Conspiracy, 21 U.S.C. § 963 | [New: 2/20/07] |

## E.  <u>Offenses Under Title 26</u>

| 4.26.5861(d) | Possession of an Unregistered Firearm, 26 U.S.C. § 5861(d) | [Updated: 1/25/19] |
|---|---|---|
| 4.26.7201 | Income Tax Evasion, 26 U.S.C. § 7201 | [Updated: 3/25/15] |
| 4.26.7203 | Failure to File a Tax Return, 26 U.S.C. § 7203 | [Updated: 3/3/08] |
| 4.26.7206 | False Statements on Income Tax Return, 26 U.S.C. § 7206(1) | [Updated: 4/18/08] |
| 4.26.7212 [1] | Attempts to Interfere with Administration of Internal Revenue Laws, 26 U.S.C. § 7212(a)—Intimidation | [New: 3/21/18] |
| 4.26.7212 [2] | Attempts to Interfere with Administration of Internal Revenue Laws, 26 U.S.C. § 7212(a)—Obstruction Under the Omnibus Clause | [New: 3/21/18] |

## F.  <u>Offenses Under Title 31</u>

| 4.31.5322 | Money Laundering—Illegal Structuring, 31 U.S.C. §§ 5322, 5324 | [Updated: 10/5/12] |
|---|---|---|

## G.  <u>Offenses Under Title 42</u>

| 4.42.408(a)(7)(B) | Social Security Fraud | [Updated: 7/2/18] |
|---|---|---|

## H.  <u>Offenses Under Title 46</u>

| 4.46.70503 | Possessing a Controlled Substance on Board a Vessel Subject to United States Jurisdiction with Intent to Distribute, 46 U.S.C. § 70503 (previously 46 U.S.C. App. § 1903) | [Updated: 12/1/10] |
|---|---|---|

**4.08.1325**             **Immigration Through Fraudulent Marriage, 8 U.S.C. § 1325(c)**

[Updated: 10/5/12]

[Defendant] is charged with knowingly entering into marriage for the purpose of evading the immigration laws.  It is against federal law to engage in such conduct.  For you to find [defendant] guilty of this crime, you must be convinced that the government has proven each of these things beyond a reasonable doubt:

> First, that [defendant] knowingly married a United States citizen; and

> Second, that [he/she] knowingly entered into the marriage for the purpose of evading a provision of the United States immigration laws.

The word "knowingly" means that the act was done voluntarily and intentionally and not because of mistake or accident.

To evade a provision of law means to escape complying with the law by means of trickery or deceit.

## Comment

(1)      The validity of the marriage is immaterial.  Lutwak v. United States, 344 U.S. 604, 611 (1953).

(2)      The First Circuit has not decided whether the government must prove that the couple did not intend to establish a life together, or only that the defendant entered the marriage for the purpose of evading immigration laws.  United States v. Karim, 280 F. App'x 4, 6 (1st Cir. 2008).  The Seventh and Eighth Circuits require only the lesser showing.  United States v. Yang, 603 F.3d 1024, 1026 (8th Cir. 2010); United States v. Darif, 446 F.3d 701, 710 (7th Cir. 2006).

**4.08.1326**          **Re-entry and Attempted Re-entry After Deportation,
                       8 U.S.C. § 1326**

[Updated: 6/24/15]

[Defendant] is charged with [re-entering; attempting to re-enter] the United States after being deported.  It is unlawful to engage in such conduct.  For you to find [defendant] guilty of this offense, you must be convinced that the government has proven each of the following things beyond a reasonable doubt:

> First, that [defendant] was an alien at the time of the alleged offense;

> Second, that [defendant] had previously been deported;

> Third, that [defendant] [re-entered; was found in; attempted to re-enter] the United States; and

> Fourth, that [defendant] had not received the express consent of the Attorney General of the United States to apply for re-admission to the United States since the time of [his/her] previous arrest and deportation.

An "alien" is someone who is neither a citizen nor a national of the United States.  A national is someone who is a citizen of the United States or someone who, although not a citizen, owes permanent allegiance to the United States.

"Re-enter" means to be physically present in the United States and free from official restraint.

## Comment

(1)      The First Circuit has stated that the second element of the offense includes proving that the defendant had previously been *arrested* in addition to deported.  United States v. Cabral, 252 F.3d 520, 522 (1st Cir. 2001).  That seems incorrect: a 1996 amendment eliminated the statute's reference to arrest.

(2)      "[T]he lawfulness of deportation simply is not an element of the offense."  United States v. Earle, 488 F.3d 537, 547 (1st Cir. 2007).

(3)      Specific intent to reenter the United States is not an element of the completed reentry offense.  United States v. Soto, 106 F.3d 1040, 1041 (1st Cir. 1997).  Although the First Circuit initially seemed skeptical that specific intent is an element of the *attempted* reentry offense, see Cabral, 252 F.3d at 523-24, it has recently explicitly stated that attempt "is a specific intent crime in the sense that an 'attempt to enter' requires a subjective intent on the part of the defendant to achieve entry into the United States as well as a substantial step toward completing that entry."  United States v. DeLeon, 270 F.3d 90, 92 (1st Cir. 2001).  Other circuits are divided.  See United States v. Gracidas-Ulibarry, 231 F.3d 1188, 1196 (9th Cir. 2000), for possible instruction language for attempt.  "[T]here is no requirement that the defendant additionally know that what he proposes

78

to do—*i.e.*, attempt to enter the United States—is for him criminal conduct." DeLeon, 270 F.3d at 92.

(4)     Section 1326(b) provides greater penalties for re-entry by certain aliens, including those previously convicted of certain offenses.  The fact of the prior conviction is not an element of the offense, but rather a sentencing factor.  Almendarez-Torres v. United States, 523 U.S. 224, 235 (1998); accord United States v. Jiménez-Banegas, 790 F.3d 253, 257-58 (1st Cir. 2015) (affirming that Almendarez-Torres is still binding authority); United States v. Johnstone, 251 F.3d 281, 286 n.6 (1st Cir. 2001) (doubting that the logic of Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), applies to section 1326(b) because Apprendi carved out an exception for "the fact of a prior conviction," but not deciding the issue); United States v. Latorre-Benavides, 241 F.3d 262, 264 (2d Cir. 2001) (holding that Apprendi did not overrule Almendarez-Torres);  United States v. Pacheco-Zepeda, 234 F.3d 411, 414-15 & n.4 (9th Cir. 2000) (same but noting that "[i]f the views of the Supreme Court's individual Justices and the composition of the Court remain the same, Almendarez-Torres may eventually be overruled").

(5)     In addition to proscribing re-entry and attempted re-entry by aliens after they have been deported, the statute also proscribes re-entry and attempted re-entry by aliens after they have been denied admission, excluded, or removed from the United States, and after they have "departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter." The relevant occurrence can be substituted for deportation in the instruction.

(6)     The definition of "re-enter" comes from Gracidas-Ulibarry, 231 F.3d at 1191 n.3.  The definition of  "alien" comes from 8 U.S.C. § 1101(a)(3) (1999), and the definition of "national" comes from 8 U.S.C. § 1101(a)(22)(B) (1999).

(7)     The Immigration and Naturalization Service can grant consent to apply for re-admission in the Attorney General's place.  That can be explained to the jury in appropriate cases.  United States v. Ramirez-Cortez, 213 F.3d 1149, 1158-59 (9th Cir. 2000).

(8)     The attempt crime can occur outside of the United States.  DeLeon, 270 F.3d at 93.  For a discussion of whether it can occur wholly inside foreign territory, see id.

**4.16.3372**          **Receiving Fish, Wildlife, Plants Illegally Taken (Lacey Act), 16 U.S.C. §§ 3372(a)(2)(A), 3373(d)(1)(B), (2)**

[Updated: 6/14/02]

[Defendant] is charged with knowingly [importing; exporting; transporting; selling; receiving; acquiring; purchasing] in interstate or foreign commerce [fish; wildlife; plants] whose market value exceeded $350, knowing that these [fish; wildlife; plants] had been [taken; possessed; transported; sold] in violation of  [state] law.  It is against federal law to engage in such conduct. For you to find [defendant] guilty of this crime you must be convinced that the government has proven each of the following things beyond a reasonable doubt:

>First, that [defendant] [imported; exported; transported; sold; received; acquired; purchased] in interstate or foreign commerce [fish; wildlife; plants] [taken; possessed; transported sold] in violation of [state] law;

>Second, that [defendant] did so knowingly;

>Third, that this conduct involved the [sale; purchase; offer to sell; offer to purchase; intent to sell; intent to purchase] [fish; wildlife; plants] with a market value over $350; and

>Fourth, that [defendant] knew that the [fish; wildlife; plants] were [taken; possessed; transported; sold] in violation of [state] law.

[State] law prohibits a person from [describe illegal conduct].

"Knowingly" means that the act was done voluntarily and intentionally and not because of mistake or accident.

Interstate commerce includes the transportation of [fish; wildlife; plants] between one state and another state.

"Market value" is the price that a willing buyer would pay a willing seller.

The government does not have to prove that [defendant] knew of the existence of the federal law under which [he/she] has been charged.  The government also does not have to prove that [defendant] was the person who illegally took the [fish; wildlife; plants] from [state].  The government does not have to prove that [defendant] knew all the details of [state] law or the details of how the [fish; wildlife; plants] were taken.  The government must prove beyond a reasonable doubt that [defendant] knew that the [fish; wildlife; plants] had been in some fashion taken or possessed in violation of [state] law.

**LESSER OFFENSE**

If you conclude that the government has proven beyond a reasonable doubt all the elements of the offense except the market value in excess of $350, you may convict [defendant] of a lesser offense under this Count.  Alternatively, if you find that the government has proven beyond a reasonable doubt all the elements of the offense except the requirement that [defendant] knew that the [fish; wildlife; plants] had been or were being taken or possessed in violation of [state] law, you may convict [defendant] of a lesser offense under this Count if you find that the government has proven beyond a reasonable doubt that in the exercise of due care [defendant] should have known that the [fish; wildlife; plants] were [taken; possessed; transported; sold] in violation of [state] law.

## Comment

(1)    The Lacey Act is broader than this instruction, but this instruction attempts to set forth the felony offense under § 3373(d)(1)(B)(2).  A lesser included charge is also provided in the event the government fails to prove the $350 minimum or the requisite degree of scienter.  The Lacey Act is also broad enough to include other misdemeanor charges, but they do not seem to qualify as lesser included offenses.

(2)    The definition of "market value" is supported by United States v. Stenberg, 803 F.2d 422, 433 (9th Cir. 1986), superseded by statute on other grounds, Lacey Act Amendments of 1988, Pub. L. No. 100-653, 102 Stat. 3825 (1988), as recognized in United States v. Romano, 137 F.3d 677 (1st Cir. 1998).

(3)    United States v. Todd, 735 F.2d 146, 151 (5th Cir. 1984), supports the proposition that the government need not prove that the defendant knew about the Lacey Act, only that the defendant knew that the (in that case) game was illegally taken.

(4)    Definitions of various terms, such as "fish," "wildlife," "plants," "import," "taken" and "transport" are contained in 16 U.S.C. § 3371.

**4.18.00**              **Attempt**

[Updated: 10/5/12]

In order to prove the crime of attempt to [_____] as charged in Count [___] of the indictment, the government must prove the following two things beyond a reasonable doubt:

> First, that [defendant] intended to commit the crime of [_____]; and

> Second, that [defendant] engaged in a purposeful act that, under the circumstances as [he/she] believed them to be, amounted to a substantial step toward the commission of that crime and strongly corroborated [his/her] criminal intent.

A "substantial step" is an act in furtherance of the criminal scheme.  A "substantial step" must be something more than mere preparation, but less than the last act necessary before the substantive crime is completed.

The "substantial step" may itself prove the intent to commit the crime, but only if it unequivocally demonstrates such an intent.

## Comment

(1)     "There is no general federal statute which proscribes the attempt to commit a criminal offense.  Thus, attempt is actionable only where a specific criminal statute outlaws both its actual as well as its attempted violation."  United States v. Rivera-Sola, 713 F.2d 866, 869 (1st Cir. 1983). An attempt offense may be incorporated into a particular statute, see, e.g., 18 U.S.C. § 2113(a) (bank robbery), or set forth in a separate statute, see, e.g., 21 U.S.C. § 846 (attempted drug possession).

(2)     Although "[t]here is no statutory definition of attempt anywhere in the federal law," the First Circuit has adopted the Model Penal Code standard.  United States v. Dworken, 855 F.2d 12, 16-17 (1st Cir. 1988) (applying Model Penal Code § 5.01(1)(c) to attempt under federal drug law, 21 U.S.C. § 846); accord United States v. Doyon, 194 F.3d 207, 210 (1st Cir. 1999) (applying Model Penal Code definition of attempt).

(3)     The Model Penal Code's standard for attempt covers acts or omissions.  Model Penal Code § 5.01(1)(c).  Because the First Circuit has only dealt with "overt act" cases to date, see, e.g., United States v. George, 752 F.2d 749, 756 (1st Cir. 1985); Rivera-Sola, 713 F.2d at 869,  it has not had occasion to address circumstances under which an omission could amount to a substantial step.

(4)     Under the Model Penal Code, a defendant commits an attempt if he or she performs an act that, "under the circumstances as he[/she] believes them to be," constitutes a "substantial step" toward commission of a crime.  Model Penal Code § 5.01(1)(c); see also Dworken, 855 F.2d at 19. Factual impossibility is not a defense to the charge of attempt.  See United States v. Medina-Garcia, 918 F.2d 4, 8 (1st Cir. 1990).  "While 'mere preparation' does not constitute a substantial

step, a defendant 'does not have to get very far along the line toward ultimate commission of the object crime in order to commit the attempt offense.'"  United States v. Turner, 501 F.3d 59, 68 (1st Cir. 2007) (quoting Doyon, 194 F.3d at 211); cf. United States v. Berk, 652 F.3d 132, 140 (1st Cir. 2011) ("A 'substantial step' is less than what is necessary to complete the substantive crime, but more than 'mere preparation.'" (citations omitted)).

(5)     "If the substantial steps are themselves the sole proof of the criminal intent, then those steps unequivocally must evidence such an intent; that is, it must be clear that there was a criminal design and that the intent was *not* to commit some non-criminal act."  Dworken, 855 F.2d at 17; see also United States v. Levy-Cordero, 67 F.3d 1002, 1019 (1st Cir. 1995) (discussing the substantial step requirement); Rivera-Sola, 713 F.2d at 869-70 (same).  On the other hand, "[i]f there is separate evidence of criminal intent independent from that provided by the substantial steps (e.g., a confessed admission of a design to commit a crime), then the substantial steps . . . must *merely* corroborate that intent."  Dworken, 855 F.2d at 17 n.3 (emphasis added).

(6)     United States v. Piesak, 521 F.3d 41, 44 & n.3 (1st Cir. 2008):

> To establish criminal attempt, the government must prove beyond a reasonable doubt that the defendant (i) intended to commit the substantive offense, . . . and (ii) took a substantial step towards its commission. United States v. Turner, 501 F.3d 59, 68 (1st Cir. 2007). . . . A "substantial step" is less than what is necessary to complete the substantive crime, but more than "mere preparation." United States v. Rodríguez, 215 F.3d 110, 116 (1st Cir. 2000). . . . We have further provided, "[I]n order to constitute a substantial step leading to attempt liability, an actor's behavior must be 'of such a nature that a reasonable observer, viewing it in context could conclude beyond a reasonable doubt' that it was undertaken in accordance with a design to violate the statute." United States v. Rivera-Solà, 713 F.2d 866, 870 (1st Cir. 1983) (citation omitted).

**4.18.02(a)**          **Aid and Abet, 18 U.S.C. § 2(a)**

[Updated: 6/26/18]

To "aid and abet" means intentionally to help someone else commit the charged crime.   To establish aiding and abetting, the government must prove beyond a reasonable doubt:

>    First, that the crime of [insert charged crime] was actually committed by someone;

>    Second, that [defendant] took an affirmative act to help or cause [insert charged crime]; and

>    Third, that [defendant] intended to help or cause the commission of [insert charged crime].

The second element, the "affirmative act" element, can be satisfied without proof that [defendant] participated in each and every element of [insert crime charged].   It is enough if [defendant] assisted in the commission of [insert charged crime] or caused [insert crime charged] to be committed.

The third element, the "intent" element, is satisfied if [defendant] had advance knowledge of the facts that make [the principal's] conduct criminal.   "Advance knowledge" means knowledge at a time the defendant can opt to walk away.

A general suspicion that an unlawful act may occur or that something criminal is happening is not enough.   Mere presence at the scene of [insert crime charged] and knowledge that [insert crime charged] is being committed are also not sufficient to constitute aiding and abetting.   But you may consider these things among other factors in determining whether the government has met its burden.

## **Comment**

(1)     This instruction is based on United States v. Rosemond, 134 S. Ct. 1240 (2014).  Rosemond was convicted of aiding and abetting the commission of using a firearm in connection with a drug trafficking crime under 18 U.S.C. § 924(c).  The facts involved a shooting committed during a drug deal gone bad.  Rosemond conceded that he knew about the drug deal, but he claimed that he did not know that his accomplice had a firearm until the gun was fired.  The Supreme Court vacated Rosemond's conviction on the grounds that the jury instructions did not convey the requirement that the defendant had to have *prior* knowledge of the circumstances of the crime—that is, both that a drug crime was happening and that an accomplice was armed.  In the words of the Court, what is required is "knowledge at a time the accomplice can do something with it—most notably, opt to walk away." Id. at 1249-50.  For First Circuit cases applying Rosemond, see United States v. Gaw, No. 14-2242, 2016 WL 891144 (1st Cir. Mar. 9, 2016); United States v. Manso-Cepeda, 810 F.3d 846 (1st Cir. 2016); United States v. Martinez-Rodriguez, 778 F.3d 367, 371 (1st Cir. 2015); United States v. Encarnación-Ruiz, 787 F.3d 581 (1st Cir. 2015).

(2)     "[T]o establish the mens rea required to aid and abet a crime, the government must prove that the defendant participated with advance knowledge of the elements that constitute the charged offense." United States v. Ford, 821 F.3d 63, 69 (1st Cir. 2016) (quoting United States v. Encarnación–Ruiz, 787 F.3d 581, 588 (1st Cir.2015)). In United States v. Ford, the government charged a woman with aiding and abetting the possession of a firearm by her husband, who was a felon. The First Circuit found that a "background scienter presumption" informs 18 U.S.C. § 2, and it requires that a defendant know the facts which make the principal's conduct illegal. Ford, 821 F.3d at 72. The First Circuit rejected the "watered-down scienter requirement" of "should have known" and therefore found error in an instruction that advised the jury that the government had to prove that the defendant "knew or should have known" of her husband's felon status in order to convict. Id. After holding that an aider and abettor must know "the facts that make the principal's conduct criminal," the First Circuit discussed four "important caveats." Id. First, a putative aider and abettor may not need to know elements of a crime that are not essential "to labeling as criminal" the principal's behavior, for example, an element that establishes federal jurisdiction. Id. Second, where warranted, the court can give a "willful blindness" instruction. Id. at *10; see infra n. 7. Third, if the government proves "a person knows that the conduct she proceeds to aid and abet is unlawful," in other words, if the government proves a willful violation, then it "need not also prove the lesser degree of culpability that would otherwise need to be shown in the absence of such knowledge." Id. Fourth, direct proof of knowledge is not essential. Id.

    Although the government is not required to prove willfulness under 18 U.S.C. § 2(a), subsection (b), dealing with one who causes an act to be done which, if performed directly by the accused or another, would be a crime, does require proof of willfulness. See section 4.18.02(b).

(3)     In United States v. Fernandez-Jorge, 894 F.3d 36, 52 (1st Cir. 2018), the First Circuit discussed Rosemond's requirement of "advance knowledge" stating that "to be guilty of aiding and abetting an offense, a defendant must have advance knowledge of each element of the offense" without mentioning the caveats set forth in Ford. See supra comment (2). Judges, therefore, should proceed with caution in elaborating on the advance-knowledge requirement. Rosemond, like Ford, emphasizes advance knowledge of the circumstances constituting the charged offense.

(4)     The government may rely on an aiding and abetting theory even if not explicitly charged in the indictment, except on a showing of unfair surprise. See, e.g., United States v. Palmer, 203 F.3d 55, 66 (1st Cir. 2000) ("Aiding and abetting is 'an alternative charge in every . . . count, whether explicit or implicit.'" (quoting United States v. Sanchez, 917 F.2d 607, 611 (1st Cir. 1990))).

(5)     In United States v. Geronimo, 330 F.3d 67, 75 (1st Cir. 2003), the First Circuit expressed a preference for "an aiding and abetting instruction to refer specifically to the principal offense . . . rather than generally to 'a crime.'"

(6)     United States v. Bailey, 405 F.3d 102, 110-11 and n.4 (1st Cir. 2005), dealt with a failure-to-act instruction, but did not provide a clear holding on its appropriateness.

(7)     On "mere presence," United States v. De La Paz-Rentas, 613 F.3d 18, 24 (1st Cir. 2010), says that "a bodyguard's presence can by itself facilitate a transaction; the mere presence concept aims to protect innocent bystanders" (citations omitted).

(8)     The First Circuit has approved a willful blindness instruction, see section 2.16 supra, in conjunction with an aid and abet charge.  United States v. Pérez-Meléndez, 599 F.3d 31, 40-41 (1st Cir. 2010); Keene, 341 F.3d at 83-84; United States v. Martin, 815 F.2d 818, 825-26 (1st Cir. 1987).  The willful blindness goes to the knowledge of the underlying crime, not to the aiding and abetting defendant's intention to help or make the endeavor succeed.  Peréz-Meléndez, 599 F.3d at 40-41.

(9)     First Circuit caselaw has not consistently recognized a difference between the two subsections of 18 U.S.C. § 2, sometimes treating them both generically as "aid and abet."  Compare United States v. Footman, 215 F.3d 145, 154 (1st Cir. 2000) ("When aiding and abetting is involved, then, the 'counsels, commands, induces, or procures' [§ 2(a)] and 'cause' [§ 2(b)] language from § 2 is properly part of the jury's instruction.") with United States v. Strauss, 443 F.2d 986, 988 (1st Cir. 1971).

(10)     The First Circuit has recognized in dicta that "Federal law allows for the crime of aiding and abetting a conspiracy."  United States v. Marino, 277 F.3d 11, 30 (1st Cir. 2002) (observing that "[a]iding and abetting liability is inherent in every federal substantive crime," including conspiracy, id. at 29).  See also United States v. Oreto, 37 F.3d 739, 751 (1st Cir. 1994) ("[M]ost if not all courts to consider the issue have held that a defendant may be convicted of aiding and abetting a conspiracy.") (affirming a trial court's instruction that a jury could find a pattern of racketeering activity if the defendants "committed or aided and abetted the commission of at least two of the specified racketeering acts").  The First Circuit has not enumerated the elements of aiding and abetting a conspiracy, but the Seventh Circuit has stated that it will affirm such a conviction "if the evidence shows [the defendant] knew of the . . . .conspiracy, intended to further its success, and contributed at least one act of affirmative assistance," United States v. Irwin, 149 F.3d 565, 570 (7th Cir. 1998) (citations omitted).  The Ninth Circuit recognizes two separate theories of aiding and abetting a conspiracy: aiding and abetting an existing conspiracy and aiding and abetting the formation of a conspiracy.  See United States v. Portac, Inc., 869 F.2d 1288, 1293 (9th Cir. 1989).

(11)     One of the elements of proving aiding and abetting is that "the target crime have been completed."  United States v. Dehertogh, 696 F.3d 162, 169 (1st Cir. 2012).  At the same time, a person cannot be found guilty of aiding and abetting based solely on actions after a crime has been completed.  United States v. Figueroa-Cartagena, 612 F.3d 69, 73 (1st Cir. 2010) (conduct that is characterized as the crime of accessory after the fact).  Yet someone who did not participate in a carjacking, but assisted in holding the resulting hostage, can be convicted of aiding and abetting if the assistance is provided "while the carjacker maintains control over the victim and [his or her] car."  Id. at 75 (quoting Ramírez-Burgos v. United States, 313 F.3d 23, 30 n.9 (1st Cir. 2002)).  I note that Figueroa-Cartagena is a split decision, with one member of the majority questioning the decision, but feeling bound by earlier First Circuit precedents concerning the "abduction" rule.

(12)     In United States v. Encarnación-Ruiz, 787 F.3d 581 (1st Cir. 2015), the First Circuit held that Rosemond v. United States, 134 S. Ct. 1240 (2014), "requires the government in a prosecution for aiding & abetting a violation of 18 U.S.C. § 2251(a) to prove the aider and abettor's knowledge that the victim was a minor."

**4.18.02(b)**          **Causing an Act to be Done Through Another, 18 U.S.C. § 2(b)**

[Updated: 4/13/16]

If a defendant willfully "causes an act to be done" by another, the defendant is responsible for those acts as though [he/she] personally committed them. To establish that the defendant caused an act to be done, the government must prove beyond a reasonable doubt:

> First, that another person committed [insert charged crime] or committed an indispensable element of [insert charged crime]; and

> Second, that [defendant] willfully caused [these acts/this act], even though [he/she] did not personally commit [these act/this act].

[The government need not prove that the person who did commit [insert charged crime/elements of charged crime] did so with criminal intent. That person may be an innocent intermediary.]

[Defendant] need not perform the [insert charged crime/elements of charged crime], be present when it is performed, or be aware of the details of its execution to be guilty of causing an act to be done by another. A general suspicion that an unlawful act may occur or that something criminal is happening is not enough. Mere presence at the scene of [insert charged crime] and knowledge that [insert charged crime] is being committed are also not sufficient to establish causing an act to be done through another. But you may consider these among other factors.

An act is done "willfully" if done voluntarily and intentionally with the intent that something the law forbids be done—that is to say with bad purpose, either to disobey or disregard the law.

## Comment

(1)     This instruction is based on United States v. Leppo, 177 F.3d 93, 95 (1st Cir. 1999) (noting that "willfulness" is required for § 2(b) liability, but declining to define willfulness) and United States v. Andrade, 135 F.3d 104, 110 (1st Cir. 1998) ("Unlike aiding and abetting liability [under 18 U.S.C. § 2(a)], there is no requirement [under section 2(b)] that the intermediary be shown to be criminally liable."). See also United States v. Dodd, 43 F.3d 759, 762 (1st Cir. 1995) ("A defendant may be convicted under this section [b] even though the individual who did in fact commit the substantive act lacked the necessary criminal intent.").

(2)     The government may rely on "causes an act to be done by another" theory even if not explicitly charged in the indictment. Andrade, 135 F.3d at 110 ("Section 2(b) is not a separate offense but a general principle of liability that applies without any need for reference in the indictment." (citation omitted)). 18 U.S.C. § 2(b) reflects the common law principle that "one is liable as a principal if one deliberately causes or procur[es] another to perform a criminal act," id. (citation omitted), and its purpose "is to remove all doubt that one who 'causes the commission of an indispensable element of the offense by an innocent agent or instrumentality, is guilty as a principal even though he intentionally refrained from the direct act constituting the completed offense," Dodd, 43 F.3d at 763.

(3)     First Circuit caselaw has not consistently recognized a difference between the two subsections of 18 U.S.C. § 2, sometimes treating them both generically as "aid and abet." Compare United States v. Footman, 215 F.3d 145, 154 (1st Cir. 2000) ("When aiding and abetting is involved, then, the 'counsels, commands, induces, or procures' [§ 2(a)] and 'cause' [§ 2(b)] language from § 2 is properly part of the jury's instruction.") with United States v. Strauss, 443 F.2d 986, 988 (1st Cir. 1971).

**4.18.03**                    **Accessory After the Fact, 18 U.S.C. § 3**

[Updated: 10/5/12]

[Defendant] is charged with being an accessory after the fact to the crime of [specify crime].  It is against federal law to be an accessory after the fact.  For [defendant] to be convicted of this crime, you must be convinced that the government has proven each of the following things beyond a reasonable doubt:

> First, that [specify other person] committed [specify crime];

> Second, that [defendant] knew that [specify other person] committed [specify crime]; and

> Third, that after the [specify crime] was completed, [defendant] tried to help  [specify other person] with the intention of preventing or hindering [his/her] [arrest; trial; punishment].

Knowledge and intent may not ordinarily be proven directly because there is no way of directly scrutinizing the workings of the human mind.  In determining what [defendant] knew or intended at a particular time, you may consider any statements made or acts done or omitted by [defendant] and all other facts and circumstances received in evidence that may aid in your determination of [defendant]'s knowledge or intent.  You may infer, but you are certainly not required to infer, that a person intends the natural and probable consequences of acts knowingly done or omitted.  It is entirely up to you, however, to decide what facts are proven by the evidence received during this trial.

## **Comment**

(1)     The First Circuit has said that "an accessory-after-the-fact offense is almost never going to be a lesser included offense as to the principal crime" because it requires proof of one element the principal offense does not require—assistance after the crime was committed.  United States v. Rivera-Figueroa, 149 F.3d 1, 6 & n.5 (1st Cir. 1998).  If the defendant has not been charged as an accessory-after-the-fact, giving this charge, even at a defendant's request, has "the potential to confuse the jury."  United States v. Otero-Mendez, 273 F.3d 46, 56 (1st Cir. 2001); accord Rivera-Figueroa, 149 F.3d at 7.

(2)     The statute requires knowledge "that an offense against the United States has been committed."  That means that the "government must prove beyond a reasonable doubt that the accessory was aware that the offender had engaged in conduct that satisfies the essential elements of the primary federal offense," but not necessarily that the defendant knew that such conduct was in fact a federal crime.  United States v. Graves, 143 F.3d 1185, 1186 (9th Cir. 1998).  In United States v. Gerhard, 615 F.3d 7, 24 & n.7 (1st Cir. 2010), the First Circuit imposed a lesser standard where the principals had already been convicted of the federal offense, finding it sufficient that the defendants had knowledge of the conviction and distinguishing cases like Graves, where the defendant rendered assistance prior to conviction, as "entirely different."

**4.18.152(1)**          **Bankruptcy Fraud, Concealment, 18 U.S.C. § 152(1)**

[Updated: 6/14/02]

[Defendant] is charged with bankruptcy fraud through concealment.  It is against federal law to commit bankruptcy fraud through concealment.  For you to find [defendant] guilty of this offense, you must be convinced that the government has proven each of the following things beyond a reasonable doubt:

> First, that a proceeding in bankruptcy existed;

> Second, that [defendant] concealed [property description] from [*e.g.*, bankruptcy trustee; creditors; United States Trustee];

> Third, that [defendant] did so knowingly and fraudulently; and

> Fourth, that the [property description] belonged to [the debtor's estate].

"Conceal" means to hide, withhold information about, or prevent disclosure or recognition of something.

A "debtor" is the person concerning whom a bankruptcy case is filed.

A "debtor's estate" is created by the filing of a bankruptcy petition.

"Property of the debtor's estate" consists of (1) all property owned by the debtor at the time the bankruptcy petition is filed, (2) all proceeds or profits from such property, and (3) any property that the estate thereafter acquires.

A "creditor" is a person or company that has a claim or a right to payment from the debtor that arose at the time, or before, the bankruptcy court issued its order for relief concerning the debtor.

A "bankruptcy trustee" is an individual who is appointed to oversee bankruptcy cases.

The "United States Trustee" is an individual appointed by, and who acts under the general supervision of, the Attorney General of the United States who oversees cases and bankruptcy trustees.

A defendant acted "fraudulently" if he or she acted willfully and with the intent to deceive or cheat. Thus, if a defendant acted in good faith, he or she cannot be guilty of the crime.  The burden to prove intent, as with all other elements of the crime, rests with the government.

"Willfully" means voluntarily and intentionally and with the specific intention to do something the law forbids, or with the specific intention to fail to do something the law requires, that is to say with bad purpose, either to disobey or disregard the law.

A defendant acted "knowingly" if he or she was conscious and aware of his or her actions, realized what he or she was doing or what was happening around him or her, acted voluntarily and intentionally, and did not act because of ignorance, mistake or accident.

## **Comment**

(1)     The government need not prove that a substantial amount of estate property was concealed, although a *de minimis* value "may be probative evidence of the absence of an intent to defraud." United States v. Grant, 971 F.2d 799, 809 & n.19 (1st Cir. 1992).

(2)     The First Circuit approved defining  "knowingly" and "fraudulently" in the bankruptcy fraud context "through direct reference to the voluntariness, as well as the general and specific intent animating [the defendant's] conduct."  United States v. Shadduck, 112 F.3d 523, 527 (1st Cir. 1997).

(3)     Concerning "property of the estate," "[t]he determination whether a debtor held a legal, equitable, or possessory interest in property at the commencement of the case requires the fact-finder to evaluate all relevant direct and circumstantial evidence relating to the property and to the intent of the debtor." Grant, 971 F.2d at 806.

(4)     Concerning fraudulent intent, replacement of removed property may be probative of fraudulent intent, but not dispositive.  Grant, 971 F.2d at 808.

(5)     According to United States v. Cardall, 885 F.2d 656, 678 (10th Cir. 1989), it is not always necessary to use the words "legal or equitable interest" in describing the debtor's estate.

**4.18.152(2),(3)**          **Bankruptcy Fraud, False Oath/Account and False Declaration,**
                             **18 U.S.C. § 152(2), 152(3)**

[Updated: 9/20/12]

[Defendant] is charged with bankruptcy fraud by making a false oath/account [false declaration]. It is against federal law to commit bankruptcy fraud by making a false oath/account [false declaration]. For you to find [defendant] guilty of this offense, you must be convinced that the government has proven each of the following things beyond a reasonable doubt:

> <u>First</u>, that a proceeding in bankruptcy existed;

> <u>Second</u>, that [defendant] made a statement or series of statements under oath [declaration or statement under penalty of perjury] in relation to the bankruptcy proceeding.  You must be unanimous on which statement or series of statements [declaration] it is;

> <u>Third</u>, that the statement or series of statements [declaration] concerned a material fact;

> <u>Fourth</u>, that the statement or series of statements [declaration] was false; and

> <u>Fifth</u>, that [defendant] made the statement or series of statements knowingly and fraudulently.

As long as the statement or series of statements [declaration] is literally true, there can be no conviction.

[A "declaration" is a statement or narration of facts.]

A "material" fact is one that has a natural tendency to influence or be capable of influencing the decision of the decisionmaker to whom it was addressed.

A defendant acted "fraudulently" if he or she acted willfully and with intent to deceive or cheat. Thus, if a defendant acted in good faith, he or she cannot be guilty of the crime.  The burden to prove intent, as with all other elements of the crime, rests with the government.

"Willfully" means voluntarily and intentionally and with the specific intention to do something the law forbids, or with the specific intention to fail to do something the law requires, that is to say with bad purpose, either to disobey or disregard the law.

A defendant acted "knowingly" if he or she was conscious and aware of his or her actions, realized what he or she was doing or what was happening around him or her, acted voluntarily and intentionally, and did not act because of ignorance, mistake or accident.

## **Comment**

(1)      The instruction can also be restated as four elements:  "To support a conviction for making a false oath in bankruptcy under 18 U.S.C. § 152(2) the prosecution is required to establish (1) the existence of bankruptcy proceedings; (2) that a false statement was made in the proceedings under penalty of perjury; (3) as to a material fact; and (4) that the statement was knowingly and fraudulently made."  United States v. Cutter, 313 F.3d 1, 4 n.4 (1st Cir. 2002); accord United States v. Marston, 694 F.3d 131, 133 (1st Cir. 2012).

(2)      The First Circuit approved defining  "knowingly" and "fraudulently" in the bankruptcy fraud context "through direct reference to the voluntariness, as well as the general and specific intent animating [the defendant's] conduct."  United States v. Shadduck, 112 F.3d 523, 527 (1st Cir. 1997). Defining "knowingly and fraudulently" in terms of intent to deceive is supported by United States v. Gellene, 182 F.3d 578, 586-87 (7th Cir. 1999).

(3)      When materiality is an element of the offense, it is for the jury.  See United States v. Gaudin, 515 U.S. 506, 522-23 (1995) (holding that it was error for the trial judge to refuse to submit the question of materiality to the jury in a case in which the respondent had been convicted of making material false statements in a matter within the jurisdiction of a federal agency, in violation of 18 U.S.C. § 1001).  Material misrepresentations include not only those that relate to the assets of the bankruptcy estate, but any that relate to "some significant aspect of the bankruptcy case or proceeding in which it was given."  Gellene, 182 F.3d at 588 (quoting 1 Collier on Bankruptcy ¶ 7.02[2][a][iv], at 7-46 to 7-47 (Lawrence P. King ed., 15th ed. rev. 1999)).

(4)      Other circuits have held that omissions of material facts can be false statements.  United States v. Sobin, 56 F.3d 1423, 1428 (D.C. Cir. 1995); United States v. Ellis, 50 F.3d 419, 423-25 (7th Cir. 1995); United States v. Lindholm, 24 F.3d 1078, 1083-85 (9th Cir. 1994).  The First Circuit recently held, in Marston, 694 F.3d at 135-37, that failure to disclose aliases on a bankruptcy petition was sufficient to support a false oath conviction.

(5)      Literal truth is a complete defense to a false oath claim.  Bronston v. United States, 409 U.S. 352, 362 (1973) (criminal perjury statute); United States v. Moynagh, 566 F.2d 799, 804 (1st Cir. 1977) (dismissing charge for false statement where omission was warranted by facts and truthful), abrogated on other grounds by United States v. Nieves-Burgos, 62 F.3d 431, 436-37 (1st Cir. 1995).

**4.18.152(4)**               **Bankruptcy Fraud, False Claim, 18 U.S.C. § 152(4)**

[Updated: 6/14/02]

[Defendant] is charged with bankruptcy fraud by making a false claim.  It is against federal law to commit bankruptcy fraud by making a false claim.  For you to find [defendant] guilty of this offense, you must be convinced that the government has proven each of the following things beyond a reasonable doubt:

First, that a proceeding in bankruptcy existed;

Second, that [defendant] presented or caused to be presented, or used or caused to be used, a claim for proof against the bankruptcy estate;

Third, that the claim as presented or used was false; and

Fourth, that [defendant] did so knowingly and fraudulently.

A "bankruptcy estate" is created by the filing of a bankruptcy petition.  It includes all property in which the debtor had an interest on the date of the commencement of the bankruptcy.

A claim for proof is sometimes also called a "proof of claim."  It is a written statement setting forth a creditor's claim against the estate of a debtor.  A proof of claim is "presented" or "used" if it appears in a debtor's bankruptcy schedules, unless it is listed as disputed, contingent or unliquidated.

A defendant acted "fraudulently" if he or she acted willfully and with the intent to deceive or cheat. Thus, if a defendant acted in good faith, he or she cannot be guilty of the crime.  The burden to prove intent, as with all other elements of the crime, rests with the government.

"Willfully" means voluntarily and intentionally and with the specific intention to do something the law forbids, or with the specific intention to fail to do something the law requires, that is to say with bad purpose, either to disobey or disregard the law.

A defendant acted "knowingly" if he or she was conscious and aware of his or her actions, realized what he or she was doing or what was happening around him or her, acted voluntarily and intentionally, and did not act because of ignorance, mistake or accident.

## **Comment**

The First Circuit approved defining  "knowingly" and "fraudulently" in the bankruptcy fraud context "through direct reference to the voluntariness, as well as the general and specific intent animating [the defendant's] conduct."  United States v. Shadduck, 112 F.3d 523, 527 (1st Cir. 1997).

**4.18.152(5)**         **Bankruptcy Fraud, Receipt with Intent to Defraud,**
                        **18 U.S.C. § 152(5)**

[Updated: 6/14/02]

[Defendant] is charged with bankruptcy fraud by receiving property from a bankruptcy debtor with intent to defeat the provisions of bankruptcy law.  It is against federal law to commit bankruptcy fraud in this manner.  For you to find [defendant] guilty of this offense, you must be convinced that the government has proven each of the following things beyond a reasonable doubt:

First, that a proceeding in bankruptcy existed;

Second, that [defendant] received a material amount of [property] after the bankruptcy case was filed;

Third, that [defendant] received the property from the debtor;

Fourth, that [defendant] received such property knowingly and fraudulently; and

Fifth, that [defendant] intended to defeat the provisions of bankruptcy law.

Bankruptcy law provisions are designed to promote efficient bankruptcy administration and a fair distribution of a debtor's assets to creditors.  This is accomplished by allowing the trustee to make a neutral and informed assessment of the status and value of the debtor's property interests, of whatever sort.  For the purposes of this case, bankruptcy law provisions are defeated when a person without the trustee's approval acts in a manner that diminishes the debtor's assets and thus interferes with their fair distribution.

"Material amount" means a significant—not an incidental—amount.

A defendant acted "fraudulently" if he or she acted willfully and with the intent to deceive or cheat. Thus, if a defendant acted in good faith, he or she cannot be guilty of the crime.  The burden to prove intent, as with all other elements of the crime, rests with the government.

"Willfully" means voluntarily and intentionally and with the specific intention to do something the law forbids, or with the specific intention to fail to do something the law requires, that is to say with bad purpose, either to disobey or disregard the law.

A defendant acted "knowingly" if he or she was conscious and aware of his or her actions, realized what he or she was doing or what was happening around him or her, acted voluntarily and intentionally, and did not act because of ignorance, mistake or accident.

95

**Comment**

(1)     Unlike the other section 152 subsections, this one contains an express materiality requirement.

(2)     The First Circuit approved defining  "knowingly" and "fraudulently" in the bankruptcy fraud context "through direct reference to the voluntariness, as well as the general and specific intent animating [the defendant's] conduct."  <u>United States v. Shadduck</u>, 112 F.3d 523, 527 (1st Cir. 1997).

**4.18.152(6)**          **Bankruptcy Fraud, Bribery and Extortion,**
                         **18 U.S.C. § 152(6)**

[Updated: 6/14/02]

[Defendant] is charged with bankruptcy fraud by [giving; offering; receiving; attempting to obtain] any [money; property; remuneration; compensation; reward; advantage; promise] for [acting; forbearing from acting] in a proceeding in bankruptcy.  It is against federal law to commit bankruptcy fraud in this manner.  For you to find [defendant] guilty of this offense, you must be convinced that the government has proven each of the following things beyond a reasonable doubt:

> First, that a proceeding in bankruptcy existed;

> Second, that [defendant] [gave; offered; received; attempted to obtain] [to; from] [specify other person] any [money; property; remuneration; compensation; reward; advantage; promise] after the bankruptcy case was filed;

> Third, that [defendant] did this to get [specify other person] to [take; forbear from taking] some action in the bankruptcy proceeding; and

> Fourth, that [defendant] did so knowingly and fraudulently.

A defendant acted "fraudulently" if he or she acted willfully and with the intent to deceive or cheat.  Thus, if a defendant acted in good faith, he or she cannot be guilty of the crime.  The burden to prove intent, as with all other elements of the crime, rests with the government.

"Willfully" means voluntarily and intentionally and with the specific intention to do something the law forbids, or with the specific intention to fail to do something the law requires, that is to say with bad purpose, either to disobey or disregard the law.

A defendant acted "knowingly" if he or she was conscious and aware of his or her actions, realized what he or she was doing or what was happening around him or her, acted voluntarily and intentionally, and did not act because of ignorance, mistake or accident.

To "forbear" means to refrain from enforcing a right, obligation, or debt.

## Comment

(1)     The First Circuit approved defining  "knowingly" and "fraudulently" in the bankruptcy fraud context "through direct reference to the voluntariness, as well as the general and specific intent animating [the defendant's] conduct."  United States v. Shadduck, 112 F.3d 523, 527 (1st Cir. 1997).

(2)     The definition of "forbear" is from Black's Law Dictionary 656 (9th ed. 2009).  The bankruptcy code does not define the term.

**4.18.152(7)**      **Bankruptcy Fraud, Transfer of Property in Personal Capacity or as Agent or Officer, 18 U.S.C. § 152(7)**

[Updated: 6/14/02]

[Defendant] is charged with bankruptcy fraud by transferring or concealing [his/her] [property; the property of [specify third person or corporation] for whom [he/she] was acting as an agent or officer] [in contemplation of bankruptcy; with intent to defeat the provisions of the bankruptcy law].  It is against federal law to commit bankruptcy fraud in this manner.  For you to find [defendant] guilty of this offense, you must be convinced that the government has proven each of the following things beyond a reasonable doubt:

First, that [defendant] transferred or concealed [funds; property] in [his/her] personal capacity; as an officer or agent of [specify third party or corporation]];

Second, that the [funds; property] belonged to [defendant; a third person; a corporation for whom [defendant] was an agent or officer];

Third, that [defendant] did so knowingly and fraudulently; and

Fourth, that [defendant] did so [in contemplation of bankruptcy; with the intent to defeat the provisions of bankruptcy law].

["In contemplation of bankruptcy" means in expectation of, or planning for, the future probability of a bankruptcy proceeding.]

[Bankruptcy law provisions are designed to promote efficient bankruptcy administration and a fair distribution of a debtor's assets to creditors.  This is accomplished by allowing the trustee to make a neutral and informed assessment of the status and value of the debtor's property interests, of whatever sort.  For the purposes of this case, bankruptcy law provisions are defeated when a person without the trustee's approval acts in a manner that diminishes the debtor's assets and thus interferes with their fair distribution.]

"Transfer" means move property from one place to another or change the title of property so that someone else owns it.

"Conceal" means to hide, withhold information about, or prevent disclosure or recognition of something.

A defendant acted "fraudulently" if he or she acted willfully and with the intent to deceive or cheat.  Thus, if a defendant acted in good faith, he or she cannot be guilty of the crime.  The burden to prove intent, as with all other elements of the crime, rests with the government.

"Willfully" means voluntarily and intentionally and with the specific intention to do something the law forbids, or with the specific intention to fail to do something the law requires, that is to say with bad purpose, either to disobey or disregard the law.

A defendant acted "knowingly" if he or she was conscious and aware of his or her actions, realized what he or she was doing or what was happening around him or her, acted voluntarily and intentionally, and did not act because of ignorance, mistake or accident.

## **Comment**

The First Circuit approved defining  "knowingly" and "fraudulently" in the bankruptcy fraud context "through direct reference to the voluntariness, as well as the general and specific intent animating [the defendant's] conduct."  United States v. Shadduck, 112 F.3d 523, 527 (1st Cir. 1997).

**4.18.152(8)**          **Bankruptcy Fraud, False Entries, 18 U.S.C. § 152(8)**

[Updated: 6/14/02]

[Defendant] is charged with bankruptcy fraud by knowingly and fraudulently concealing, destroying, mutilating, falsifying or making false entries in recorded information relating to the property and financial affairs of a debtor [after the bankruptcy case was filed; in contemplation of bankruptcy]. It is against federal law to commit bankruptcy fraud in this manner. For you to find [defendant] guilty of this offense, you must be convinced that the government has proven each of the following things beyond a reasonable doubt:

> First, that [a proceeding in bankruptcy existed; a bankruptcy proceeding was contemplated];
>
> Second, that [defendant] concealed or falsified or made false entries in recorded information as charged;
>
> Third, that the recorded information related to the property or financial affairs of a debtor; and
>
> Fourth, that [defendant] did so knowingly and fraudulently.

"In contemplation of bankruptcy" means in expectation of, or planning for, the future probability of a bankruptcy proceeding.

"Recorded information" includes books, documents, records and papers.

"Conceal" means to hide, withhold information about, or prevent disclosure or recognition of something.

A defendant acted "fraudulently" if he or she acted willfully and with the intent to deceive or cheat. Thus, if a defendant acted in good faith, he or she cannot be guilty of the crime. The burden to prove intent, as with all other elements of the crime, rests with the government.

"Willfully" means voluntarily and intentionally and with the specific intention to do something the law forbids, or with the specific intention to fail to do something the law requires, that is to say with bad purpose, either to disobey or disregard the law.

A defendant acted "knowingly" if he or she was conscious and aware of his or her actions, realized what he or she was doing or what was happening around him or her, acted voluntarily and intentionally, and did not act because of ignorance, mistake or accident.

## **Comment**

The First Circuit approved defining "knowingly" and "fraudulently" in the bankruptcy fraud context "through direct reference to the voluntariness, as well as the general and specific intent animating [the defendant's] conduct." United States v. Shadduck, 112 F.3d 523, 527 (1st Cir. 1997).

**4.18.152(9)**          **Bankruptcy Fraud, Withholding Recorded Information,
                          18 U.S.C. § 152(9)**

[Updated: 6/14/02]

[Defendant] is charged with bankruptcy fraud by knowingly and fraudulently withholding from the bankruptcy trustee, after the bankruptcy was filed, recorded information relating to the property and financial affairs of a debtor.

Where a bankruptcy trustee has been appointed, a debtor must (1) cooperate with the trustee to enable the trustee to perform the trustee's duties and (2) surrender to the trustee all property of the estate and any recorded information, including books, documents, records and papers relating to property of the estate.

It is against federal law to commit bankruptcy fraud by knowingly and fraudulently withholding from the bankruptcy trustee, after the bankruptcy was filed, recorded information relating to the property and financial affairs of a debtor.  For you to find [defendant] guilty of this offense, you must be convinced that the government has proven each of the following things beyond a reasonable doubt:

>       First, that a proceeding in bankruptcy existed;

>       Second, that the trustee was entitled to possession of the recorded information;

>       Third, that [defendant] withheld from the trustee the recorded information after the bankruptcy was filed;

>       Fourth, that the recorded information related to the property or financial affairs of a debtor; and

>       Fifth, that [defendant] did so knowingly and fraudulently.

A "bankruptcy trustee" is an individual who is appointed to oversee bankruptcy cases.

"Recorded information" includes books, documents, records and papers.

A defendant acted "fraudulently" if he or she acted willfully and with the intent to deceive or cheat. Thus, if a defendant acted in good faith, he or she cannot be guilty of the crime.  The burden to prove intent, as with all other elements of the crime, rests with the government.

"Willfully" means voluntarily and intentionally and with the specific intention to do something the law forbids, or with the specific intention to fail to do something the law requires, that is to say with bad purpose, either to disobey or disregard the law.

A defendant acted "knowingly" if he or she was conscious and aware of his or her actions, realized what he or she was doing or what was happening around him or her, acted voluntarily and intentionally, and did not act because of ignorance, mistake or accident.

**<u>Comment</u>**

The First Circuit approved defining  "knowingly" and "fraudulently" in the bankruptcy fraud context "through direct reference to the voluntariness, as well as the general and specific intent animating [the defendant's] conduct."  <u>United States v. Shadduck</u>, 112 F.3d 523, 527 (1st Cir. 1997).

**4.18.157**          **Bankruptcy Fraud, Scheme or Artifice to Defraud,**
                      **18 U.S.C. § 157**

[New: 10/24/18]

[Defendant] is charged with violating the federal statute making bankruptcy fraud illegal.  For you to find [defendant] guilty of this offense, you must be convinced that the government has proven each of the following things beyond a reasonable doubt:

First, that [defendant] devised or intended to devise the scheme or plan to defraud described in the indictment;

Second, that [defendant] acted with the intent to defraud;

Third, that [defendant] [filed a petition in] [filed a document in] [made a material false or fraudulent representation, claim, or promise concerning or in relation to] a Title 11 bankruptcy proceeding for the purpose of [executing] [attempting to execute] [concealing] [attempting to conceal] the scheme or plan to defraud.

It does not matter whether the document, representation, claim, or promise was itself false or deceptive so long as the bankruptcy proceeding was used as part of the scheme or plan to defraud.

A scheme includes any plan, pattern or course of action.  It is not necessary that the government prove all of the details alleged in the indictment concerning the precise nature and purpose of the scheme or that the alleged scheme actually succeeded in defrauding anyone.  But the government must prove beyond a reasonable doubt that the scheme was substantially as charged in the indictment.

The term "defraud" means to deceive another in order to obtain money or property.

To act with "intent to defraud" means to act [knowingly and] with intent to deceive or cheat someone.

## Comment

(1)      Unlike the bankruptcy crimes described in 18 U.S.C. § 152, bankruptcy fraud under section 157 concerns a fraudulent scheme outside the bankruptcy which uses the bankruptcy as a means of executing or concealing the fraud or artifice.  United States v. Valdés-Ayala, 900 F.3d 20, 31 (1st Cir. 2018) (bankruptcy fraud requires a specific intent to defraud an identifiable victim or group of victims of the identified fraudulent scheme).

(2)      This statute is modeled after the mail fraud statute and requires a specific intent to defraud or deceive.

**4.18.228(a)(1), (3)      Willful Failure to Pay Child Support,**
**18 U.S.C. § 228(a)(1), (3)**

[Updated: 10/5/12]

[Defendant] is charged with willful failure to pay child support.  It is against federal law for a person willfully to fail to pay child support for a child who lives in another state if that obligation remains unpaid for longer than two years or the amount owed is greater than $10,000.  For you to find [defendant] guilty of this crime, the government must prove each of the following things beyond a reasonable doubt:

<u>First</u>, that a state court ordered [defendant] to pay for the support and maintenance of a child;

<u>Second</u>, that [defendant] knew of his support obligation;

<u>Third</u>, that [defendant] willfully failed to pay the support obligation;

<u>Fourth</u>, that during the times charged in the Indictment, the child for whom [defendant] owed support lived in a different state than [defendant] and [defendant] knew that [he/she] did; and

<u>Fifth</u>, that either the support obligation remained unpaid for longer than two years or the amount owed is greater than $10,000.  On this fifth element, the government is not required to prove both assertions.  But it must persuade all of you as to at least one of them.

With respect to the underlying state court order, the government is not required to prove why the state court determined that [defendant] was obligated to pay, how the court calculated the amount of support ordered, or that the order was fair, only that there was an order that [defendant] provide child support and maintenance.

The government must prove beyond a reasonable doubt that [defendant] knew of the state court order to pay child support, but it does not have to prove that he knew that he was violating federal law.

To prove that [defendant] acted "willfully," the government must prove that the state court ordered [him/her] to pay child support, that [he/she] knew of the order, and that [he/she] voluntarily and intentionally failed to comply.  To prove willfulness, the government also must prove either that [defendant] possessed sufficient funds, after accounting for the basic necessities of life, that [he/she] could have used to pay the child support obligation, but that [he/she] knowingly and intentionally refused to do so; or that [defendant] knowingly and intentionally avoided having sufficient funds to pay the child support obligation—as for example, by intentionally failing to maintain gainful employment.

The government is not required to prove that [defendant] had the ability to pay the entire amount of the child support obligation.  Rather, it need prove only that at the time payment was due, [defendant] possessed sufficient funds to enable [him/her] to meet any part of the obligation, even

if [he/she] was unable to pay the full amount.  If, on the other hand, [defendant] was unable to pay any of the past due child support obligations through no fault of [his/her] own during the entire period in question, [his/her] failure to pay cannot be either voluntary or intentional and thus cannot be "willful."

The government does not need to prove that [defendant] traveled from one state to another to avoid paying the support obligation.


## Comment

(1)      If the obligation has been outstanding for two years or less, but more than one year;  or if the amount owed is $10,000 or less but greater than $5,000, it is a petty offense the first time it is committed.  18 U.S.C. § 228(c)(1).

(2)      In addition to a court order of support, § 228 includes in the definition of "support obligation" an order of "an administrative process pursuant to the law of a State or of an Indian tribe."  18 U.S.C. § 228(f)(3).

(3)      Title 18 U.S.C. § 228, the Deadbeat Parents Punishment Act (formerly the Child Support Recovery Act), prohibits any "willful" failure to pay legal child support obligations.  The First Circuit has stated tha "legislative history provides guidance" on the meaning of "willful" and that it shows that the language "willfully fails to pay" comes from the federal criminal tax statutes and has the same meaning.  United States v. Smith, 278 F.3d 33, 37, 38 (1st Cir. 2002).  In this connection, the First Circuit also quoted the following language: "the Government must establish, beyond a reasonable doubt, that at the time payment was due the taxpayer possessed sufficient funds to enable him to meet his obligation or that the lack of sufficient funds on such date was created by (or was the result of) a voluntary and intentional act without justification in view of all of the financial circumstances of the taxpayer."  Id. at 37.  The pattern instruction uses that principle, modified for the child support instruction.  See United States v. Ballek, 170 F.3d 871, 873 (9th Cir. 1999) ("willful" failure to pay means either (i) "having the money and refusing to use it for child support"; or (ii) "not having the money because one has failed to avail oneself of the available means of obtaining it"—i.e., the obligor has refused to seek and accept gainful employment "or take other lawful steps to obtain the necessary funds").  Failure to borrow the money probably should not be considered, although in Smith the court found no plain error in the district court's instruction that "[o]ne way they can prove it is that [the defendant] had access to resources beyond the basic necessities of life, disposable income, beyond the basic necessities of life, which he could have marshaled and used to pay the child support, and knowing he had those resources and that they were available to him, he willfully failed to do it,"  Smith, 278 F.3d at 39, because in the context of the case it did not amount to an instruction that the jury "could find willful failure to pay in the event [the defendant] did not borrow money."  Id. at 40.

(4)      Other circuits have said that willfulness "requires proof of an intentional violation of a known legal duty, and thus describes a specific intent crime."  United States v. Harrison, 188 F.3d 985, 986 (8th Cir. 1999) (quoting legislative history); United States v. Williams, 121 F.3d 615, 620-21 (11th Cir. 1997) (same); Cheek v. United States, 498 U.S. 192, 201 (1991) (tax case)

("Willfulness, as construed by our prior decisions in criminal tax cases, requires the Government to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty.").

(5)     In Smith, 278 F.3d at 36-38, the First Circuit held that the good faith defense in criminal tax cases did not support an instruction that the defendant should be acquitted if he subjectively and in good faith believed that he did not have the ability to pay the child support obligation.  If good faith were to be a defense, the court said, it would have to be good faith belief as to the invalidity or inapplicability of the support order, but the defendant did not argue that proposition and the court did not decide it.  Id. at 38.  More recently, in United States v. Mitrano, 658 F.3d 117, 120-21 (1st Cir. 2011), the First Circuit rejected a "good faith" defense where the jury reasonably could find that the defendant willfully blinded himself to his legal duty to pay child support after several courts upheld the support order.

(6)     In United States v. Fields, 500 F.3d 1327, 1332 (11th Cir. 2007), the court held that the "willful" element requires the government to prove that the defendant knew that the child resided in another state.

(7)     The government must prove, as an element of a past due support obligation, "the existence of a state judicial or administrative order creating the requisite support obligation . . . . But, the government need not go beyond that, to prove beyond a reasonable doubt the facts necessarily found as predicates for the support order."  United States v. Johnson, 114 F.3d 476, 482 (4th Cir. 1997) (district court did not err in holding that the government was not required to prove paternity as an essential element of the offense in order to convict); United States v. Brand, 163 F.3d 1268, 1275-76 (11th Cir. 1998).  But cf. United States v. Kramer, 225 F.3d 847, 857-58 (7th Cir. 2000) (defendant charged with criminal offense of willful failure to pay past due child support obligation was entitled to defend by challenging underlying state support obligation on ground that it was imposed by court lacking personal jurisdiction over defendant); United States v. Lewis, 936 F. Supp. 1093, 1101-06 (D.R.I. 1996) (allowing relitigation of the merits of the underlying state court order where defendant challenged its validity by alleging that he received no notice of the state court proceedings that resulted in the support order, that he was not the biological father of the child and that he was not present when the state court decided the amount of support he would pay).

(8)     According to the statute, "[t]he existence of a support obligation that was in effect for the time period charged in the indictment or information creates a rebuttable presumption that the obligor has the ability to pay the support obligation for that time period."  18 U.S.C. § 228(b).  The pattern instruction does not contain the presumption because a number of courts have found the provision unconstitutional, albeit severable from the statute.  United States v. Pillor, 387 F. Supp. 2d 1053, 1056-57 (N.D.Cal. 2005) (finding that the mandatory rebuttable presumption violated the Fifth Amendment's Due Process Clause, which requires proof beyond a reasonable doubt of every element of the crime, because it shifts the burden of persuasion to the defendant to disprove willfulness); United States v. Morrow, 368 F. Supp. 2d 863, 865-66 (C.D. Ill. 2005) (same); United States v. Grigsby, 85 F. Supp. 2d 100, 106 (D.R.I. 2000) (same); United States v. Edelkind, No. 05-60067, 2006 WL 1453035, at *4-5 (W.D. La. May 18, 2006) (same); United States v. Casey, No. 05CR330, 2006 WL 277092, at *1 (D. Neb. Feb. 3, 2006) (same).

(9)     The term "resides" means residence rather than domicile.  <u>United States v. Venturella</u>, 391 F.3d 120, 124-33 (2d Cir. 2004); <u>United States v. Namey</u>, 364 F.3d 843, 844-47 (6th Cir. 2004).

(10)     The government must prove that the defendant knew of the state court order to pay child support, but it does not have to prove that the defendant knew that he/she was violating the law. <u>United States v. Bell</u>, 598 F.3d 366, 370-71 (7th Cir. 2010), <u>overruled on other grounds by</u> <u>United States v. Vizcarra</u>, 668 F.3d 516 (7th Cir. 2012).

(11)     The First Circuit has found that the provisions of 18 U.S.C. § 228 are a constitutional exercise of Congress' authority under the Commerce Clause.  <u>United States v. Lewko</u>, 269 F.3d 64, 66-68 (1st Cir. 2001) (declining to overturn <u>United States v. Bongiorno</u>, 106 F.3d 1027, 1030-32 (1st Cir. 1997) (finding provisions of the Child Support Recovery Act constitutional).

(12)     The First Circuit "reject[s a] reading of the statute" that could impose criminal liability only "where the defendant is able to pay the entire amount of child support due but fails to do so." <u>United States v. Carlson</u>, 643 F.3d 993 (1st Cir. 2011).

**4.18.371(1)**          **Conspiracy, 18 U.S.C. § 371; 21 U.S.C. § 846**

[Updated: 5/9/18]

[Defendant] is accused of conspiring to commit a federal crime—specifically, the crime of [insert crime].  It is against federal law to conspire with someone to commit this crime.

[Insert elements of underlying crime(s)]

For you to find [defendant] guilty of conspiracy, you must be convinced that the government has proven each of the following things beyond a reasonable doubt:

> <u>First</u>, that the agreement specified in the indictment, and not some other agreement or agreements, existed between at least two people to [substantive crime]; and

> <u>Second</u>, that [defendant] willfully joined in that agreement; [and

> <u>Third</u>, that one of the conspirators committed an overt act during the period of the conspiracy in an effort to further the purpose of the conspiracy.]

A conspiracy is an agreement, spoken or unspoken.  The conspiracy does not have to be a formal agreement or plan in which everyone involved sat down together and worked out all the details.

But the government must prove beyond a reasonable doubt that those who were involved shared a general understanding about the crime.  Mere similarity of conduct among various people, or the fact that they may have associated with each other or discussed common aims and interests does not necessarily establish proof of the existence of a conspiracy, but you may consider such factors.

To act "willfully" means to act voluntarily and intelligently and with the specific intent that the underlying crime be committed—that is to say, with bad purpose, either to disobey or disregard the law—not to act by ignorance, accident or mistake.  The government must prove two types of intent beyond a reasonable doubt before [defendant] can be said to have willfully joined the conspiracy:  an intent to agree and an intent, whether reasonable or not, that the underlying crime be committed. Mere presence at the scene of a crime is not alone enough, but you may consider it among other factors.  Intent may be inferred from the surrounding circumstances.

Proof that [defendant] willfully joined in the agreement must be based upon evidence of [his/her] own words and/or actions.  You need not find that [defendant] agreed specifically to or knew about all the details of the crime, or knew every other co-conspirator or that [he/she] participated in each act of the agreement or played a major role, but the government must prove beyond a reasonable doubt  that [he/she] knew the essential features and general aims of the venture.  Even if [defendant] was not part of the agreement at the very start, [he/she] can be found guilty of conspiracy if the government proves that [he/she] willfully joined the agreement later.  On the other hand, a person who has no knowledge of a conspiracy, but simply happens to act in a way that furthers some object or purpose of the conspiracy, does not thereby become a conspirator.

[An overt act is any act knowingly committed by one or more of the conspirators in an effort to accomplish some purpose of the conspiracy.  Only one overt act has to be proven.  The government is not required to prove that [defendant] personally committed or knew about the overt act.  It is sufficient if one conspirator committed one overt act at some time during the period of the conspiracy.]

The government does not have to prove that the conspiracy succeeded or was achieved.  The crime of conspiracy is complete upon the agreement to commit the underlying crime [and the commission of one overt act].

[If you find that [defendant] is guilty of this conspiracy charge, you will also have to determine whether the government has proven beyond a reasonable doubt that the conspiracy of which he was a member involved [insert relevant quantity of controlled substance].

## **Comment**

(1)     This charge is based largely upon United States v. Rivera-Santiago, 872 F.2d 1073, 1079-80 (1st Cir. 1989), as modified by United States v. Piper, 35 F.3d 611, 614-15 (1st Cir. 1994).  See also United States v. Boylan, 898 F.2d 230, 241-43 (1st Cir. 1990); Blumenthal v. United States, 332 U.S. 539, 557 (1947).  The First Circuit approved the Pattern's statement that proof of willful joinder "must" be based upon evidence of the defendant's own words and/or actions, United States v. Richardson, 225 F.3d 46, 53 (1st Cir. 2000), but the Court has also made clear that the "words and actions" portion of the Pattern is not strictly necessary in instructing a jury because "all the law requires" is that "[t]he charge, taken as a whole, adequately convey[s] the idea that [the defendant] must have personally and intentionally joined the agreement," United States v. Gonzalez, 570 F.3d 16, 24 (1st Cir. 2009).  United States v. Paret-Ruiz, 567 F.3d 1, 5 (1st Cir. 2009), refers to an "agreement to act in concert," quoting United States v. Cruz, 568 F.2d 781, 782 (1st Cir. 1978) ("The essence of the crime is the conspirators' agreement to act in concert to distribute narcotics.").  Moreover, "an instruction explicitly distinguishing negotiations from an agreement . . . would have been proper," but it is unnecessary if the instruction makes clear that an agreement is necessary (as the Pattern language does).  United States v. Guevara, 706 F.3d 38, 45 (1st Cir. 2013).  In United States v. McDonough, 727 F.3d 143, 158-59 (1st Cir. 2013), the court approved the language "silent understanding."

(2)     Note that some substantive offenses contain their own conspiracy prohibitions.  See, e.g., 18 U.S.C. § 241 (civil rights conspiracy) (no overt act required, see United States v. Crochiere, 129 F.3d 233, 237-38 (1st Cir. 1997)); 18 U.S.C. § 1201(c) (kidnapping) (overt act required); 18 U.S.C. § 1951(a) (Hobbs Act) (no overt act required, see United States v. Palmer, 203 F.3d 55, 63 (1st Cir. 2000)); 18 U.S.C. § 1956(h) (money laundering) (no overt act required, see Whitfield v. United States, 543 U.S. 209, 214 (2005)); 21 U.S.C. § 846 (controlled substances) (no overt act required, see United States v. Shabani, 513 U.S. 10, 17 (1994)).  For mail, wire, bank, health care, or securities and commodities fraud under 18 U.S.C. § 1349, see Instruction 4.18.1349 comment.

(3)     Where an overt act is required, only one member of a conspiracy need commit an overt act, and the overt act need not be illegal.  See United States v. Flaherty, 668 F.2d 566, 580 n.4 (1st Cir. 1981).

(4)     The Government does not have to prove that the defendant intended to commit the underlying offense himself or herself.  United States v. Piper, 35 F.3d 611, 614-15 (1st Cir. 1994). There must be proof, however, that a second conspirator with criminal intent existed.  United States v. Alzanki, 54 F.3d 994, 1003 (1st Cir. 1995).

(5)     "Whether there is a single conspiracy, multiple conspiracies, or no conspiracy at all is ordinarily a factual matter for the jury to determine."  United States v. Mena-Robles, 4 F.3d 1026, 1033 (1st Cir. 1993) (citation omitted); United States v. Escobar-Figueroa, 454 F.3d 40, 48 (1st Cir. 2006).  A multiple conspiracy instruction should be provided if "'on the evidence adduced at trial, a reasonable jury could find more than one such illicit agreement, or could find an agreement different from the one charged.'"  United States v. Brandon, 17 F.3d 409, 449 (1st Cir. 1994) (quoting Boylan, 898 F.2d at 243); United States v. Ramírez-Rivera, 800 F.3d 1, 45-46 (1st Cir. 2015).  The First Circuit has said that "[t]here are three factors this court has found particularly helpful in evaluating the evidence [of a single, as opposed to multiple, conspiracies]:  '"(1) the existence of a common goal, (2) interdependence among participants, and (3) overlap among the participants,"'"  United States v. Dellosantos, 649 F.3d 109, 111 (1st Cir. 2011).  Two later cases reformulated the second factor as "interdependence of various elements of the overall plan," United States v. Franco-Santiago, 681 F.3d 1, 8 (1st Cir. 2012); accord United States v. Rivera-Donate, 682 F.3d 120, 129 (1st Cir. 2012).  In the context of determining whether hearsay guidelines for the exception for an out-of-court statement by a co-conspirator apply, the First Circuit has said:

> To determine whether a set of criminal activities constitutes a single conspiracy, we generally look to three factors:  (1) the existence of a common goal, (2) overlap among the activities' participants, and (3) interdependence among the participants.  None of these factors is conclusive standing alone; instead, "[w]e look to the totality of the evidence to see if it supports a finding of a single conspiracy." A general scheme may exist "notwithstanding variations in personnel and their roles over time."

United States v. Ciresi, 697 F.3d 19, 26 (1st Cir. 2012) (citations omitted). The First Circuit elaborated on the three factors in United States v. Monserrate-Valentin, 729 F.3d 31, 43-44 (1st Cir. 2013).  It is not enough that some co-defendants had a common goal; the government must show that the defendant in question shared the common goal; the interdependence and overlap go to the overall conspiracy, not merely the acts of the defendant in question.  Id.

In United States v. Bedini, 861 F.3d 10, 17-18 (1st Cir. 2017), the First Circuit found the following multiple-conspiracy instruction on the first element "substantively correct":

> First:  That the conspiracy specified in the indictment, and not some other agreement or agreements, existed at or about the time or times

> specified in the indictment. It is not enough that the government simply prove that some type of conspiracy existed, even one involving some of the same alleged conspirators. The proof, rather, must persuade you that the conspiracy proved is in fact the one alleged in the indictment.

The following is language that the Fifth and Ninth Circuits have used for multiple-conspiracy instructions:

> If you find that the conspiracy charged did not exist, then you must return a not guilty verdict, even though you find that some other conspiracy existed. If you find that a defendant was not a member of the conspiracy charged in the indictment, then you must find that defendant not guilty, even though that defendant may have been a member of some other conspiracy.

Fifth Circuit Instruction 2.21; see also Ninth Circuit Instruction 8.22. See United States v. Trainor, 477 F.3d 24, 35-35 n.20 (1st Cir. 2007), for a multiple conspiracy instruction that the First Circuit applauded, albeit before the Dellosantos, Franco-Santiago, Rivera-Donate, and Ciresi cases cited above.

(6)    The trial judge is placed in a difficult position when the government has charged a multiple-object conspiracy, the evidence is problematic or non-existent as to whether the defendant on trial shared in the knowledge of all the objects of the conspiracy as charged, but there may be proof of a conspiracy with an object narrower than the multiple-object conspiracy charged. In United States v. Morrow, 39 F.3d 1228, 1234 (1st Cir. 1994), the court said:

> the governing principle is this: at a minimum, a conspirator must have *knowledge or foresight* of the conspiracy's multiplicity of objectives before that defendant is convicted of a multiple-crime conspiracy. Conviction for such a multiple-crime conspiracy remains possible even if the conspiracy is open-ended (*e.g.*, a conspiracy to rob banks) and the specifics of the future crimes (*e.g.*, which banks) is undetermined or at least unknown to the defendant. But if a defendant agrees with others simply to commit a single crime (*e.g.*, to rob one bank) and has no knowledge or foresight of the conspiracy's broader scope, that defendant is a member only of the narrower, one-crime conspiracy.

That principle is reiterated in United States v. Franco-Santiago, 681 F.3d 1, 7-9 (1st Cir. 2012), and United States v. Monserrate-Valentin, 729 F.3d 31, 43 (1st Cir. 2013). But the First Circuit regularly has used variance analysis to review convictions where the evidence supports only a conspiracy narrower than the factual allegations of the Indictment charge, and, if there is no harmful prejudice from the variance, has allowed a guilty verdict to stand. Compare, e.g., Monserrate-Valentin; Franco-Santiago (conviction reversed, although based not on variance but on statute of limitations); United States v. Mubayyid, 658 F.3d 35, 41 (1st Cir. 2011); with United

States v. Glenn, 828 F.2d 855, 858-59 (1st Cir. 1987) (finding harmful prejudice as to one defendant and not as to another defendant).  Therefore, confronted with a Rule 29 motion at the close of the government's case, if the trial judge concludes that the evidence is not sufficient to sustain the multiple-object conspiracy as charged, the trial judge must decide whether there is sufficient evidence of a narrower conspiracy and, if so, whether the resulting variance between the charge and the evidence is prejudicial.  If the judge concludes that the variance is *not* prejudicial, the question remains how to charge the jury concerning the object of the conspiracy.  It would seem that at the very least a multiple conspiracy instruction is in order, which is what the trial judge delivered in Monserrate-Valentin.  In a multiple-object conspiracy case, the Supreme Court suggested going farther: "if the evidence is insufficient to support an alternative legal theory of liability, it would generally be preferable for the court to give an instruction removing that theory from the jury's consideration." Griffin v. United States, 502 U.S. 46, 60 (1991). But Griffin went on to say that failing to do so was not reversible error where there was evidence to support conviction as to one object of the conspiracy.  Id.  In cases where there is a very close question on the sufficiency of the evidence for the multiple-object conspiracy charged, a trial judge may want to consider an interrogatory for the jury.  Id. at 61 (Blackmun, J., concurring).  However, it is very difficult to square the multiple-object conspiracy statements in Monserrate-Valentin, Franco-Santiago, and Morrow with, for example, a case like United States v. Munoz-Franco, 487 F.3d 25, 46 (1st Cir. 2007), where the First Circuit approved a district court denial of a Rule 29 motion for acquittal where the district court ruled that there was enough evidence with respect to *one* objective of a conspiracy and did not review the evidence as to the other objectives and the First Circuit said that it "agree[d] with the district court's assessment" without conducting a variance analysis. (Munoz-Franco cited Griffin as authority for its decision.)  In sum, confident guidance on this topic is not possible.

(7)     The definition of "willfully" comes from United States v. Monteiro, 871 F.2d 204, 208-09 (1st Cir. 1989).  The court, however, is "not obligated to mention 'willfulness' as an independent requirement," as long as the charge otherwise adequately conveys that "'the requisite intent' needed for a conspiracy conviction is that 'the defendant intended to join in the conspiracy and intended the substantive offense to be committed.'"  Gonzalez, 570 F.3d at 24; see also United States v. Brown, 669 F.3d 10, 20 n.16 (1st Cir. 2012); United States v. Paz-Alvarez, 799 F.3d 12, 30 (1st Cir. 2015) (court noted that the jury instructions "might have been clearer if the court had adopted" the dual intent language included in the pattern instruction).  "[T]he Government must establish that the defendant had knowledge *of the crime charged*.  Showing that the defendant had knowledge of generalized illegality is insufficient . . . ."  United States v. Burgos, 703 F.3d 1, 10 (1st Cir. 2012) (citing United States v. Pérez-Meléndez, 599 F.3d 31, 43 (1st Cir. 2010)).  In the case of controlled substances, the government need not show that the defendant knew the *specific* controlled substance being distributed.  Id. at 8.  For alternate definitions of "willfully," see United States v. Porter, 764 F.2d 1, 17 (1st Cir. 1985), and United States v. Drape, 668 F.2d 22, 26 (1st Cir. 1982).  Specific intent is preferred.  United States v. Yefsky, 994 F.2d 885, 899 (1st Cir. 1993).  Willful blindness can be used to satisfy the element of knowledge of the conspiracy, but it will not satisfy the requirement of intent to join the conspiracy.  United States v. Lizardo, 445 F.3d 73, 85-86 (1st Cir. 2006).

(8)     "A conspiracy does not automatically terminate simply because the Government, unbeknownst to some of the conspirators, has 'defeat[ed]' the conspiracy's 'object.'"  United

States v. Jimenez Recio, 537 U.S. 270, 274 (2003).  Impossibility is not a defense.  United States v. Giry, 818 F.2d 120, 126 (1st Cir. 1987).

(9)      Withdrawal is not a defense if the conspiratorial agreement has already been made.  United States v. Guevara, 706 F.3d 38, 45-46 (1st Cir. 2013); United States v. Rogers, 102 F.3d 641, 644 (1st Cir. 1996).  But it may be a defense if the withdrawal takes the criminal conduct outside the statute of limitations.  Smith v. United States, 133 S. Ct. 714, 718 (2013).  If so, it is an affirmative defense to be proven by the defendant.  Withdrawal is a "demanding defense requiring affirmative evidence of an effort to defeat or disavow or confess. . . ." United States v. Belanger, 890 F.3d 13, 31 (1st Cir. 2018) (quoting United States v. Potter, 463 F.3d 9, 20 (1st Cir. 2006) (citation omitted)).  "Allocating to a defendant the burden of proving withdrawal does not violate the Due Process Clause." Smith, 133 S. Ct. at 719.

(10)     There must be at least two conspirators.  "[A] conspiracy conviction is not possible if the defendant conspired only with government agents or informants." United States v. Nelson-Rodriguez, 319 F.3d 12, 39 (1st Cir. 2003) (describing the statement as "true" but "inapplicable" in that case); accord Paret-Ruiz, 567 F.3d at 6; United States v. Rodríguez-Soler, 773 F.3d 289, 293 (1st Cir. 2014) ("conspiracy member need not know all his fellow coconspirators" (emphasis original)).  In a Mann Act case, "[t]here is an inherent policy judgment in the [statute] not to prosecute women who do no more than consent to being transported across state lines for the purpose of prostitution." United States v. Footman, 215 F.3d 145, 151 (1st Cir. 2000).  If that is all there is, the woman is a victim, not a co-conspirator.  "But that policy simply does not apply when the women assume roles in running the business." Id.  "[T]he issue is whether she agreed to further the conspiracy and took steps to do so, beyond her working as a prostitute herself and crossing state lines." Id.

(11)     If the record supports it, the defendant is entitled to an instruction "that a buyer and seller in a single drug transaction are not invariably part of a drug conspiracy.  The classic example is a single sale for personal use and without prearrangement." United States v. Martinez-Medina, 279 F.3d 105, 120 (1st Cir. 2002) (citing United States v. Moran, 984 F.2d 1299, 1302-04 (1st Cir. 1993)).  "[A] single drug sale, without more, does not establish a conspiracy.  But . . . '[e]ven a single sale for resale, embroidered with evidence suggesting a joint undertaking between buyer and seller, could suffice.'" United States v. Gomes, 376 F.3d 42, 45 (1st Cir. 2004) (citations omitted).  "A buyer-seller instruction is appropriate only if the record, when viewed in the light most favorable to the defendant's theory of the case, reasonably supports the conclusion that the defendant was a mere purchaser of drugs for personal use and not an active participant in the conspiracy." United States v. Mitchell, 596 F.3d 18, 24 (1st Cir. 2010) (citing United States v. Rodriguez, 858 F.2d 809, 812 (1st Cir. 1988)).

(12)     On a charge of a RICO conspiracy to murder thirteen named individuals, the trial judge charged that "the government must show that the defendant . . . .conspired or agreed to murder at least one of the 13 named individuals and that at the time he agreed to the murder . . . defendant also had foresight or knowledge of the much broader scope of the conspiracy."  The First Circuit declined to decide whether the jury must be unanimous on whom the defendant conspired to murder.  United States v. Marino, 277 F.3d 11, 32 (1st Cir. 2002).  The First Circuit has also not decided whether there must be unanimity on at least one overt act.  The Second Circuit says that

there is no such requirement and discusses cases from other circuits. United States v. Kozeny, 667 F.3d 122, 130-32 (2d Cir. 2011) (8th and 9th Circuits approved jury instruction that required unanimous agreement in the overt act, but did not analyze the issue; 5th and 7th Circuits hold that jury need not unanimously agree on the specific overt act).

(13)   See Comment (2) to Instruction 4.21.841(a)(1)A concerning enhanced penalties for drug quantity.  "The quantity of drugs is not an element of conspiracy under § 846, nor is it an element of the underlying controlled substances offense under § 841(a)(2)."  United States v. González-Vélez, 466 F.3d 27, 35 (1st Cir. 2006).  "[T]he drug quantity that determines the maximum sentence for a drug conspiracy charge under § 846 is the *conspiracy-wide* quantity. . . ."  Id. at 35 n.8.

(14)   For a § 371 conspiracy to assault a federal officer (§ 111), the conspirators need not know that the victim was a federal officer.  United States v. Feola, 420 U.S. 671, 684 (1975).

(15)   The First Circuit has recognized in dicta that "[f]ederal law allows for the crime of aiding and abetting a conspiracy."  Marino, 277 F.3d at 29-30 (observing that "[a]iding and abetting liability is inherent in every federal substantive crime," including conspiracy (citations omitted)). See also United States v. Rodriguez, 609 Fed. Appx. 8 (1st Cir. 2015); United States v. Oreto, 37 F.3d 739, 751 (1st Cir. 1994) ("[M]ost if not all courts to consider the issue have held that a defendant may be convicted of aiding and abetting a conspiracy.") (affirming a trial court's instruction that a jury could find a pattern of racketeering activity if the defendants "committed *or* aided and abetted the commission of at least two of the specified racketeering acts").  The First Circuit has not enumerated the elements of aiding and abetting a conspiracy, but the Seventh Circuit has stated that it will affirm such a conviction "if the evidence shows [the defendant] knew of the . . . conspiracy, intended to further its success, and contributed at least one act of affirmative assistance," United States v. Irwin, 149 F.3d 565, 570 (7th Cir. 1998) (citations omitted). The Ninth Circuit recognizes two separate theories of establishing aiding and abetting a conspiracy: aiding and abetting an existing conspiracy and aiding and abetting the formation of a conspiracy. See United States v. Portac, Inc., 869 F.2d 1288, 1293 (9th Cir. 1989).

(16)   A less serious conspiracy can be a lesser included offense of a similar but greater conspiracy. United States v. Boidi, 568 F.3d 24, 28-29 (1st Cir. 2009) (holding that conspiracy to possess a controlled substance is a lesser included offense of conspiracy to possess with intent to distribute).  "[A] defendant is entitled to [a lesser included offense] instruction where (1) the lesser offense is 'included' in the offense charged, (2) a contested fact separates the two offenses, and (3) 'the evidence would permit a jury rationally to find [the defendant] guilty of the lesser offense and acquit him of the greater.'"  Id. at 27 (citations omitted).  If requested, an instruction should be crafted accordingly.  see Instruction 4.21.841(a)(1)(A) cmt.15.

(17)   On "mere presence," the First Circuit has said that the following instruction is "an entirely accurate recitation of First Circuit case law that more than adequately explained the concept to the jury":

> Mere presence at the scene of a crime is not alone enough, but you may consider it among other factors.  Intent may be inferred from the surrounding circumstances.

. . . .

> [M]ere presence at the scene of a crime, or merely knowing that a crime is being committed or is about to be committed, is not sufficient conduct to find the defendant committed that crime. However, the law recognizes a difference between mere presence and culpable presence in the context of drug trafficking activities. While mere presence is not sufficient to base criminal charges, a defendant's presence at the point of a drug sale taken in light of attendant circumstances can constitute strong evidence of complicity.  Thus[,] you must evaluate the circumstances of this case in order to determine the quality of the defendant's presence at a location where drugs are found. This will assist you in determining whether the defendant was merely present or culpably present.

United States v. Verdugo, 617 F.3d 565, 579-80 & n.3 (1st Cir. 2010).

**4.18.371(2)**               **Pinkerton** Charge

[Updated: 10/5/12]

There is another method by which you may evaluate whether to find [defendant] guilty of the substantive charge in the indictment.

If, in light of my instructions, you find beyond a reasonable doubt that [defendant] was guilty on the conspiracy count (Count ___), then you may also, but you are not required to, find [him/her] guilty of the substantive crime charged in Count ___, provided you find beyond a reasonable doubt each of the following elements:

> First, that someone committed the substantive crime charged in Count ___;

> Second, that the person you find actually committed the substantive crime was a member of the conspiracy of which you found [defendant] was a member;

> Third, that this co-conspirator committed the substantive crime in furtherance of the conspiracy;

> Fourth, that [defendant] was a member of this conspiracy at the time the substantive crime was committed and had not withdrawn from it; and

> Fifth, that [defendant] could reasonably have foreseen that one or more of [his/her] co-conspirators might commit the substantive crime.

If you find all five of these elements to exist beyond a reasonable doubt, then you may find [defendant] guilty of the substantive crime charged, even though [he/she] did not personally participate in the acts constituting the crime or did not have actual knowledge of them.

If, however, you are not satisfied as to the existence of any one of these five elements, then you may not find [defendant] guilty of the particular substantive crime unless the government proves beyond a reasonable doubt that [defendant] personally committed that substantive crime, or aided and abetted its commission.

## Comment

(1)      This instruction is adapted from Sand, et al., Instruction 19-13.  The instruction implements the rule laid down in Pinkerton v. United States, 328 U.S. 640 (1946).  The instruction can be given even though the indictment does not charge vicarious liability.  See United States v. Vázquez-Castro, 640 F.3d 19, 24 (1st Cir. 2012); United States v. Sanchez, 917 F.2d 607, 612 (1st Cir. 1990).

(2)      The model instruction omits the penultimate paragraph of Sand, et al., Instruction 19-13.  That paragraph attempts to explain the reason for the Pinkerton rule, namely that co-conspirators act as agents of one another and therefore are liable for each other's acts.  The paragraph seems to

fall into an area more appropriate for argument, preemptively addressing possible juror concerns about the fairness of a rule of vicarious liability. Such an explanation may be fair ground for closing argument, but it seems out of place in the court's charge.

If a court is inclined to include such a paragraph, it should consider rewording the Sand charge, which reads, "all of the co-conspirators must bear criminal responsibility for the commission of the substantive crimes." The use of "must" seems inconsistent with the principle that the jury can—but is not required to—hold a defendant vicariously liable on a Pinkerton theory.

(3)     The instruction requires that the substantive crime be committed while the defendant is a member of the conspiracy. There is no vicarious liability for acts committed before one joins a conspiracy, United States v. O'Campo, 973 F.2d 1015, 1021 (1st Cir. 1992) (explaining the requirement of contemporaneous participation: "[a]n individual cannot . . . be held reasonably to have 'foreseen' actions which occurred prior to his entrance in the conspiracy"), nor for acts committed after a true withdrawal from the conspiracy. United States v. Rogers, 102 F.3d 641, 644 (1st Cir. 1996) (stating that withdrawal "may insulate [a defendant] from Pinkerton liability for substantive crimes of others that occur after his withdrawal"); United States v. Munoz, 36 F.3d 1229, 1234 (1st Cir. 1994) (stating that the government's burden included proving that co-conspirators' acts were committed "at a time when [the defendant] was still a member of the conspiracy," but affirming the conviction on the grounds that there was no evidence of affirmative withdrawal).

(4)     The theory of Pinkerton liability must not be confused with aider and abettor liability. The latter theory requires proof of a higher mental state, Vázquez-Castro, 640 F.3d at 24; United States v. Collazo-Aponte, 216 F.3d 163, 196 (1st Cir. 2000), vacated on other grounds, 532 U.S. 1036 (2001); United States v. Shea, 150 F.3d 44, 50 (1st Cir. 1998), abrogated on other grounds by United States v. Mojica-Baez, 229 F.3d 292 (1st Cir. 2000), but has a "broader application": it can apply to acts that are not necessarily done pursuant to an agreement between the perpetrator and the defendant. Nye & Nissen v. United States, 336 U.S. 613, 620 (1949). Nevertheless, an instruction can be given on both theories, even if Pinkerton liability is not mentioned in the indictment, so long as the defendant has fair notice. Vázquez-Castro, 640 F.3d at 24-25.

(5)     Although the First Circuit has acknowledged the view in other circuits that the Pinkerton charge should not be given in "marginal case[s]" because of the risk that the jury will draw the inverse of the Pinkerton inference, i.e., the jury will hold the defendant vicariously liable for a conspiracy merely because the government shows that others have committed numerous substantive offenses, Sanchez, 917 F.2d at 612 n.4 (citing United States v. Sperling, 506 F.2d 1323, 1341-42 (2d Cir. 1974)), the First Circuit seems skeptical of the alleged risk. See United States v. Wester, 90 F.3d 592, 597 (1st Cir. 1996) (rejecting a defendant's argument that a Pinkerton instruction was improper because when various substantive offenses are in issue and the government concentrates its proof on the substantive offenses rather than the conspiracy, there is undue risk that the jury will draw the inverse of the Pinkerton inference, stating "We agree neither with the premise nor the conclusion" and that dealing with such a "complication" is "well within" a jury's ability); see also United States v. Newell, 658 F.3d 1, 19 (1st Cir. 2011). The First Circuit does say that a Pinkerton instruction "should not be given as a matter of course." Vázquez-Castro, 640 F.3d at 25 (quoting Sanchez, 917 F.2d at 612 n.4).

(6)    <u>United States v. Hansen</u>, 434 F.3d 92, 104 (1st Cir. 2006), refers approvingly to an instruction that includes "emphasis that the jury was obligated to find each element of <u>Pinkerton</u> beyond a reasonable doubt."

**4.18.371(3)**          **Conspiracy to Defraud**

[New: 5/21/16]

[Defendant] is accused of conspiring to defraud the United States by [*e.g.*, impeding the Internal Revenue Service from ascertaining, computing, assessing and collecting federal income taxes]. It is a federal crime to conspire to defraud the United States.

For you to find [defendant] guilty of conspiracy, you must be convinced that the government has proven each of the following things beyond a reasonable doubt:

> First, that the agreement specified in the Indictment, and not some other agreement or agreements, existed between at least two people to defraud the United States, or one of its agencies or departments, by dishonest means as charged in the Indictment.

> Second, that [defendant] willfully joined in that agreement; and

> Third, that one of the conspirators committed an overt act during the period of the conspiracy in an effort to further the purpose of the conspiracy.

The phrase "to defraud" includes cheating the government out of money or property and interfering with or obstructing lawful government functions by deceit, craft, trickery, or means that are dishonest. It is not necessary that the government actually suffer property or pecuniary loss.

A conspiracy is an agreement, spoken or unspoken. The conspiracy does not have to be a formal agreement or plan in which everyone involved sat down together and worked out all the details.

But the government must prove beyond a reasonable doubt that those who were involved shared a general understanding about the agreement to defraud the United States. Mere similarity of conduct among various people, or the fact that they may have associated with each other or discussed common aims and interests does not necessarily establish proof of the existence of a conspiracy, but you may consider such factors.

To act "willfully" means to act voluntarily and intelligently and with the specific intent to defraud the United States—that is to say, with bad purpose, either to disobey or to disregard the law—not to act by ignorance, accident or mistake. The government must prove two types of intent beyond a reasonable doubt before [defendant] can be said to have willfully joined the conspiracy: an intent to agree and an intent, whether reasonable or not, to defraud the United States. Mere presence at the scene of a crime is not alone enough, but you may consider it among other factors. Intent may be inferred from the surrounding circumstances. The government does not have to prove that [defendant] knew that [his/her] conduct was illegal.

Proof that [defendant] willfully joined in the agreement must be based upon evidence of [his/her] own words and/or actions. You need not find that [defendant] agreed specifically to or knew about all the details of the conspiracy to defraud the United States, or knew every other co-conspirator or that [he/she] participated in each act of the agreement or played a major role, but the government must prove beyond a reasonable doubt that [he/she] knew the essential features and general aims

of the venture.  Even if [defendant] was not part of the agreement at the very start, [he/she] can be found guilty of conspiracy if the government proves that [he/she] willfully joined the agreement later.  On the other hand, a person who has no knowledge of a conspiracy, but simply happens to act in a way that furthers some object or purpose of the conspiracy, does not thereby become a conspirator.

An overt act is any act knowingly committed by one or more of the conspirators in an effort to accomplish some purpose of the conspiracy.  Only one overt act has to be proven.  The government is not required to prove that a [particular] defendant personally committed or knew about the overt act.  It is sufficient if one conspirator committed one overt act at some time during the period of the conspiracy.

The government does not have to prove that the conspiracy succeeded or was achieved.  The crime of conspiracy is complete upon the agreement to defraud the United States and the commission of one overt act.


## Comments

(1)      This type of conspiracy is sometimes known as a Klein conspiracy.  United States v. Goldberg, 105 F.3d 770, 773 (1st Cir. 1997), citing United States v. Klein, 247 F.2d 908 (2d Cir. 1957).  "Such conspiracies to defraud are not limited to those aiming to deprive the government of money or property, but include conspiracy to interfere with government functions."  Goldberg, 105 F.3d at 773. "[T]he fraud has to be a *purpose* or *object* of the conspiracy, and not merely a foreseeable consequence of the conspiratorial scheme."  Id. (emphasis in original).  A conspiracy may have multiple purposes and the fraud need not be the primary purpose, but it must be "a" purpose and not "merely a foreseeable effect of joint action taken for other reasons."  Id. at 774.  Unlike conspiracy charges under the mail and wire fraud statutes where the conspirators need not know the victim's identity, conspiracy to defraud requires a specific target—the United States government or one of its agencies.  United States v. Tum, 707 F.3d 68, 76-77 (1st Cir. 2013).  A conspiracy to defraud the IRS may present unique problems of "purpose" or "knowledge."  Goldberg, 105 F.3d at 774.

(2)      The definition of "to defraud" comes from the Supreme Court decision in Hammerschmidt v. United States, 265 U.S. 182, 188 (1924), construing the statutory language, "[i]f two or more persons conspire . . . to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy. . . ."  See also United States v. Morosco, 822 F.3d 1, 6 (1st Cir. 2016) (court upheld willfulness instruction and affirmed that the defendant did not have to know his conduct constituted a crime).

(3)      United States v. Tarvers, 833 F.2d 1068, 1075 (1st Cir. 1987), states that a section 371 conspiracy to defraud "does not require that the means used to achieve the unlawful goal of the conspiracy be unlawful."  There is also no need "to prove that the conspirators were aware of the criminality of their objective."  United States v. Khalife, 106 F.3d 1300, 1303 (6th Cir. 1997) (quoting United States v. Collins, 78 F.3d 1021, 1038 (6th Cir. 1996)).

(4)     In United States v. Hurley, 957 F.2d 1, 4 (1st Cir. 1992), the First Circuit said that for a conspiracy to defraud, "the government must furnish sufficient evidence of three essential elements:  an agreement, the unlawful objective of the agreement, and an overt act in furtherance of the agreement."  The court did not speak to whether the "unlawful objective" must itself be a separate crime.  Id.  However, several circuits have opined that "the impairment or obstruction of a governmental function contemplated by section 371's ban on conspiracies to defraud need not involve the violation of a separate statute."  United States v. Rosengarten, 857 F.2d 76, 78 (2d Cir. 1988); accord Khalife, 106 F.3d at 1303 ("A conviction under § 371 . . . does not require that the government prove a violation of a separate substantive statute." (quoting United States v. Jackson, 33 F.3d 866, 870 (7th Cir. 1994))); United States v. Caldwell, 989 F.2d 1056, 1059 (9th Cir. 1993) ("[n]either the conspiracy's goal nor the means used to achieve it need to be independently illegal.").

(5)     United States v. Tarvers, 833 F.2d 1068 (1st Cir. 1987), suggests that in a section 371 conspiracy, where the defendant(s) attempted to launder money to conceal other criminal activity, the government need not prove: (i) that taxes had not been paid; (ii) that the primary goal of the conspiracy was to evade taxes; or (iii) that the conspirators understood the tax consequences of their activities.  Tarvers, 833 F.2d at 1075.

(6)     A willful blindness instruction cannot be used on the element of intent to agree; however, it can be used on the element of knowledge of the object of the conspiracy.  United States v. Lizardo, 445 F.3d 73, 85-86 (1st Cir. 2006).

(7)     Consult also the comments to Instruction 4.18.371(1) for provisions of a conspiracy charge that are common to both conspiracy to commit a crime and conspiracy to defraud the United States.

(8)     It is unnecessary to give a specific unanimity instruction on the means used to carry out the fraudulent scheme.  United States v. LaPlante, 714 F.3d 641, 647 (1st Cir. 2013).

**4.18.472**              **Possession of Counterfeit Currency,**
                         **18 U.S.C. § 472**

[Updated: 2/5/14]

[Defendant] is charged with possessing [passing] counterfeit currency with the intent to defraud. It is against federal law to possess [pass] counterfeit currency with the intent to defraud. For you to find [defendant] guilty of this crime, you must be convinced that the government has proven each of these things beyond a reasonable doubt:

      <u>First</u>, that the currency possessed [passed] was counterfeit;

      <u>Second</u>, that [defendant] intended to use the counterfeit currency to defraud; and

      <u>Third</u>, that [defendant] [knowingly] possessed [passed] the counterfeit currency.

Currency is counterfeit if it is calculated to deceive an honest, sensible and unsuspecting person using the observation and care ordinarily used when dealing with a person supposed to be upright and honest.

Counterfeit currency does not have to be an artistic triumph or so good an imitation as to baffle an expert, or even be entirely complete.

Fraudulent intent may be inferred from surrounding circumstances or circumstantial evidence and need not be proven directly.

The term "defraud" means to deceive another in order to obtain money or property.

The term "possess" means to exercise authority, dominion or control over something. The law recognizes different kinds of possession.

["Possession" includes both actual and constructive possession. A person who has direct physical control of something on or around his or her person is then in actual possession of it. A person who is not in actual possession, but who has both the power and the intention to exercise control over something is in constructive possession of it. Whenever I use the term "possession" in these instructions, I mean actual as well as constructive possession.]

["Possession" [also] includes both sole possession and joint possession. If one person alone has actual or constructive possession, possession is sole. If two or more persons share actual or constructive possession, possession is joint. Whenever I have used the word "possession" in these instructions, I mean joint as well as sole possession.]

["Knowingly" means that the act was done voluntarily and intentionally and not because of mistake or accident.]

## Comment

(1)      This instruction is based on United States v. Mousli, 511 F.3d 7, 14-16 (1st Cir. 2007).

(2)      "[A] bogus document cannot be considered a counterfeit unless it possesses enough verisimilitude to deceive an ordinary person. . . ."  United States v. Gomes, 969 F.2d 1290, 1293 (1st Cir. 1992) (18 U.S.C. § 408(g)(3) "counterfeit social security card").

(3)      Mousli, 511 F.3d at 16:

> The absence of one kind of evidence, a high degree of likeness, does not prevent proof by other means of intent to defraud. . . . [T]he jury could infer that [defendant] produced the bills because they were found in the vicinity of his printer and one of the bills was incomplete.  The number and variety of bills also suggest that [defendant] was engaged in an ongoing effort to produce and refine fake currency with the intent of using it.  All of these facts taken together were sufficient for a reasonable jury to infer that [defendant] had the intent to defraud.

For additional use of surrounding circumstances to demonstrate intent to defraud, see United States v. Chodor, 479 F.2d 661, 662-63 (1st Cir. 1973) (18 U.S.C. § 472-74).

(4)      Strictly speaking, it is probably not necessary to add "knowingly" to the third element, because the mens rea of the second element (intent to defraud) should encompass it.  The statute does not include the word, and Mousli does not include "knowingly" in its list of elements.  511 F.3d at 14.  But there also seems no harm in including it, and it may avoid a jury question.

(5)      In United States v. Silva, 742 F.3d 1, 5 (1st Cir. 2014), the First Circuit approved the following instruction by Judge McAuliffe on intent to defraud:

> Because it is impossible to know a person's intentions or subjective beliefs, the government need not directly prove the defendant's intent to defraud another person.  Rather, it may prove his intent by circumstantial evidence.  That is to say, you may infer the defendant's intent from the surrounding facts and circumstances.  So, for example, in determining whether the defendant had the requisite intent to defraud, you may consider things such as whether he possessed a substantial number and/or variety of counterfeit Federal Reserve Notes.  You may also consider whether those counterfeit Federal Reserve Notes were of such a quality that they would be likely to be accepted in a transaction since the more closely counterfeit Notes resemble genuine currency, the more likely you might find that the defendant intended to use those Notes fraudulently to receive goods or services.

The court said that the instruction was "entirely accurate" and "accorded with the recognized legal prerogative to incorporate available evidence into jury instructions so as to clarify the governing legal standard for the jury."  Id. at 11.

**4.18.641**          **Theft of Government Money or Property,**
                  **18 U.S.C. § 641**

[Updated: 7/24/12]

[Defendant] is charged with theft of government money [property].  For you to find [defendant] guilty of this offense, you must be convinced that the government has proven each of these things beyond a reasonable doubt:

>       First, that the money [property] described in the indictment belonged to the United States [and that the property had an economic value at the time charged];

>       Second, that the defendant knowingly and willfully stole or converted the money [property] to the defendant's own use or the use of another person; and

>       Third, that the defendant did so with the intent to deprive the United States of the use or benefit of the money [property].

It is not necessary for the United States to prove that the defendant knew that the government owned the money [property] at the time of the wrongful taking.

To "steal" or "convert" means to take money [property] belonging to another with intent to deprive the owner of its use or benefit either temporarily or permanently.

If you find the defendant guilty of this offense, you will also have to determine whether the defendant stole more than $1,000 in total [property worth more than $1,000 in total].

## Comment

(1)      "[C]onviction under 18 U.S.C. § 641 requires proof that a property interest of the United States was invaded," United States v. Forcellati, 610 F.2d 25, 30 (1st Cir. 1979) (citation omitted), by embezzlement, theft, purloinment, or knowing conversion, 18 U.S.C. § 641.  A property interest of the United States can be "any record, voucher, money, or thing of value . . . or any property made or being made under contract for the United States."  18 U.S.C. § 641.  Federal grant money or property remains a thing of value to the United States within the meaning of § 641, notwithstanding prior transfer to a local administrator, if the federal government "exercises supervision and control over the funds and their ultimate use."  United States v. McKay, 274 F.3d 755, 758 (2d Cir. 2001) (citation omitted).  To prove "supervision and control," the government can show federal regulations governing the handling of the money or property.  Id.  A defendant need not know that he or she stole property belonging to the government.  United States v. Rehak, 589 F.3d 965, 974 (8th Cir. 2009) (government ownership is merely jurisdictional) (collecting cases).

(2)      Value is an element of 18 U.S.C. § 641.  See United States v. García-Pastrana, 584 F.3d 351, 369 (1st Cir. 2009); United States v. Ligon, 440 F.3d 1182, 1184 (9th Cir. 2006) ("Regardless of whether the government charges a felony or a misdemeanor . . . [it] must prove that the property

stolen had 'value.'" (citation omitted)).  "Value" is specifically defined in the statute to include "face, par, or market value, or cost price, either wholesale or retail, whichever is greater."  18 U.S.C. § 641.  Theft of $1,000 or less, or of property with a value of $1,000 or less, in the aggregate, combining amounts from all the counts for which a defendant is convicted, makes the crime a misdemeanor.  Id.

(3)      "The statute . . . does not require a showing that the United States was prejudiced.  It merely requires the government to show that a 'thing of value of the United States' has been knowingly received, concealed or retained by the accused with improper intent. . . ." United States v. Torres Santiago, 729 F.2d 38, 40 (1st Cir. 1984); see also United States v. Herrera-Martinez, 525 F.3d 60, 64 (1st Cir. 2008) (government not required to prove loss).

(4)      According to Herrera-Martinez, 525 F.3d at 63-64, a requirement that the government prove asportation (that the defendant carried property away) would improperly limit the statute to theft of tangible property, and the statute plainly applies to intangible property such as information. See 18 U.S.C. § 641 ("any record, voucher, money, or thing of value"); United States v. Howard, 30 F.3d 871, 876 (7th Cir. 1994) ("Intangible property may unquestionably belong to the government.").

(5)      United States v. Venti, 687 F.3d 501, 504-505 (1st Cir. 2012):

> The precise value of the property stolen is not a necessary element of 18 U.S.C. § 641. . . .  The evidence need only show that the purloined item be a "thing of value."  18 U.S.C. § 641 (prohibiting the theft of a "thing of value"); see United States v. Donato-Morales, 382 F.3d 42, 49 (1st Cir. 2004) (holding that the evidence at trial was sufficient for the jury to conclude that the defendant intended to steal a "thing of value" even without direct evidence that the defendant knew the item's specific value); United States v. Torres Santiago, 729 F.3d 38, 40 (1st Cir. 1984) (holding that § 641 "merely requires the government to show that a thing of value of the United States has been knowingly received, concealed, or retained by the accused with the proper intent.").

## 4.18.656        Misapplication or Embezzlement of Bank Funds,
## 18 U.S.C. § 656

[Updated: 12/5/03]

[Defendant] is charged with the illegal [misapplication] [embezzlement] of bank funds.  It is against federal law for a bank employee to [misapply] [embezzle] bank funds.  For you to find [defendant] guilty of this crime, you must be convinced that the government has proven each of these things beyond a reasonable doubt:

First, that [defendant] was an [officer; director; agent; employee] of [name of bank];

Second, that [name of bank] was [bank's relationship to federal jurisdiction];

Third, that [defendant] [willfully misapplied][embezzled] bank funds exceeding $1,000.

[To prove that [defendant] willfully misapplied funds, the Government must prove two things: that [defendant] wrongfully used the bank's funds, and that [defendant] intended to injure or defraud the bank.  To "defraud" means to cause the bank, through consciously dishonest means, to part with its funds.]

[To prove that [defendant] "embezzled" funds, the Government must prove three things:  (1) that initially [defendant] was entrusted with or otherwise lawfully possessed the bank's funds; (2) that [defendant] wrongfully took or used those funds; and (3) that [defendant] intended to injure or defraud the bank.  To "defraud" means to cause the bank, through consciously dishonest means, to part with its funds.]

## Comment

(1)     "Courts have struggled to give precise definition to the crime of misapplication, consistently noting that 'the problem that has confronted and perplexed the courts is that there is no statutory definition or common law heritage that gives content to the phrase "willfully misapplies."'  These uncertain origins have posed a challenge to courts attempting to distinguish bad judgment from bad conduct that is illegal.  Nevertheless, in Wester, we recently discussed the two notions that underlie the crime of misapplication:  one relating to conduct, *i.e.*, wrongful use of bank funds, the other focusing on an intent to injure or defraud a bank.  The government cannot prove its claim of misapplication without establishing both elements.   The interrelationship between these elements is subtle, given that 'the same facts can easily be the basis for deeming the conduct to be wrongful and the intent fraudulent.'"  United States v. Blasini-Lluberas, 169 F.3d 57, 62-63 (1st Cir. 1999) (quoting United States v. Wester, 90 F.3d  592, 595  (1st Cir. 1996)) (footnotes omitted).  The reference to intent to *injure* the bank now seems questionable in light of the definition of defraud under 18 U.S.C. § 1344 in United States v. Kenrick, 221 F.3d 19, 26-29 (1st Cir. 2000) (en banc).

(2)     In Moore v. United States, 160 U.S. 268, 269 (1895), the United States Supreme Court defined "embezzlement" as "the fraudulent appropriation of property by a person to whom such

property has been intrusted, or into whose hands it has lawfully come."   What makes embezzlement different from larceny is "the fact that the original taking of the property was lawful, or with the consent of the owner . . . ."  <u>Id</u>. at 269-70.  Although the statute does not mention intent to injure or defraud, intent has traditionally been recognized as an element of embezzlement.  <u>E.g.</u>, <u>United States v. Scheper</u>, 520 F.2d 1355, 1357 (4th Cir. 1975).

(3)     If $1,000 or less is taken, the crime is a misdemeanor.  18 U.S.C. § 656.

**4.18.751**            **Escape from Custody, 18 U.S.C. § 751**

[Updated: 10/5/12]

[Defendant] is accused of [escaping; attempting to escape] from [facility] while [he/she] was in federal custody.  It is against federal law to [attempt to] escape from federal custody.  For you to find [defendant] guilty of this crime, you must be convinced that the government has proven each of these things beyond a reasonable doubt:

First, that on [date], [defendant] was in federal custody at [facility];

Second, that [he/she] was in custody because [he/she] had been [e.g., arrested for a felony charge; arrested for a misdemeanor charge; convicted of a crime];

Third, that [he/she] [left; attempted to leave] [facility] without permission; and

Fourth, that [he/she] knew that [he/she] did not have permission to leave.

## Comment

(1)      The nature of the custody must be proven specifically, since the statute provides for dual penalties: escape is a felony if custody was by reason of any conviction or a felony arrest, but only a misdemeanor if custody was by reason of a misdemeanor arrest or for extradition or expulsion. United States v. Vanover, 888 F.2d 1117, 1121 (6th Cir. 1989); United States v. Green, 797 F.2d 855, 858 n.4 (10th Cir. 1986), abrogated on other grounds by United States v Cotton, 535 U.S. 625 (2002); United States v. Edrington, 726 F.2d 1029, 1031 (5th Cir. 1984); United States v. Richardson, 687 F.2d 952, 958 (7th Cir. 1982); see also United States v. Bailey, 444 U.S. 394, 407 (1980) (stating in dictum that prosecution must prove nature of custody to convict under section 751(a)).  The determination of whether an offense underlying an arrest is a felony or misdemeanor is a question of law for the court, but the determination that the defendant was being held by reason of conviction or arrest for a particular crime is a question of fact for the jury.  Richardson, 687 F.2d at 958.

(2)      Custody need not involve physical restraint; the failure to comply with an order that restrains the defendant's freedom may be an escape.  Bailey, 444 U.S. at 413 (holding that failure to return to custody is an "escape" in violation of section 751); United States v. Puzzanghera, 820 F.2d 25, 26 n.1 (1st Cir. 1987); see also 18 U.S.C. §  4082(a) ("The willful failure of a prisoner to remain within the extended limits of his confinement, or to return within the time prescribed . . . shall be deemed an escape [under 18 U.S.C. §§ 751-57].").

(3)      The defense of necessity or duress may be an issue.  On this matter, see Bailey, 444 U.S. at 409-13.

(4)      In United States v. Rosa-Ortiz, 348 F.3d 33, 34-35 (1st Cir. 2003), the First Circuit clarified that § 751(a) does not apply to a defendant in custody solely under a material witness warrant; pursuant to the text of § 751(a), the defendant must have been in custody "by virtue of an arrest on a charge of felony, or conviction of any offense."

**4.18.752**                    **Assisting Escape, 18 U.S.C. § 752**

[Updated: 6/14/02]

[Defendant] is accused of aiding or assisting [prisoner]'s escape from [facility] while [he/she] was in federal custody.  It is against federal law to aid or assist someone else in [escaping; attempting to escape] from federal custody.  For you to find [defendant] guilty of this crime, you must be convinced that the government has proven each of these things beyond a reasonable doubt:

> <u>First</u>, that on [date], [prisoner] was in federal custody at [facility];

> <u>Second</u>, that [prisoner] was in custody because [he/she] had been [e.g., arrested for a felony charge; convicted of a crime];

> <u>Third</u>, that [prisoner] [left; attempted to leave] [facility] without permission;

> <u>Fourth</u>, that [prisoner] knew that [he/she] did not have permission to leave; and

> <u>Fifth</u>, that [defendant] knew that [prisoner] was [escaping; attempting to escape] and intentionally helped [him/her] to do so.

## **Comment**

(1)     <u>See generally</u> Notes to Instruction 4.18.751 for Escape from Custody, 18 U.S.C. § 751.

(2)     Section 752 also makes it an offense to instigate an escape.  If the facts so warrant, the word "instigate" should be added or substituted for "aid or assist" with appropriate grammatical changes.

(3)     The crime of aiding or assisting an escape cannot occur after the escapee reaches temporary safety or a point beyond immediate active pursuit.  <u>United States v. DeStefano</u>, 59 F.3d 1, 4-5 & n.6 (1st Cir. 1995).  At that point, any further assistance can at most constitute harboring or concealing under 18 U.S.C. § 1072.  <u>Id</u>. at 4.

(4)     The government need not prove that the defendant was aware of the <u>federal</u> status of the escaped prisoner.  <u>United States v. Aragon</u>, 983 F.2d 1306, 1310 (4th Cir. 1993); <u>United States v. Hobson</u>, 519 F.2d 765, 769-70 (9th Cir. 1975); <u>cf</u>. <u>United States v. Feola</u>, 420 U.S. 671, 685 (1975) ("The concept of criminal intent does not extend so far as to require that the actor understand not only the nature of his act but also its consequence for the choice of a judicial forum.").

**4.18.875**               **Interstate Communications—Threats, 18 U.S.C. § 875(c)**

[Updated: 6/1/15]

[Defendant] is accused of transmitting a threat in interstate or foreign commerce. It is against federal law to send [transmit] [make] any communication in interstate or foreign commerce that contains any threat to [kidnap] [injure] a person.

For you to find [defendant] guilty of this crime, you must be convinced that the government has proven each of these things beyond a reasonable doubt:

First, that the communication was sent in interstate commerce;

Second, that [defendant] intended to send [transmit] [make] the communication; and

Third, that [defendant] had the purpose of issuing a threat to [kidnap] [injure] a person or the knowledge that the communication would be viewed as such a threat.

It is not necessary that the statement be made face to face. It is also not necessary to prove that [defendant] actually intended to carry out the threat.

**Comment**

(1)      This instruction is based on Elonis v. United States, ___ U.S. ___, 135 S. Ct. 2001 (2015), which makes clear that the defendant must transmit "a communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat." Id. at *11. The Supreme Court in Elonis rejected the lower court's instruction which assessed whether a "true threat" was made from the standpoint of whether a "reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intention to inflict bodily injury or take the life of an individual." Id. at *6. The Court did not decide whether a finding of recklessness would be sufficient.

Because under Elonis the defendant's subjective intent is clearly required as an element, cases such as United States v. Walker, 665 F.3d 212, 226 (1st Cir. 2011); United States v. Nishnianidze, 342 F.3d 6, 14-15 (1st Cir. 2003), and United States v. Whiffen, 121 F.3d 18, 20 (1st Cir. 1997), requiring only objective evidence of the threat, are no longer controlling. Those cases followed United States v. Fulmer, 108 F.3d 1486 (1st Cir. 1997), a case arising under 18 U.S.C. § 115, for its definition of a "true threat." Although the objective standard for assessing whether a communication is a threat is no longer viable, some of the language from these cases may continue to be good law on other issues. United States v. Clemens, 738 F.3d 1, 8 (1st Cir. 2013), confirmed a statement in United States v. Fulmer, 108 F.3d at 1492, that "ambiguous language does not prevent a statement from being a threat." Walker also said that the test "is not whether a communication contains a threat to the addressee." Walker, 665 F.3d 212, 226 (1st Cir. 2011). Instead, the threat may be to someone other than the addressee. Id.

(2)      If the defendant is charged pursuant to 18 U.S.C. § 875(b), the government must prove an additional element: "that the threat was transmitted with the specific intent to extort money or a thing of value."  To act with intent to "extort" means to act with the intent to obtain something of value from someone else, with that person's consent, but induced by the wrongful use of actual or threatened force, violence, or fear. United States v. Anderson, 14 F. App'x 33, 36 (2d Cir. 2001); United States v. Cohen, 738 F.2d 287, 289 (8th Cir. 1984).  The term "thing of value" is used in everyday meaning and is not limited to money or tangible things with an identifiable price.  United States v. Fagan, 821 F.2d 1002, 1015 n.9 (5th Cir. 1987), cert. denied, 484 U.S. 1005 (1988).  It is not necessary to prove that the defendant actually succeeded in obtaining the money or other thing of value.

**4.18.922(a)**         **False Statement in Connection With Acquisition of a Firearm,**
                        **18 U.S.C. § 922(a)(6)**

[Updated: 6/16/14]

[Defendant] is charged with making a false statement in connection with trying to buy a [firearm/ammunition], specifically [insert alleged false statement].  It is against federal law to knowingly make a false statement in connection with trying to buy a [firearm/ammunition].  For you to find [defendant] guilty of this crime, you must be convinced that the government has proven each of these things beyond a reasonable doubt:

> First, that [defendant] knowingly made a false statement as charged in the Indictment;

> Second, that at the time [he/she] made the statement, [defendant] was trying to buy a [firearm/ammunition] from a [licensed dealer/licensed importer/licensed manufacturer/ licensed collector]; and

> Third, that the statement was intended to, or likely to, deceive the licensed dealer/licensed importer/licensed manufacturer/licensed collector] about a fact material to the lawfulness of the sale.

The government does not have to prove that [defendant] knew that he/she was violating the law.

A statement is "false" if it is untrue when made.

A false statement is made "knowingly" if the person making it knows that it is false, or demonstrates a reckless disregard for the truth and has a conscious purpose to avoid learning the truth, and is not acting merely by ignorance, accident or mistake.

A fact is "material" if it has a natural tendency to influence or to be capable of influencing the decision of the [licensed dealer/licensed importer/licensed manufacturer/licensed collector] as to whether it is lawful to sell the [firearm/ammunition] to the buyer, regardless of whether the [licensed dealer/licensed importer/licensed manufacturer/licensed collector] actually relies upon the statement.

Intent or knowledge may not ordinarily be proven directly because there is no way of directly scrutinizing the workings of the human mind.  In determining what [defendant] knew or intended at a particular time, you may consider any statements made or acts done or omitted by [defendant] and all other facts and circumstances received in evidence that may aid in your determination of [defendant]'s knowledge or intent.  You may infer, but you certainly are not required to infer, that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted. It is entirely up to you, however, to decide what facts are proven by the evidence received during this trial.

# Comment

(1)     United States v. Currier, 621 F.2d 7, 10 (1st Cir. 1980), stated that section 922(a)(6) "does not require a showing that appellant 'knowingly' violated the law; it simply requires proof that appellant 'knowingly' made a false statement." (citation omitted).  United States v. Edgerton, 510 F.3d 54, 57 (1st Cir. 2007), stated that section 922(a)(6) "requires proof that the defendant knowingly made a false or fictitious statement.  This requirement, however, does not presuppose deceptive intent or even knowledge that one's conduct is unlawful."

(2)     The definition of "knowingly" is different from the customary definition of "knowingly" in Pattern 2.14 for other types of offenses.  It comes from United States v. Wright, 537 F.2d 1144, 1145 (1st Cir. 1976), a case arising under 18 U.S.C. § 922(a)(6).  United States v. Santiago-Fraticelli, 730 F.2d 828, 831 (1st Cir. 1984), emphasized that section 922(a)(6)'s scope is "not limited to situations in which an accused knew he was lying."  "[W]hen a person recklessly fails to ascertain the meaning of the questions contained in Form 4473, and simply answers the questions without regard to whether the answers are truthful," he is acting "knowingly" for purposes of this section.  Id.  Other circuits have upheld similar definitions of "knowingly" in 922(a)(6) cases, see United States v. Sarantos, 455 F.2d 877, 882 (2d Cir. 1972); United States v. Hester, 880 F.2d 799, 803 n.4 (4th Cir. 1989); United States v. Thomas, 484 F.2d 909, 912-914 (6th Cir. 1973).  Although this instruction is closely akin to a "willful blindness" instruction (see Pattern Instruction 2.16), the wording is distinct, and in United States v. Whitney, the First Circuit held that there is no need to give an additional willful blindness instruction.  524 F.3d 134, 138-39 (1st Cir. 2008).

(3)     Section 922 does not require proof that the transaction was in interstate commerce.  The requirement of a  transaction with a licensed dealer is sufficient.  Those dealers' general involvement with interstate commerce is ample to justify federal regulation of even intrastate sales.  United States v. Crandall, 453 F.2d 1216, 1217 (1st Cir. 1972).

(4)     The definition of "material" is modified from United States v. Arcadipane, 41 F.3d 1, 7 (1st Cir. 1994), abrogated in part by United States v. Gaudin, 515 U.S. 506 (1995).  Arcadipane also held that "[m]ateriality in a 'false statement' case is a question of law to be determined by the court."  Arcadipane, 41 F.3d at 7 (interpreting 18 U.S.C. § 1001).  A few months later, evaluating the same statutory provision, the Supreme Court held that materiality is a question for the jury.  Gaudin, 515 U.S. at 522-23.  The pattern reflects this change.  Arcadipane's definition of "material" is still good law.

(5)     If necessary, a definition of "firearm" can be taken from the statute, 18 U.S.C. § 921(a)(3).  In the case of a silencer, the First Circuit has held that there must be either a commercial device designed to be used as a silencer for a firearm, or, in the case of a device not so designed, a purpose to use it as a silencer for a firearm.  United States v. Crooker, 608 F.3d 94, 99 (1st Cir. 2010) (reviewing conviction for silencer for air rifle).

(6)     In Abramski v. United States, ___ U.S. ___, 134 S. Ct. 2259 (2014), the Supreme Court held that a person who buys a gun on someone else's behalf while falsely claiming that it is for himself has committed the crime whether or not the true buyer could have purchased the gun on his own.

**4.18.922(g)**          **Possession of a Firearm or Ammunition in or Affecting Commerce by a Convicted Felon, 18 U.S.C. § 922(g)(1), (4)**

[Updated: 6/21/19]

[Defendant] is charged with possessing [a firearm; ammunition] in or affecting commerce after having been convicted of a crime punishable by imprisonment for more than one year [after having been committed to a mental institution].  It is against federal law for a convicted felon [a person who has previously been committed to a mental institution] to possess [a firearm; ammunition] that was connected with interstate [or foreign] commerce.  For you to find [defendant] guilty of this crime, you must be satisfied that the government has proven each of the following things beyond a reasonable doubt:

> First, that [defendant] has been and knows that he/she has been convicted in any court of [at least one] crime punishable by imprisonment for a term exceeding one year.  I instruct you that the crime of [_____] is such a crime.  [*Alternative:* The parties have stipulated that [defendant] was convicted and knew he/she was convicted of a crime which is punishable by imprisonment for a term exceeding one year.  You are to take that fact as proven.]

> *OR*, that [defendant was previously involuntarily committed to a mental institution and that he/she knew that he/she was so committed.

> Second, that [defendant knowingly possessed the [firearm; ammunition] described in the indictment.  [The term "firearm" means any weapon which will or is designed or may readily be converted to expel a projectile by the action of an explosive.  The term "firearm" also includes the frame or receiver of any such weapon.]  The word "knowingly" means that the act was done voluntarily and intentionally, not because of mistake or accident.

> Third, that the [firearm; ammunition], at any time after it was manufactured, moved from one state to another [or from a foreign country into the United States].  The travel need not have been connected to the charge in the indictment, need not have been in furtherance of any unlawful activity and need not have occurred while [defendant] possessed the [firearm; ammunition].

The government does not have to prove that [defendant] knew that his/her conduct was illegal.

[An "involuntary commitment" occurs when a state judge, pursuant to an application for involuntary admission to a mental hospital, authorizes a law enforcement officer to take a person in to custody and transport him/her to a hospital.]

The term "possess" means to exercise authority, dominion or control over something.  It is not necessarily the same as legal ownership.  The law recognizes different kinds of possession.

[Possession includes both actual and constructive possession.  A person who has direct physical control of something on or around his or her person is then in actual possession of it.  A person who is not in actual possession, but who has both the power and the intention to exercise control

over something is in constructive possession of it.  A person must have actual knowledge of the weapon in order to have constructive possession of it.  Briefness of contact alone does not preclude a finding of possession.  Whenever I use the term "possession" in these instructions, I mean actual as well as constructive possession.]

[Possession [also] includes both sole and joint possession.  If one person alone has actual or constructive possession, possession is sole.  If two or more persons share actual or constructive possession, possession is joint.  Whenever I have used the word "possession" in these instructions, I mean joint as well as sole possession.]

## Comment

(1)	The charge is based on United States v. Bartelho, 71 F.3d 436, 439 (1st Cir. 1995), and Rehaif v. United States, 139 S. Ct. 2191 (2019) (the word "knowingly" found in 18 U.S.C. § 924(a) applies to both the defendant's conduct (i.e., his or her possession of the firearm) and to the defendant's status (i.e., the relevant category of prohibited person as spelled out in § 922(g)).  In Rehaif the Court expressed no view "about what precisely the Government must prove to establish a defendant's knowledge of status in respect to other § 922(g) provisions not at issue." Id. at 2200.

(2)	The definition of "knowingly" as applied to the defendant's conduct is based on United States v. Tracy, 36 F.3d 187, 194-95 (1st Cir. 1994).  Care must be taken, however, for some parts of the firearms statute require proof of willfulness.  See 18 U.S.C. § 924(a)(1)(D).  Willfulness requires proof that the defendant knew the conduct was unlawful.  Bryan v. United States, 524 U.S. 184, 192 (1998).  In United States v. Sabetta, 373 F.3d 75, 81-82 (1st Cir. 2004), the court held that it is unnecessary to define the term "knowingly" because a lay jury can reasonably understand it in a felon-in-possession case.  "However, a person must have actual knowledge of the weapon in order to have constructive possession of it." United States v. Ridolfi, 768 F.3d 57, 62 (1st Cir. 2014).  "Knowledge must be fairly inferrable from the circumstances . . . and mere presence with or proximity to weapons, or association with another who possesses a weapon, is not enough." Id.

(3)	United States v. Rogers, 41 F.3d 25, 29 (1st Cir. 1994), discusses dominion, control, possession and ownership.  United States v. Booth, 111 F.3d 1, 2 (1st Cir. 1997), counsels against defining constructive possession in terms of dominion and control "over the area in which the object is located" and thereby limits United States v. Wight, 968 F.2d 1393, 1398 (1st Cir. 1992).  However, the jury may be told in appropriate circumstances that knowledge could be inferred from control of the area.  See Booth, 111 F.3d at 2.  Ownership is not required, nor is duration of possession.  United States v. Scott, 564 F.3d 34, 39 (1st Cir. 2009).

(4)	Possession of multiple firearms and/or ammunition in one place at one time constitutes only a single offense under 18 U.S.C. § 922(g).  United States v. Verrecchia, 196 F.3d 294, 298 (1st Cir. 1999).  In such a multiple weapons case, no instruction requiring jury unanimity on any particular firearm is required.  Id. at 298-301.  If the "in one place at one time" condition is not satisfied, there may be a unanimity requirement as to the identity of the weapon.  Leahy, 473 F.3d at 410 (not deciding the issue because it was not preserved).  "[If] trial evidence showed that the weapons were so located that a juror might reasonably believe quite different things about the defendant's knowing possession of different guns . . . [t]hen, the question how to construe and apply the 'one place at one time' formula and whether a unanimity instruction ought to be given

would need thoughtful consideration." United States v. Widi, 684 F.3d 216, 223 (1st Cir. 2012). Adding a sentence to the knowing possession instruction might then be advisable, such as "Your finding of possession must be unanimous as to at least one specific firearm or item of ammunition."

(5)     Because possession of multiple weapons is a single offense unless there are separate possessions, the trial judge faced with multiple possession counts must decide whether to: (1) require the government to elect or combine counts before trial; (2) allow multiple counts but require a specific jury finding of separate possessions; or (3) allow multiple counts with no special jury instruction, but make a post-verdict "correction" by not entering judgment of conviction on any multiplicitous counts. Three circuits have made it clear that the jury, not the trial or appellate judges, must find separate possession as a critical element of a multi-count weapons possession conviction. United States v. Frankenberry, 696 F.2d 239, 245 (3d Cir. 1982); United States v. Szalkiewicz, 944 F.2d 653, 654 (9th Cir. 1991); United States v. Valentine, 706 F.2d 282, 294 (10th Cir. 1983). See also United States v. Cunningham, 145 F.3d 1385, 1399 (D.C. Cir. 1998). But see United States v. Walker, 380 F.3d 391, 394-95 (8th Cir. 2004) (holding that possession of a firearm and ammunition are separate offenses even when simultaneous). The Eleventh Circuit has held that it was not plain error for the trial judge to fail to give a separate possession instruction, and upheld conviction on multiple counts because sufficient evidence of separate possession was presented at trial, even though there was no jury finding to that effect. United States v. Bonavia, 927 F.2d 565, 569-71 (11th Cir. 1991). The Sixth Circuit in United States v. Throneburg, 921 F.2d 654, 657 (6th Cir. 1990), explained that the trial judge should exercise his or her discretion to vacate any multiplicitous guilty verdicts, the government in its discretion can decide how many counts to bring, and no jury instruction or finding is required as to separate possessions. A possible instruction is as follows:

> If you have found the defendant guilty on Count I, you may not find [him/her] guilty on Count II unless you also find that the government has proven beyond a reasonable doubt that the firearm and ammunition were acquired at different times or that they were stored in different places.

(6)     United States v. Acosta, 67 F.3d 334, 340 (1st Cir. 1995), supports the broad definition of "commerce." See also United States v. Joost, 133 F.3d 125, 131 (1st Cir. 1998). In United States v. Dixon, 787 F.3d 55, 60-61 (1st Cir. 2015), the First Circuit held that "[s]ection 922(g) requires only that a defendant have possessed a firearm in a state other than the one in which it was manufactured" (citing United States v. Corey, 207 F.3d 84, 88 (1st Cir. 2000)). In United States v. Wilkerson, the First Circuit held that "the evidence that a firearm has traveled at some time in interstate commerce is sufficient to establish a nexus between the firearm and interstate commerce." 411 F.3d 1, 10 (1st Cir. 2005); see also United States v. Weems, 322 F.3d 18, 25 (1st Cir. 2003) (approving an instruction that the government must show that the firearm had "previously traveled in interstate commerce or it previously [had] been transported across State lines, even though it wasn't in the Defendant's possession at the time," as a correct statement of the law after Scarborough v. United States, 431 U.S. 563 (1977)). It is not necessary "that the felon be the one who transported the firearm in interstate commerce." Weems, 322 F.3d at 26.

(7)     The trial judge determines as a matter of law whether a previous conviction qualifies under 18 U.S.C. § 922(g)(1). Bartelho, 71 F.3d at 440. "Any court" "encompasses only domestic, not foreign, convictions." Small v. United States, 544 U.S. 385, 387 (2005). The fact of conviction, however, is for the jury unless it is stipulated, and so too is any factual issue on the restoration of civil rights. Bartelho, 71 F.3d at 440-41. It should be noted that, although the court in Bartelho

found the approach of United States v. Flower, 29 F.3d 530 (10th Cir. 1994), persuasive, 71 F.3d at 440, Flower seems to be in conflict with Bartelho to the extent that it treats a factual dispute concerning restoration of civil rights as a preliminary matter to be resolved by the court prior to admitting the conviction into evidence.  See Flower, 29 F.2d at 535-36.

(8)    An aiding and abetting charge under the statute requires the court to instruct the jury that the aiding and abetting defendant must know the firearm possessor's status as a convicted felon. United States v. Ford, 821 F.3d 63, 74-75 (1st Cir. 2016).

(9)    The First Circuit has decided that a "justification" defense is available in a section 922 prosecution.  United States v. Leahy, 473 F.3d 401, 403 (1st Cir. 2007).

(10)    In United States v. Rehlander, 666 F.3d 45, 50-51 (1st Cir. 2012), and in light of District of Columbia v. Heller, 554 U.S. 570 (2008), the First Circuit abandoned its earlier decision on the treatment of temporary commitments to a mental institution in United States v. Chamberlain, 159 F.3d 656 (1st Cir. 1998).  Rehlander continues to hold that "state nomenclature is not controlling," but holds that "temporary hospitalization attended only by the ex parte procedures of [34-B M.R.S.A.] § 3863" does not satisfy the language "committed to a mental institution" in 18 U.S.C. § 922(g)(4).  666 F.3d at 49.

(11)    The First Circuit has affirmed the refusal to give a "transitory possession as defense" instruction, United States v. Teemer, 394 F.3d 59, 64-65 (1st Cir. 2005), thereby disagreeing with United States v. Mason, 233 F.3d 619, 622-24 (D.C.Cir. 2000).  It also "decline[s] to require that the district court's instruction include 'innocent' possession as a defense."  United States v. Holt, 464 F.3d 101, 107 (1st Cir. 2006), overruled on other grounds by United States v. Rehlander, 666 F.3d 45 (1st Cir. 2012) (overruling Holt on the issue of what constitutes a "commitment," but leaving intact the portion of Holt addressing the requested instructions on possession).  However, Holt left open the possibility that "extraordinary cases might arise where . . . .if the government were foolish enough to prosecute, some caveat might indeed be needed."  464 F.3d at 107.

(12)    In United States v. Baird, 712 F.3d 623, 624 (1st Cir. 2013), a § 922(j) case (receipt or possession of a stolen firearm), the First Circuit held that a defendant was entitled to an innocent possession instruction.  Although the First Circuit stated that its decision did not "represent an endorsement of the precise instruction requested," id. at 633, it also stated that it would "reverse a district court's decision to deny the instruction [which it did in Baird] only if the instruction was . . . substantively correct as a matter of law," id. at 628.  In Baird, the defendant had requested the following instruction:

> Briefness of contact alone does not preclude a finding of possession.  But if you find that [defendant] did not know or have reason to know that the firearm was stolen when he first possessed it and that as soon as he learned or had reason to know that it was stolen he took adequate steps to [get] rid of [it] as promptly as reasonably possible, then you may find that he did not knowingly possess a firearm.

Id. at 626.  Baird declined to decide whether innocent possession is a generally available defense in 922(j) cases, and instead treated this as an "extraordinary" case for which it said, even Teemer and Holt required an innocent possession defense.  ("Here, we hold only that defendants prosecuted under § 922(j) must receive, at minimum, the innocent possession defense afforded by Teemer."  Id. at 630-31.)

**4.18.922(g)(9)**          **Possession of a Firearm By a Person Previously Convicted of a Misdemeanor Crime Of Domestic Violence, 18 U.S.C. § 922(g)(9)**

[New: 12/14/17]

[Defendant] is charged with possessing [a firearm; ammunition] in or affecting commerce after having been convicted of a misdemeanor crime of domestic violence.  It is against federal law for a person convicted of a misdemeanor crime of domestic violence to possess a [firearm; ammunition] that was connected with interstate [or foreign] commerce.  For you to find [defendant] guilty of this crime, you must be satisfied that the government has proven each of the following things beyond a reasonable doubt:

> First, that [defendant] previously has been convicted of [the predicate crime charged in the indictment].

> Second, that at the time of that previous crime [defendant] was that crime victim's [current spouse; former spouse; parent; guardian; shared a child in common with the victim; cohabited with the victim as a spouse, parent or guardian; or was similarly situated to a spouse, parent or guardian of the victim] [choose the relevant relationship(s)]

> Third, that on about [the date charged in the Indictment] [defendant] knowingly possessed the [firearm; ammunition] described in the Indictment.  [The term "firearm" means any weapon which will or is designed or may readily be converted to expel a projectile by the action of an explosive.  The term "firearm" also includes the frame or receiver of any such weapon.]

> Fourth, that the [firearm; ammunition] was connected with interstate [or foreign] commerce.  This means that the [firearm; ammunition], at any time after it was manufactured, moved from one state to another [or from a foreign country into the United States].  The travel need not have been connected to the charge in the Indictment, need not have been in furtherance of any unlawful activity and need not have occurred while [defendant] possessed the [firearm; ammunition].

The word "knowingly" means that the act was done voluntarily and intentionally, not because of mistake or accident. The government does not have to prove that [defendant] knew that his conduct was illegal.

The term "possess" means to exercise authority, dominion or control over something.  It is not necessarily the same as legal ownership.  The law recognizes different kinds of possession.

[Possession includes both actual and constructive possession.  A person who has direct physical control of something on or around his or her person is then in actual possession of it.  A person who is not in actual possession, but who has both the power and the intention to exercise control over something is in constructive possession of it.  A person must have actual knowledge of the [firearm; ammunition] in order to have constructive possession of it.  Briefness of contact alone

139

does not preclude a finding of possession.  Whenever I use the term "possession" in these instructions, I mean actual as well as constructive possession.]

[Possession [also] includes both sole and joint possession.  If one person alone has actual or constructive possession, possession is sole.  If two or more persons share actual or constructive possession, possession is joint.  Whenever I have used the word "possession" in these instructions, I mean joint as well as sole possession.]

## **Comment**

(1)     For comments and cases dealing with possession, mens rea, commerce, etc. see Pattern 4.18.922(g)(1), (4).

(2)     The relationships that qualify as "domestic" are taken from 18 U.S.C. § 921(a)(33)(A)(ii). On the term "cohabited . . . as a spouse," the First Circuit has approved (albeit in a bench trial) consideration of the length of the relationship, shared residence as indicated by spending the night and keeping one's belongings at the residence; intimate relations; expectations of fidelity and monogamy; shared household duties; regularly sharing meals together; joint assumption of child care; providing financial support; moving as a family unit; join recreation and socialization; and recognition of the live-in relationship by family and friends as indicated by visits to the residence. United States v. Costigan, 18 F. App'x 2 at **2 (1st Cir. 2001) (unpublished).

(3)     According to United States v. Castleman, 134 S. Ct. 1405, 1413 (2014), the Taylor categorical approach is used to determine whether the previous conviction meets the "force" requirement of a misdemeanor crime of domestic violence.  Voisine v. United States 136 S. Ct. 2272 (2016), holds that reckless, not just knowing or intentional, conduct is included for the qualifying predicate misdemeanor.  It seems that the judge must make that determination. Likewise, the judge should determine whether it is a qualifying misdemeanor ("Federal, State or Tribal law," according to the statute, 18 U.S.C. § 921(a)(33)(A)(i)) (just as the judge would tell the jury whether a previous crime was a qualifying felony for a felon-in-possession offense).  See also certain exceptions when in the predicate conviction the defendant was uncounseled, denied a right to jury trial, or was later the subject of pardon, expungement or restoration of civil rights.  18 U.S.C. § 921(a)(33)(B).

(4)     United States v. Hayes, 129 S. Ct. 1079 (2009), holds that the domestic relationship need not be a defining element of the predicate misdemeanor, but must be established beyond a reasonable doubt in the 922(g)(9) firearms possession prosecution.

**4.18.922(j)**          **Possession of a Stolen Firearm, 18 U.S.C. § 922(j)**

[New: 6/21/19]

[Defendant] is charged with knowingly possessing a stolen firearm that [is moving in] [has been shipped or transported in] interstate [or foreign] commerce.  It is against federal law to knowingly possess a stolen firearm that [is moving in] [has been shipped or transported in] interstate [or foreign] commerce.  For you to find [defendant] guilty of this crime, you must be satisfied that the government has proven each of the following things beyond a reasonable doubt:

> First, that on about the date charged, [defendant] knowingly possessed the firearm described in the Indictment;

> Second, that at the time [defendant] possessed the firearm, the firearm was stolen and [defendant] knew or had reasonable cause to believe that the firearm was stolen; and

> Third, that the firearm [was moving in] [had been shipped or transported in] interstate [or foreign] commerce.  This means that the firearm, at any time after it was manufactured, moved from another country to the United States and/or from one state to another.  The travel need not have been connected to the charge in the Indictment, need not have been in furtherance of any unlawful activity and need not have occurred while [defendant] possessed the firearm.

The word "knowingly" means that the act was done voluntarily and intentionally, not because of mistake or accident.  The government is not required to show that [defendant] knowingly violated the law.  But it must prove that [defendant] knowingly possessed a firearm that [he/she] knew or had reasonable cause to believe was stolen.

The term "possess" means to exercise authority, dominion or control over something.  It is not necessarily the same as legal ownership.  Briefness of contact alone does not preclude a finding of possession.

The law recognizes different kinds of possession.

[Possession includes both actual and constructive possession.  A person who has direct physical control of something on or around his or her person is then in actual possession of it.  A person who is not in actual possession, but who has both the power and the intention to exercise control over something, is in constructive possession of it.  A person must have actual knowledge of the firearm in order to have constructive possession of it.  Whenever I use the term "possession" in these instructions, I mean actual as well as constructive possession.]

[Possession [also] includes both sole and joint possession.  If one person alone has actual or constructive possession, possession is sole.  If two or more persons share actual or constructive possession, possession is joint.  Whenever I have used the word "possession" in these instructions, I mean joint as well as sole possession.]

The term "firearm" means any weapon that will or is designed or may readily be converted to expel a projectile by the action of an explosive.  The term "firearm" also includes the frame or receiver of any such weapon.

## Comment

(1)     The statute makes it unlawful "to receive, possess, conceal, store, barter, sell, or dispose of any stolen firearm or stolen ammunition."  The instruction can be altered to reflect the particular charge.

(2)     Interstate or foreign commerce is partly defined in 18 U.S.C. § 921(a)(2).  In United States v. Staula, 80 F.3d 596, 605 (1st Cir. 1996), the court held that the interstate commerce requirement could be satisfied before or after the theft. The statute now makes that explicit ("either before or after it was stolen," § 922(j)).

(3)     A broader definition of the term "firearm" is contained in 18 U.S.C. § 921(a)(3).

(4)     For a case finding insufficient evidence "to support the particular finding of knowledge required to support a conviction under section 922(j), *i.e.,* that [the defendant] knew, or had reason to believe, that the weapon . . . had been stolen," see United States v. Ayala-Garcia, 574 F.3d 5, 14-15 (1st Cir. 2009).  In United States v. Figueroa-Ocasio, 805 F.3d 360, 369 (1st Cir. 2015), the court upset a guilty plea where, once the defendant denied knowledge that the firearm was stolen, the judge asked whether "it would be fair to say that [if] there was a possibility when you bought it or wherever you bought it or found it or took it, God knows how it got there, it could have been stolen?" and then accepted the defendant's affirmative answer as adequate mens rea.  The First Circuit said that "thinking it sufficient that there was a mere possibility that [the firearm] had been stolen" is "an alternative notion of mens rea not found in the applicable statute."  Id.

(5)     A defendant "must have actual knowledge of the weapon in order to have constructive possession of it."  United States v. Ridolfi, 768 F.3d 57, 62 (1st Cir. 2014) (citation omitted).

(6)     In United States v. Baird, 712 F.3d 623 (1st Cir. 2013), the First Circuit held that a defendant was entitled to an innocent possession instruction.  In Baird, the defendant had requested the following instruction:

> Briefness of contact alone does not preclude a finding of possession.  But if you find that [defendant] did not know or have reason to know that the firearm was stolen when he first possessed it and that as soon as he learned or had reason to know that it was stolen he took adequate steps to [get] rid of [it] as promptly as reasonably possible, then you may find that he did not knowingly possess a firearm.

Id. at 626.  Although the First Circuit stated that its decision did not "represent an endorsement of the precise instruction requested," id. at 633, it also stated that it would "reverse a district court's decision to deny the instruction [which it did in Baird] only if the instruction was . . . substantively correct as a matter of law," id. at 628.  Baird declined to decide whether innocent possession is a

generally available defense in 922(j) cases, and instead treated this as an "extraordinary" case for which, it said, even United States v. Teemer, 394 F.3d 59 (1st Cir. 2005), and United States v. Holt, 464 F.3d 101 (1st Cir. 2006), required an innocent possession defense.  ("Here, we hold only that defendants prosecuted under § 922(j) must receive, at minimum, the innocent possession defense afforded by Teemer."  Id. at 630-31.)

(7)    In United States v. Habibi, 783 F.3d 1, 6 (1st Cir. 2015), the court upheld the refusal to give a transitory possession instruction where the possession lasted at least 50 days ("such a time period is hardly fleeting").

(8)    See also the comments to Pattern Jury Instruction 4.18.922(g) on Possession of a Firearm or Ammunition in or Affecting Commerce by a Convicted Felon.

143

**4.18.922(k)**          **Possession of a Firearm With an Obliterated or**
                         **Removed Serial Number, 18 U.S.C. § 922(k)**

[New: 10/5/12]

[Defendant] is charged with possessing a firearm in or affecting commerce with an obliterated or removed serial number.  It is against federal law to possess a firearm with an obliterated or removed serial number that has been connected with interstate [or foreign] commerce.  For you to find [defendant] guilty of this crime, you must be satisfied that the government has proven each of the following things beyond a reasonable doubt:

>  First, that [defendant] knowingly possessed the firearm described in the Indictment;

>  Second, that the serial number was removed, obliterated or altered at the time [defendant] possessed the firearm; and

>  Third, that the firearm was connected with interstate [or foreign] commerce.  This means that the firearm, at any time after it was manufactured, moved from one state to another [or from a foreign country into the United States].  The travel need not have been connected to the charge in the indictment, need not have been in furtherance of any unlawful activity and need not have occurred while [defendant] possessed the firearm.

The term "firearm" means any weapon which will or is designed or may readily be converted to expel a projectile by the action of an explosive.  The term "firearm" also includes the frame or receiver of any such weapon.

The word "knowingly" means that the act was done voluntarily and intentionally, not because of mistake or accident.

The term "possess" means to exercise authority, dominion or control over something. It is not necessarily the same as legal ownership.  The law recognizes different kinds of possession.

[Possession includes both actual and constructive possession.  A person who has direct physical control of something on or around his or her person is then in actual possession of it.  A person who is not in actual possession, but who has both the power and the intention to exercise control over something is in constructive possession of it.  Whenever I use the term "possession" in these instructions, I mean actual as well as constructive possession.]

[Possession [also] includes both sole and joint possession. If one person alone has actual or constructive possession, possession is sole.  If two or more persons share actual or constructive possession, possession is joint.  Whenever I have used the word "possession" in these instructions, I mean joint as well as sole possession.]

144

## Comment

(1)      The definition of "firearm" comes from 18 U.S.C. § 921(a)(3).  See also Pattern Instruction 4.18.922(a) cmt. 5.

(2)      The definition of "knowingly" is based on United States v. Tracy, 36 F.3d 187, 194-95 (1st Cir. 1994).

(3)      United States v. Rogers, 41 F.3d 25, 29 (1st Cir. 1994), discusses dominion, control, possession and ownership.  United States v. Booth, 111 F.3d 1, 2 (1st Cir. 1997), counsels against defining constructive possession in terms of dominion and control "over the area in which the object is located" and thereby limits United States v. Wight, 968 F.2d 1393, 1398 (1st Cir. 1992). However, the jury may be told in appropriate circumstances that knowledge could be inferred from control of the area.  See Booth, 111 F.3d at 2.  Ownership is not required, nor is duration of possession.  United States v. Scott, 564 F.3d 34, 39 (1st Cir. 2009).

(4)      Under First Circuit law, the court is not required to define the term "alter" unless the particular circumstances of the case require further elaboration.  Instead, it is "ordinarily . . . enough to charge the jury in the words of the statute, leaving it to the common sense of the jury to understand the purpose and to adjust its application to carry out that purpose. 'Alter,' in this statute, is not some highly obscure or special-purpose term that cries out for elaboration.  This, then, is an instance in which the district judge may choose to elaborate but is not ordinarily required to do so."  United States v. Adams, 305 F.3d 30, 34 (1st Cir. 2002).

(5)      United States v. Acosta, 67 F.3d 334, 340 (1st Cir. 1995), supports the broad definition of "commerce."  See also United States v. Joost, 133 F.3d 125, 131 (1st Cir. 1998).  In United States v. Wilkerson, the First Circuit held that "the evidence that a firearm has traveled at some time in interstate commerce is sufficient to establish a nexus between the firearm and interstate commerce."  411 F.3d 1, 10 (1st Cir. 2005); see also United States v. Weems, 322 F.3d 18, 25 (1st Cir. 2003) (approving an instruction that the government must show that the firearm had "previously traveled in interstate commerce or it previously [had] been transported across State lines, even though it wasn't in the Defendant's possession at the time," as a correct statement of the law after Scarborough v. United States, 431 U.S. 563 (1977)).  It is not necessary "that the felon be the one who transported the firearm in interstate commerce."  Weems, 322 F.3d at 26.

**4.18.922(o)**          **Possession of Machineguns,**
                        **18 U.S.C. § 922(o)**

[Updated: 7/20/10]

[Defendant] is charged with [transferring, possessing] a machinegun.  It is against federal law to [transfer, possess] a machinegun. For you to find [defendant] guilty of this crime, you must be satisfied that the government has proven beyond a reasonable doubt that:

> First, [defendant] knowingly [transferred, possessed] the machinegun described in the indictment; and

> Second, [defendant] had knowledge of the characteristics that made the weapon a machinegun.

A "machinegun" is any weapon that shoots, is designed to shoot, or can readily be restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger.

The word "knowingly" means that the act was done voluntarily and intentionally, not because of mistake or accident.  But [defendant] need not have known that the weapon was considered a machinegun under federal law.

[The term "possess" means to exercise authority, dominion or control over something. It is not necessarily the same as legal ownership.  The law recognizes different kinds of possession.]

[Possession includes both actual and constructive possession.  A person who has direct physical control of something on or around his or her person is then in actual possession of it.  A person who is not in actual possession, but who has both the power and the intention to exercise control over something is in constructive possession of it.  Whenever I use the term "possession" in these instructions, I mean actual as well as constructive possession.]

[Possession [also] includes both sole and joint possession. If one person alone has actual or constructive possession, possession is sole.  If two or more persons share actual or constructive possession, possession is joint.  Whenever I have used the word "possession" in these instructions, I mean joint as well as sole possession.]

## Comment

(1)      The term "machinegun" is defined in 18 U.S.C. § 921(a)(23) and 26 U.S.C. § 5845(b).

(2)      "[M]ere possession of the weapon is insufficient.  The government must also prove beyond a reasonable doubt that the defendant knew the weapon 'had the characteristics that brought it within the statutory definition of a machinegun.'"  United States v. Nieves-Castano, 480 F.3d 597, 599 (1st Cir. 2007) (quoting Staples v. United States, 511 U.S. 600, 602 (1994)); United States v. De La Paz-Rentas, 613 F.3d 18, 29 (1st Cir. 2010) (providing the statutory definition of a machine

gun, and telling the jury the proof must show the defendant "knowingly possessed a machine gun" and "knew or was aware of the essential characteristics of the firearm which made it a machine gun" was "an accurate rendition of the elements" (citation omitted)).  In connection with a sawed-off shotgun, "a defendant need not know every characteristic of the weapon that subjects the weapon to regulation.  It is enough for the government to prove that the defendant 'knows that he is dealing with a dangerous device of such type as would alert one to the likelihood of regulation.'" United States v. Alexander, 262 F. App'x 285, 287 (1st Cir. 2008) (citation omitted).

(3)      The definition of "knowingly" is based on United States v. Tracy, 36 F.3d 187, 194-95 (1st Cir. 1994).

(4)      United States v. Rogers, 41 F.3d 25, 29 (1st Cir. 1994), discusses dominion, control, possession and ownership.  United States v. Booth, 111 F.3d 1, 2 (1st Cir. 1997), counsels against defining constructive possession in terms of dominion and control "over the area in which the object is located" and thereby limits United States v. Wight, 968 F.2d 1393, 1398 (1st Cir. 1992). However, the jury may be told in appropriate circumstances that knowledge could be inferred from control of the area.  See Booth, 111 F.3d at 2.  Ownership is not required.  United States v. Escobar-DeJesus, 187 F.3d 148, 176 (1st Cir. 1999).

(5)      Like the statute, this instruction omits any requirement that the government establish that the machinegun in question is connected with interstate or foreign commerce.  The Supreme Court's decision in United States v. Lopez, 514 U.S. 549 (1995), raises the question whether criminalizing mere possession of a semiautomatic assault weapon exceeds Congress's authority under the Commerce Clause.  The First Circuit has upheld the constitutionality of the Youth Handgun Safety Act ("YHSA"), 18 U.S.C. § 922(x), on the basis that "we think the possessory prong of the YHSA . . . is 'an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated.'"  United States v. Cardoza, 129 F.3d 6, 12 (1st Cir. 1997) (quoting Lopez, 514 U.S. at 561).  In United States v. Haney, 264 F.3d 1170-71 (10th Cir. 2001), the Tenth Circuit held that 18 U.S.C. § 922(o) is constitutional on the basis that intrastate machinegun possession substantially affects interstate commerce.  The First Circuit cited Haney with approval in United States v. Rene E., 583 F.3d 8, 18 (1st Cir. 2009).

**4.18.924**      **Using or Carrying a Firearm During and in Relation to, or Possessing a Firearm in Furtherance of Drug Trafficking or Crime of Violence, 18 U.S.C. § 924(c)**

[Updated: 3/28/14]

[Defendant] is accused of [using or carrying a firearm during and in relation to/possessing a firearm in furtherance of] [_____].  It is against federal law to [use/carry/possess] a firearm [during and in relation to/in furtherance of] [_____].  For you to find [defendant] guilty of this crime, you must be satisfied that the government has proven each of the following things:

First, [defendant] committed the crime of [_____, described in Count ___]; and

Second, [defendant] knowingly [used or carried a firearm during and in relation to/ possessed] a firearm in furtherance of the commission of that crime.

The word "knowingly" means that an act was done voluntarily and intentionally, not because of mistake or accident.

[To "carry" a firearm means to move or transport the firearm on one's person or in a vehicle or container.  It need not be immediately accessible.  To "use" a firearm means to employ the firearm actively, such as to brandish, display, strike with, discharge or attempt to discharge it, or even to refer to it in a way calculated to affect the underlying crime.  For either use or carry to be "during and in relation to" a crime, the firearm must have played a role in the crime or must have been intended by the defendant to play a role in the crime.  That need not have been its only purpose, however.]

[A defendant possesses a firearm "in furtherance of" a crime if the firearm possession made the commission of the underlying crime easier, safer or faster, or in any other way helped the defendant commit the crime.  There must be some connection between the firearm and the underlying crime, but the firearm need not have been actively used during the crime.]

## Comment

(1)      The instruction should be careful to address the charge against the defendant, distinguishing *use or carrying during and in relation to*, from *possession in furtherance of*.  United States v. Alverio-Meléndez, 640 F.3d 412, 422-23 (1st Cir. 2011) (finding error in failure to do so, but not reversible error given the facts of the case).

(2)      There are increasingly enhanced penalties if the weapon is brandished, § 924(c)(1)(A)(ii), or discharged, § 924(c)(1)(A)(iii).  "Brandish" is defined at § 924(c)(4), and requires intent.  Dean v. United States, 556 U.S. 568, 572-73 (2009).  "Discharge" does not require intent, but can be accidental.  Id. at 573-74.  Alleyne v. United States, 570 U.S. ___, 2013 WL 2922116 (June 17, 2013), makes clear that enhancements are elements the jury must find, whether they raise the maximum or the minimum sentence under the statute.

(3)     If the predicate crime of violence or drug trafficking is not charged in the same indictment, the jury must be instructed as to the elements of that crime and that the government must prove each element beyond a reasonable doubt.   The First Circuit has cautioned against "generic references to 'a drug trafficking crime' when referring to the particular predicate offense."  United States v. Manning, 79 F.3d 212, 221 n.9 (1st Cir. 1996).  It is a question of law for the court, however, whether the crime, if proven, qualifies as a crime of violence or drug trafficking.  United States v. Weston, 960 F.2d 212, 217 (1st Cir. 1992), overruled on other grounds by Stinson v. United States, 508 U.S. 36 (1993).

(4)     Certain types of firearms produce different penalties.  See 18 U.S.C. § 924(c)(1)(B).  For such cases, the jury must determine whether the firearm is the specific type (e.g., machine gun, short-barreled shotgun, etc.) because it is an element of the offense.  United States v. O'Brien, 130 S. Ct. 2169, 2180 (2010).

(5)     The definition of "knowingly" is based upon United States v. Tracy, 36 F.3d 187, 194-95 (1st Cir. 1994).

(6)     If the facts warrant such an instruction, the definition of use should include a final sentence stating that "Bartering a firearm for drugs is use of a firearm during and in relation to a drug crime."  See Smith v. United States, 508 U.S. 223, 241 (1993), overruled in part by Bailey v. United States, 516 U.S. 137 (1995), superseded by statute, Act of Nov. 13, 1998, Pub. L. No. 105-386, § 1(a), 112 Stat. 3469 (1998).  The converse, however, is not true.  The Supreme Court has expressly held that bartering drugs for a firearm is not "use" of a firearm for purposes of § 924(c).  Watson v. United States, 552 U.S. 74, 83 (2007), overruling United States v. Cotto, 456 F.3d 25 (1st Cir. 2006).  (It may, however, be "possession in furtherance of" a drug crime.  United States v. Gurka, 605 F.3d 40, 45 (1st Cir. 2010)).  Otherwise, the definition of "use" comes from United States v. Valle, 72 F.3d 210, 217 (1st Cir. 1995), and Bailey, 516 U.S. at 143-50.  Earlier cases must be treated with great care.  Muscarello v. United States, 524 U.S. 125, 126-27 (1998), established that "carry" includes the use of a vehicle.  See also United States v. Ramirez-Ferrer, 82 F.3d 1149, 1153-54 (1st Cir. 1996) (a firearm can be "carried" by having it in a boat); Manning, 79 F.3d at 216.

"The Government [does] not need to prove that Defendants specifically intended to use or did use a firearm in the course of the [drug] transport activity in order for a jury to convict them. . . . The Government need[s] only to prove individually their general intent, e.g., that they each knew that they carried a firearm during the course of the drug offense conduct."  United States v. Villafane-Jimenez, 410 F.3d 74, 82 (1st Cir. 2005).  Moreover, "[i]f a gun is possessed for some other, perhaps legitimate, purpose, an intent to have it available for possible use in connection with, say, a drug deal, or as a device to lend courage during such a transaction, will suffice to invoke the statute."  United States v. Vázquez Guadalupe, 407 F.3d 492, 500 n.4 (1st Cir. 2005) (quoting United States v. Castro-Lara, 970 F.2d 976, 983 (1st Cir. 1992)).  But see United States v. Brown, 669 F.3d 10, 30 (1st Cir. 2012) ("The use of the shorthand 'in connection with' phrase in both the indictment and instructions was unfortunate.").

United States v. Roberson, 459 F.3d 39 (1st Cir. 2006), can be read as commenting negatively on the failure to define "during and in relation to" separately.  In Roberson, the trial court defined the phrase as follows:

> The words "during and in relation to" are to be given their plain and customary meaning. The phrase "in relation to" is expansive. At a minimum it means that the firearm must have had some purpose or effect with respect to the drug trafficking crime. If a firearm is present simply as a result of coincidence or accident it cannot be said that it was used or carried in relation to the drug traffic[king] offense. The firearm must have facilitated or have had the potential to facilitate the drug offense.

Id. at 44. The First Circuit found that this language was not "plain error" and "adequately and accurately conveys the meaning of the phrase as described in [Smith v. United States, 508 U.S. 223 (1993)]." Id. at 46; accord United States v. De La Paz-Rentas, 613 F.3d 18, 28 (1st Cir. 2010) ("requires at a minimum evidence that the firearm had 'some purpose or effect with respect to the drug trafficking crime'" (citation omitted)).

Possession alone without proof of a relationship to the underlying crime is insufficient, United States v. Plummer, 964 F.2d 1251, 1254-55 (1st Cir. 1992), but facilitating the predicate crime need not be the sole purpose, United States v. Payero, 888 F.2d 928, 929 (1st Cir. 1989).

Use or availability of the firearm for offensive or defensive purposes is not required. See Smith, 508 U.S. at 236-39 (holding that § 924(c)(1) applies where the defendant merely bartered weapons for drugs).

(7)   Congress added the "possess[ion]" "in furtherance of" language to the statute in response to Bailey, 516 U.S. at 149-50, where the Court held that the word "use" requires some active employment of the firearm. See United States v. Ceballos-Torres, 218 F.3d 409, 413-14 (5th Cir. 2000) (discussing the legislative history of the amendment). According to the First Circuit:

> The "in furtherance of" element does not have a settled, inelastic, definition. Our cases, however, do provide sufficient guidance for the task here [a drug trafficking case]. In the context of a drug trafficking predicate, we have understood "in furtherance of" to demand showing a sufficient nexus between the firearm and the drug crime such that the firearm advances or promotes the drug crime. For example, we have held that possession of a firearm to protect drugs or sales proceeds can establish such a nexus.
>
> We have also analyzed "in furtherance of" evidence from both subjective and objective standpoints. In applying an objective analysis, we have often considered the proximity of the firearm to the contraband. . . . [W]e found evidence sufficient where an unloaded firearm was found in the same residence as drugs and sales proceeds. . . . [W]e affirmed a conviction where the firearms were located in a crawl space also containing heroin and drug paraphernalia.
>
> . . . .
>
> . . . Where direct evidence of subjective intent is lacking, the jury is free to infer intent from objective circumstances.

150

United States v. Marin, 523 F.3d 24, 27-28 (1st Cir. 2008) (citations omitted); accord United States v. Bobadilla-Pagán, 747 F.3d 26, 35 (1st Cir. 2014).  The First Circuit has held that exchanging drugs for guns can be possession in furtherance of a drug crime.  Gurka, 605 F.3d at 45.

In United States v. Sherman, 551 F.3d 45, 49-50 (1st Cir. 2008) (citations omitted), the court stated:

> [A] sufficient nexus exists where the firearm protects drug stockpiles or the defendant's territory, enforces payment for the drugs, or guards the sales proceeds.
>
> . . . Applying the objective analysis, this court has acknowledged a number of factors that the trier of fact may consider including "whether the firearm was loaded, whether the firearm was easily accessible, the proximity of the firearm to the drugs, and the surrounding circumstances."  We also have observed that "a sufficient nexus is more readily found in cases where the firearm is in plain view and accessible to the defendant."
>
> Meanwhile, although there generally is no direct proof of subjective intent, we have noted that subjective intent may be inferred from the objective circumstances.  Thus, in Marin, we inferred subjective intent to possess a weapon in furtherance of the drug trafficking crime from the obliterated serial number, proximity to drugs, and other factors.

The First Circuit has also said that

> One might expect with such a common criminal offense that the legal framework would be well settled, but, as is so often the case with general statutory terms, it is not.  One could argue, in particular, about whether the "in furtherance" requirement refers to subjective purpose or objective potential (or whether either would do).  Statutory language, legislative history, model jury instructions and case law do not cleanly resolve the issue . . . .
>
> . . . .
>
> In practice, the same evidence tends to be relevant whether the ultimate test is objective furtherance or a subjective purpose to further.  Similarly, in most cases the result will be the same, whichever ultimate test is used.

United States v. Felton, 417 F.3d 97, 104-05 (1st Cir. 2005) (citations omitted).  It has also quoted approvingly from the legislative history that possession "in furtherance of" imposes a "slightly higher standard" than "during and in relation to," the nexus requirement for using or carrying, and requires the government to show that the firearm possession was "to advance or promote the commission of the underlying offense."  United States v. Delgado-Hernandez, 420 F.3d 16, 25 (1st Cir. 2005) (emphasis in original removed).

The Fifth Circuit has said that factors that a jury may consider when deciding whether a defendant's possession of a firearm is "in furtherance of" a crime include:

> the type of [criminal] activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen,

> the status of the possession (legitimate or illegal), whether the gun
> is loaded, proximity to [criminal proceeds or contraband], and the
> time and circumstances under which the gun is found.

Ceballos-Torres, 218 F.3d at 414-15.  According to the First Circuit, "fairly general factors—such as whether the gun was loaded and accessible to the defendant—are relevant whatever the crime involved."  Felton, 417 F.3d at 106 n.7 (discrediting defendant's distinction between drug cases and violent crime cases with respect to the "in furtherance" requirement).

(8)     For definition of "firearm," see 18 U.S.C. § 921(a)(3).  "[A] gun does not even have to be operational, let alone loaded, to qualify as a firearm for section 924 purposes."  United States v. Grace, 367 F.3d 29, 36 (1st Cir. 2004).

(9)     An aiding or abetting instruction may be appropriate, but the jury should be instructed that the "shared knowledge" requirement, see Instruction 4.18.02(a) (Aid and Abet), requires that the defendant have advance knowledge of a firearm's presence.  Rosemond v. United States, ___ U.S. ___, 134 S. Ct. 1240, 2014 WL 839184 (Mar. 5, 2014).  "An active participant in a drug transaction has the intent needed to aid and abet a § 924(c) violation when he knows that one of his confederates will carry a gun."  Id. at *8.

(10)    The First Circuit has also "repeatedly held that under Pinkerton, [328 U.S. 640 (1946); Pattern 4.18.371(2)], the defendant does not need to have carried the gun himself to be liable under § 924(c).  So long as there is sufficient evidence that a co-conspirator carried or used a firearm in furtherance of the conspiracy and that this was reasonably foreseeable to the defendant, the defendant can be held liable as if he himself carried or used the firearm."  United States v. Flecha-Maldonado, 373 F.3d 170, 179 (1st Cir. 2004) (citation omitted); see also United States v. Vázquez-Castro, 640 F.3d 19, 25-26 (1st Cir. 2011); United States v. Bucci, 525 F.3d 116, 132 (1st Cir. 2008).

(11)    The First Circuit has not decided "that a charge under 18 U.S.C. § 924(c)(1) is never susceptible to an affirmative justification defense such as self-defense," but has stated that "if they exist at all, such situations are few and far between."  Currier v. United States, 320 F.3d 52, 56, 57 (1st Cir. 2003).

**4.18.982**            **Money Laundering—Forfeiture, 18 U.S.C. § 982(a)(1)**

[Updated: 10/5/12]

In light of your verdict that [defendant] is guilty of money laundering, you must now also decide whether [he/she] should surrender to the government [his/her] ownership interest in certain property as a penalty for committing that crime.  We call this "forfeiture."

On this charge, federal law provides that the government is entitled to forfeiture, if it proves, by a preponderance of the evidence, that the property in question:

> (1)      was involved in one or more of the money laundering Counts of which you have convicted [defendant]; **OR**
>
> (2)      was traceable to such property.

Note that this is a different standard of proof than you have used for the money laundering charges.  A "preponderance of the evidence" means an amount of evidence that persuades you that something is more likely true than not true.  It is not proof beyond a reasonable doubt.

Property "involved in" a money laundering transaction means the money being laundered, any commissions or fees paid to the launderer, and any property used to facilitate the laundering.  Mingling tainted funds with legitimate funds exposes the legitimate funds to forfeiture as well, if the mingling was done for the purpose of concealing the nature or source of the tainted funds, in other words, to "facilitate" the money laundering.

While deliberating, you may consider any evidence admitted during the trial. However, you must not reexamine your previous determination regarding [defendant]'s guilt of money laundering.  All of my previous instructions concerning consideration of the evidence, the credibility of witnesses, your duty to deliberate together and to base your verdict solely on the evidence without prejudice, bias or sympathy, and the requirement of unanimity apply here as well.

On the verdict form, I have listed the various items that the government claims [defendant] should forfeit.  You must indicate which, if any, [defendant] shall forfeit.

Do not concern yourselves with claims that others may have to the property.  That is for the judge to determine later.

## Comment

(1)      This forfeiture instruction can be used if the underlying offense is 18 U.S.C. § 1956(a)(1), (2) or (3) or 18 U.S.C. § 1957.  See 18 U.S.C. § 982(a)(1).

(2)      The right to a jury trial on a criminal forfeiture count is not constitutional.  Libretti v. United States, 516 U.S. 29, 48-49 (1995).  Instead, it is created solely by rule as follows:

> If a party timely requests to have the jury determine forfeiture, the government must submit a proposed Special Verdict Form listing each property subject to the forfeiture and asking the jury to determine whether the government has established the requisite nexus between the property and the offense committed by the defendant.

Fed. R. Crim P. 32.2(b)(5)(B).  The language of the Rule seems to contemplate a bifurcated proceeding, see also 2000 Advisory Committee Note.  Pre-Libretti First Circuit caselaw left bifurcation to the trial judge's discretion.  See, e.g., United States v. Desmarais, 938 F.2d 347, 349-50 (1st Cir. 1991); United States v. Maling, 737 F. Supp. 684, 705 (D. Mass. 1990), aff'd. sub nom. United States v. Richard, 943 F.2d 115 (1st Cir. 1991); United States v. Saccoccia, 58 F.3d 754, 770 (1st Cir. 1995).

The First Circuit has held that Apprendi v. New Jersey, 530 U.S. 466 (2000) does not disturb the Libretti holding as it applies to forfeiture proceedings.  United States v. Keene, 341 F.3d 78, 85-86 (1st Cir. 2003) (Apprendi's requirements do not apply to criminal forfeitures issues under 21 U.S.C. § 853 because "forfeiture is not viewed as a separate charge, but as 'an aspect of punishment imposed following conviction of a substantive offense'") (citation omitted); see also United States v. Hall, 411 F.3d 651, 654 (6th Cir. 2005) ("Apprendi did not affect Libretti's holding that criminal forfeitures are part of the sentence alone. . . . To our knowledge, every other circuit to consider the issue after Apprendi has reached the same conclusion") (citing cases from the First, Fourth, Fifth, Seventh, Ninth and Eleventh circuits).  The First Circuit has not addressed whether United States v. Booker, 543 U.S. 220 (2005), affects the vitality of Libretti, but caselaw from other circuits hold that, like Apprendi, Booker does not apply to criminal forfeiture proceedings.  See United States v. Fruchter, 411 F.3d 377, 383 (2d Cir. 2005) (Because "[c]riminal forfeiture [under 18 U.S.C. § 3554] is, simply put, a different animal from determinate sentencing," Libretti remains the "determinative decision" post-Booker); Hall, 411 F.3d at 654-55 (holding that Booker does not "allow[ ] us to turn our back on the Supreme Court's prior ruling in this area (Libretti)" because criminal forfeiture [under 18 U.S.C. § 982(a)(2)] is "a form of indeterminate sentencing"); United States v. Tedder, 403 F.3d 836, 841 (7th Cir. 2005) ("There is no statutory maximum forfeiture, so Apprendi, and its successors, including Booker, do not alter this conclusion" that "the sixth amendment does not apply to forfeitures" under 18 U.S.C. § 982 (citations omitted)).

(3)     Rule 32.2 seems to indicate that the question of a money judgment is for the court only, and never for the jury.  The text of 32.2(b)(1) divides its description of the court's role:  "If the government seeks forfeiture of specific *property*, the court must determine whether the government has established the requisite nexus between the property and the offense.  If the government seeks a *personal money judgment*, the court must determine the amount of money that the defendant will be ordered to pay."  Fed. R. Crim. P. 32.2(b)(1) (emphasis added).  The jury's role is limited to the nexus determination for property:  if a party timely requests to have the jury determine forfeiture, the government must submit a proposed Special Verdict Form listing each property subject to the forfeiture and asking the jury to determine whether the government has established the requisite nexus between the property and the offense committed by the defendant ["If a party timely requests to have the jury determine forfeiture, the government must submit a proposed Special Verdict Form listing each property subject to the forfeiture and asking the jury

to determine whether the government has established the requisite nexus between the property and the offense committed by the defendant."], Fed. R. Crim. P. 32.2(b)(5)(b). There is no reference to the jury's role in a money judgment.

The advisory committee notes for the 2000 adoption also support this distinction. After explicitly taking no position on the correctness of allowing money judgments (the First Circuit permits them, see, e.g., United States v. Candelaria-Silva, 166 F.3d 19, 42 (1st Cir. 1999)), the notes go on to prescribe different decisional rules for the different kinds of judgments: when forfeiture of property is asked for, the court determines the nexus; when a personal money judgment is asked for, the court determines the amount. Fed. R. Crim. P. 32.2(b)(1), advisory committee's note. Then, in discussing subdivision (b)(4), the notes state, "The *only* issue for the jury in such cases would be whether the government has established the requisite nexus between the property and the offense." Fed. R. Crim. P. 32.2(b)(4), advisory committee's note (emphasis added). No mention is made of a role for the jury with respect to personal money judgments.

This distinction has been noted by some commentators, see, e.g., 3 Charles Alan Wright, et al., Federal Practice and Procedure: Criminal § 573, at 421-22 (4th ed. 2011) ("This right [to a jury verdict] applies only when the government is seeking property; if the government is seeking a money judgment, the Rules provide no right to a jury verdict. Similarly, this right does not apply to the forfeiture of substitute property.") 1 David B. Smith, Prosecution and Defense of Forfeiture Cases § 2-14.03A (2012) ("There is *no* right to a jury trial of the forfeiture issue if . . . the government seeks a personal money judgment instead of an order forfeiting specific assets . . . ."), but has not been dealt with by the courts. Although there is room for some uncertainty, this seems to be the best interpretation of the rule.

(4)     The standard of proof is preponderance of the evidence. United States v. Cunan, 156 F.3d 110, 116 (1st Cir. 1998). The First Circuit has held post-Apprendi that the standard of proof for criminal forfeitures under 21 U.S.C. § 853 remains preponderance of the evidence. Keene, 341 F.3d at 85-86 (refusing to apply Apprendi's requirements to criminal forfeitures, and holding that the preponderance "evidentiary standard used to impose the forfeiture was proper" (citing United States v. Rogers, 102 F.3d 641, 647 (1st Cir. 1996) (observing with approval that "almost every circuit that has pronounced on the issue has held that the standard of proof under section 853 . . . is preponderance of the evidence."))). That standard, however, may not apply to every type of forfeiture.

(5)     The definition of "involved in" comes from United States v. McGauley, 279 F.3d 62, 75-76 & n.14 (1st Cir. 2002).

(6)     The rights of third parties are determined in an ancillary proceeding before the judge without a jury. 2000 Advisory Committee Note to Rule 32.2(b)(4).

**4.18.1001**                    **Making a False Statement to a Federal Agency, 18 U.S.C. § 1001**

[Updated: 4/21/14]

[Defendant] is charged with making a false statement in a matter within the jurisdiction of a government agency.  It is against federal law to make a false statement in a matter within the jurisdiction of a government agency.  For you to find the defendant guilty of this crime you must be convinced that the government has proven each of these things beyond a reasonable doubt:

> <u>First</u>, that [defendant] knowingly and willfully made a material false statement;

> <u>Second</u>, that [defendant] made the statement voluntarily and intentionally; and

> <u>Third</u>, that [defendant] made the statement in a [e.g., U.S. Customs declaration].

A false statement is made "knowingly and willfully" if the defendant knew that it was false  or demonstrated a reckless disregard for the truth with a conscious purpose to avoid learning the truth.

A statement is "material" if it has a natural tendency to influence or to be capable of influencing the decision of the decisionmaker to which it was addressed, regardless of whether the agency actually relied upon it.

A statement is "false" if it was untrue when made.

## <u>Comment</u>

(1)      A false "exculpatory no" is sufficient.  <u>Brogan v. United States</u>, 522 U.S. 398, 408 (1998), <u>overruling</u> <u>United States v. Chevoor</u>, 526 F.2d 178, 183-84 (1st Cir. 1975).  "To prove a false statement in violation of 18 U.S.C. § 1001, the government must show that the defendant: (1) knowingly and willfully, (2) made a statement, (3) in relation to a matter within the jurisdiction of a department or agency of the United States, (4) with knowledge of its falsity."  <u>United States v. Duclos</u>, 214 F.3d 27, 33 (1st Cir. 2000) (citations omitted).

(2)      The charge refers only to false statements.  Section 1001, the False Statements Accountability Act of 1996, is much broader, and in a given case the instruction will need to be modified to deal with the other potential violations.  <u>See</u> 18 U.S.C. § 1001(a)(1)-(3)  (punishing one who "knowingly and willfully (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact; (2) makes any materially false, fictitious, or fraudulent statement or representation; or (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious or fraudulent statement or entry") (as amended by PL 104-292, Oct. 11, 1996).

(3)      In <u>United States v. London</u>, 66 F.3d 1227, 1241-42 (1st Cir. 1995), the First Circuit stated that "[i]n the context of the False Statements Act, 18 U.S.C. § 1001, a false statement is made knowingly if defendant demonstrated a reckless disregard of the truth, with a conscious purpose to avoid learning the truth."  The First Circuit also has approved instructing the jury on good faith and referring to advice of counsel in that respect.  <u>United States v. Arcadipane</u>, 41 F.3d 1, 8 (1st Cir. 1994), <u>abrogated on other grounds by</u> <u>United States v. Gaudin</u>, 515 U.S. 506, 511 (1995); <u>see also</u> <u>United States v. Dockray</u>, 943 F.2d 152, 155 (1st Cir. 1991) ("[G]ood faith is an absolute defense to a charge of mail or wire fraud. . . .").  But a good faith instruction is not required.  <u>United States v. Gonsalves</u>, 435 F.3d 64, 71 (1st Cir. 2006).  "Thus, where the court properly instructs the

jury on the element of intent to defraud—essentially the opposite of good faith—a separate instruction on good faith is not required." Dockray, 943 F.2d at 155.

(4)     In Gaudin, 515 U.S. at 511, the Supreme Court held that the issue of materiality is for the jury.

(5)     The definition of materiality is based upon both United States v. Sebaggala, 256 F.3d 59, 65 (1st Cir. 2001), and the court's description of what the parties agreed to as a definition in Gaudin, 515 U.S. at 509.  Accord Arcadipane, 41 F.3d at 7 ("[M]ateriality requires only that the fraud in question have a natural tendency to influence, or be capable of affecting or influencing, a governmental function.  The alleged concealment or misrepresentation need not have influenced the actions of the Government agency, and the Government agents need not have been actually deceived." (quoting United States v. Corsino, 812 F.2d 26, 30 (1st Cir. 1986))).

(6)     The statute deals only with false statements "within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States."  18 U.S.C. § 1001(a).  It seems best to specify in the instruction the document or other context in which the false statement was allegedly made.  Whether it was made there is a jury issue.  It should be a separate question for the judge whether that document or context brings it "within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States."  Id.

(7)     The government is not required to prove that the defendant had a purpose to mislead a federal agency, United States v. Yermian, 468 U.S. 63, 68-75 (1984), or that the statement was made for a fraudulent purpose.  United States v. McGauley, 279 F.3d 62, 69 (1st Cir. 2002).

(8)     The definition of "knowingly and willfully" is based upon Gonsalves, 435 F.3d at 72.  There is no intent to deceive required.  Id. (citing United States v. Yermian, 468 U.S. 63, 73 (1984)).

> While interpreting the term willfulness, we have held that it means "nothing more in this context than that the defendant knew that his statement was false when he made it or—which amounts in law to the same thing—consciously disregarded or averted his eyes from its likely falsity."  In Gonsalves, we expressly rejected the argument that § 1001 requires "an intent to deceive."

United States v. Riccio, 529 F.3d 40, 46-47 (1st Cir. 2008) (citations omitted).

(9)     In United States v. Russell, 728 F.3d 23 (1st Cir. 2013), cert. granted, 134 S. Ct. 1827 (2014), a section 1035 conviction, on the petition for certiorari the Solicitor General argued that "knowingly and willfully" means that "a jury must conclude 'that [the defendant] acted with knowledge that his conduct was unlawful'" and that "[t]he same interpretation should apply to 18 U.S.C. § 1001's materially identical prohibition on 'knowingly and willfully' making a false statement in a matter within the jurisdiction of the federal government." Br. for the United States at 6.  The Solicitor General asserted that the circuits are divided on this interpretation of § 1001.  Id.  The Supreme Court remanded Russell to the First Circuit "for further consideration." Russell, 134 S. Ct. 1827 (2014).

**4.18.1014**          **Making a False Statement or Report, 18 U.S.C. § 1014**

[Updated: 8/15/18]

[Defendant] is charged with making a false statement or report for the purpose of influencing the action of [appropriate governmental agency or entity listed in statute] upon [his/her] [application; commitment; loan; etc.].  It is against federal law to make a false statement for such a purpose. For you to find the defendant guilty of this crime you must be convinced that the government has proven each of these things beyond a reasonable doubt:

> First, that [defendant] made or caused to be made a false statement or report to [appropriate governmental agency or entity listed in statute] upon [an application; commitment; loan; etc.];

> Second, that [defendant] acted knowingly; and

> Third, that [defendant] made the false statement or report for the purpose of influencing in any way the action of [appropriate governmental agency/ financial institution] on the [application; commitment; loan; etc.].

A false statement is made "knowingly" if the defendant knew that it was false  or demonstrated a reckless disregard for the truth with a conscious purpose to avoid learning the truth.

A statement is "false" if it was untrue when made.

## Comment

(1)     This charge is based largely upon United States v. Concemi, 957 F.2d 942, 951 (1st Cir. 1992).

(2)     Materiality is not required.  United States v. Wells, 519 U.S. 482, 489-99 (1997).

(3)     Section 1014 also includes "willful overvalu[ation]."  This charge refers only to false statements or reports, but can be modified accordingly.  In United States v. Valdés-Ayala, 900 F.3d 20, 39-40 (1st Cir. 2018), the First Circuit cited the pattern instruction with approval and noted that the district court "provided our exact interpretation of the phrase 'without lawful authority' from Ozuna-Cabrera."

(4)     Section 1014 lists the governmental agencies and related entities covered by the statute as well as the kinds of actions that are covered.

(5)     When the victim is a federally insured bank, the knowledge that must be proven is knowledge that a bank will be defrauded, not any specific bank, and not knowledge of its insured status.  United States v. Graham, 146 F.3d 6, 10 (1st Cir. 1998).

(6)     Letters of credit are included.  United States v. Agne, 214 F.3d 47, 54 (1st Cir. 2000).

**4.18.1028A**  **Aggravated Identity Theft, 18 U.S.C. § 1028A**

[Updated: 6/24/19]

 [Defendant] is charged with aggravated identity theft.  It is against federal law to steal someone's identity.  For you to find [defendant] guilty of this crime you must be convinced that the government has proven each of these things beyond a reasonable doubt:

> First, that [defendant] committed the felony violation of [social security fraud].  [Unless the felony violation is stipulated, provide the elements.]

> Second, that during and in relation to the felony violation of [social security fraud], [defendant] knowingly [transferred/possessed/used] a means of identification, the [social security number] described in the Indictment, without lawful authority.

> Third, that the [social security number] actually belonged to another person.

> Fourth, that [defendant] knew that the [social security number] belonged to another person.

Someone knows a fact if [he/she] has actual knowledge of it.  Knowledge may not ordinarily be proven directly because there is no way of directly scrutinizing the workings of the human mind.  In determining what [defendant] knew at a particular time, you may consider any statements made or acts done or omitted by [defendant] and all other facts and circumstances received in evidence that may aid in your determination of [defendant]'s knowledge.

## Comment

(1)     There are additional predicate crimes other than social security fraud.  See 18 U.S.C. § 1028A(c).  In United States v. Persichilli, 608 F.3d 34, 40-41 (1st Cir. 2010), the court held that the predicate offenses are not limited to "false statement" offenses.  The predicate offense need not be charged in a separate count.  United States v. Stepanian, 570 F.3d 51, 59-60 & n.15 (1st Cir. 2009); United States v. López-Díaz, 794 F.3d 106, 115 (1st Cir. 2015) (pointing out that "[t]he statute requires proof beyond a reasonable doubt of a felony *violation*, not a felony *conviction*. (emphasis added)).

(2)     In Flores-Figueroa v. United States, 556 U.S. 646, 657 (2009), the Supreme Court resolved a circuit split and agreed with the First Circuit's decision in United States v. Godin, 534 F.3d 51, 61 (1st Cir. 2008), that the government must prove that the defendant knew that the social security number actually belonged to another person.  See also United States v. Valerio, 676 F3d 237, 244 (1st Cir. 2012).

(3)     In United States v. Ozuna-Cabrera, 663 F.3d 496, 498-99 (1st Cir. 2011), the First Circuit rejected the argument that the phrase "without lawful authority" requires that the means of identification be stolen or taken without the owner's permission.  Instead,

> § 1028A(a)(1) reasonably proscribes the transfer, possession, or use
> of another person's means of identification, absent the right or

> permission to act on that person's behalf in a way that is not contrary
> to the law.   In other words, regardless of how the means of
> identification is actually obtained, if its subsequent use breaks the
> law —specifically, during and in relation to the commission of a
> crime enumerated in subsection (c)—it is violative of § 1028A(a)(1).

(4)      In <u>United States v. De La Cruz</u>, 835 F.3d 1 (1st Cir. 2016), the First Circuit rejected the argument that the means of identification used must "cause or be essential to the commission of the offense."  Instead, the court found that it was not error to instruct the jury that it had to "find that the means of identification *played a role* in committing the offense of theft of money."  <u>Id</u>. at *10 (emphasis added).  The "plays a role" language, the First Circuit stated, "closely mirrors the statutory language ('during and in relation to'), at least in practical effect."  <u>Id</u>.

(5)      In <u>United States v. Berroa</u>, 856 F.3d 141 (1st Cir. 2017), five doctors bribed an employee of the Puerto Rico Board of Medical Examiners to alter the results of their qualifying examinations to change failing grades to passes.  After completing some additional requirements, the would-be doctors received their medical licenses and, thereafter, wrote prescriptions for patients.  The government alleged that the use of patient names and addresses on prescriptions constituted "use without lawful authority of the identification of another person."  <u>Id</u>. at 155.  In overturning the aggravated identity theft convictions, the First Circuit found the term "use" to "require that the defendant attempt to pass him or herself off as another person or purport to take some other action on another person's behalf."  <u>Id</u>. at 156.  <u>United States v. Tull-Abreu</u>, 921 F.3d 294, 300 (1st Cir. 2019) (submission of false Medicare reimbursement claim forms with patients' names and identifiers fits easily into the term "use without lawful authority" under Berroa).

**4.18.1029**          **Access Device or Credit Card Fraud, 18 U.S.C. § 1029(a)(2)**

[Updated: 4/15/11]

[Defendant] is charged with knowingly and fraudulently using [an] unauthorized access device[s] between [date] and [date].  It is against federal law to knowingly and fraudulently use access devices without authorization.

For you to find [defendant] guilty of this crime, you must be convinced that the government has proven each of the following things beyond a reasonable doubt:

>       First, that [defendant] used [an] access device[s];

>       Second, that [defendant] used it without authorization and thereby obtained something of value aggregating at least $1,000 during the one-year period from [date] to [date];

>       Third, that [defendant] acted knowingly, willfully and with the intent to defraud;

>       Fourth, that [defendant]'s conduct affected interstate or foreign commerce.

The term "access device" [means any card, plate, code, account number or other means of account access that can be used alone or in conjunction with another access device to obtain money, goods, services or any other thing of value, or that can be used to initiate a transfer of funds other than a transfer originated solely by paper instrument.  It] includes credit cards.

The term "unauthorized access device" includes any access device or credit card that is lost, stolen, expired, revoked, canceled or obtained with intent to defraud.

[Defendant] acted "knowingly" if [he/she] was conscious and aware of [his/her] actions, realized what [he/she] was doing or what was happening around [him/her], and did not act because of ignorance, mistake or accident.

To act with "intent to defraud" means to act with the intent to deceive or cheat someone.  Good faith on the part of [defendant] is a complete defense to a charge of credit card fraud.  If [defendant] actually believed in good faith that [he/she] was acting properly, even if [he/she] was mistaken in that belief, and even if others were injured by [his/her] conduct, there would be no crime.  An honest mistake in judgment does not rise to the level of criminal conduct.  A defendant does not act in good faith if, even though he or she honestly holds a certain opinion or belief, he or she also acted with the purpose of deceiving others.  While the term good faith has no precise definition, it means among other things a belief or opinion honestly held, an absence of malice or ill will, and an intention to avoid taking unfair advantage of another.  The burden is on the government to prove fraudulent intent and consequent lack of good faith beyond a reasonable doubt.  The defendant is under no obligation to prove good faith.

Conduct "affects" interstate or foreign commerce if the conduct has a demonstrated connection or link with such commerce.  It is not necessary for the government to prove that [defendant] knew

161

or intended that [his/her] conduct would affect commerce; it is only necessary that the natural consequences of [his/her] conduct affected commerce in some way.

## **Comment**

(1)      The definition of good faith used here was cited approvingly in the context of credit card fraud in United States v. Goodchild, 25 F.3d 55, 59-60 (1st Cir. 1994).

(2)      This instruction can be modified for section 1029(a)(1) and (3) offenses (knowingly and with intent to defraud producing, using, or trafficking in a counterfeit access device or possessing 15 or more counterfeit or unauthorized access devices).  (The elements of interstate commerce and intent to defraud are the same.)  On a section 1029(a)(3) offense, the jury does not have to be unanimous on which 15 cards were illegally possessed.  United States v. Lee, 317 F.3d 26, 40 (1st Cir. 2003).

(3)      See United States v. Bayard, 642 F.3d 59, 65 (1st Cir. 2011) (not clear error to include, for context, a list of access devices that closely tracked the statute).

**4.18.1035**          **False Statements re Health Care Matters**

[New: 4/21/14]

## Comment

(1)      The First Circuit held that the willfulness element in this statute "does not require the government to prove that the defendant knew it was a crime to make the particular false statement." United States v. Russell, 728 F.3d 23, 32 (1st Cir. 2013).  (Russell rejected the defendant's contrary argument that was based on the health care fraud statute, § 1347 (see instruction 4.18.1347).)  But on the petition for certiorari, the Solicitor General "confessed error," concluding that under section 1035, "a jury must conclude 'that [the defendant] acted with knowledge that his conduct was unlawful.'" Br. for the United States at 6 (quoting Bryan v. United States, 524 U.S. 184, 193 (1998). The Supreme Court, therefore, remanded Russell to the First Circuit "for further consideration." Russell, 134 S. Ct. 1827 (2014).

**4.18.1072**          **Harboring or Concealing an Escaped Prisoner, 18 U.S.C. § 1072**

[Updated: 6/14/02]

[Defendant] is accused of harboring or concealing an escaped prisoner, [prisoner].  It is against federal law to harbor or conceal an escaped prisoner.  For you to find [defendant] guilty of this crime, you must be convinced that the government has proven each of these things beyond a reasonable doubt:

> First, that [prisoner] escaped from [the custody of the Attorney General; federal penal or correctional institution];
>
> Second, that [defendant] did some physical act to help to allow [prisoner] to avoid detection or apprehension;
>
> Third, that [defendant] acted knowingly and willfully.

To act "knowingly and willfully" means to act with the knowledge that [prisoner]  has escaped from custody and with the purpose and intent to help or allow him to avoid detection or apprehension.

## **Comment**

(1)     If the Attorney General has designated a nonfederal facility as the place of incarceration, escape from that facility is an escape from "the custody of the Attorney General" under this section. United States v. Eaglin, 571 F.2d 1069, 1073 (9th Cir. 1977).

(2)     Several circuits have held that "[t]he words 'harbor' and 'conceal' refer to any physical act of providing assistance, including food, shelter, and other assistance to aid the prisoner in avoiding detection and apprehension."  United States v. Kutas, 542 F.2d 527, 528 (9th Cir. 1976); see also Laaman v. United States, 973 F.2d 107, 114 (2d Cir. 1992) (construing same terms in section 1071, which proscribes concealing fugitives from arrest rather than escaped prisoners); United States v. Yarbrough, 852 F.2d 1522, 1543 (9th Cir. 1988) (same); United States v. Silva, 745 F.2d 840, 849 (4th Cir. 1984) (same); United States v. Foy, 416 F.2d 940, 941 (7th Cir. 1969) (same).

(3)     Section 1072 requires proof that the defendant "willfully" harbored or concealed the escaped prisoner.  This element has been read to require that the defendant had knowledge that the person whom he aided had escaped from custody.  Eaglin, 571 F.2d at 1074; United States v. Deaton, 468 F.2d 541, 543 (5th Cir. 1972).  It is not necessary that the government prove in section 1071 that the defendant was aware of the federal status of the escaped prisoner.  Eaglin, 571 F.2d at 1074 n.4; cf. United States v. Aragon, 983 F.2d 1306, 1310 (4th Cir. 1993) (knowledge of federal status not an element of assisting escape under 18 U.S.C. § 752); United States v. Feola, 420 U.S. 671, 684-85 (1975) (knowledge of federal status not an element of assaulting a federal officer under 18 U.S.C. § 111).

164

**4.18.1341**          **Mail Fraud, 18 U.S.C. § 1341**

[Updated: 5/5/17]

[Defendant] is charged with violating the federal statute making mail fraud illegal.

For you to find [defendant] guilty of mail fraud, you must be convinced that the government has proven each of the following things beyond a reasonable doubt:

> First, that there was a scheme, substantially as charged in the indictment, to defraud [or to obtain money or property by means of false or fraudulent pretenses];

> Second, that the scheme to defraud involved the misrepresentation or concealment of a material fact or matter [or the scheme to obtain money or property by means of false or fraudulent pretenses involved a false statement, assertion, half-truth or knowing concealment concerning a material fact or matter];

> Third, that [defendant] knowingly and willfully participated in this scheme with the intent to defraud; and

> Fourth, that for the purpose of executing the scheme or in furtherance of the scheme, [defendant] caused the United States mail to be used, or it was reasonably foreseeable that for the purpose of executing the scheme or in furtherance of the scheme, the United States mail would be used, on or about the date alleged.

A scheme includes any plan, pattern or course of action. It is not necessary that the government prove all of the details alleged in the indictment concerning the precise nature and purpose of the scheme or that the alleged scheme actually succeeded in defrauding anyone. But the government must prove beyond a reasonable doubt that the scheme was substantially as charged in the indictment.

The term "defraud" means to deceive another in order to obtain money or property. [It includes a scheme to deprive another of the intangible right of honest services.]

[The term "false or fraudulent pretenses" means any false statements or assertions that were either known to be untrue when made or were made with reckless indifference to their truth and that were made with the intent to defraud. The term includes actual, direct false statements as well as half-truths and the knowing concealment of facts.]

A "material" fact or matter is one that has a natural tendency to influence or be capable of influencing the decision of the decisionmaker to whom it was addressed.

[Defendant] acted "knowingly" if [he/she] was conscious and aware of [his/her] actions, realized what [he/she] was doing or what was happening around [him/her] and did not act because of ignorance, mistake or accident.

165

An act or failure to act is "willful" if done voluntarily and intentionally, and with the specific intent to do something the law forbids, or with specific intent to fail to do something the law requires to be done; that is to say, with bad purpose either to disobey or to disregard the law.  [Thus, if [defendant] acted in good faith, [he/she] cannot be guilty of the crime.]  The burden to prove intent, as with all other elements of the crime, rests with the government.

Intent or knowledge may not ordinarily be proven directly because there is no way of directly scrutinizing the workings of the human mind.  In determining what [defendant] knew or intended at a particular time, you may consider any statements made or acts done or omitted by [defendant] and all other facts and circumstances received in evidence that may aid in your determination of [defendant]'s knowledge or intent.  You may infer, but you certainly are not required to infer, that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted. It is entirely up to you, however, to decide what facts are proven by the evidence received during this trial.

The mailing does not itself have to be essential to the scheme, but it must have been made for the purpose of carrying it out.  There is no requirement that [defendant] [him/herself] was responsible for the mailing, that the mailing itself was fraudulent or that the use of the mail was intended as the specific or exclusive means of accomplishing the alleged fraud.  But the government must prove beyond a reasonable doubt that [defendant] knew, or could reasonably have foreseen, that use of the mail would follow in the course of the scheme in furtherance of the scheme or for the purpose of executing the scheme.

## **Comment**

(1)      According to United States v. Hebshie, 549 F.3d 30, 35-36 (1st Cir. 2008) (citations and footnotes omitted),

> The crime of mail fraud includes three elements: "(1) a scheme to defraud based on false pretenses; (2) the defendant's knowing and willing participation in the scheme with the intent to defraud; and (3) the use of interstate mail . . . communications in furtherance of that scheme."  United States v. Cheal, 389 F.3d 35, 41 (1st Cir. 2004). Importantly, the last element, which we will refer to as the "mailing element," requires that the defendant both (1) *cause* the use of the mails, which includes reasonably foreseeable mailings, *and* (2) use the mails *for the purpose*, or *in furtherance*, of executing the scheme to defraud.  See United States v. Moss, 591 F.2d 428, 436 (8th Cir. 1979).

Although the First Circuit enumerates three elements, the Supreme Court provides a fourth—materiality.  Neder v. United States, 527 U.S. 1, 20-23, 25 (1999) ("[w]e hold that materiality of falsehood is an element of the federal mail fraud, wire fraud, and bank fraud statutes.").  Materiality must go to the jury.  Id. at 25.

(2)     <u>Hebshie</u>, 549 F.3d at 42, found plain error in the following instruction:

> The third element is the use of the mail on or about the date charged. The government must establish beyond a reasonable doubt that the defendant used the mail in . . . *furtherance* of the crime charged. . . . [T]he crime of mail fraud does require that the government prove beyond a reasonable doubt that the mails were in fact used in some manner *to further* such a scheme for the purposes of obtaining money by means of false or fraudulent pretenses *or* that the use of the mails would ordinarily follow in the usual course of business or events or that the use of the mails was reasonably foreseeable.

According to <u>Hebshie</u>, "[u]sing the word 'or' in the last sentence above, instead of 'and,' made the instruction incorrect." <u>Id</u>. (citations omitted).

> As mentioned, the district court's error occurred when it explained the mailing element of the statute, conflating the "causation" requirement with the "in furtherance" requirement. "The mailing element of 18 U.S.C. § 1341 consists of two requirements: (1) that the defendant 'caused' the use of the mails and (2) that the use was [in furtherance, or] 'for the purpose of executing' the scheme to defraud." <u>Moss</u>, 591 F.2d at 436; <u>see also</u> <u>Cheal</u>, 389 F.3d at 41; <u>United States v. Pimental</u>, 380 F.3d 575, 584 (1st Cir. 2004). But the district court's instruction here allowed the jury to find the mailing element satisfied if "the use of the mails would ordinarily follow in the usual course of business" *or* if "the use of the mails was reasonably foreseeable." Although the instruction stated the government must demonstrate "that the mails were in fact used in some manner *to further*" Defendant's insurance fraud scheme, the instruction phrased this mandatory element of mail fraud as a permissible *alternative* that was unnecessary if the jury found causation.

<u>Id</u>. To prove causation, the government must demonstrate "that the defendant knew, or could have reasonably foreseen, that the use of the mails [would] follow in the ordinary course of business. It is not necessary to prove that the defendant personally executed the mailings, but merely that the defendant caused the mailing by doing some act from which it is reasonably foreseeable that the mails will be used." <u>Pimental</u>, 380 F.3d at 584 (citations omitted). Moreover, "it is simply 'the use of the mails' in the course of the scheme rather than the particular mailing at issue that must be reasonably foreseeable. . . ." <u>Id</u>. at 589. The same is true for a charge of conspiracy to commit mail fraud. <u>United States v. Morales-Rodríguez</u>, 467 F.3d 1, 8 (1st Cir. 2006), <u>abrogated on other grounds by</u> <u>Cuellar v. United States</u>, 553 U.S. 550 (2008).

(3)     According to <u>Hebshie</u>, 549 F.3d at 36:

> The "in furtherance" requirement is to be broadly read and applied. <u>See</u> <u>United States v. Koen</u>, 982 F.2d 1101, 1107 (7th Cir. 1992). To further Defendant's fraudulent scheme, the mailings need not be an "essential element" of the scheme. <u>Pereira v. United States</u>, 347

> U.S. 1, 8 (1954).  They simply must be "sufficiently closely related" to the scheme, United States v. Maze, 414 U.S. 395, 399 (1974), such that they are "incident to an essential part of the scheme," Pereira, 347 U.S. at 8, or "a step in [the] plot."  Schmuck v. United States, 489 U.S. 705, 715 (1989).

Although "[t]he mailing need not be an essential element of the scheme," it must be "a step in [the] plot" or "incident to an essential part of the scheme."  Pimental, 380 F.3d at 586 (citations omitted); see also United States v. McCann, 366 F.3d 46, 52 (1st Cir. 2004), vacated on other grounds, 543 U.S. 1104 (2005) ("the mailing must be for the purpose of executing the scheme" but need not be an "essential element"); United States v. Sawyer, 239 F.3d 31, 39-40 (1st Cir. 2001) (same).  A mailing is incident to an essential part of the scheme "where it is a normal concomitant of a transaction that is essential to the fraudulent scheme."  United States v. Contenti, 735 F.2d 628, 631 n.2 (1st Cir. 1984) (quoting United States v. Lea, 618 F.2d 426, 431 (7th Cir. 1980)).  "[T]he defendant need not personally mail anything so long as it is reasonably foreseeable that the mails will be used in the ordinary course of business to further the scheme."  United States v. Cacho-Bonilla, 404 F.3d 84, 90 (1st Cir. 2005) (citation omitted).  "[T]he use of the mails or wires to further the fraudulent scheme need only be 'incidental.'"  United States v. Woodward, 149 F.3d 46, 63 (1st Cir. 1998) (quoting United States v. Sawyer, 85 F.3d 713, 723 n.6 (1st Cir. 1996)).  See also United States v. Stergios, 659 F.3d 127, 132-33 (1st Cir. 2011).  "The government need only prove that use of the mails was '"incident to an essential part of the scheme" or "a step in the plot,"' not that it was involved in every step of a particular scheme."  United States v. Desimone, 699 F.3d 113, 124 (1st Cir. 2012) (citations omitted).  "From this, two propositions emerge.  First, a mailing can serve as the basis for a mail fraud conviction even if the fraud would have been successful had the mailing never occurred.  Second, however, that mailing—even if dispensable—must at least have some tendency to facilitate execution of the fraud."  United States v. Tavares, 844 F.3d 46, 59 (1st Cir. 2016) (court held rejection letters to unsuccessful applicants for probation officer positions were insufficient to meet the mailing element in a patronage hiring scheme).

(4)     Following a 1994 amendment, the mail fraud statute applies to the use of any private or commercial interstate carrier as well as the use of the United States mail.  18 U.S.C. § 1341 (amended by Pub. L. 103-322, § 250006, 108 Stat. 1796).  For a case involving a private or commercial carrier, "mail" in the pattern charge could be changed to "mail or delivery by a private or commercial interstate carrier."

(5)     The definition of defraud comes from United States v. Kenrick, 221 F.3d 19, 26-27 (1st Cir. 2000) (en banc), which was overruled on the false pretenses portion of the bank fraud statute by Loughrin v. United States, ___ U.S. ___, 134 S. Ct. 2384, 2391 (2014).  Note that the Supreme Court distinguishes § 1341 mail fraud "as setting forth just one offense—using the mails to advance a scheme to defraud" from § 1344 bank fraud, which has two components, (1) defrauding a financial institution, and (2) obtaining money by false or fraudulent pretenses, which does not require intent to defraud the financial institution.  Loughrin v. United States, 134 S. Ct. at 2391.  See comment (1) to Pattern 1344.

(6)     We have dropped the statutory term "artifice" as archaic.  It adds nothing to "scheme," a term more understandable to most jurors.  In a civil RICO case, the First Circuit said that "[t]here

may perhaps be situations in which 'a scheme or artifice to defraud' . . . can have some purpose other than the usual aim 'to obtain . . . money or other property' by means of deceit," but that defamation, standing alone, is not enough.  Méndez Internet Mgmt. Servs., Inc. v. Banco Santander de Puerto Rico, 621 F.3d 10, 15 (1st Cir. 2010) (citing Kenrick, 221 F.3d at 26-27).

(7)     The "false or fraudulent pretenses" part of the statute extends it to "false promises and misrepresentations as to the future."  McNally v. United States, 483 U.S. 350, 359 (1987), superseded by statute on other grounds, Act of Nov. 18, 1988, Pub. L. No. 100-690, § 7603(a), 102 Stat. 4508.  But a scheme to defraud can also be proven using false statements.  United States v. LaPlante, 714 F.3d 641, 645-46 (1st Cir. 2013).

(8)     Except for honest services fraud, a fraud charge must involve money or "property." Cleveland v. United States, 531 U.S. 12, 15, 20-25 (2000) (statute does not extend to fraud in obtaining state or municipal licenses because, although they are valuable, they are not "property" in the government regulators' hands).  For honest services fraud, see Instruction 4.18.1346.

(9)     "It is not necessary to establish that the intended victim was *actually* defrauded."  United States v. Allard, 926 F.2d 1237, 1242 (1st Cir. 1991) (citations omitted).  Mail fraud does "not require that the victims be pure of heart."  United States v. Camuti, 78 F.3d 738, 742 (1st Cir. 1996). There is no requirement that the person deceived be the same person who is deprived of money or property.  United States v. Christopher, 142 F.3d 46, 53-54 (1st Cir. 1998).  There is no requirement that the conspirators know the identity of the fraud victim, only that there be a scheme to defraud.  United States v. Tum, 2013 WL 388002, at *7 (1st Cir. Feb. 1, 2013).

(10)     Good faith is an absolute defense.  United States v. Dockray, 943 F.2d 152, 155 (1st Cir. 1991).  The sentence concerning good faith is bracketed because "[a] separate instruction on good faith is not required in this circuit where the court adequately instructs on intent to defraud." Camuti, 78 F.3d at 744 (citing Dockray, 943 F.2d at 155), and the First Circuit has admonished that "[i]f references to good faith are made in fraud instructions, this must be done with great care" and has attached an example of an excessively defense-favorable good faith instruction.  United States v. Mueffelman, 470 F.3d 33, 37, 41-42 (1st Cir. 2006).

(11)     The First Circuit has approved the following instruction in a duty to disclose case:

> A failure to disclose a material fact may also constitute a false or fraudulent misrepresentation if, one, the person was under a general professional or a specific contractual duty to make such a disclosure; and, two, the person actually knew such disclosure ought to be made; and, three, the person failed to make such disclosure with the specific intent to defraud.
>
> . . . .
>
> The government has to prove as to each count considered separately, that the alleged misrepresentation as charged in the indictment was made with the intent to defraud, that is, to advance the scheme or artifice to defraud.  Such a scheme in each case has to be reasonably

> calculated to deceive a lender of ordinary prudence, ordinary care and comprehension.
>
> . . . .
>
> [I]t is not a crime simply to be careless or sloppy in discharging your duties as an attorney or a[s] an appraiser.  That may be malpractice, but it's not a crime.

United States v. Cassiere, 4 F.3d 1006, 1022 (1st Cir. 1993) (alterations in original).

(12)    Although the mail and wire fraud statutes require that the defendant "*hav[e] devised or intend[ed] to devise* any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises," 18 U.S.C §§ 1341, 1343 (emphasis added), the First Circuit has held that in mail and wire fraud cases "[t]he government need not prove that the defendant devised the fraudulent scheme," United States v. Serrano, 870 F.2d 1, 6 (1st Cir. 1989).  The First Circuit has, in dicta in cases after Serrano, made inconsistent statements on this issue.  See United States v. Carrington, 96 F.3d 1, 7 (1st Cir. 1996) ("The crime of wire fraud . . . requires that the defendant devise a scheme to defraud and then transmit a wire communication for the purposes of executing the scheme.").  Compare Pimental, 380 F.3d at 584 (the first element the government must show to prove mail fraud is "the devising or attempting to devise a scheme or artifice to defraud") and Stergios, 659 F.3d at 132 (same) with United States v. Martin, 228 F.3d 1, 15 (1st Cir. 2000) (the first element the government must show to prove wire or mail fraud is "a scheme to defraud by means of false pretenses") and Cheal, 389 F.3d at 41 (same).  Given the clear holding in Serrano and the more recent statement in Martin, these pattern charges for mail and wire fraud do not require that the defendant have devised or intended to devise the scheme.

(13)    In United States v. Berroa, 856 F.3d 141 (1st Cir. 2017), five doctors bribed an employee of the Puerto Rico Board of Medical Examiners to alter the results of their qualifying examinations to change failing grades to passes.  After completing some additional requirements, the would-be doctors received notice by mail that their licenses had been issued.  Each of them eventually established his or her own medical practice, recruited patients, and in the ensuing years billed and received money for their services.  In overturning the mail fraud convictions, the Court noted that what was missing was any connection between the "means" and the "end" that amounted to "something more than oblique, indirect, and incidental."  Id. at 149 (quoting Loughrin v. United States, 134 S. Ct. 2384, 2393 (2014)).  What mail fraud requires is that the fraud be the mechanism that induces a victim to part with money in the sense evoked by "the familiar concept [in tort law] of proximate causation."  Id. at 149 n.4.  "[T]he defendants' alleged fraud in obtaining their medical licenses cannot be said to have 'naturally induc[ed]' health care consumers to part with their money years later."  Id. at 149-50.

(14)    The jury is not required to agree on a means or a particular false statement that a defendant used to carry out a fraudulent scheme.  United States v. LaPlante, 714 F.3d 641, 647 (1st Cir. 2013).

**4.18.1343**          **Wire Fraud, 18 U.S.C. § 1343**

[Updated: 12/14/18]

[Defendant] is charged with violating the federal statute making wire fraud illegal.

For you to find [defendant] guilty of wire fraud, you must be convinced that the government has proven each of the following things beyond a reasonable doubt:

> First, that there was a scheme, substantially as charged in the indictment, to defraud [or to obtain money or property by means of false or fraudulent pretenses];
>
> Second, that the scheme to defraud involved the misrepresentation or concealment of a material fact or matter [or the scheme to obtain money or property by means of false or fraudulent pretenses involved a false statement, assertion, half-truth or knowing concealment concerning a material fact or matter];
>
> Third, that [defendant] knowingly and willfully participated in this scheme with the intent to defraud; and
>
> Fourth, that for the purpose of executing the scheme or in furtherance of the scheme, [defendant] caused an interstate [or foreign] wire communication to be used, or it was reasonably foreseeable that for the purpose of executing the scheme or in furtherance of the scheme, an interstate [or foreign] wire communication would be used, on or about the date alleged.

A scheme includes any plan, pattern or course of action. It is not necessary that the government prove all of the details alleged in the indictment concerning the precise nature and purpose of the scheme or that the alleged scheme actually succeeded in defrauding anyone. But the government must prove beyond a reasonable doubt that the scheme was substantially as charged in the indictment.

The term "defraud" means to deceive another in order to obtain money or property. [It includes a scheme to deprive another of the intangible right of honest services.]

[The term "false or fraudulent pretenses" means any false statements or assertions that were either known to be untrue when made or were made with reckless indifference to their truth and that were made with the intent to defraud. The term includes actual, direct false statements as well as half-truths and the knowing concealment of facts.]

A "material" fact or matter is one that has a natural tendency to influence or be capable of influencing the decision of the decisionmaker to whom it was addressed.

[Defendant] acted "knowingly" if [he/she] was conscious and aware of [his/her] actions, realized what [he/she] was doing or what was happening around [him/her] and did not act because of ignorance, mistake or accident.

An act or failure to act is "willful" if done voluntarily and intentionally, and with the specific intent to do something the law forbids, or with specific intent to fail to do something the law requires to be done; that is to say, with bad purpose either to disobey or to disregard the law.  [Thus, if [defendant] acted in good faith, [he/she] cannot be guilty of the crime.]  The burden to prove intent, as with all other elements of the crime, rests with the government.

Intent or knowledge may not ordinarily be proven directly because there is no way of directly scrutinizing the workings of the human mind.  In determining what [defendant] knew or intended at a particular time, you may consider any statements made or acts done or omitted by [defendant] and all other facts and circumstances received in evidence that may aid in your determination of [defendant]'s knowledge or intent.  You may infer, but you certainly are not required to infer, that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted. It is entirely up to you, however, to decide what facts are proven by the evidence received during this trial.

An "interstate [or foreign] wire communication" includes a telephone communication from one state to another [or between the United States and a foreign country.]  [The term also includes a wire transfer of funds between financial institutions as well an e-mail transmission or other internet communication.]  The wire communication does not itself have to be essential to the scheme, but it must have been made for the purpose of carrying it out.  There is no requirement that [defendant] [him/herself] was responsible for the wire communication, that the wire communication itself was fraudulent or that the use of wire communications facilities in interstate commerce was intended as the specific or exclusive means of accomplishing the alleged fraud.  But the government must prove beyond a reasonable doubt that [defendant] knew, or could reasonably have foreseen, that use of a wire communication would follow in the course of the scheme.

Phone calls designed to lull a victim into a false sense of security, postpone injuries or complaints or make the transaction less suspect are phone calls in furtherance of a scheme to defraud.

## **Comment**

(1)     See the Comments to Instruction 4.18.1341 (Mail Fraud).  "The mail and wire fraud statutes share the same language in relevant part" and are therefore subject to the same analysis.  Carpenter v. United States, 484 U.S. 19, 25 n.6 (1987); accord McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc., 904 F.2d 786, 791 n.8 (1st Cir. 1990) (same).  "Accordingly, . . . caselaw construing § 1341 is instructive for purposes of § 1343."  United States v. Castillo, 829 F.2d 1194, 1198 (1st Cir. 1987).

(2)     To prove causation, the government need not prove that the defendant "personally use[d] the wires as long as such use was a reasonably foreseeable part of the scheme in which [he] participated."  United States v. Woodward, 149 F.3d 46, 63 (1st Cir. 1998) (citations omitted).

(3)     "[U]se of the wires must be 'incident to an essential part of the scheme,'" United States v. Lopez, 71 F.3d 954, 961 (1st Cir. 1995) (quoting a mail fraud case, Pereira v. United States, 347 U.S. 1, 8 (1954)) abrogated on other grounds by United States v. Wells, 519 U.S. 482 (1997), which means that the wire communication must be "a normal concomitant of a transaction that

[was] essential to the fraudulent scheme." Castillo, 829 F.2d at 1199 (alteration in original) (quoting a mail fraud case, United States v. Contenti, 735 F.2d 628, 631 n.2 (1st Cir. 1984)). The concept is construed broadly, and includes use of the wires to "'lull the victims into a sense of false security, [and] postpone their ultimate complaint to the authorities.'" Lopez, 71 F.3d at 961 (quoting United States v. Lane, 474 U.S. 438, 451-52 (1986) (Lane actually reads "false sense of security")). There is no "strict sequence" between devising and executing a scheme. "What is necessary is that the [wire transmission] be sent 'for the purpose' of fostering that execution." United States v. Potter, 463 F.3d 9, 17 (1st Cir. 2006). "[T]he use of the mails or wires to further the fraudulent scheme need only be 'incidental.'" United States v. Woodward, 149 F.3d 46, 63 (1st Cir. 1998) (quoting United States v. Grandmaison, 77 F.3d 555, 566 (1st Cir. 1996)).

(4)     The term "interstate or foreign wire communication" includes an e-mail transmission or other internet communication. See, e.g., United States v. Martin, 228 F.3d 1, 18 (1st Cir. 2000) (affirming wire fraud conviction based on e-mails).

(5)     A plot to defraud a foreign government of tax revenue violates the statute. Pasquantino v. United States, 544 U.S. 349, 355 (2005).

(6)     On good faith, see Comment 9 to 4.18.1341.

(7)     Except for honest services fraud, a fraud charge must involve money or "property." Cleveland v. United States, 531 U.S. 12, 15, 20-25 (2000) (statute does not extend to fraud in obtaining state or municipal licenses because, although they are valuable, they are not "property" in the government regulators' hands). For honest services fraud, see Instruction 4.18.1346.

(8)     There is no requirement that the conspirators know the identity of the fraud victim. United States v. Tum, 2013 WL 388002, at *7 (1st Cir. Feb. 1, 2013).

(9)     In United States v. Pena, 910 F.3d 591, 602 (1st Cir. 2018), the First Circuit upheld the district court's refusal to give an unanimity instruction in a wire fraud case because there is no requirement for jurors "to agree on a single means of commission, any more than the indictments were required to specify one alone."

173

**4.18.1344**           **Bank Fraud, 18 U.S.C. § 1344(1), (2)**

[Updated: 2/14/18]

[Defendant] is charged with bank fraud. It is against federal law to engage in such conduct against certain financial institutions.  For you to find [defendant] guilty of this crime you must be convinced that the government has proven each of these things beyond a reasonable doubt:

> First, a scheme, substantially as charged in the indictment, to defraud a financial institution [or to obtain a financial institution's money by means of false or fraudulent pretenses];

> Second, [defendant]'s knowing **and willful** participation in this scheme with the intent to defraud [or to obtain money by means of false or fraudulent pretenses];

> Third, the financial institution was federally insured or was a federal reserve bank or a member of the federal reserve system.

A scheme includes any plan, pattern or course of action. The term "defraud" means to deceive the bank in order to obtain money or other property by misrepresenting or concealing a material fact. [It includes a scheme to deprive another of the intangible right of honest services.]

[The term "false or fraudulent pretenses" means any false statements or assertions that concern a material aspect of the matter in question, that were either known to be untrue when made or made with reckless indifference to their truth and that were made with the intent to deceive another. They include actual, direct false statements as well as half- truths and the knowing concealment of facts.]

A "material" fact or matter is one that has a natural tendency to influence or be capable of influencing the decision of the decisionmaker to whom it was addressed.

[Defendant] acted "knowingly" if [he/she] was conscious and aware of [his/her] actions, realized what [he/she] was doing or what was happening around [him/her], and did not act because of ignorance, mistake or accident.

An act or failure to act is **"willful"** if done voluntarily and intentionally, and with the specific intent to do something the law forbids, or with specific intent to fail to do something the law requires to be done; that is to say, with bad purpose either to disobey or to disregard the law.

Intent or knowledge may not ordinarily be proven directly because there is no way of directly scrutinizing the workings of the human mind.  In determining what [defendant] knew or intended at a particular time, you may consider any statements made or acts done or omitted by [defendant] and all other facts and circumstances received in evidence that may aid in your determination of [defendant]'s knowledge or intent. You may infer, but you certainly are not required to infer, that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted. It is entirely up to you, however, to decide what facts are proven by the evidence received during this trial.

The government need not prove that the scheme was successful, that the financial institutions suffered a financial loss, that the defendant knew that the victim of the scheme was a federally insured financial institution [federal reserve bank; member of the federal reserve system] or that the defendant secured a financial gain.

## **Comment**

(1)     The statute prohibits two types of bank fraud: (1) "to defraud a financial institution," 18 U.S.C. § 1344(1); or (2) "to obtain moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises," 18 U.S.C. § 1344(2).  See United States v. Colón-Rodríguez, 696 F.3d 102, 106 (1st Cir. 2012) ("The elements of this crime are well established: '(1) the defendant must engage in a scheme or artifice to defraud, or must make false statements or misrepresentations to obtain money from (2) a financial institution and (3) must do so knowingly.'").  See also United States v. Brandon, 17 F.3d 409, 424-28 (1st Cir. 1994); United States v. Benjamin, 252 F.3d 1, 5-6 (1st Cir. 2001); United States v. Moran ("Moran I"), 312 F.3d 480, 493 (1st Cir. 2002) (confirmed that a defendant's conduct need not directly induce the bank to disburse funds).

In Shaw v. United States, ___ U.S. ___, 137 S. Ct. 462 (2016), the defendant, charged with a scheme to defraud a financial institution, argued that 18 U.S.C. § 1344(1) did not apply to him because he intended to cheat not the bank, but a bank depositor, by transferring money from the depositor's account.  The Supreme Court rejected the argument and held "a deposit account at a bank counts as bank property for purposes of subsection (1).  The defendant . . . need not know that the deposit account is, as a legal matter, characterized as bank property. . . . [T]he Government need not prove that the defendant intended that the bank ultimately suffer monetary loss.  Finally, the statute as applied here requires a state of mind equivalent to knowledge, not purpose."  See also United States v. O' Donnell, 840 F.3d 15 (1st Cir. 2016).

In Loughrin v. United States, 134 S. Ct. 2384 (2014), a defendant, who had been cashing forged and altered checks at a Target store and then returning the merchandise for cash, was charged with a scheme under 18 U.S.C. § 1344(2) to obtain a bank's money by means of false pretenses.  The defendant argued that he intended to defraud Target, not a bank.  The Supreme Court held that section 1344(2) does not require the defendant intend to defraud a bank, but only that the defendant knowingly execute a scheme to obtain a bank's property by means of false statements.  Loughrin v. United States, 134 S. Ct. at 2389.

Westlaw indicates that Loughrin abrogated United States v. Kenrick, 221 F.3d 19, 29 (1st Cir. 2000).  In Kenrick, also a § 1344(2) case, the court instructed that the defendants "could not be convicted of bank fraud unless they intended to harm the bank."  221 F.3d at 26.  The First Circuit, sitting en banc, held that "the intent necessary for a bank fraud conviction is an intent to deceive the bank in order to obtain from it money or other property," and that a further intent to harm the bank was not required.  But Kenrick did not involve a victim other than the bank, as was the case in Loughrin.  The Kenrick requirement of "an intent to deceive" therefore, may have survived Loughrin, which served to clarify that an entity like a store could be the object of the scheme to obtain a bank's money by false pretenses.

(2)      See the Comments to Instruction 4.18.1341 (Mail Fraud), but note that despite very similar statutory language, <u>Loughrin</u> interprets the bank fraud statute differently from the mail fraud statute.  <u>Loughrin</u>, 134 S. Ct. at 2391-92.

(3)      If more than one scheme is charged in a particular count, the jury should be instructed that it has to make a unanimous finding with respect to a particular scheme.  <u>United States v. Puerta</u>, 38 F.3d 34, 40-41 (1st Cir. 1994).

(4)      The prosecution need not prove that the defendant knew the financial institution's status; it is sufficient for the prosecutor to prove the objective fact that the institution was insured. <u>Brandon</u>, 17 F.3d at 425.  For more complicated transactions, consider the following:

> Neither the statute nor the case law fully instructs just how tight a factual nexus is required to allow a jury to decide that a scheme, formally aimed at one (uninsured) company, operates in substance to defraud another (insured) entity with whom the defendant has not dealt directly.  In our view the statute does apply where the federally insured institution takes part in an integrated transaction and is thereby injured by the defendant, who intended to defraud another party to the transaction.  Scienter exists, the causal connection is sufficient, and under <u>Brandon</u> the defendant cannot escape liability by virtue of his ignorance of the overall arrangement.
>
> . . . .
>
> . . . The situation would be quite different, and liability might well be doubtful, if the involvement of the federally insured entity was not contemplated at the outset and came about later from a separate transaction, for example, by the happenstance of an insured bank purchasing an earlier loan under-secured because of an earlier, independent fraud.  We leave such line-drawing for a case that poses the issue.

<u>United States v. Edelkind</u>, 467 F.3d 791, 797-98 (1st Cir. 2006).

(5)      In <u>United States v. Blastos</u>, 258 F.3d 25, 27 (1st Cir. 2001), the defendant argued that the previous pattern charge was inadequate under <u>Neder v. United States</u>, 527 U.S. 1 (1999), because the instruction did not identify materiality as a separate element of the offense.  (<u>Neder</u> had not yet been decided when the first patterns were published.)  The First Circuit assumed arguendo that was so, but found it harmless error in light of the rest of the charge on materiality, noting "that the district court gave an instruction on materiality that, although it did not meet the specific requirements of <u>Neder</u>, accomplished the same purpose."  <u>Blastos</u>, 258 F.3d at 29.  The revised pattern still does not list materiality as a separate element because it seems most logical to treat it as part of the definition of "defraud" or "false or fraudulent pretenses."  An argument can be made in light of <u>Blastos</u>, however, that it is safer to separate out materiality as a separate numbered element of the offense.  The instruction then presumably would add a new "Second" namely, "The

use of false statements, assertions, half-truths, or knowing concealments, concerning material facts or matters;" and the other elements would be renumbered accordingly.  In Moran I, the court said that "the government must show that the defendants: (1) engaged in a scheme or artifice to defraud or obtain   money by means   of  materially false  statements or misrepresentations; (2) from a federally insured financial institution; and, (3) did so knowingly."   312 F.3d at 488 (citation omitted).  In United States v. Moran ("Moran II"), 393 F.3d 1, 13 (1st Cir. 2004), the First Circuit made clear that materiality is required under 18 U.S.C. § 1344(1) (defraud) and under § 1344(2) (false pretenses).

(6)      Entering a credit card number into a point of sale device is a representation that one has the cardholder's authorization to make the charge to the credit card.   Ayewoh, 627 F.3d at 922.

(7)      Except for honest services fraud, a fraud charge must involve money or "property." Cleveland v. United States, 531 U.S. 12, 15, 20-25 (2000) (statute does not extend to fraud in obtaining state or municipal licenses because, although they are valuable, they are not "property" in the government regulators' hands).  For honest services fraud, see Instruction 4.18.1346.

**4.18.1346**          **Honest Services Fraud, 18 U.S.C. § 1346**

[Updated: 8/21/13]


## Comment

(1)      Schemes to deprive others of the intangible right of honest services can be part of a fraud prosecution for mail fraud, bank fraud, wire fraud, health care fraud, etc., by virtue of 18 U.S.C. § 1346.

(2)      In Skilling v. United States, 130 S. Ct. 2896, 2907 (2010), the Supreme Court held that "§ 1346 covers only bribery and kickback schemes," a narrowing of the statute for constitutional reasons.  In United States v. George, 676 F.3d 249, 257 (1st Cir. 2012), the First Circuit recognized the cutback of § 1346 in Skilling but also noted that Skilling "did not invalidate the definition limned in 18 U.S.C. § 1346 . . . it merely clarified that prosecutions under the statutes incorporating that definition require evidence of bribes or kickbacks."  Nevertheless, after Skilling, earlier First Circuit cases must be read with caution.  Earlier, the First Circuit had held that a charge of fraud to deprive the public of honest services requires proof of two kinds of intent:  intent to deprive the public of honest services, and intent to deceive the public.  United States v. Sawyer, 239 F.3d 31, 41 (1st Cir 2001); United States v. Woodward, 149 F.3d 46, 54-55 & n.6 (1st Cir. 1998).  In United States v. Urciuoli, 513 F.3d 290, 298-99 (1st Cir. 2008), the First Circuit declined to take a definitive position on the relevance of state law to an honest services charge.  In United States v. Urciuoli ("Urciuoli II"), 613 F.3d 11, 15 (1st Cir. 2010), the court concluded that when quid pro quo bribery is charged, there is no need to charge on state law conflict of interest rules.  Accord United States v. McDonough, 727 F.3d 143, 162 (1st Cir. 2013).

(3)      In United States v. McDonough, 2013 WL 4459062, at *6 (citation omitted), the court stated:

> In the context of public officials, a bribe is the receipt of "anything of value . . . in return for . . . being influenced in the performance of any official act." . . .  In addition, because "[t]he illegal conduct is taking or agreeing to take money for a promise to act in a certain way," . . ., the government must prove that an agreement for a quid pro quo existed; that is, the receipt of something of value "in exchange for" an official act. . . . Such an agreement need not be tied to a specific act by the recipient.

McDonough has a lengthy discussion of what evidence suffices.

(4)      In distinguishing between illegal bribery and legal gratuities, McDonough approved an instruction that said:

> The government must do more than prove that "[the alleged bribor] made a payment to [the defendant public official] only to cultivate a business or political relationship with [the defendant official] or

only to express gratitude for something [the defendant official] had done."

Id. at 2013 WL 4459062, at *10.

(5)      McDonough also approved the following instruction:

the government must prove beyond a reasonable doubt a scheme to exchange one or more payments for one or more official acts by [the defendant public official] on behalf of [the alleged briber]. . . . [T]he government does not have to establish that [the public official] would not have taken official action . . . without [the charged] payments.

Id. at 2013 WL 4459062, at *12.

179

**4.18.1347**          **Health Care Fraud, 18 U.S.C. § 1347**

[Updated: 6/10/15]

[Defendant] is charged with health care fraud.  For you to find [defendant] guilty of this crime you must be convinced that the government has proven each of these things beyond a reasonable doubt:

> First, a scheme, substantially as charged in the indictment, to defraud a health care benefit program, or to obtain by false or fraudulent pretenses, representations, or promises any money owned by or under the custody or control of such a program;

> Second, [defendant]'s knowing and willful participation in this scheme with the intent to defraud;

> Third, that the scheme was in connection with the delivery of, or payment for, health care benefits, items or services.

A "scheme" includes any plan, pattern or course of action.

The term "defraud" means to deceive in order to obtain money or other property by misrepresenting or concealing a material fact.

"Health care benefit program" means any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract.

"False or fraudulent pretenses" means any false statements or assertions that concern a material aspect of the matter in question, that were either known to be untrue when made or made with reckless indifference to their truth, and that were made with the intent to defraud.  They include actual, direct false statements as well as half-truths and the knowing concealment of facts.

A "material" fact or matter is one that has a natural tendency to influence or be capable of influencing the decision of the decisionmaker to whom it was addressed.

[Defendant] acted "knowingly" if [he/she] was conscious and aware of [his/her] actions, realized what [he/she] was doing or what was happening around [him/her], and did not act because of ignorance, mistake or accident.  [In deciding whether [defendant] acted knowingly, you may infer that the defendant had knowledge of a fact if you find that [he/she] deliberately closed [his/her] eyes to a fact that otherwise would have been obvious to [him/her].  In order to infer knowledge, you must find that two things have been established.  First, that [defendant] was aware of a high probability of the fact in question.  Second, that [defendant] consciously and deliberately avoided learning of that fact.  That is to say, [defendant] willfully made [himself/herself] blind to that fact.  It is entirely up to you to determine whether [he/she] deliberately closed [his/her] eyes to the fact and, if so, what inference, if any, should be drawn.  However, it is important to bear in mind that mere negligence or mistake in failing to learn the fact is not sufficient.  There must be a deliberate effort to remain ignorant of the fact.

An act or failure to act is "willful" if done voluntarily and intentionally, and with the specific intent to do something the law forbids, or with specific intent to fail to do something the law requires to be done; that is to say, with bad purpose either to disobey or to disregard the law.

Intent or knowledge may not ordinarily be proven directly because there is no way of directly scrutinizing the workings of the human mind.  In determining what [defendant] knew or intended at a particular time, you may consider any statements made or acts done or omitted by [defendant] and all other facts and circumstances received in evidence that may aid in your determination of [defendant]'s knowledge or intent.  You may infer, but you certainly are not required to infer, that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted. It is entirely up to you, however, to decide what facts are proven by the evidence received during this trial.

The government need not prove that the scheme was successful, that the health care benefit program suffered a financial loss, that the defendant knew that the victim of the scheme was a health care benefit program or that the defendant secured a financial gain.

## <u>Comment</u>

(1)      The statute also applies to false pretense health care fraud.  18 U.S.C. § 1347(2).  It is parallel to the bank fraud statute, § 1344, and that Pattern Instruction can be consulted accordingly.

(2)      For elaboration of the statutory term "health care benefit program," <u>see</u> <u>United States v. Gelin</u>, 712 F.3d 612, 617-18 (1st Cir. 2013).

(3)      Except for honest services fraud, a fraud charge must involve money or "property." <u>Cleveland v. United States</u>, 531 U.S. 12, 15, 20-25 (2000) (statute does not extend to fraud in obtaining state or municipal licenses because, although they are valuable, they are not "property" in the government regulators' hands).  For honest services fraud, see Instruction 4.18.1346.

(4)      For the crime of false statements in connection with health care benefits under 18 U.S.C. § 1035(a)(2), although the First Circuit held that willfulness does <u>not</u> require proof that the defendant knew that making the false statement was illegal, <u>United States v. Russell</u>, 728 F.3d 23, 31-32 (1st Cir. 2013), the Solicitor General "confessed error," concluding that under section 1035, "a jury must conclude 'that [the defendant] acted with knowledge that his conduct was unlawful,'" Br. for the United States (quoting <u>Bryan v. United States</u>, 524 U.S. 184, 193 (1998).  The Supreme Court has now remanded the case to the First Circuit "for further consideration."  <u>Russell</u>, 134 S. Ct. 1827 (2014).

(5)      The First Circuit defined "willfulness" as "generally mean[ing] that the act was undertaken with a 'bad purpose,' that is, with knowledge that the act is unlawful."  <u>United States v. Iwuala</u>, 789 F.3d 1, 12 (1st Cir. 2015).

**4.18.1349**          **Conspiracy, 18 U.S.C. § 1349**

[Updated: 6/10/15]

See Instruction 4.18.371(1).

## Comment

(1)      The First Circuit has not had occasion to specifically consider whether a conviction under 18 U.S.C. § 1349 requires an overt act in furtherance of the conspiracy.  Recently, in United States v. Iwuala, 789 F.3d 1, 9-10 (1st Cir. 2015), the First Circuit listed the elements of conspiracy to commit health-care fraud, but did not include an overt act.  Other circuits are split on the question: while the Tenth Circuit has held that an overt act is not required, United States v. Thornburgh, 645 F.3d 1197, 1204 (10th Cir. 2011) ("[C]onvictions for the conspiracies at issue here (. . . to commit wire and/or mail fraud) do not 'require proof of an overt act in furtherance of the conspiracy' . . . ." (quoting Whitfield v. United States, 543 U.S. 209, 219 (2005) (holding that an overt act is not an element of a conspiracy under 18 U.S.C. § 1956(h)))), four other circuits disagree, see United States v. Mahaffy, 693 F.3d 113, 123 (2d Cir. 2012) ("To prove conspiracy [under § 1349], the government must show . . . that an overt act in furtherance of the conspiracy was committed" (citation omitted)); United States v. Bernadel, 2012 WL 2992488, at *1 (9th Cir. July 23, 2012) ("The government presented sufficient evidence for a rational trier of fact . . . to find [defendant] guilty beyond a reasonable doubt of conspiracy to commit mail fraud, wire fraud, and bank fraud . . . . The evidence introduced at trial supported the conclusion . . . that one or more overt acts listed in the indictment was taken in furtherance of the illegal purpose." (citations omitted)); United States v. Rodriguez, 454 F. App'x 812, 816 (11th Cir. 2012) ("To sustain the conspiracy conviction [under § 1349], the government is required to prove '. . . (3) an overt act by a conspirator in furtherance of the agreement.'" (citation omitted)); United States v. Akpan, 396 F. App'x 88, 90 (5th Cir. 2010) (same).

**4.18.1462**          **Use of Interactive Computer Service for Obscene Matters,
                        18 U.S.C. § 1462**

[New: 9/3/04]

[Defendant] is charged with knowingly using an interactive computer service to carry obscene [pictures] [writings] in interstate or foreign commerce.  It is against federal law to use an interactive computer service to carry obscene [pictures] [writings] in interstate or foreign commerce.  For you to find [defendant] guilty of this crime, you must be convinced that the government has proven each of the following things beyond a reasonable doubt:

> First, that [defendant] knowingly used an interactive computer service;

> Second, that [defendant] did so in order to carry one or more of the charged [pictures] [writings] in interstate or foreign commerce;

> Third, that the particular [picture] [writing] was obscene; and

> Fourth, that [defendant] knew at the time the general contents, character and nature of the [pictures] [writings].

"Knowingly" means that the act was done voluntarily and intentionally and not because of mistake or accident.

The term "interactive computer service" means any information service, system or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions.

"Interstate commerce" includes commerce between one state, territory, possession, or the District of Columbia and another state, territory, possession and the District of Columbia.

"Foreign commerce" includes commerce with a foreign country.

Material is "obscene" when:

> (1)    the average person, applying contemporary community standards, would find that the material, taken as a whole, appeals to a degrading, unhealthy or morbid interest in sex as distinguished from normal, healthy sexual desires;

> (2)    the average person, applying contemporary community standards, would find that the material depicts or describes ultimate sexual acts, excretory functions, masturbation or lewd exhibition of the genitals in a patently offensive way; and

> (3)    a reasonable person would find that the material, taken as a whole, lacks serious literary, artistic, political or scientific value.

All three characteristics of this test must be present in the particular listed material for it to be found to be obscene.  It is not necessary for the government to prove that [defendant] knew or believed the material to be legally obscene.

["Lewd, lascivious or filthy" as used in the Indictment all have the same meaning as "obscene."]

## **Comment**

(1)     For the caselaw supporting the obscenity definition, see instruction on Transfer of Obscene Materials to Minors, 4.18.1470 (18 U.S.C. § 1470).

(2)     A three-judge court in the Northern District of California has persuasively explained why Supreme Court precedents should be interpreted as giving the same meaning to the phrase "lewd, lascivious or filthy" as to the defined term "obscene."  ApolloMedia Corp. v. Reno, 19 F. Supp. 2d 1081, 1094-95 (N.D. Cal. 1998).  If the Indictment does not use the phrase, however, there is no need to refer to it.

**4.18.1470**          **Transfer of Obscene Materials to Minors, 18 U.S.C. § 1470**

[New: 9/3/04]

[Defendant] is charged with knowingly using [the mail] [a facility or means of interstate or foreign commerce] to transfer obscene matter to someone under age sixteen[, or attempting to do so].  It is against federal law knowingly to transfer obscene matter to a person under age sixteen while knowing he/she is under age sixteen, by using [the mail] [a facility or means of interstate or foreign commerce]  [, or to attempt to do so].  For you to find [defendant] guilty of this crime, you must be convinced that the government has proven each of these things beyond a reasonable doubt:

> First, that [defendant] knowingly transferred the material as charged to the person listed;

> Second, that [defendant] used [the mail] [a facility or means of interstate or foreign commerce] to do so;

> Third, that [defendant] knew at the time the general contents, character and nature of the material;

> Fourth, that the material was obscene; and

> Fifth, that at the time, the recipient was not yet sixteen years old and [defendant] knew that he/she was not yet sixteen years old.

"Knowingly" means that the act was done voluntarily and intentionally and not because of mistake or accident.

"Interstate commerce" includes commerce between one state, territory, possession, or the District of Columbia and another state, territory, possession and the District of Columbia.

"Foreign commerce" includes commerce with a foreign country.

Material is "obscene" when:

> (1)    the average person, applying contemporary community standards, would find that the material, taken as a whole, appeals to a degrading, unhealthy or morbid interest in sex as distinguished from normal, healthy sexual desires;

> (2)    the average person, applying contemporary community standards, would find that the material depicts or describes ultimate sexual acts, excretory functions, masturbation or lewd exhibition of the genitals in a patently offensive way; and

> (3)    a reasonable person would find that the material, taken as a whole, lacks serious literary, artistic, political or scientific value.

All three characteristics of this test must be present in the particular listed material for it to be found to be obscene.  It is not necessary for the government to prove that [defendant] knew or believed the material to be legally obscene.

[Use Attempt instruction, 4.18.00, as appropriate.]


## Comment

(1)     We have modeled the obscenity definition on the short, plain language instruction of the Federal Judicial Center pattern charge.  See, e.g., Federal Judicial Center, Pattern Criminal Jury Instructions Nos. 87-89 (1987).  It comes almost directly from Miller v. California, 413 U.S. 15, 24 (1973).  Many other Circuits use much lengthier charges, see, e.g., Eleventh Circuit Pattern Jury Instructions (criminal cases) Nos. 55-57 (2010), but they do not seem to make this difficult question easier.  The short charge focuses the jury on the important issues.

(2)     "[O]bscenity is to be judged according to the average person in the community, rather than the most prudish or the most tolerant."  Smith v. United States, 431 U.S. 291, 304 (1977).  It is unnecessary to specify what community.  Jenkins v. Georgia, 418 U.S. 153, 157 (1974).  But the Supreme Court has taken pains "to make clear that children are not to be included for these purposes as part of the 'community.'"  Pinkus v. United States, 436 U.S. 293, 297 (1978) (conviction under 18 U.S.C. § 1461).  It is not error to say that the community includes both sensitive and insensitive people.  Id. at 298-301.  While the community as a whole is generally the standard for judging obscenity, an exception has been recognized for material aimed at a clearly defined deviant sexual group.  Id. at 302 ("Nothing prevents a court from giving an instruction on prurient appeal to deviant sexual groups as part of an instruction pertaining to appeal to the average person when the evidence . . . would support such a charge.").  The knowledge characterization comes from Hamling v. United States, 418 U.S. 87, 123-24 (1974).  "A juror is entitled to draw on his own knowledge of the views of the average person in the community or vicinage from which he comes for making the required determination, just as he is entitled to draw on his knowledge of the propensities of a 'reasonable' person in other areas of the law."  Hamling, 418 U.S. at 104.  The test is not one of national standards.  Id. at 105-08.

(3)     This instruction does not use the term "prurient," but instead the definition of "prurient" in Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 504 (1985) ("[P]rurience may be constitutionally defined for the purposes of identifying obscenity as that which appeals to a shameful or morbid interest in sex.").  There seems to be no reason to use the actual term which may be more difficult for a jury.

(4)     The "normal, healthy sexual desires" distinction comes from Brockett, 472 U.S. at 498.  The Supreme Court has made clear that, in order to constitute obscenity, the material must be, at the very least, "in some sense erotic."  E.g., Ashcroft v. ACLU, 535 U.S. 564, 579 (2002); Cohen v. California, 403 U.S. 15, 20 (1971) ("Whatever else may be necessary to give rise to the States' broader power to prohibit obscene expression, such expression must be, in some significant way, erotic.").  In United States v. Gravenhorst, 377 F.3d 49, 52 & n.3 (1st Cir. 2004), vacated on other grounds, 544 U.S. 1029 (2005), the First Circuit said that, while it was not plain error to instruct

the jury on the erotic requirement, a specific reference to "erotic" in the instructions was unnecessary. "To the extent that the word 'erotic' in modern usage can denote material that while prurient is nonetheless not legally obscene, an instruction might simply emphasize . . . that the material must as a whole appeal to a degrading, unhealthy or morbid interest in sex, but without making specific reference to the term 'erotic.'" Id. Accordingly, this instruction does not include the erotic requirement. Given the language of the instruction ("degrading, unhealthy, or morbid interest *in sex*") the jury may not find material obscene unless it concludes that the material has a sexual connotation.

(5)     The list of images that are covered (ultimate sexual acts, excretory functions, masturbation or lewd exhibition of the genitals) comes from Miller, 413 U.S. at 25. Nudity alone is not enough. Jenkins, 418 U.S. at 161.

(6)     It is clear that on the issue of literary, artistic, political or scientific value, the standard is a reasonable person, not the average person of the other two factors. Pope v. Illinois, 481 U.S. 497, 500-01 & n.3 (1987).

**4.18.1512(a)(1)(C)**     **Witness Tampering—Killing or Attempted Killing to Prevent Communication with Federal Law Enforcement, 18 U.S.C. § 1512(a)(1)(C)**

[New: 6/3/15]

[Defendant] is charged with killing [or attempting to kill] [name of victim], with the intent to prevent a communication about the commission [or possible commission] of a federal offense to a federal law enforcement officer.  Federal law prohibits killing [or attempting to kill] a person in order to prevent a communication about the commission [or possible commission] of a federal offense to a federal law enforcement officer.  For you to find [defendant] guilty of this crime, you must be convinced that the government has proven each of the following things beyond a reasonable doubt:

First, that on about the date charged, [defendant] killed [or attempted to kill] [name of victim]; and

Second, that [defendant] did so with the intent to prevent a communication about the commission [or possible commission] of a federal offense to a federal law enforcement officer.

If the government proves that [defendant] had a particular law enforcement officer in mind and that the intended victim was in fact a federal law enforcement officer, it need not prove that [defendant] knew of the federal connection.

Moreover, the government need not prove that [defendant] had federal law enforcement officers particularly in mind.  But then the government must show that there was a reasonable likelihood that a relevant communication would have been made to a federal law enforcement officer.

## Comment

(1)     This instruction is based on Fowler v. United States, 131 S. Ct. 2045, 2049, 2052 (2011):

> [I]n a prosecution the Government must prove (1) a killing or attempted killing, (2) committed with a particular intent, namely, an intent (a) to "prevent" a "communication" (b) about "the commission or possible commission of a Federal offense" (c) to a federal "law enforcement officer or judge."

Id. at 2049.  The First Circuit has also used that test in United States v. Jiménez-Bencevi, 788 F.3d 7, 24 (1st Cir. 2015).  Previously, the First Circuit had used a four-element test:

> To establish a crime under the "law enforcement officer" section of the Act, the government must prove that:  (1) the defendant killed or attempted to kill a person; (2) the defendant was motivated by a desire to prevent the communication between any person and law enforcement authorities concerning the commission or possible commission of an offense; (3) that offense was actually a federal

188

offense; and (4) the defendant believed that the person in (2) above might communicate with the federal authorities.

United States v. Rodriguez-Marrero, 390 F.3d 1, 13 (1st Cir. 2004) (quoting United States v. Stansfield, 101 F.3d 909, 918 (3d Cir. 1996)).

(2)        [I]f a defendant kills a victim with the intent of preventing the victim from communicating with a particular individual, say John Smith, who the defendant knows is a federal law enforcement officer, the statute fits like a glove.  If a defendant kills a victim with the intent of preventing the victim from communicating with Sam Smith, who is in fact (but who the defendant does not know is) a federal law enforcement officer, the statute still fits, for it specifically says that "no state of mind need be proved" with respect to this last-mentioned circumstance.
            . . . .
            . . . [W]here the defendant kills a person with an intent to prevent communication with law enforcement officers generally, that intent includes an intent to prevent communications with *federal* law enforcement officers only if it is reasonably likely under the circumstances that (in the absence of the killing) at least one of the relevant communications would have been made to a federal officer.

Fowler, 131 S. Ct. at 2049, 2052.  "The Government need not show that such a communication, had it occurred, would have been federal beyond a reasonable doubt, nor even that it is more likely than not."  Id. at 2052.  "But the Government must show that the likelihood of communication to a federal officer was more than remote, outlandish, or simply hypothetical."  Id.

(3)    The term "law enforcement officer" means "an officer or employee of the Federal Government, or a person authorized to act for or on behalf of the Federal Government or serving the Federal Government as an adviser or consultant (A) authorized under law to engage in or supervise the prevention, detection, investigation, or prosecution of an offense; or (B) serving as a probation or pretrial services officer under this title."  18 U.S.C. § 1515(a)(4).

(4)    "[N]o state of mind need be proved with respect to the circumstance . . . that the law enforcement officer is an officer or employee of the Federal Government . . . ."  18 U.S.C.§ 1512(g)(2).

(5)    In Rodriguez-Marrero, 390 F.3d at 13, the First Circuit stated that one way for the government to satisfy the requirement that the defendant believe that the person he/she killed or attempted to kill might communicate with federal authorities is to "demonstrat[e] that the underlying offense was a federal offense and that the federal authorities had begun an investigation prior to the informant's murder or attempted murder."  (citing United States v. Bell, 113 F.3d 1345, 1349-50 (3d Cir. 1997)).

**4.18.1512(b)(1)**       **Witness Tampering—Knowingly Corruptly Persuading Another Person with the Intent to Influence, Delay or Prevent the Testimony of Any Person in an Official Proceeding**, 18 U.S.C. § 1512(b)(1)

[Updated: 2/14/18]

[Defendant] is charged with knowingly corruptly persuading [name of person], with the intent to influence, delay or prevent the testimony of [name of person] in an official proceeding.  Federal law prohibits knowingly corruptly persuading another person with the intent to influence, delay or prevent the testimony of any person in an official proceeding.  For you to find [defendant] guilty of this crime, you must be convinced that the government has proven each of the following things beyond a reasonable doubt:

> First, that on about the date charged, [defendant] corruptly persuaded [name of person];

> Second, that [defendant] did so knowingly;

> Third, that [defendant] did so with the intent to influence, delay or prevent the testimony of [name of person] in an official proceeding; and

> Fourth, that [defendant] believed that there was a current or future official proceeding in which the testimony might occur.

The word "knowingly" means that the act was done voluntarily and intentionally with the knowledge that it was wrong, and not because of mistake or accident.

An "official proceeding" is a proceeding before a federal court, a federal judge, the United States Congress or a federal agency.

## Comment

(1)     This instruction is based on United States v. Cruzado-Laureano, 404 F.3d 470, 487 (1st Cir. 2005), and Arthur Andersen LLP v. United States, 544 U.S. 696, 704-08 (2005).  See also United States v. Acevedo, 882 F.3d 251, 257 (1st Cir. 2018); United States v. Freeman, 208 F.3d 332, 337 (1st Cir. 2000) (listing the elements the government must prove under 18 U.S.C. § 1512(b)(2)(A)); 2 Leonard B. Sand et al., Modern Federal Jury Instructions (Criminal) §§ 46-28, 46-30 to 46-32 (2012).

(2)     This instruction applies in cases involving corrupt persuasion.  18 U.S.C. § 1512(b)(1) also prohibits using intimidation against, threatening, attempting to use intimidation against, attempting to threaten, attempting to corruptly persuade, and engaging in misleading conduct toward another person with the intent to influence, delay or prevent any person from testifying in an official proceeding.  If the facts so warrant, replace "corruptly persuaded" in the pattern instruction with "used intimidation against," "threatened," "attempted to use intimidation against," "attempted to threaten," "attempted to corruptly persuade" or "engaged in misleading conduct toward."  In that event, part of the definition of "knowingly" ("with the knowledge that it was wrong") should

probably be deleted, since it comes only from the juxtaposition of "knowingly" and "corruptly" in Arthur Andersen.

(3)      The pattern instruction does not include a definition of "corruptly."  Many cases will not require a definition because it will be clear that the alleged persuasion is corrupt (*e.g.* bribing a witness to influence his testimony).  The First Circuit has not defined the term, and the Supreme Court does not suggest a definition in Arthur Andersen.  The statute does not define "corruptly" or "corruptly persuades," but does state that "the term 'corruptly persuades' does not include conduct which would be misleading conduct but for a lack of a state of mind."  18 U.S.C. § 1515(a)(6).  The Ninth Circuit called this statement "circuitous[]" and "unhelpful[]," and interpreted it as merely "establish[ing] that the government is required to prove scienter as an element" of section 1512(b).  United States v. Khatami, 280 F.3d 907, 911 (9th Cir. 2002).

The Third Circuit and the D.C. Circuit provide some insight into the meaning of "corruptly" or "corruptly persuades."  Both courts concluded that influencing someone to violate a legal duty constitutes "corrupt persuasion."  United States v. Davis, 183 F.3d 231, 250 (3d Cir. 1999) (urging someone "to violate his legal duty not to kill [a witness] or aid in [that witness'] death" is corrupt persuasion); United States v. Morrison, 98 F.3d 619, 629-30 (D.C. Cir. 1996) (influencing someone to violate her legal duty to testify truthfully is corrupt persuasion).  The Third Circuit also stated "that both attempting to *bribe* someone to *withhold* information and attempting to *persuade* someone to provide *false* information to federal investigators constitute 'corrupt persuasion' punishable under § 1512(b)."  United States v. Farrell, 126 F.3d 484, 488 (3d Cir. 1997).

The Court in Arthur Andersen rejected the district court's instruction that the jury could find that the defendant acted corruptly if the defendant "intended to subvert, undermine, or impede governmental factfinding."  544 U.S. at 706 (internal quotation marks omitted).  The Court stated that this definition did "no limiting work whatsoever" because it encompassed lawful conduct such as innocently persuading another to withhold information from the government.  Id. at 707.

(4)      "Official proceeding" is defined as:

> (A) a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;
>
> (B) a proceeding before the Congress;
>
> (C) a proceeding before a Federal Government agency which is authorized by law; or
>
> (D) a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce.

18 U.S.C. § 1515(a)(1).  "Both a federal trial and a federal grand jury investigation are 'official proceedings' within the meaning of the statute."  United States v. Frankhauser, 80 F.3d 641, 651 (1st Cir. 1996).  In appropriate cases, include a description of the insurance proceedings listed in subsection 1515(a)(1)(D) in the definition of "official proceeding."

(5)      Although "an official proceeding need not be pending or about to be instituted at the time of the offense," 18 U.S.C. § 1512(f)(1), the defendant must contemplate some official proceeding in which the testimony might occur.  See Frankhauser, 80 F.3d at 651 (even though the statute does not "require actual knowledge of a pending proceeding[,] . . . the defendant must act knowingly and with the intent to impair an object's availability for use in *a particular official proceeding*") (emphasis added) (interpreting 18 U.S.C. § 1512(b)(2)(B); United States v. Byrne, 435 F.3d 16, 23 (1st Cir. 2006) (same).  The word "might" comes from the statement in Arthur Andersen that under 18 U.S.C. §§ 1512(b)(2)(A) and (B), which prohibit withholding or interfering with the use of documents or other objects in an official proceeding, a defendant cannot be "a knowingly . . . corrup[t] persuade[r]" if "he does not have in contemplation any particular official proceeding in which those documents *might* be material."  544 U.S. at 708 (emphasis added) (alterations in original).  In determining whether a defendant intended to interfere with an identifiable proceeding, "[e]ach case must be evaluated on its own facts."  Frankhauser, 80 F.3d at 652.

(6)      "The key is not whether the defendant knows or doesn't know that someone is a 'witness' (a term not in the text of the statute), but rather whether he is intending to head off the possibility of testimony in an 'official proceeding.' . . . To hold otherwise would allow a witness tampering charge in, e.g., any conspiracy where the co-conspirators agreed to a story at the outset of the conspiracy, merely because they had foreseen a possibility of eventual arrest and trial."  United States v. Misla-Aldarondo, 478 F.3d 52, 69 (1st Cir. 2007).

(7)      In defining the word "prevent" in § 1512(a)(1)(c) (killing another with intent to prevent communication to a law enforcement officer related to the commission of a federal offense), the Supreme Court has said that "the Government must show that the likelihood of communication to a federal officer was more than remote, outlandish, or simply hypothetical."  Fowler v. United States, 131 S. Ct. 2045, 2052 (2011).

**4.18.1542**          **False Statement in Application for United States Passport,**
**                     18 U.S.C. § 1542**

[New: 10/30/07]

[Defendant] is charged with making a false statement in an application for a United States passport. It is against federal law to make a false statement in a passport application. For you to find [defendant] guilty of this crime you must be convinced that the government has proven each of these things beyond a reasonable doubt:

> First, that [defendant] willfully and knowingly made a false statement in an application for a United States passport; and

> Second, that [defendant] made the false statement for the purpose of causing issuance of a passport for [his/her] own use or the use of another person.

A statement is "false" if it was untrue when made.

A false statement is made "willfully and knowingly" if [defendant] acted voluntarily, not by mistake or accident, and knew that the statement was false or demonstrated a reckless disregard for the truth with a conscious purpose to avoid learning the truth.

## Comment

(1)     This charge is based largely upon United States v. Salinas, 373 F.3d 161, 165 (1st Cir. 2004) (examining the substantive criminal elements of section 1542 in the context of deciding proper venue), and United States v. George, 386 F.3d 383, 397 (2d Cir. 2004).

(2)     There is no requirement of "materiality" in section 1542. Salinas, 373 F.3d at 167 ("The passport fraud statute . . . does not contain any materiality requirement. Moreover, courts have refused to read a materiality requirement into it.").

(3)     In a closely-related context—the prohibition against the use of a fraudulently obtained passport—the Supreme Court explained "knowingly and willfully" to mean "deliberately and with knowledge and not something which is merely careless or negligent or inadvertent." Browder v. United States, 312 U.S. 335, 341 (1941); see also George, 386 F.3d at 388–89 (concluding the definition of "knowingly and willfully" in Browder should be applied for the prohibition against false statements in section 1542).
        The meaning of "knowingly and willfully" stated above and derived from Browder should be used instead of the general definitions of "knowingly" and "willfully" in Instructions 2.15–2.17.

(4)     The crime is complete "at the moment an applicant makes a knowingly false statement in an application with a view toward procuring a passport." Salinas, 373 F.3d at 165. And therefore "[p]roof of a good motive . . . is not probative on the issue" of intent for section 1542. United States v. Washington, 705 F.2d 489, 493 (D.C. Cir. 1983); see also Browder, 312 U.S. at 341–42; George, 386 F.3d at 389, 394–96.

**4.18.1546**          **False Statements in Document Required by Immigration Law, 18 U.S.C. § 1546(a)**

[Updated: 10/22/08]

[Defendant] is charged with making a false statement under oath in a document required by federal immigration laws.  It is against federal law to make a false statement under oath in a document required by federal immigration laws.  For you to find [defendant] guilty of this crime, you must be convinced that the government has proven each of these things beyond a reasonable doubt:

>    First, that [defendant] knowingly made a material false statement under oath;

>    Second, that [defendant] made the statement voluntarily and intentionally; and

>    Third, that [defendant] made the statement in an immigration form [identify number and title of document].

A false statement is made "knowingly" if [defendant] knew that it was false or demonstrated a reckless disregard for the truth with a conscious purpose to avoid learning the truth.

The statement is "material" if it has a natural tendency to influence or to be capable of influencing the decision of the decisionmaker to which it was addressed.

A statement is "false" if it is untrue when made.


## Comment

(1)     "The elements of a § 1546(a) violation are: (1) the defendant made a false statement, (2) the statement was made knowingly and (3) under oath, (4) the statement concerns a 'material fact,' (5) and the statement was made in an application required by the United States immigration laws and regulations."  United States v. Boskic, 545 F.3d 69, 85 (1st Cir. 2008) (citation omitted).

(2)     "[O]ur precedent establishes that a jury can properly find that the defendant made a false statement by swearing that the incomplete answers to questions on a form are truthful even if the defendant does not also swear that the responses to the questions on the form are complete." Boskic, 545 F.3d at 87.

(3)     For a discussion of a literal truth defense and fundamentally ambiguous questions, see Boskic, 545 F.3d at 89-92.

**4.18.1623**                **False Declaration in Grand Jury Testimony, 18 U.S.C. § 1623**

[Updated: 8/25/06]

[Defendant] is charged with making a false declaration in [his/her] grand jury testimony.  It is against federal law to knowingly make a false material declaration to the grand jury while under oath.

For you to find [defendant] guilty of this crime, you must be convinced that the government has proven each of these things beyond a reasonable doubt:

>   First, that [defendant] was under oath as a witness before the Grand Jury of this Court;

>   Second, that [defendant] made a false declaration that was material to the grand jury's investigation; and

>   Third, that at the time [defendant] made the false declaration, [he/she] knew the declaration was false.

A declaration is false if it is untrue when made.

A declaration is "material" to the grand jury's investigation if it is capable of affecting or influencing the grand jury inquiry or decision.  It is not necessary for the government to prove that the grand jury was, in fact, misled or influenced in any way by the false declaration.

## Comment

(1)     The instruction can be modified for perjury in court, which is covered by the same statute.  The elements are the same.  See United States v. Pagán-Santini, 451 F.3d 258, 266 (1st Cir. 2006).

(2)     The definition of materiality comes from United States v. Doherty, 906 F.2d 41, 43-44 (1st Cir. 1990), which stated that the statement must be "material to the grand jury's investigation" but need not actually influence the grand jury.  Accord United States v. Silveira, 426 F.3d 514, 518-20 (1st Cir. 2005).  The phrase "capable of influencing" comes from United States v. Scivola, 766 F.2d 37, 44 (1st Cir. 1985) (quoting United States v. Giarratano, 622 F.2d 153, 156 (5th Cir. 1980)), a case that held that materiality can be satisfied even if the declaration only affected the credibility of a witness.  United States v. Goguen, 723 F.2d 1012, 1019 (1st Cir. 1983), used slightly different language ("might have influenced").  These cases all precede the Supreme Court's holding in United States v. Gaudin, 515 U.S. 506 (1995), that the question of materiality is for the jury, reiterated specifically in Johnson v. United States, 520 U.S. 461, 465 (1997) ("[T]here is no doubt that materiality is an element of perjury under § 1623. . . . Gaudin therefore dictates that materiality be decided by the jury, not the court.").  However, the language of the First Circuit cases still seems pertinent.

(3)     If there is more than one statement or declaration, the better practice is to instruct the jurors that they must agree unanimously on the falsity of at least one statement.  See Pagán-Santini, 451

F.3d at 267 (no plain error because no objection and "the law is less clear than it might be," but observing that two circuits require a specific unanimity instruction if requested).

(4)     The Fifth Circuit pattern charge has the following additional language that may sometimes be appropriate, but for which we have found no caselaw:

> If you should find that a particular question was ambiguous and that the defendant truthfully answered one reasonable interpretation of the question under the circumstances presented, then such answer would not be false.  Similarly, if you should find that the question was clear but the answer was ambiguous, and one reasonable interpretation of such answer would be truthful, then such answer would not be false.

Fifth Circuit Instruction 2.69.

**4.18.1832**          **Theft of Trade Secrets (Economic Espionage Act),
                        18 U.S.C. § 1832**

[Updated: 6/14/02]

[Defendant] is charged with stealing trade secrets.  It is against federal law to steal trade secrets. For you to find [defendant] guilty of this crime, you must be convinced that the government has proven each of these things beyond a reasonable doubt:

> First, that [defendant] knowingly [stole; took without permission; copied without permission; downloaded without permission; received while knowing it was stolen or taken without permission] a trade secret;

> Second, that the trade secret was related to or included in a product produced for or placed in interstate or foreign commerce;

> Third, that [defendant] had the intent of economically benefiting someone other than the trade secret's owner; and

> Fourth, that [defendant] intended or knew that his action would injure the trade secret's owner.

The term "trade secret" means all forms and types of financial, business, scientific, technical, economic or engineering information, including program devices, designs, prototypes, methods, techniques, processes, procedures, programs or codes, whether tangible or intangible, and however stored if the owner has taken reasonable measures to keep the information secret and if the information derives independent economic value, actual or potential, from not being generally known to or readily ascertainable through proper means, by the public.

The term "interstate commerce" means trade or travel from one state to another.

197

**4.18.1951**          **Interference with Commerce by Robbery or Extortion (Hobbs Act), 18 U.S.C. § 1951**

[Updated: 6/24/19]

[Defendant] is accused of obstructing, delaying or affecting commerce by committing [robbery][extortion].  It is against federal law to engage in such conduct.  For you to find [defendant] guilty of this crime, you must be convinced that the government has proven each of the following things beyond a reasonable doubt:

> First, that [defendant] knowingly and willfully obtained property from [person or corporation robbed/extorted];

> Second, that [defendant] did so by means of [extortion][robbery];

> Third, that the [extortion] [robbery] affected interstate commerce.

The term "interstate commerce" means commerce between any point in a state and any point outside the state.  It is only necessary that the government prove beyond a reasonable doubt that there is a realistic probability that the acts committed by [defendant] as charged in the indictment had some slight or minimal effect on interstate commerce.  It is not necessary for you to find that [defendant] knew or intended that [his/her] actions would affect interstate commerce.

["Extortion" means obtaining property from another with his or her consent, but where that consent is obtained [by the wrongful use of actual or threatened force, violence or fear] [under color of official right.]]  [Defendant] must know that he was not legally entitled to the property.

[To prove extortion by fear, the government must show:  (1) that the victim believed that economic loss would result from failing to comply with [defendant's] demands and (2) that the circumstances made the fear reasonable.  Economic loss may include the possibility of lost business opportunities.  But the loss feared must be a particular economic loss, not merely the loss of a potential benefit.]

[To prove extortion under color of official right, the government must show that [defendant public official] obtained property to which [he/she] was not entitled and knew at the time that [he/she] was obtaining it in return for official acts.  The government need not show that [defendant public official] initiated the transfer, nor does the government need to show that [defendant public official] actually had the ultimate authority to achieve the desired result.  [If the property was obtained as a political or campaign contribution, the government must prove that the payment or other transfer was made in return for an explicit promise or understanding by [defendant] to perform or not to perform an official act.  It is not necessary for the government to show that the official action or inaction actually occurred.]]

["Robbery" means unlawfully taking or obtaining personal property from another, against his or her will, by means of actual or threatened force, or violence, or fear of injury to his or her person or property, or property in his or her custody or possession, or the person or property of a relative or member of his family or of anyone in his or her company at the time of the taking or obtaining.]

198

To act "willfully" means to act voluntarily and intelligently and with the specific intent that the underlying crime be committed—that is to say, with bad purpose, either to disobey or disregard the law—not to act by ignorance, accident or mistake.

## Comment

(1)      The elements of the Hobbs Act offense are taken from the statute and from United States v. Cruzado-Laureano, 404 F.3d 470, 480 (1st Cir. 2005).

(2)      There is no freestanding physical violence offense in the Hobbs Act.  Rather, the Hobbs Act "forbid[s] acts or threats of physical violence in furtherance of a plan or purpose to engage in what the statute refers to as robbery or extortion (and related attempts or conspiracies)."  Scheidler v. NOW, Inc., 547 U.S. 9, 23 (2006).

(3)      To obtain property "entail[s] both a deprivation and acquisition of property." Scheidler v. NOW, Inc., 537 U.S. 393, 404-05 (2003) (citing United States v. Ennons, 410 U.S. 396, 406 n.16 (1973)).  Thus, depriving someone of a property right of exclusive control of a business asset, as by causing an abortion clinic to shut down, was insufficient where the person "did not acquire any such property."  Id. at 405.

       The First Circuit has rejected the contention that for purposes of the Hobbs Act extortion provision, a defendant "obtains" property by bringing about its transfer to another only if the defendant "receives a personal benefit in consequence."  United States v. Brissette, 919 F.3d 670, 680 (1st Cir. 2019).  See also United States v. Tkhilaishvili, 926 F.3d 1, 10 (1st Cir. 2019) ("[A] defendant may 'obtain' property within the meaning of the Hobbs Act by bringing about its transfer to a third party, regardless of whether the defendant received a personal benefit from the transfer."). See also United States v. Green, 350 U.S. 415, 420 (1956) (extortion "in no way depends on having a direct benefit conferred upon the person who obtains the property").

(4)      In order to establish extortion or attempted extortion, the government must prove, by direct or circumstantial evidence, that the defendant knew that he was not legally entitled to the property that he either received or attempted to receive.  United States v. DiDonna, 866 F.3d 40, 47 (1st Cir. 2017).

       For extortion, "[t]he property extorted must . . . be *transferable*—that is, capable of passing from one person to another."  Sekhar v. United States, 570 U.S. ___, 2013 WL 3196929, at *3 (2013) (emphasis original) (holding that attempting to compel a person to recommend that his employer approve an investment does not qualify).

(5)      The color-of-official-right extortion definition is based on United States v. Rivera-Rangel, 396 F.3d 476, 484 (1st Cir. 2005) and Evans v. United States, 504 U.S. 255, 268 (1992).  See also United States v. Cruz-Arroyo, 461 F.3d 69, 73-74 (1st Cir. 2006) (citations omitted):

> To establish guilt for extortion under color of official right, the prosecution must show only that the defendant, a public official, has received an emolument that he was not entitled to receive, with knowledge that the emolument was tendered in exchange for some

official act.  The government is not required to prove any affirmative act of inducement on the part of the corrupt official.

Accord United States v. Turner, 684 F.3d 244, 253-54 (1st Cir. 2012) (assuming without deciding that a *quid pro quo* is a requirement in non-campaign contribution cases); United States v. McDonough, 2013 WL 4459062 at *9 (quid pro quo not an element, but some courts require it).

A defendant may be convicted of conspiracy to commit Hobbs Act extortion, based on proof that he entered into a conspiracy that had as its objective the obtaining of property from another conspirator with his consent and under color of official right.  Ocasio v. United States, 136 S. Ct. 1423 (2016).  In Ocasio, Baltimore police officer Ocasio, and other police officers who reported to the scene of automobile accidents, accepted payments from the owners of a local automobile repair shop, in exchange for persuading the owners of damaged cars to have their vehicles towed to the repair shop.  Ocasio contended that the repair shop owners could not be members of a conspiracy that had as it aim obtaining money from the shop owners with their consent and under color of official right; Hobbs Act extortion required obtaining money "from another," and the shop owners did not have the objective of taking money from themselves.  The Court disagreed and concluded that the shop owners had a criminal objective: that the petitioner and other police officers would obtain money from another.  Under basic principles of conspiracy law, the government has no obligation, in a prosecution for Hobbs Act conspiracy to extort, to demonstrate that each conspirator agreed personally to commit, or even was capable of committing, the substantive offense of Hobbs Act extortion.  Instead, it is sufficient to prove that the conspirators agreed that the underlying crime be committed by a member of the conspiracy who was capable of committing it.  In Ocasio, the shop owners, because they were not public officials, could not obtain property from another "under color of official right," but the police officers could do so, by obtaining money from the shop owners with their consent.  The shop owners could conspire to commit Hobbs Act extortion by agreeing to help Ocasio and other police officers commit the substantive offense.

The political contribution instruction is based on McCormick v. United States, 500 U.S. 257, 273 (1991) and Evans, 504 U.S. at 268.  "[W]here the payment takes the form of a campaign contribution, the government must prove a 'specific *quid pro quo*' between the public official and the payor."  United States v. D'Amico, 496 F.3d 95, 101 (1st Cir. 2007) (citations omitted), vacated on other grounds, 552 U.S. 1173.  The statute's treatment of extortion under color of official right "reaches anyone who actually exercises official powers, regardless of whether those powers were conferred by election, appointment, or some other method."  Rivera-Rangel, 396 F.3d at 484 n.8 (quoting United States v. Freeman, 6 F.3d 586, 593 (9th Cir. 1993)).

(6)     The "fear" element of extortion can include fear of economic loss.  United States v. Sturm, 870 F.2d 769, 771-72 (1st Cir. 1989).  "[T]he loss feared must be a particular economic loss, not merely the loss of a potential benefit."  Rivera-Rangel, 396 F.3d at 483 (citation and internal quotations omitted).  It is not necessary that there be an explicit threat; "it is enough if the victim understood the defendant's conduct as an implied threat."  Id. at 484 n.7 (citation and internal quotations omitted).

"To establish extortion through fear of economic loss, the government must show that the victim believed that economic loss would result from his . . . failure to comply with the alleged extortionist's terms, and that the circumstances . . . rendered that fear reasonable."  Rivera-Rangel, 396 F.3d at 483 (citation and internal quotations omitted); see also United States v. Capo, 817 F.2d

947, 951 (2d Cir. 1987) (quoted in <u>Rivera-Rangel</u>, 396 F.3d at 483)  ("[T]he proof need establish that the victim *reasonably* believed: first, that the defendant had the power to harm the victim, and second, that the defendant would exploit that power to the victim's detriment."); <u>accord</u> <u>Cruz-Arroyo</u>, 461 F.3d at 74-75.

If the extortion is based on economic fear, the term "wrongful" must be defined to require that the government prove that the defendant did not have a claim of right to the property and that the defendant knew that he or she was not legally entitled to the property obtained.  <u>Sturm</u>, 870 F.2d at 772-73, 774-75.

(7)     The definition of "interstate commerce" should be modified according to the facts of the case within the range provided by 18 U.S.C. § 1951(b)(3).  In <u>United States v. McKenna</u>, 889 F.2d 1168, 1171 (1st Cir. 1989), the First Circuit described the commerce element as a mixed question of law and fact.  First, "[t]he district court must determine if, as a matter of law, interstate commerce could be affected.  If the court determines it could be, the question is turned over to the jury to determine if, as a matter of fact, interstate commerce was affected as the district court charged it could have been." <u>Id</u>.  Other circuits have stated explicitly that it is unnecessary to show that the defendant intended to affect commerce.  <u>See</u> <u>United States v. Cerilli</u>, 603 F.2d 415, 424 (3d Cir. 1979) (the defendant does not need to intend to affect interstate commerce); <u>United States v. Gupton</u>, 495 F.2d 550, 551 (5th Cir. 1974) ("[T]he government need not show that the accused set out with the specific conscious purpose or desire to obstruct commerce." (citation omitted)).  The term can include illegal commerce, such as drug dealing.  <u>United States v. Guerrier</u>, 669 F.3d 1, 7-8 (1st Cir. 2011).

(8)     To meet the jurisdictional requirement, "the government need show only that the conduct created a 'realistic probability' of a minimal effect on interstate commerce."  <u>United States v. Brennick</u>, 405 F.3d 96, 100 (1st Cir. 2005); <u>accord</u> <u>Turner</u>, 684 F.3d at 259-60.  <u>See also</u> <u>Rivera-Rangel</u>, 396 F.3d at 482; <u>United States v. Capozzi</u>, 347 F.3d 327, 335 (1st Cir. 2003).  "The Hobbs Act's scope extends to the limit of Congress' Commerce Clause authority.  Because of the statute's broad sweep, to prove a Hobbs Act violation, the government must show only that the [defendant's] extortionate conduct created a realistic probability of a *de minimis* effect on interstate commerce."  <u>Capozzi</u>, 347 F.3d at 335 (citations and internal quotations omitted).  "The commerce element may be satisfied where threatened or potential effects on commerce never materialize because extortionate demands are met or where the extortion has a beneficial effect on interstate commerce."  <u>United States v. Tormos-Vega</u>, 959 F.2d 1103, 1113 (1st Cir. 1992) (citation and internal quotations omitted).

The First Circuit has described the required "*de minimis* effect" as "some slight impact on commerce." <u>See</u> <u>United States v. Devin</u>, 918 F.2d 280, 293 (1st Cir. 1990).  The First Circuit has upheld instructions that the jury must find the activity to have had a "minimal, slight or subtle effect" on interstate commerce, <u>United States v. Butt</u>, 955 F.2d 77, 80 n.2 (1st Cir. 1992), and that the government only had to show "any effect at all on interstate commerce," even a "minimal" or "potential" one.  <u>United States v. Tkhilaishvili</u>, 926 F.3d 1, 14 (1st Cir. 2019).  This standard survives the decision in <u>United States v. Lopez</u>, 514 U.S. 549 (1995).  <u>Capozzi</u>, 347 F.3d at 335-56; <u>United States v. Turner</u>, 501 F.3d 59, 69-70 (1st Cir. 2007).

"The government establishes a cognizable effect on interstate commerce if it shows that the extortionate conduct depleted the assets of a business engaged in interstate commerce."  <u>Cruz-Arroyo</u>, 461 F.3d at 75.  For a lengthy discussion of what suffices, <u>see</u> <u>United States v. Rivera-</u>

Rivera, 555 F.3d 277, 286-89 (1st Cir. 2009).  "When a business is the victim of a robbery, an effect on interstate commerce may generally be demonstrated by showing '(1) the business engaged in interstate commerce, and (2) that the robbery either depleted the assets of the business . . . or resulted in the business's temporary or permanent closure.'"  United States v. Cabrera-Rivera, 583 F.3d 26, 32 (1st Cir. 2009) (citations omitted).  See also United States v. Jimenez-Torres, 435 F.3d 3, 7-9 (1st Cir. 2006) (sufficient effect on interstate commerce from robbery and murder at house of gas station owner where station receipts were stolen and station closed permanently).

Where the victim is an individual, the government has a heightened burden of showing an effect on commerce "[b]ecause criminal acts that are directed at individuals rather than at businesses normally have a less substantial effect on interstate commerce."  United States v. McCormack, 371 F.3d 22, 28 (1st Cir. 2004), vacated on other grounds, 543 U.S. 1098 (2005). The First Circuit has clarified that it has not endorsed "an alternative to the de minimis standard for individual victims of Hobbs Act crimes." Tkhilaishvili, 926 F.3d at 11-12.  Rather, its reference in McCormack to a "'heightened standard' to be applied to Hobbs Act crimes directed at an individual," id. at 28, "relates to the degree of scrutiny, not the quantum of proof."  United States v. Nascimento, 491 F.3d 25, 37 n.3 (1st Cir. 2007).  See Tkhilaishvili, 926 F.3d at 11.

(9)     To obtain property "entail[s] both a deprivation and acquisition of property."  Scheidler, 537 U.S. at 404-05 (citing United States v. Enmons, 410 U.S. 396, 406 n.16 (1973)).  Thus, depriving someone of a property right of exclusive control of a business asset, as by causing an abortion clinic to shut down, was insufficient where the person "did not acquire any such property." Id.

(10)   Section 1951 includes prohibitions on conspiracy and attempt.  A Hobbs Act conspiracy does not require an overt act.  United States v. Franco-Santiago, 681 F.3d 1, 9 n.14 (1st Cir. 2012). Tormos-Vega, 959 F.2d at 1115.  "The cases hold that attempts are lesser-included offenses of completed Hobbs Act violations." D'Amico, 496 F.3d at 99.

**4.18.1952**           **Travel Act, 18 U.S.C. § 1952**

[Updated: 10/14/05]

[Defendant] is charged with a violating the Travel Act.  It is against federal law to [describe offense]. For you to find the defendant guilty of this crime, you must be convinced that the government has proven each of the following things beyond a reasonable doubt:

> First, that [defendant] [traveled; caused someone else to travel] in interstate commerce or [in foreign commerce] or that [he/she] [used an interstate facility such as the mail, the internet or telephone];

> Second, that [he/she] did so with the intent to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of an unlawful activity [here violation of . . .]; and

> Third, that [he/she] later performed or attempted to perform acts in furtherance of promoting, managing, establishing carrying on or facilitating [specify the unlawful activity].

"Interstate commerce" includes commerce or travel between one state and another state, and the use of the mail, telephone and internet.  There is no requirement that the interstate travel or use of interstate facilities be essential to the scheme.  It is enough if the interstate travel or use of interstate facilities made the unlawful activity easier.

## **Comment**

(1)     This instruction is based on United States v. Escobar-de Jesus, 187 F.3d 148, 177 (1st Cir. 1999), United States v. Woodward, 149 F.3d 46, 65-68 (1st Cir. 1998), and United States v. Hathaway, 534 F.2d 386, 398 (1st Cir. 1976); accord United States v. Nishnianidze, 342 F.3d 6, 15 (1st Cir. 2003).  There are other forms of Travel Act violations which, if charged, would change the second element in the instruction.  For certain penalties, a different third element (committing a crime of violence to further an unlawful activity) must be charged and proven beyond a reasonable doubt.  18 U.S.C. § 1952(a)(B).

(2)     Jurisdiction under the Travel Act is predicated upon the existence of a connection between the interstate act and the illegal objective.  The Travel Act is to be "construed narrowly," with a concern whether the interstate act's relationship to the unlawful activity is more than "incidental." Hathaway, 534 F.2d at 398 (citing Rewis v. United States, 401 U.S. 808, 812 (1971) (holding that interstate travel by customers of an illegal gambling operation was insufficient to bring such conduct under the prohibitions of the Travel Act; expansive reading of "interstate commerce" under the statute would alter sensitive federal-state relationships)); see also Perrin v. United States, 444 U.S. 37, 50 (1979) (concern in Rewis was the "tenuous interstate commerce element;" "so long as the requisite interstate nexus is present, the statute reflects a clear and deliberate intent on the part of Congress to alter the federal-state balance in order to reinforce state law enforcement.").

(3)    "Unlawful activity" is defined in 18 U.S.C. § 1952(b).  The appropriate one(s) should be selected and specified in the charge.

(4)    "[F]ederal courts have correctly applied § 1952 to those individuals whose agents or employees cross state lines in furtherance of illegal activity."  United States v. Fitzpatrick, 892 F.2d 162, 167 (1st Cir. 1989) (concluding that interstate travel by others that results in violation of state bribery statute gives rise to a substantive violation of the Travel Act by the one who ordered the travel).

**4.18.1956(a)(1)(A)**          **Money Laundering—Promotion of Illegal Activity or**
                                **Tax Evasion, 18 U.S.C. § 1956(a)(1)(A)**

[Updated: 4/1/15]

[Defendant] is charged with violating that portion of the federal money laundering statute that prohibits certain financial transactions intended to [promote specified unlawful activity; evade federal income taxes]. It is against federal law to engage in such conduct. For [defendant] to be convicted of this crime, you must be convinced that the government has proven each of the following things beyond a reasonable doubt:

> First, that [defendant] entered into a financial transaction or transactions, on or about the date alleged, with a financial institution engaged in interstate commerce;

> Second, that the transaction involved the use of proceeds of unlawful activities, specifically, proceeds of the [_____];

> Third, that [defendant] knew that these were the proceeds of some kind of crime that amounts to a state or federal felony; and

> Fourth, that [defendant] entered into the transaction or transactions with the intent to [promote the carrying on of specified unlawful activity; evade federal income taxes].

A [withdrawal; deposit; transfer; etc.] of funds from a bank is a financial transaction.

"Proceeds" means any [profits] [gross receipts] that someone acquires or retains as a result of the commission of the unlawful activity.

"Promote" means to further, to help carry out, or to make easier.

Knowledge may not ordinarily be proven directly because there is no way of directly scrutinizing the workings of the human mind. In determining what [defendant] knew or intended at a particular time, you may consider any statements made or acts done or omitted by [defendant] and all other facts and circumstances received in evidence that may aid in your determination of [defendant]'s knowledge or intent. You may infer, but you are certainly not required to infer, that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted. It is entirely up to you, however, to decide what facts are proven by the evidence received during this trial.

## Comment

(1)     The specified unlawful activities are listed in 18 U.S.C. § 1956 (c)(7). "[T]he 'proceeds' used for money laundering must be 'proceeds' from a different illegal activity than the illegal activity of money laundering itself." United States v. Castellini, 392 F.3d 35, 38 (1st Cir. 2004) (citation omitted).

(2)     On the definition of proceeds, "[s]ince [Justice Stevens's] vote is necessary to our judgment, and since his opinion rests upon the narrower ground, the Court's holding is limited

accordingly.  But the narrowness of his ground consists of finding that 'proceeds' means 'profits' when there is no legislative history to the contrary.  That is all that our judgment holds.  It does not hold that the outcome is different when contrary legislative history does exist."  United States v. Santos, 553 U.S. 507, 523 (2008) (citing Marks v. United States, 430 U.S. 188, 193 (1977)).  Accord United States v. Foley, 783 F.3d 7 (1st Cir. 2015).  When drug trafficking is the source of funds, gross revenue qualifies.  United States v. Adorno-Molina, 774 F.3d 123-24 (1st Cir. 2014).  Subsequent to the Supreme Court's decision in Santos, Congress amended the statute to include a definition of the term "proceeds."  Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111-21, § 2(f)(1), 123 Stat. 1617, 1618 (2009).  Effective May 20, 2009, the term "proceeds" is defined as "any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity."  18 U.S.C. § 1956(c)(9).  Pre-amendment cases should be decided based on the prior version of the statute, as interpreted by Santos.  See, e.g., Adorno-Molina, supra.

(3)      "'[T]he defendant need not know exactly what crime generated the funds involved in a transaction, only that the funds are the proceeds of some kind of crime that is a felony under Federal or State law.'"  United States v. Isabel, 945 F.2d 1193, 1201 n.13 (1st Cir. 1991) (quoting S. Rep. No. 433, 99th Cong., 2d Sess. 12 (1986)) (alteration in original); 18 U.S.C. § 1956 (c)(1); United States v. Corchado-Peralta, 318 F.3d 255, 256 (1st Cir. 2003).  A willful blindness instruction may be appropriate.  United States v. Rivera-Rodriguez, 318 F.3d 268, 271 (1st Cir. 2003).  Moreover, the government is not required to specify the predicate offense in the indictment, United States v. McGauley, 279 F.3d 62, 77 n.15 (1st Cir. 2002), or to secure a conviction on the underlying unlawful activity.  United States v. Richard, 234 F.3d 763, 768 (1st Cir. 2000).

(4)      "Sole or exclusive intent to evade taxes is not required. . . ."  United States v. Zanghi, 189 F.3d 71, 78 (1st Cir. 1999).

(5)      It is not a defense that legitimate funds are also involved, and there is no *de minimis* exception.  McGauley, 279 F.3d at 71.

(6)      The statute, 18 U.S.C. § 1956(c)(4), has a number of "commerce" requirements, and the instruction should choose the appropriate one.  Some interstate commerce involvement is required, although a minimal effect is sufficient.  United States v. Owens, 167 F.3d 739, 755 (1st Cir. 1999).  Federal insurance of bank deposits is sufficient.  18 U.S.C. § 1956 (c)(6)(A) (cross-referencing 31 U.S.C. § 5312 (a)(2)); United States v. Benjamin, 252 F.3d 1, 9 (1st Cir. 2001).

(7)      Consult the statute for lengthy definitions of "transaction" and "financial transaction," as well as subsidiary terminology like "monetary instruments" and "financial institution" and choose the appropriate terms.  In Richard, 234 F.3d at 768, the court stated:

> [G]iving criminally derived checks to a co-conspirator, who deposits them into a bank account, is a transfer to, and involves the use of, a financial institution, which satisfies the definition of "monetary transaction" in section 1957(f)(1) [similar, for these purposes, to section 1956].  Further, transferring funds to a co-conspirator involves monetary instruments, namely the currency or checks involved, which satisfies section 1956(c)(5).

**4.18.1956(a)(1)(B)(i)**          **Money Laundering—Illegal Concealment,
18 U.S.C. § 1956(a)(1)(B)(i)**

[Updated: 4/1/15]

[Defendant] is charged with violating that portion of the federal money laundering statute that prohibits concealment of the proceeds of certain unlawful activities. It is against federal law to engage in such concealment. For [defendant] to be convicted of this crime, you must be convinced that the government has proven each of the following things beyond a reasonable doubt:

> First, that [defendant] entered into a financial transaction or transactions, on or about the date alleged, with a financial institution engaged in interstate commerce;

> Second, that the transaction involved the use of proceeds of unlawful activities, specifically, proceeds of the [_____];

> Third, that [defendant] knew that these were the proceeds of some kind of crime that amounts to a state or federal felony; and

> Fourth, that [defendant] knew that the transaction or transactions were designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of that specified unlawful activity.

A [withdrawal; deposit; transfer; etc.] of funds from a bank is a financial transaction.

"Proceeds" means any [profits] [gross receipts] that someone acquires or retains as a result of the commission of the unlawful activity.

Knowledge may not ordinarily be proven directly because there is no way of directly scrutinizing the workings of the human mind. In determining what [defendant] knew or intended at a particular time, you may consider any statements made or acts done or omitted by [defendant] and all other facts and circumstances received in evidence that may aid in your determination of [defendant]'s knowledge or intent. You may infer, but you are certainly not required to infer, that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted. It is entirely up to you, however, to decide what facts are proven by the evidence received during this trial.

## **Comment**

(1)     "[T]o obtain a conviction for "concealment" money laundering, the evidence must show that the *purpose* of the financial transaction is to conceal the nature, location, source, ownership, or control of the transacted proceeds."  United States v. Cedeño-Pérez, 579 F.3d 54, 60-61 (1st Cir. 2009).

(2)     On the definition of proceeds, "[s]ince [Justice Stevens's] vote is necessary to our judgment, and since his opinion rests upon the narrower ground, the Court's holding is limited

accordingly. But the narrowness of his ground consists of finding that 'proceeds' means 'profits' when there is no legislative history to the contrary. That is all that our judgment holds. It does not hold that the outcome is different when contrary legislative history does exist." United States v. Santos, 553 U.S. 507, 523 (2008) (citing Marks v. United States, 430 U.S. 188, 193 (1977)). Accord United States v. Foley, 783 F.3d 7 (1st Cir. 2015). When drug trafficking is the source of funds, gross revenue qualifies. United States v. Adorno-Molina, 774 F.3d 123-24 (1st Cir. 2014). Subsequent to the Supreme Court's decision in Santos, Congress amended the statute to include a definition of the term "proceeds." Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111-21, § 2(f)(1), 123 Stat. 1617, 1618 (2009). Effective May 20, 2009, the term "proceeds" is defined as "any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity." 18 U.S.C. § 1956(c)(9). Pre-amendment cases should be decided based on the prior version of the statute, as interpreted by Santos. See, e.g., Adorno-Molina, supra.

(3)     The specified unlawful activities are listed in 18 U.S.C. § 1956 (c)(7). "[T]he 'proceeds' used for money laundering must be 'proceeds' from a different illegal activity than the illegal activity of money laundering itself." United States v. Castellini, 392 F.3d 35, 38 (1st Cir. 2004) (citation omitted).

(4)     "'[T]he defendant need not know exactly what crime generated the funds involved in a transaction, only that the funds are the proceeds of some kind of crime that is a felony under Federal or State law.'" United States v. Isabel, 945 F.2d 1193, 1201 n.13 (1st Cir. 1991) (quoting S. Rep. No. 433, 99th Cong., 2d Sess. 12 (1986)) (alteration in original); 18 U.S.C. § 1956 (c)(1); United States v. Corchado-Peralta, 318 F.3d 255, 256 (1st Cir. 2003). A willful blindness instruction may be appropriate. United States v. Rivera-Rodriguez, 318 F.3d 268, 271 (1st Cir. 2003). Moreover, the government is not required to specify the predicate offense in the indictment, United States v. McGauley, 279 F.3d 62, 77 n.15 (1st Cir. 2002), or to secure a conviction on the underlying unlawful activity. United States v. Richard, 234 F.3d 763, 768 (1st Cir. 2000).

(5)     "To prove a violation of 18 U.S.C. § 1956(a)(1)(B)(i), the government must show that [the defendant] conducted financial transactions involving the proceeds of unlawful activity, knowing that the transactions involved the proceeds of unlawful activity, and that the transactions were designed 'to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity.'" McGauley, 279 F.3d at 69 (quoting 18 U.S.C. § 1956(a)(1)(B)(i)). "The knowledge requirement under 18 U.S.C. § 1956(a)(1)(B)(i) is twofold: the government must demonstrate (i) that the defendant knew that the funds involved in the financial transaction were the proceeds of some unlawful activity; and (ii) that he knew the transaction itself was 'designed in whole or in part to conceal the nature, location, source, ownership, or control of the proceeds of such unlawful activity.'" United States v. Frigerio-Migiano, 254 F.3d 30, 33 (1st Cir. 2001) (quoting 18 U.S.C. § 1956(a)(1)(B)(i)). "Where the defendant is someone other than the source of the illegal proceeds . . . , the statute is concerned with [the defendant's] knowledge of the source's intent in the transaction." United States v. Martínez-Medina, 279 F.3d 105, 115 (1st Cir. 2002) (citations omitted). Purchases of goods and deposits of money are not alone sufficient to meet the requirement that a defendant know that a transaction is designed to disguise or conceal, at least where that defendant is not otherwise involved in the illegal conduct. The First Circuit vacated a conviction where, although the spouse

knew that her husband's income was tainted, there was no proof of the design element as to her expenditures, purchases and deposits. Corchado-Peralta, 318 F.3d at 258-59. "A conviction requires evidence of intent to disguise or conceal the transaction, whether from direct evidence, like the defendant's own statements, or from circumstantial evidence, like the use of a third party to disguise the true owner, or unusual secrecy." United States v. Cruzado-Laureano, 404 F.3d 470, 483 (1st Cir. 2005) (citations omitted); see also United States v. Hall, 434 F.3d 42, 50 (1st Cir. 2006) ("It is true that the money laundering statute does not criminalize the mere spending or investing of illegally obtained assets. Instead, at least one purpose for the expenditure must be to conceal or disguise the assets." (citation omitted)). The defendant need not conceal his own identity. Hall, 434 F.3d at 50-51. "[T]his element does not require proof that the defendant attempted to create the appearance of legitimate wealth, [but] neither can it be satisfied solely by evidence that a defendant concealed the funds during their transport." Cuellar v. United States, 553 U.S. 550, 568 (2008).

(6)     It is not a defense that legitimate funds are also involved, and there is no *de minimis* exception. McGauley, 279 F.3d at 71.

(7)     The statute, 18 U.S.C. § 1956(c)(4), has a number of "commerce" requirements, and the instruction should choose the appropriate one. Some interstate commerce involvement is required, although a minimal effect is sufficient. United States v. Owens, 167 F.3d 739, 755 (1st Cir. 1999). Federal insurance of bank deposits is sufficient. 18 U.S.C. § 1956 (c)(6)(A) (cross-referencing 31 U.S.C. § 5312 (a)(2)); United States v. Benjamin, 252 F.3d 1, 9 (1st Cir. 2001).

(8)     Consult the statute for lengthy definitions of "transaction" and "financial transaction," as well as subsidiary terminology like "monetary instruments" and "financial institution" and choose the appropriate terms. In Richard, 234 F.3d at 768, the court stated:

> [G]iving criminally derived checks to a co-conspirator, who deposits them into a bank account, is a transfer to, and involves the use of, a financial institution, which satisfies the definition of "monetary transaction" in section 1957(f)(1) [similar, for these purposes, to section 1956]. Further, transferring funds to a co-conspirator involves monetary instruments, namely the currency or checks involved, which satisfies section 1956(c)(5).

**4.18.1956(a)(1)(B)(ii)**          **Money Laundering—Illegal Structuring,**
                                   **18 U.S.C. § 1956(a)(1)(B)(ii)**

[Updated:4/1/15]

[Defendant] is charged with violating that portion of the federal money laundering statute that prohibits structuring transactions to avoid reporting requirements.  It is against federal law to engage in such conduct.  For [defendant] to be convicted of this crime, you must be convinced that the government has proven each of the following things beyond a reasonable doubt:

First, that [defendant] entered into a financial transaction or transactions, on or about the date alleged, with a financial institution engaged in interstate commerce, involving the use of proceeds of unlawful activities, specifically, proceeds of the [_____];

Second, that [defendant] knew that these were the proceeds of unlawful activity;

Third, that [defendant] knew that the transaction or transactions were structured or designed in whole or in part so as to avoid transaction reporting requirements under federal law.

A [withdrawal; deposit; transfer; etc.] of funds from a bank is a financial transaction.

"Proceeds" means any [profits] [gross receipts] that someone requires or retains as a result of the commission of the unlawful activity.

Federal law requires that [withdrawal; deposit; transfer; etc.] of a sum of more than $10,000 cash [from; into] a bank account in a single business day be reported by the bank to the Internal Revenue Service.

Knowledge may not ordinarily be proven directly because there is no way of directly scrutinizing the workings of the human mind.  In determining what [defendant] knew or intended at a particular time, you may consider any statements made or acts done or omitted by [defendant] and all other facts and circumstances received in evidence that may aid in your determination of [defendant]'s knowledge or intent.  You may infer, but you are certainly not required to infer, that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted.  It is entirely up to you, however, to decide what facts are proven by the evidence received during this trial.

### Comment

(1)      "'[T]he defendant need not know exactly what crime generated the funds involved in a transaction, only that the funds are the proceeds of some kind of crime that is a felony under Federal or State law.'"  United States v. Isabel, 945 F.2d 1193, 1201 n.13 (1st Cir. 1991) (quoting S. Rep. No. 433, 99th Cong., 2d Sess. 12 (1986)) (alteration in original).  "[T]he 'proceeds' used for money laundering must be 'proceeds' from a different illegal activity than the illegal activity

of money laundering itself." United States v. Castellini, 392 F.3d 35, 38 (1st Cir. 2004) (citation omitted).

(2)     On the definition of proceeds, "[s]ince [Justice Stevens's] vote is necessary to our judgment, and since his opinion rests upon the narrower ground, the Court's holding is limited accordingly.  But the narrowness of his ground consists of finding that 'proceeds' means 'profits' when there is no legislative history to the contrary.  That is all that our judgment holds.  It does not hold that the outcome is different when contrary legislative history does exist." United States v. Santos, 553 U.S. 507, 523 (2008) (citing Marks v. United States, 430 U.S. 188, 193 (1977)). Accord United States v. Foley, 783 F.3d 7 (1st Cir. 2015).  When drug trafficking is the source of funds, gross revenue qualifies.  United States v. Adorno-Molina, 774 F.3d 223-24 (1st Cir. 2014). Subsequent to the Supreme Court's decision in Santos, Congress amended the statute to include a definition of the term "proceeds."  Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111-21, § 2(f)(1), 123 Stat. 1617, 1618 (2009).  Effective May 20, 2009, the term "proceeds" is defined as "any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity."  18 U.S.C. § 1956(c)(9). Pre-amendment cases should be decided based on the prior version of the statute, as interpreted by Santos.  See, e.g., Adorno-Molina, supra.

(3)     The requirements for withdrawal/deposit transaction reporting are set forth at 31 U.S.C. § 5313; 31 C.F.R. § 1010.311 (2012).

(4)     The statute, 18 U.S.C. § 1956(c)(4), has a number of "commerce" requirements, and the instruction should choose the appropriate one.  Some interstate commerce involvement is required, although a minimal effect is sufficient.  United States v. Owens, 167 F.3d 739, 755 (1st Cir. 1999). Federal insurance of bank deposits is sufficient.  18 U.S.C. § 1956 (c)(6)(A) (cross-referencing 31 U.S.C. § 5312 (a)(2)); United States v. Benjamin, 252 F.3d 1, 9 (1st Cir. 2001).

(5)     If there is a criminal forfeiture count pursuant to 18 U.S.C. § 982(a)(1), see United States v. McGauley, 279 F.3d 62, 75-76 (1st Cir. 2002), for instruction language on "involved" or "traceable" property.

**4.18.1956(h)**      **Conspiracy to Commit Money Laundering**,
                    **18 U.S.C. § 1956(h)**

[Updated: 8/26/09]

See Instruction 4.18.371(1).

## Comment

(1)      If the conspiracy is to commit a money laundering offense as established in 18 U.S.C. § 1956(a)(1)(B)(i), the First Circuit has stated:

> To prove conspiracy to commit money laundering, the government was required to show that [defendant] agreed with one or more co-conspirators to 1) knowingly conduct a financial transaction 2) involving funds that [defendant] knew to be the proceeds of some form of unlawful activity and 3) that were in fact the proceeds of a "specified unlawful activity," and 4) that [defendant] knew the transactions to be designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of such unlawful activity.

United States v. Misla-Aldarondo, 478 F.3d 52, 68 (1st Cir. 2007).  "[T]he evidence must show that the defendant possessed the mental state required for the substantive offense."  United States v. Cedeño-Pérez, 579 F.3d 54, 58 n.4, (1st Cir. 2009).

**4.18.1957**      **Money Laundering—Engaging in Monetary Transactions in Property Derived From Specified Unlawful Activity, 18 U.S.C. § 1957**

[Updated: 3/6/17]

[Defendant] is charged with knowingly engaging [or attempting to engage] in a monetary transaction involving more than $10,000 of criminally derived property.  It is against federal law to engage in such activity.  For you to find [defendant] guilty of this crime, you must be convinced that the government has proven each of the following beyond a reasonable doubt:

> First, that [defendant] [deposited; withdrew; exchanged funds] [or attempted to deposit; withdraw; exchange funds] over $10,000 in a financial institution affecting interstate commerce on the date specified;

> Second, [he/she] knew that the [money; deposit; etc.] came from some kind of criminal offense;

> Third, the [money; deposit; etc.] was in fact criminally derived from [specified unlawful activity]; and

> Fourth, the [specified unlawful activity] took place in the United States.

"Affecting interstate commerce" means that the transaction affected commerce in any way or degree; a minimal effect is sufficient [deposit in an FDIC-insured bank is sufficient].

The government does not have to prove that [defendant] knew that the money was derived from the [specified unlawful activity] or that [defendant] committed the [specified unlawful activity].  It is enough that [defendant] had general knowledge that the [money; deposit; etc.] came from some kind of criminal offense.


## Comment

(1)      The enumeration of the elements of this crime is based on United States v. Benjamin, 252 F.3d 1, 6-9 (1st Cir. 2001) and United States v. Richard, 234 F.3d 763, 767 (1st Cir. 2000).

(2)      The government must prove the predicate crime beyond a reasonable doubt, but not a specific, individual underlying offense (e.g., a particular mailing or a particular drug offense). "[C]ircumstantial evidence may suffice to allow a jury to infer a predicate act from an overall criminal scheme."  United States v. Carucci, 364 F.3d 339, 345 (1st Cir. 2004).

(3)      "Section 1957(f) only requires that the transactions have a de minimis effect on commerce." Benjamin, 252 F.3d at 9 (holding that a bank's certificate of insurance issued by the FDIC, "certifying that the bank is federally insured, suffices to satisfy the requirement that the transactions had at least a minimal impact on interstate commerce.").  The Benjamin court approved an instruction defining monetary transaction as "deposit [etc.] . . . in or affecting

interstate or foreign commerce." Id. at 10.  For the district court's full instruction on the definition of interstate commerce, see id.

(4)      Acquittal on the underlying unlawful activity does not preclude a conviction for money laundering.  See Richard, 234 F.3d at 768; see also United States v. Whatley, 133 F.3d 601, 605-06 (8th Cir. 1998).  Section 1957 money laundering does not require that the defendant committed the underlying offense.  Benjamin, 252 F.3d at 7; Richard, 234 F.3d at 768.  It also does not require that the defendant knew that the money came from specified unlawful activity, only that the defendant knew that the property was criminally derived.  Richard, 234 F.3d at 768.  But the government must prove beyond a reasonable doubt that the money was in fact the proceeds of specified unlawful activity separate from the laundering transaction.  United States v. Castellini, 392 F.3d 35, 38, 45-46 & n.7 (1st Cir. 2004).

(5)      "[G]iving criminally derived checks to a co-conspirator, who deposits them into a bank account, is a transfer to, and involves the use of, a financial institution, which satisfies the definition of 'monetary transaction' in section 1957(f)(1).  Further, transferring funds to a co-conspirator involves monetary instruments, namely the currency or checks involved, which satisfies section 1956(c)(5)."  Richard, 234 F.3d at 768.

(6)      If there is a criminal forfeiture count pursuant to 18 U.S.C. § 982(a)(1), see United States v. McGauley, 279 F.3d 62, 75-76 (1st Cir. 2002), for instruction language on "involved" or "traceable" property.

(7)      For a discussion of the definitions of "criminally derived property" and "proceeds," see United States v. Rivera-Izquierdo, 850 F.3d 38, 42 n.2 (1st Cir. 2017).

**4.18.2113(a)**          **Unarmed Bank Robbery, 18 U.S.C. § 2113(a)**

[Updated:8/2/17]

[Defendant] is accused of robbing the [bank; savings and loan association; credit union].  It is against federal law to rob a federally insured [bank; savings and loan association; credit union]. For you to find the defendant guilty of this crime, you must be convinced that the government has proven each of these things beyond a reasonable doubt:

First, that [defendant] intentionally took money belonging to the [bank; savings and loan association; credit union], from a [bank; savings and loan association; credit union] employee or from the [bank; savings and loan association; credit union] while a [bank; savings and loan association; credit union] employee was present;

Second, that [defendant] used intimidation or force and violence when [he/she] did so; and

Third, that at that time, the deposits of the [bank; savings and loan association; credit union] were insured by the [_____].  [The parties have so stipulated].

"Intimidation" is actions or words used for the purpose of making someone else fear bodily harm if he or she resists.  Whether the victim was courageous or timid is irrelevant.  The actions or words must be such as to intimidate an ordinary, reasonable person, and [defendant] must know that [his] actions would be intimidating to an ordinary, reasonable person.

## **Comment**

(1)      Subjective intent to steal (*i.e.,* knowledge by the defendant that he or she has no claim to the money) is not a required element under 18 U.S.C. § 2113(a).  United States v. DeLeo, 422 F.2d 487, 490-91 (1st Cir. 1970).

(2)      For discussion of armed and aggravated bank robbery, see the Comments to Instruction 4.18.2113(a) and (d) (Armed or Aggravated Bank Robbery).

(3)      With respect to mens rea, the First Circuit has held that the government must prove not only that the accused knowingly took property, but also that he knew that his actions were objectively intimidating.  United States v. Ellison, 866 F.3d 32, 39 (1st Cir. 2017).

**4.18.2113(a), (d)**          **Armed or Aggravated Bank Robbery,**
                               **18 U.S.C. § 2113(a), (d)**

[Updated: 8/2/17]

[Defendant] is accused of robbing the [bank; savings and loan association; credit union].  It is against federal law to rob a federally insured [bank; savings and loan association; credit union].  For you to find [defendant] guilty of this crime, you must be convinced that the government has proven each of these things beyond a reasonable doubt:

> First, that [defendant] intentionally took money belonging to the [bank; savings and loan association; credit union] from a [bank; savings and loan association; credit union] employee or from the [bank; savings and loan association; credit union] while a [bank; savings and loan association; credit union] employee was present;

> Second, that [defendant] used intimidation or force and violence when [he/she] did so;

> Third, that at that time, the deposits of the [bank; savings and loan association; credit union] were insured by the [_____].  [The parties have so stipulated]; and

> Fourth, that [defendant], by using a dangerous weapon or device, assaulted someone or put someone's life in jeopardy.

"Intimidation" is actions or words used for the purpose of making someone else fear bodily harm if he or she resists.  Whether the victim was courageous or timid is irrelevant.  The actions or words must be such as to intimidate an ordinary, reasonable person, and [defendant] must know that [his] actions would be intimidating to an ordinary, reasonable person.

"Assault" means to threaten bodily harm with an apparent present ability to succeed, where the threat is intended to and does generate a reasonable apprehension of such harm in a victim.  The threat does not have to be carried out.

### Lesser Offense, 18 U.S.C. § 2113(a)

If you find [defendant] not guilty of this charge, you must proceed to consider whether the defendant is guilty of the lesser offense of robbing a [bank; savings and loan association; credit union] without either an assault or jeopardizing someone's life with a dangerous weapon.  The lesser offense requires the government to prove beyond a reasonable doubt the first, second and third, but not the fourth, things I have described.  In other words, the government must prove everything except using a dangerous weapon to assault someone or jeopardize someone's life.

216

**Comment**

(1)     Subjective intent to steal (*i.e.,* knowledge by the defendant that he or she has no claim to the money) is not a required element under 18 U.S.C. § 2113(a) & (d).  United States v. DeLeo, 422 F.2d 487, 490-91 (1st Cir. 1970).

(2)     In some cases it may be appropriate to charge that possession of recently stolen property may support an inference of participation in the theft of the property.  See United States v. Rose, 104 F.3d 1408, 1413 (1st Cir. 1997).   The inference is permissible, not mandatory or a presumption.  Id.

(3)     "[B]y . . . us[ing] . . . a dangerous weapon or device" modifies both the "assaulted" and "puts in jeopardy the life of any person" language of section 2113(d).  Simpson v. United States, 435 U.S. 6, 11 n.6 (1978), superseded by statute on other grounds, Comprehensive Crime Control Act of 1984, Pub. L. No. 98-473, § 1005(a), 98 Stat. 2138-39, codified at 18 U.S.C. § 924(c)(1).

(4)     An unloaded gun is a dangerous weapon.  McLaughlin v. United States, 476 U.S. 16, 17-18 (1986).  Whether some other weapon or device is dangerous is generally a question of fact for the jury.  See Federal Judicial Center Instruction 105, commentary at 140; Eighth Circuit Instruction 8.162, commentary at 333; United States v. Benson, 918 F.2d 1, 2-4 (1st Cir. 1990) (upholding bench trial decision that movement of hand inside a pocket, revealing a metallic object that a teller could reasonably believe to be a gun (actually a knife) and telling the teller that it was a gun, amounts to use of a dangerous weapon or device); United States v. Cannon, 903 F.2d 849, 854 (1st Cir. 1990) (approving instruction that toy gun "may be dangerous if it instills fear in the average citizen, creating an immediate danger that a violent response will follow").

(5)     The instruction on the lesser offense of unarmed bank robbery should be given if there is a factual dispute over use of a weapon and a jury finding of the lesser-included offense would not be irrational.  United States v. Ferreira, 625 F.2d 1030, 1031-33 (1st Cir. 1980).  The defendant, however, can waive the right to a lesser-included offense charge.  United States v. Lopez Andino, 831 F.2d 1164, 1171 (1st Cir. 1987) (criminal civil rights charges).

(6)     If an aiding and abetting charge is given for armed bank robbery, the jury should be instructed that the shared knowledge requirement extends to both the robbery and the understanding that a weapon would be used.  See Instruction 4.18.02(a) (Aid and Abet).

(7)     "Proof of federal insurance at the time of the robbery is an essential element for conviction under 18 U.S.C. § 2113," and the First Circuit has admonished the government to pay more attention to the temporal requirement in meeting the evidentiary burden.  United States v. Judkins, 267 F.3d 22, 23 & n.1 (1st Cir. 2001).

(8)     There is an enhanced penalty if

> in committing any [bank robbery] offense . . . or in avoiding or attempting to avoid apprehension . . . or in freeing himself or attempting to free himself from arrest or confinement for such

> offense, [a defendant] kills any person, or forces any person to *accompany* him without the consent of such person, [he] shall be imprisoned not less than ten years, or if death results shall be punished by death or life imprisonment.

18 U.S.C. § 2113(e).  In <u>Whitfield v. United States</u>, ___ U.S. ___, 135 S. Ct. 785 (2015), the Supreme Court found that "accompaniment does not embrace minimal movement—for example, the movement of a bank teller's feet when the robber grabs her arm.  It must constitute movement that would normally be described as from one place to another, even if only from one spot within a room or outdoors to a different one."  <u>Id</u>. at *2.  In <u>Whitfield</u>, it was sufficient that the defendant forced the victim to accompany him for several feet.  <u>Id</u>.

(9)     With respect to mens rea, the First Circuit has held that the government must prove not only that the accused knowingly took property, but also that he knew that his actions were objectively intimidating.  <u>United States v. Ellison</u>, 866 F.3d 32, 39 (1st Cir. 2017).

**4.18.2119**          **Carjacking, 18 U.S.C. § 2119**

[Updated: 9/17/12]

[Defendant] is charged with carjacking.  It is against federal law to take a motor vehicle by force and violence or intimidation with intent to cause death or serious bodily injury.  For you to find the defendant guilty of this crime you must be convinced that the government has proven each of the following things beyond a reasonable doubt:

> First, that [defendant] knowingly took a motor vehicle from [name];

> Second, that [defendant] did so by force and violence or by intimidation;

> Third, that the motor vehicle previously had been transported, shipped, or received across state or national boundaries;

> Fourth, that [defendant] intended to cause death or seriously bodily harm at the time [he/she] demanded or took control of the motor vehicle; [and]

> [Fifth, that serious bodily injury [death] resulted].

"Intimidation" is actions or words used for the purpose of making someone else fear bodily harm if he or she resists.  The actual courage or timidity of the victim is irrelevant.  The actions or words must be such as to intimidate an ordinary, reasonable person.

"Bodily injury" means a cut, abrasion, bruise, burn, disfigurement, physical pain, illness; or impairment of the function of a bodily member, organ or mental faculty; or any other injury to the body, no matter how temporary.

"Serious bodily injury" means bodily injury that involves a substantial risk of death or extreme physical pain or protracted and obvious disfigurement or protracted loss or impairment of the function of a bodily member, organ or mental faculty.  It "resulted" from the carjacking if it was caused by the actions of the carjacker at any time during the commission of the carjacking.

"Knowingly" means that the act was done voluntarily and intentionally and not because of mistake or accident.

## Comment

(1)      In United States v. Castro-Davis, 612 F.3d 53, 61 (1st Cir. 2010), the First Circuit described the crime as having five elements:

> The elements of a carjacking resulting in death are (1) taking or attempted taking from the person or presence of another; (2) a motor vehicle transported, shipped, or received in interstate or foreign commerce; (3) through the use of force, violence, or by intimidation;

(4) with the intent to cause death or serious bodily harm; (5) that results in death.

(2)      The fifth element (serious bodily injury or death) affects the available sentence.  Under Jones v. United States, 526 U.S. 227, 252 (1999), unless the aggravating conduct is charged and proven beyond a reasonable doubt as part of the offense, the sentence enhancements will not apply (maximum of 15 years without the fifth element; maximum of 25 years if serious bodily injury results; maximum of life imprisonment or death if death results). 18 U.S.C. § 2119(1)-(3).

(3)      According to United States v. Rosario-Diaz, 202 F.3d 54, 63 (1st Cir. 2000), the Supreme Court held in Holloway v. United States, 526 U.S. 1, 8 (1999), that "the mental state required by the statute ('intent to cause death or serious bodily harm') is measured at the moment that the defendant demands or takes control of the vehicle.  The focus of the statute is narrow."  However, for "prolonged" carjackings (where the "defendant is accused of stealing a car, taking its driver as a hostage, and later killing or harming the driver even though the defendant already was in control of the car") the First Circuit has yet "to resolve the question whether the intent element for carjacking must be measured at the commencement of a prolonged carjacking." United States v. Matos-Quiñones, 456 F.3d 14, 18, 19 (1st Cir. 2006) (citing United States v. Lebrón-Cepeda, 324 F.3d 52, 63 (1st Cir. 2003) (Howard, J., concurring) (noting that Holloway should not "be read to limit the jury's focus to the commencement of the carjacking in cases like this one, which … involve takings [of hostages] that occur over some period of time")). The intent may be conditional or unconditional.  In other words, it is sufficient that the defendant intends to cause death or serious bodily harm only in the face of resistance by the victim. Holloway, 526 U.S. at 7-10. If the charge is aiding and abetting, "the government must prove that the [aiding and abetting] defendant intended to cause death or serious bodily injury." United States v. Otero-Mendez, 273 F.3d 46, 51 (1st Cir. 2001); see also Matos-Quiñones, 456 F.3d at 20 (finding that a defendant could be guilty as a principal or as an aider and abettor for carjacking even where the government has stipulated that he "did not at any time intend that the victim be killed" because "the carjacking statute makes proof of an intent to 'seriously harm' the driver sufficient to impose liability" (citation omitted)). The First Circuit has not decided whether that means to a "practical certainty" or only that the defendant be "on notice." Otero-Mendez, 273 F.3d at 52; accord United States v. Evans-Garcia, 322 F.3d 110, 114 n.5 (1st Cir. 2003). It has also described the scope of aider and abettor liability as "interesting" and "intriguing" and the case law as "remarkably silent." Ramirez-Burgos v. United States, 313 F.3d 23, 31 (1st Cir. 2002).  In a split decision, it has held that someone who was not part of the carjacking, but later assisted in holding the hostage, can be convicted of aiding and abetting the carjacking. United States v. Figueroa-Cartagena, 612 F.3d 69, 75 (1st Cir. 2010). See Instruction 4.18.02(a) (Aid and Abet).

(4)      The word "knowingly" is inserted because of this language in United States v. Rivera-Figueroa, 149 F.3d 1, 4 (1st Cir. 1998) (citations omitted):

> [W]e may assume that a defendant who "takes a motor vehicle" must know what he is doing, and that this knowledge must be possessed by a defendant who merely directs another to act (and so is liable as a principal), or assists the taker (and is so liable as an aider and abettor).  But nothing in the statute requires that the taking be an

> ultimate motive of the crime.  It is enough that the defendant be aware that the action in which he is engaged, whether by himself or through direction or assistance to another, involves the taking of a motor vehicle.

See also United States v. Melendez-Rivas, 566 F.3d 41, 45 (1st Cir. 2009).

(5)     The definitions of bodily injury and serious bodily injury come from 18 U.S.C. § 1365(g)(3), cross-referenced in the carjacking statute.  The list should be shortened to the ones pertinent to the offense charged.  If the conduct is within the special maritime and territorial jurisdiction, certain sex offenses are also included.  18 U.S.C. §§ 2241-42.  The definition of "resulted" comes from Ramirez-Burgos, 313 F.3d at 30, where the court also said:  "We do not here set forth the temporal limits of a carjacking under § 2119.  But we reaffirm, without hesitation, that the commission of a carjacking continues at least while the carjacker maintains control over the victim and her car," id. at 30 n.9 (citation omitted).

(6)     The statute requires that the motor vehicle have been transported, shipped or received in interstate or foreign commerce.  "Commerce" is defined in 18 U.S.C. § 10 as respectively "commerce between one State, Territory, Possession, or the District of Columbia, and another State, Territory, Possession, or the District of Columbia" or "commerce with a foreign country." "The jurisdictional element of 18 U.S.C. § 2119 requires that the government prove that the car in question has been moved in interstate commerce, at some time."  Otero-Mendez, 273 F.3d at 51 (citation omitted).

(7)     In cases of interpretive difficulty, it may be helpful to remember that the Supreme Court has said that the carjacking statute is modeled on three other statutes—18 U.S.C. §§ 2111, 2113 and 2118.  Jones, 526 U.S. at 235 & n.4.

**4.18.2251(a)**       **Sexual Exploitation of Children,**
                       **18 U.S.C. § 2251(a)**

[New: 6/17/16]

## Comment

(1)      In <u>United States v. Hunter</u>, 2016 WL 3361730, *4-5 (1st Cir. June 17, 2016), the First Circuit cited the House Conference Report on the version of section 2251(a) that Congress enacted, which provided "it is not a necessary element of a prosecution [under 2251(a)] that the defendant knew the age of the child." <u>Id</u>. (quoting H.R. Rep. No. 95–811, at 5 (1977) (Conf. Rep.)).

**4.18.2252**          **Possession of Child Pornography,**
                       **18 U.S.C. § 2252A(a)(5)(B)**

[Updated: 7/17/15]

[Defendant] is accused of knowingly possessing child pornography that has [been mailed; moved in interstate or foreign commerce].  It is against federal law to possess child pornography that has [been mailed; moved in interstate or foreign commerce].  For you to find [defendant] guilty of this crime, you must be convinced that the government has proven each of these things beyond a reasonable doubt:

> First, that [defendant] knowingly possessed [*e.g.*, book; videotape; computer disk];

> Second, that the [_____] contained at least one image of child pornography;

> Third, that [defendant] knew that [_____] contained an image of child pornography; and

> Fourth, that the image of child pornography had [been mailed; moved in interstate or foreign commerce].

[But if you find that [defendant]: (1) possessed fewer than three images of child pornography; and (2) promptly and in good faith took reasonable steps to destroy each such image and did not retain the image or allow any person to access the image or a copy of the image [or reported the matter to a law enforcement agency and provided that law enforcement agency access to each such image], then you shall find [defendant] not guilty.  It is the government's burden to prove beyond a reasonable doubt all the elements I listed previously and, in addition, that [defendant]'s possession does not fit within the rule I have just described.]

"Knowingly" means that the act was done voluntarily and intentionally and not because of mistake or accident.

"Possess" means to exercise authority, dominion or control over something. The law recognizes different kinds of possession.

["Possession" includes both actual and constructive possession.  A person who has direct physical control of something on or around his or her person is then in actual possession of it.  A person who is not in actual possession, but who has both the power and the intention to exercise control over something is in constructive possession of it.  Whenever I use the term "possession" in these instructions, I mean actual as well as constructive possession.]

["Possession" [also] includes both sole possession and joint possession.  If one person alone has actual or constructive possession, possession is sole.  If two or more persons share actual or constructive possession, possession is joint.  Whenever I have used the word "possession" in these instructions, I mean joint as well as sole possession.]

"Child pornography" is any [photograph; film; video; picture; computer image; computer-generated image] of sexually explicit conduct, that was produced by using an actual person under age 18 engaging in sexually explicit conduct.

"Sexually explicit conduct" includes any *one* of the following five categories of conduct, whether actual or simulated: (1) sexual intercourse, including genital-genital, oral-genital, anal-genital or oral-anal, whether between persons of the same or opposite sex; (2) bestiality; (3) masturbation; (4) sadistic or masochistic abuse; or (5) lascivious exhibition of the genital or pubic area of any person.

Whether an image of the genitals or pubic area constitutes a "lascivious exhibition" requires a consideration of the overall content of the material. In considering the overall content of the image, you may, but are not required to, consider the following factors: (1) whether the genitals or pubic area are the focal point of the image; (2) whether the setting of the image is sexually suggestive, for example, a location generally associated with sexual activity; (3) whether the child is depicted in an unnatural pose or inappropriate attire, considering the age of the child; (4) whether the child is fully or partially clothed, or nude; (5) whether the image suggests sexual coyness or a willingness to engage in sexual activity; (6) whether the image appears intended or designed to elicit a sexual response in the viewer. An image need not involve all of these factors to constitute a "lascivious exhibition." It is for you to decide the weight, or lack of weight, to be given to any of the factors I just listed. You may conclude that they are not applicable given the facts of this case. This list of factors is not comprehensive, and you may consider other factors specific to this case that you find relevant.

An image has been "shipped or transported in interstate or foreign commerce" if it has been transmitted over the Internet or over telephone lines.

## **Comment**

(1)     It seems unnecessary to define "computer." If elaboration is required, the statute provides one: "an electronic, magnetic, optical, electromechanical, or other high speed data processing device performing logical, arithmetic, or storage functions." 18 U.S.C. § 2256(6) (cross-referencing 18 U.S.C. § 1030(e)(1)).

(2)     The instruction can easily be modified for a charge of transportation or receipt. For these charges, however, the fewer-than-three-images defense is not available. See 18 U.S.C. § 2252A(d).

(3)     For juror comprehension, we have not used the statutory term "visual depiction." Instead, we recommend replacing it with the type of image at issue in the case, *e.g.*, photograph or computer-generated image. There is a broader definition of "visual depiction" that may be appropriate in some cases. See 18 U.S.C. § 2256(5).

(4)     The definition of child pornography in this instruction includes only the language from 18 U.S.C. § 2256(8)(A). In Ashcroft v. Free Speech Coalition, 535 U.S. 234, 258 (2002), the

Supreme Court held subsections (B) and (D) of 18 U.S.C. § 2256(8) unconstitutional.  The Court did not rule on subsection (C) – which prohibits photographs, computer images, etc. that have "been created, adapted, or modified to appear that an identifiable [person under age 18] is engaging in sexually explicit conduct." 18 U.S.C. § 2256(8)(C).  The Court referred to the techniques covered by subsection (C) as "computer morphing" and noted that "[a]lthough morphed images may fall within the definition of virtual child pornography, they implicate the interests of real children and are in that sense closer to the images in [New York v. Ferber, 458 U.S. 747 (1982)]." Id. at 242.  (In Ferber the Court upheld a prohibition on distributing material that depicts a sexual performance by an actual child.)  The First Circuit has said that it agrees with the Eight Circuit's holding that "an image in which the face of a known child was transposed onto the naked body of an unidentified child constituted child pornography outside the scope of First Amendment protection."  United States v. Hoey, 508 F.3d 687, 693 (1st Cir. 2007) (citing United States v. Bach, 400 F.3d 622, 629-32 (8th Cir. 2005)).  The First Circuit has not explained further what kinds of depictions might fall within the scope of subsection (C).

(5)      The government must prove beyond a reasonable doubt that the image in question is of an actual child. United States v. Hilton, 386 F.3d 13, 18 (1st Cir. 2004) (prosecution under 18 U.S.C. § 2252A).  However, this burden does not require the government to produce expert opinion testimony that the image depicts a real child.  United States v. Rodriguez-Pacheco, 475 F.3d 434, 437 (1st Cir. 2007) (prosecution under 18 U.S.C. § 2252); Hoey, 508 F.3d at 691  (prosecution under 18 U.S.C. § 2252A).

(6)      The definitions of sexually explicit conduct should be pared down to those material to the actual case.  They are taken largely from 18 U.S.C. § 2256.  The elaboration of "lascivious" comes from United States v. Amirault, 173 F.3d 28, 31 (1st Cir. 1999).  In United States v. Frabizio, the First Circuit cautioned that the six factors listed in Amirault (the "Dost factors") "are not the equivalent of the statutory standard of 'lascivious exhibition' and are not to be used to limit the statutory standard." 459 F.3d 80, 90 (1st Cir. 2006).  The Frabizio panel reiterated Amirault's holding that the Dost factors "are neither comprehensive nor necessarily applicable in every situation. Although Dost provides some specific, workable criteria, there may be other factors that are equally if not more important in determining whether a photograph contains a lascivious exhibition.  The inquiry will always be case-specific."  Amirault, 173 F.3d at 32.

(7)      "Identifiable" is defined in 18 U.S.C. § 2256(9).

(8)      "Interstate commerce" and "foreign commerce" are defined in 18 U.S.C. § 10.  "Under the case law, proof of transmission of pornography over the Internet or over telephone lines satisfies the interstate commerce element of the offense."  United States v. Hilton, 257 F.3d 50, 54 (1st Cir. 2001) (citations omitted).  The Government is not required to prove that the defendant had actual knowledge of the jurisdictional element (i.e., that the image was mailed or moved in interstate commerce).  United States v. Robinson, 137 F.3d 652, 654-55 (1st Cir. 1998) (interpreting 18 U.S.C. § 2252(a)).  The First Circuit confirmed the constitutionality of the commerce jurisdictional element of 18 U.S.C. § 2252(a)(4)(B) in Robinson, 137 F.3d at 656.  In United States v. Morales-De Jesús, 372 F.3d 6, 15 n.6 (1st Cir. 2004), considering an analogous provision of the statute, the First Circuit reaffirmed the Robinson holding as consistent with the Supreme Court's subsequent decision in United States v. Morrison, 529 U.S. 598 (2000).

(9)      An alternative jurisdictional basis for the crime involves production of child pornography using materials that moved in interstate commerce.  18 U.S.C. § 2252A(a)(5)(B).

(10)      For the crime of attempt, the First Circuit says:

> [T]he government in an "attempt" case has no burden to prove that the appellant knew that the download file actually contained such images.  Rather, the government is required to prove that the appellant *believed* that the received file contained such images.

United States v. Pires, 642 F.3d 1, 8 (1st Cir. 2011) (citation omitted).  Therefore, it was error to instruct

> that "the government has to prove not just that the defendant voluntarily and intentionally, not by mistake, received a depiction, a video, but that he knew at the time of receipt that the production of that video involved the use of a real minor and that the video showed a real minor."

Id.  "This instruction plainly overstates the government's burden" (but harmless error on the facts of the case).  Id.

(11)      Note that the First Circuit interprets § 2252(a)(4)(B) and its language concerning possession of "one or more" items differently when it comes to multiple counts of possession. United States v. Chiaradio, 684 F.3d 265, 272-76 (1st Cir. 2012).

(12)      In United States v. Majeroni, 784 F.3d 72, 76-78 (1st Cir. 2015), the First Circuit found no abuse of discretion in the trial court admitting evidence of the defendant's prior guilty plea to possession of child pornography under Rule 414.  The First Circuit stated that the trial "court's controlled method of introducing the information, with a limiting instruction, speaks well of its carefully nuanced exercise of discretion."  Id. at 76.  The limiting instruction given by the trial court was as follows:

> [Y]ou've heard evidence, the evidence being the stipulation, that the defendant was convicted of possession of child pornography in the United States District Court for the District of Maine in 2001.  You may consider this evidence on any matter which you believe it to be relevant.  However, evidence of this prior offense on its own is not sufficient to prove the defendant guilty of the crime charged in the indictment.

> Bear in mind as you consider this evidence at all times the Government has the burden of proving beyond a reasonable doubt that the defendant committed each of the elements that I've just described earlier in the case of the offense charged in the indictment. I remind you that the defendant is not on trial for any act, conduct, or offense not charged in this indictment.

Id. at 75 n.3.

(13)    In <u>United States v. Figueroa-Lugo</u>, 793 F.3d 179, 194 (1st Cir. 2015), the court noted that the affirmative defense instruction in 18 U.S.C. § 2252(c) was not supported by the evidence in the record.

**4.18.2261A**          **Interstate Stalking, 18 U.S.C. § 2261A**

[Updated: 10/24/18]

[Defendant] is accused of interstate stalking.  Interstate stalking is against federal law.  For you to find [defendant] guilty of this crime, you must be convinced that the government has proven each of these things beyond a reasonable doubt:

> First, that [defendant] traveled in interstate or foreign commerce on [dates];

> Second, that while [he/she] traveled in interstate or foreign commerce, [defendant] had the intent to
>> kill, or
>> injure, or
>> harass, or
>> intimidate, or
>> place under surveillance with the intent to kill, injure, harass or intimidate,
> the person named in the Indictment; and

> Third, that in the course of, or as a result of, [defendant]'s travel, [he/she] engaged in conduct that placed that same person in reasonable fear of the death of, or serious bodily injury to, or caused, attempted to cause or would reasonably be expected to cause substantial emotional distress to, that person, an immediate family member of that person, or that person's spouse or intimate partner.

"Serious bodily injury" means bodily injury that involves a substantial risk of death, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty.

## Comment

(1)     The three elements come from the statute and from United States v. Walker, 665 F.3d 212, 224 (1st Cir. 2011) (quoting 18 U.S.C. § 2261A(1)) ("To prove interstate stalking, the government must show that the accused traveled in interstate or foreign commerce with the intent to kill, injure, or harass another person and that 'in the course of, or as a result of such travel,' the accused placed his target in reasonable apprehension of harm to herself or a family member.")  There were some wording changes effective October 1, 2013, that among other things added "intimidate" to Walker's list.

(2)     For the third element, "in the course of" and "as a result of" are explicitly disjunctive.  Id. at 225.  "The first type encompasses acts occurring 'in the course of' the specified travel that place the target in fear of harm.  The second type occurs when the interstate travel itself, viewed in the historical perspective of previous events, results in placing the target in reasonable fear of harm."  Id.

228

(3)     Section 2266 is the definitional section for the chapter. It has a definition of "bodily injury," but the section cross-references § 2119(2) for the definition of "serious bodily injury," and that section in turn refers to § 1365 for that definition.  We have therefore used the § 1365 definition for the "serious bodily injury" definition.  Section 2266 also has a definition of spouse or intimate partner for cases that need it.  Section 2261A cross-references section 115 for a definition of "immediate family member" when such a definition is needed.

(4)     "Travel in interstate or foreign commerce" means travel between two states or between the United States and a foreign country.  See 18 U.S.C. § 10 (definition of "interstate commerce" and "foreign commerce"); 18 U.S.C. § 2266(8) (definition of "State").  But the phrase "does not include travel from 1 State to another by an individual who is a member of an Indian tribe and who remains at all times in the territory of the Indian tribe of which the individual is a member." § 2266(9).

(5)     The stalking statute includes two other jurisdictional elements as an alternative to interstate or foreign commerce.  First, prosecution is permitted when a defendant's conduct occurs in the "special maritime and territorial jurisdiction of the United States."  18 U.S.C. § 2261A(1).  Section 7 of Title 18 defines "special maritime and territorial jurisdiction of the United States."  Second, prosecution is permitted when the defendant "enters or leaves Indian country" to commit a stalking offense.  § 2261A(1).  That jurisdictional phrase is defined in § 2266(3),(4), also cross-referencing § 1151 for the definition of "Indian country."

(6)     The jury need not be unanimous as to which acts make up the course of conduct under § 2261A.  United States v. Ackell, 907 F.3d 67, 79 (1st Cir. 2018).

**4.18.2314**          **Interstate Transportation of Stolen Money or Property, 18 U.S.C. § 2314**

[Updated: 6/14/02]

[Defendant] is accused of taking stolen [money; property], from [state] to [state], on or about [date].  It is against federal law to transport [money; property] from one state to another knowing that the [money; property] is stolen.  For you to find [defendant] guilty of this crime, you must be convinced that the government has proven each of these things beyond a reasonable doubt:

> First, that the [money; property] was stolen;

> Second, that [defendant] took the [money; property] from [state] to [state], or willfully caused it to be taken;

> Third, that, when [defendant] took the [money; property] from [state] to [state], or willfully caused it to be taken, [he/she] knew that it was stolen;

> Fourth, that the [money; property] [totaled; was worth] $5,000 or more.

It does not matter whether [defendant] stole the [money; property] or someone else did.  However, for you to find [defendant] guilty of this crime, it must be proven beyond a reasonable doubt that [he/she] took at least $5,000 [worth of property] or willfully caused at least $5,000 [worth of property] to be taken from [state] to [state] knowing it was stolen.

## Comment

(1)     The government must prove that a defendant caused stolen money or property to be transported; it is not necessary to prove that he or she actually transmitted or transported the money or property himself or herself.  United States v. Doane, 975 F.2d 8, 11 (1st Cir. 1992).

Where liability is based on causing transportation rather than on transporting, the government must prove that the causation was "willful."  United States v. Leppo, 177 F.3d 93, 97 (1st Cir. 1999).  The willfulness requirement derives from 18 U.S.C. § 2(b), not from 18 U.S.C. § 2314 itself, and applies automatically, even where the indictment makes no reference to aider and abettor liability under section 2(b).  Id.

The First Circuit has left open the precise definition of the "willfulness" mental state.  Ignorant causation-in-fact is not sufficient, but the court has not necessarily rejected reasonable foreseeability.  See id. at 96-97.  Accordingly, there is no clear guidance from the court on the proper definition of "willfully" for purposes of this statute.  Trial judges may wish to use the definition proposed for 18 U.S.C. § 2(b), see Pattern Instruction 4.18.02(a) (Aid and Abet), unless the First Circuit clearly rules that a lesser mental state suffices.

(2)     Unexplained possession of recently stolen money or property may be used to support an inference that the possessor knew it was stolen in the light of surrounding circumstances shown by evidence in the case so long as the jury is instructed that the inference is permissible, not mandatory. United States v. Thuna, 786 F.2d 437, 444-45 (1st Cir. 1986); see also United States

v. Lavoie, 721 F.2d 407, 409-10 (1st Cir. 1983) (same in context of 18 U.S.C. § 2313); cf. Freije v. United States, 386 F.2d 408, 410-11 (1st Cir. 1967) (defendants who come forward with an explanation for possession of stolen vehicles are entitled to an instruction that the explanation, if believed, negates any inference of knowledge arising from mere fact of possession).  Such possession also may support an inference regarding interstate transportation.  See Thuna, 786 F.2d at 444-45 (possession in one state of property recently stolen in another state, if not satisfactorily explained, is a circumstance from which a jury may infer that the person knew the property to be stolen and caused it to be transported in interstate commerce).

(3)     This instruction can be modified for the transportation, transmission or transfer of stolen money or property in foreign commerce or for items converted or taken by fraud.  18 U.S.C. § 2314.

(4)     This instruction also can be adapted for cases concerning the transportation of stolen vehicles.  18 U.S.C. § 2312.

(5)     For cases in which the definition of "value" is important, 18 U.S.C. § 2311 defines "value" as "the face, par, or market value, whichever is the greatest."  The conventional definition of "market value" is the price that a willing buyer would pay a willing seller.  See, e.g., United States v. Wentz, 800 F.2d 1325, 1326 (4th Cir. 1986); United States v. Bakken, 734 F.2d 1273, 1278 (7th Cir. 1984); United States v. Reid, 586 F.2d 393, 394 (5th Cir. 1978).

**4.18.2422(b)**        **Coercion and Enticement, 18 U.S.C. § 2422(b)**

[Updated: 2/1/19]

[Defendant] is charged with using [the mail] [a facility or means of interstate or foreign commerce] to [persuade] [induce] [entice] [coerce] someone under age eighteen to engage in [prostitution] [sexual activity] for which a person can be charged with a criminal offense [, or with attempting to do so]. It is against federal law to engage in such conduct [or to attempt to do so]. For you to find [defendant] guilty of this crime, you must be convinced that the government has proven each of these things beyond a reasonable doubt:

> First, that on about the date charged, [defendant] knowingly [persuaded] [induced] [enticed] [coerced] the person in question to engage in [prostitution] [sexual activity];

> Second, that he/she did so by using [the mail] [a facility or means of interstate or foreign commerce];

> Third, that the person at the time was less than eighteen years old; and

> Fourth, that the sexual activity was a criminal offense.

[Define the criminal offense that the government claims the sexual activity amounted to]

"Knowingly" means that the act was done voluntarily and intentionally and not because of mistake or accident.

"Interstate commerce" includes commerce between one state, territory, possession, or the District of Columbia and another state, territory, possession and the District of Columbia.

"Foreign commerce" includes commerce with a foreign country.

[Use Attempt instruction, see Pattern 4.18.00, as appropriate.]

## Comment

(1)    "[A]n intent that the underlying sexual activity actually take place" is not an element of the offense. United States v. Dwinells, 508 F.3d 63, 65 (1st Cir. 2007); see also United States v. Berk, 652 F.3d 132, 140 (1st Cir. 2011). Similarly, the Sixth Circuit has said: "Congress has made a clear choice to criminalize persuasion and the attempt to persuade, not the performance of the sexual acts themselves. Hence, a conviction under the statute only requires a finding that the defendant had an intent to persuade or to attempt to persuade." United States v. Bailey, 228 F.3d 637, 639 (6th Cir. 2000), cert. denied, 532 U.S. 1009 (2001).

(2)    On an attempt charge, several courts have concluded that the victim need not actually be under age eighteen. See, e.g., United States v. Root, 296 F.3d 1222, 1227-29 (11th Cir. 2002) ("We conclude that an actual minor victim is not required for an attempt conviction under 18

U.S.C. § 2422(b)"), <u>cert. denied</u>, 537 U.S. 1176 (2003), <u>superseded by</u> Amend. 732, U.S.S.G. Supp. to App'x C (2009), <u>as recognized in</u> <u>United States v. Jerchower</u>, 631 F.3d 1181, 1186-87 (11th Cir. 2011).

(3)     Sexual activity includes the production of child pornography as defined in 18 U.S.C. § 2256(8).  18 U.S.C. § 2427.

(4)     Generally, the "criminal offense" is defined by state law.  The First Circuit has not decided whether it may be defined by federal law.  <u>Dwinells</u>, 508 F.3d at 72 & n.6.

(5)     Although the statute makes it unlawful to induce an individual to travel in interstate or foreign commerce to engage in "any sexual activity for which any person can be charged with a criminal offense," the First Circuit has cautioned courts not to craft a jury instruction that tracks the statutory language.  Accordingly, the fourth element of the pattern instruction requires the jury to find "that the sexual activity was a criminal offense."  <u>United States v. Saldaña-Rivera</u>, 914 F.3d 721, 725 (1st Cir 2019) (citing with approval the Pattern Criminal Jury Instructions for the District Courts of the First Circuit).

**4.21.841(a)(1)A      Possession With Intent to Distribute a Controlled Substance, 21 U.S.C. § 841 (a) (1)**

[Updated: 1/13/17]

[Defendant] is accused of possessing [controlled substance] on about [date] intending to distribute it to someone else.  It is against federal law to have [controlled substance] in your possession with the intention of distributing it to someone else.  For you to find [defendant] guilty of this crime you must be convinced that the government has proven each of these things beyond a reasonable doubt:

First, that [defendant] on that date possessed [controlled substance], either actually or constructively;

Second, that [he/she] did so with a specific intent to distribute the [controlled substance] over which [he/she] had actual or constructive possession; and

Third, that [he/she] did so knowingly and intentionally.

It is not necessary for you to be convinced that [defendant] actually delivered the [controlled substance] to someone else, or that [he/she] made any money out of the transaction.  It is enough for the government to prove, beyond a reasonable doubt, that [he/she] had in [his/her] possession what [he/she] knew was [controlled substance] and that [he/she] intended to transfer it or some of it to someone else.

[A person's intent may be inferred from the surrounding circumstances.  Intent to distribute may, for example, be inferred from a quantity of drugs larger than that needed for personal use.  In other words, if you find that [defendant] possessed a quantity of [controlled substance]—more than that which would be needed for personal use—then you may infer that [defendant] intended to distribute [controlled substance].  The law does not require you to draw such an inference, but you may draw it.]

The term "possess" means to exercise authority, dominion or control over something. The law recognizes different kinds of possession.

["Possession" includes both actual and constructive possession.  A person who has direct physical control of something on or around his or her person is then in actual possession of it.  A person who is not in actual possession, but who has both the power and the intention to exercise control over something is in constructive possession of it.  Whenever I use the term "possession" in these instructions, I mean actual as well as constructive possession.]

["Possession" [also] includes both sole possession and joint possession.  If one person alone has actual or constructive possession, possession is sole.  If two or more persons share actual or constructive possession, possession is joint.  Whenever I have used the word "possession" in these instructions, I mean joint as well as sole possession.]

234

If you find [defendant] guilty, you will be asked to address one additional element concerning the quantity of the substance involved.  Like the other elements, the quantity of the substance must be proved beyond a reasonable doubt.

## **Comment**

(1)      The enumeration of the elements of this crime is based upon United States v. Latham, 874 F.2d 852, 863 (1st Cir. 1989); see also United States v. Cortes-Caban, 691 F.3d 1, 17 (1st Cir. 2012); United States v. Akinola, 985 F.2d 1105, 1109 (1st Cir. 1993).

(2)      Enhanced Penalty Cases Based on Drug Quantity.  It is necessary to obtain a verdict on quantity range if the government is seeking (and has appropriately charged) either a mandatory minimum sentence or a sentence higher than the maximum penalties contained in the catchall penalty provision of 21 U.S.C. § 841 for the particular drug involved.  See Alleyne v. United States, 570 U.S. ___, 133 S. Ct. 2151 (2013), overruling Harris v. United States, 536 U.S. 545 (2002).

Under Alleyne and Apprendi, the jury must find the mandatory-minimum and statutory-maximum triggering elements by proof beyond a reasonable doubt.  United States v. Rivera-Ruperto, 2017 WL 128003, at *18-19 (1st Cir. Jan. 13, 2017); United States v. Pizarro, 772 F.3d 284, 293 (1st Cir. 2014); United States v. Paz-Alvarez, 799 F.3d 12, 22-23 (1st Cir. 2015) (preferable to discuss drug quantity alongside other elements of the crime or reiterate the reasonable doubt standard if instructing on drug quantity only when explaining the verdict form).  The First Circuit has instructed that "Alleyne did not hold that a trial court must identify weight as an element of an offense in instructing the jury.  Alleyne simply holds that, where weight increases the statutory minimum, it is an element and thus must be proven beyond a reasonable doubt." United States v. Amaro-Santiago, 824 F.3d 154, 167 (1st Cir. 2016) (citing Alleyne, 133 S. Ct. at 2155).  In a conspiracy case, the conspiracy-wide quantity governs the statutory maximum, but "the individualized quantity, i.e., the quantity that is foreseeable to the defendant," governs the mandatory minimum.  Pizarro, 772 F.3d at 292-93.  See Pizarro for examples of the elements that are required for a drug conspiracy with a mandatory minimum and statutory maximum based on drug quantity under 21 U.S.C. §§ 846 & 841(b)(1)(A) and for a possession with intent to distribute under 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).  Pizarro, 772 F.3d at 293-94 (for possession conviction under § 841(b)(1)(A), "the jury must find that the defendant (1) knowingly or intentionally possessed with intent to distribute, § 841(a)(1); (2) at least five kilograms of cocaine, § 841(b)(1)(A)").

For elevating the statutory maximum, the First Circuit has approved a verdict form that "asked the jury to make a finding of guilty or not guilty as to each defendant for each charge and then, if [a particular] defendant was found guilty, asked the jury to determine the amount of [controlled substance] involved in the conspiracy."  United States v. González-Vélez, 466 F.3d 27, 36 (1st Cir. 2006); United States v. Colón-Solís, 354 F.3d 101, 103 (1st Cir. 2004) ("[W]e derive the applicable statutory maximum in a drug conspiracy case from a conspiracy-wide perspective" (citations omitted)).

Pizarro makes clear that "if the jury makes the required threshold findings [beyond a reasonable doubt] . . . but does not indicate a specific quantity, and the district court chooses to sentence above the mandatory minimum, the court must make an individualized drug quantity

finding by a preponderance of the evidence" to determine the recommended sentence under the Sentencing Guidelines.  Pizarro, 772 F.3d at 294 nn.13 & 14.

(3)     Enhanced Penalty Cases Based on Death or Serious Bodily Injury.  Section 841(b)(1) provides enhanced penalties (maximums and mandatory minimums) in cases where death or serious bodily injury results.  Apprendi and Alleyne require that this element also be determined by jury verdict.  Under the statutory language, these enhancements apply whenever death or serious bodily injury "results from" the use of drugs.  The Supreme Court has held that "a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a but-for cause of the death or injury."  Burrage v. United States, ___ U.S. ___, 134 S. Ct. 881, 882 (2014).  The First Circuit previously held that the government need not show that the death or serious bodily injury was attributable to or foreseeable by the defendant (the standard for a statutory minimum sentence based on drug quantity, see comment 2 supra), but only "but-for" causation, i.e., "that the decedent's death was caused in fact by his or her use of drugs that were distributed either by the defendant himself or by others in a conspiracy of which the defendant was a part."  United States v. De La Cruz, 514 F.3d 121, 138 (1st Cir. 2008); see also United States v. Soler, 275 F.3d 146, 152-53 (1st Cir. 2002).  In De La Cruz, the defendant received the statutory mandatory minimum based upon the jury verdict following such proof, namely that a death was caused by the use of heroin distributed by the defendant's co-conspirators.

(4)     The majority of the penalties in 21 U.S.C. § 841(b)(1)(A) and 21 U.S.C. § 841(b)(1)(B) are based on the total weight of the "mixture or substance" containing a controlled substance or a detectable amount of a controlled substance.  See, e.g., United States v. Charles, 213 F.3d 10, 25 (1st Cir. 2000) ("[T]he purity of a controlled substance is not a factor in sentencing under 21 U.S.C. § 841(b)." (citing Chapman v. United States, 500 U.S. 453, 459-68 (1991))).  The penalties for violations involving phencyclidine (PCP) or methamphetamine, 21 U.S.C. § 841(b)(1)(A)(iv) and (viii) and 21 U.S.C. § 841(b)(1)(B)(iv) and (viii), may be based either on the total weight of the controlled substance or on a higher total weight of a mixture or substance containing a detectable amount of the controlled substance.  In addition to being based on the total weight of a mixture or substance containing a detectable amount of marijuana, the penalties under 21 U.S.C. § 841(b)(1)(A)(vii) and 21 U.S.C. § 841(b)(1)(B)(vii) may be based on the number of marijuana plants involved regardless of weight.

(5)     See Instruction 5.05 comment 8 concerning the need for a jury instruction if sentencing entrapment is an issue.

(6)     The statutory penalty provisions applicable in a marijuana case are more complicated than those applicable in cases involving other controlled substances.  Section 841(b)(1)(D) (up to five years for less than fifty kilograms) is explicitly limited by section 841(b)(4), which provides that a person who distributes "a small amount of marihuana for no remuneration shall be treated as provided in section 844 [the section prohibiting simple possession]."  However, the First Circuit holds that § 841(b)(1)(D) states the default maximum penalty, and that the defendant bears the burden of showing the applicability of § 841(b)(4).  See Julce v. Mukasey, 530 F.3d 30, 35 (1st Cir. 2008) ("[E]very court that has considered the question has held that § 841(b)(1)(D), not § 841(b)(4), sets forth the statutory maximum . . . [U]nder the law construing § 841(b)(4), the defendant bears the burden of producing mitigating evidence . . . ." (citations omitted)); United States v. Duarte, 246 F.3d 56, 59 (1st Cir. 2001) (referring to § 841(b)(1)(D) as providing the

"'default statutory maximum' for a violation of 21 U.S.C. § 841(a)(1) involving marijuana," without any mention of § 841(b)(4) (citations omitted)).

(7)     It is appropriate to frame the charge in terms of cocaine base, not crack.  DePierre v. United States, 131 S. Ct. 2225, 2237 (2011) ("We hold that the term 'cocaine base' as used in § 841(b)(1) means not just 'crack cocaine,' but cocaine in its chemically basic form.")

(8)     Section 860, doubling the penalty for activities within a certain distance of educational facilities, swimming pools, etc. creates an independent substantive offense, and is not merely a sentencing-enhancing factor.  United States v. Sepúlveda-Hernández, 752 F.3d 22, 27 (1st Cir. 2014).

(9)     Quantity, see United States v. Roberts, 119 F.3d 1006, 1016-17 (1st Cir. 1997); United States v. Ocampo-Guarin, 968 F.2d 1406, 1410 (1st Cir. 1992), or quantity and purity can support an inference of intent to distribute.  See United States v. Bergodere, 40 F.3d 512, 518 (1st Cir. 1994).  One ounce of cocaine, however, is not sufficient to support the inference.  Latham, 874 F.2d at 862-63.  Other indicia of intent to distribute are scales, firearms and large amounts of cash.  United States v. Ford, 22 F.3d 374, 383 (1st Cir. 1994).

(10)     The defendant's intent to distribute must relate specifically to the controlled substance in his or her possession, not to "some unspecified amount of [controlled substance], that [he/she] did not currently possess, at some unspecified time in the future."  Latham, 874 F.2d at 861.  However, the government need not prove that the defendant knew which particular controlled substance was involved.  United States v. Hernández, 218 F.3d 58, 65 (1st Cir. 2000); United States v. Kairouz, 751 F.2d 467, 468 (1st Cir. 1985) (affirming the instruction: "if defendant . . . 'intend[ed] to distribute a controlled substance, it does not matter that . . . [he has] made a mistake about what controlled substance it happen[ed] to be'") (alteration in original); see also United States v. Garcia-Rosa, 876 F.2d 209, 216 (1st Cir. 1989), vacated on other grounds by Rivera-Feliciano v. United States, 498 U.S. 954 (1990); United States v. Cheung, 836 F.2d 729, 731 (1st Cir. 1988).  Similarly, the government is not required to prove that the defendant knew the specific weight or amount of the controlled substance involved.  United States v. Collazo-Aponte, 281 F.3d 320, 325-26 (1st Cir. 2002).  But it is not sufficient to prove merely that the defendant knew he/she possessed something illegal or contraband.  The government must prove that he/she knew it was a controlled substance.  United States v. Pérez-Meléndez, 599 F.3d 31, 46-47 (1st Cir. 2010).

(11)     For a discussion of what constitutes "distribution," see generally Pattern Instruction 4.21.841(a)(1)B cmt. (2).

(12)     For a discussion of the issue of "possession," see Akinola, 985 F.2d at 1109, Ocampo-Guarin, 968 F.2d at 1409-10, and United States v. Almonte, 952 F.2d 20, 23-24 (1st Cir. 1991).  "[I]ntent is an element of constructive possession, which 'exists when a person "knowingly has the power and intention at a given time to exercise dominion and control over an object, either directly or through others."'"  United States v. Paredes-Rodriguez, 160 F.3d 49, 54 (1st Cir. 1998).  The court need not use the specific term "knowingly" in modifying the definition of possession, so long as the instruction is clear that the prosecution must "prove that [possession] was knowing and intentional;" an instruction that requires a defendant to "intentionally exercise control over an object" likely satisfies the "knowingly" requirement for possession.  United States v. Gonzalez, 570 F.3d 16, 25 (1st Cir. 2009).  Likewise, the court need not use the specific term "dominion" in the definition of possession; an instruction that a defendant "must have had the power and ability to exercise control over the substance at issue" is satisfactory under the law.  Id. at 25-26.  Inability

to escape with the contraband does not prevent a defendant from satisfying the power-to-exercise control part of constructive possession.  United States v. Van Horn, 277 F.3d 48, 55-56 (1st Cir. 2002).

(13)     In regard to drug couriers, see United States v. Ayala-Tapia, 520 F.3d 66, 68-69 (1st Cir. 2008), for use of circumstantial evidence to infer the defendant "knowingly possessed" the controlled substance.

(14)     The following instruction—"Knowledge alone, however, is not enough to prove possession. Similarly, mere presence in the vicinity of the object is insufficient to prove possession"—is "correct as a matter of law," but is not required if the law of constructive possession is otherwise properly set forth."  United States v. Duval, 496 F.3d 64, 71, 77-78 (1st Cir. 2007).

(15)     The First Circuit has affirmed the refusal to give a "transitory possession as defense" instruction, United States v. Teemer, 394 F.3d 59, 64-65 (1st Cir. 2005), thereby disagreeing with United States v. Mason, 233 F.3d 619, 622-24 (D.C. Cir. 2000).

(16)     A defendant may request a lesser included offense instruction under 21 U.S.C. § 844 for simple possession.  United States v. LoRusso, 695 F.2d 45, 52 n.3 (2d Cir. 1982).  This instruction should be given "if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater."  Keeble v. United States, 412 U.S. 205, 208 (1973); see also United States v. Nur, 799 F.3d 155, 158-59 (1st Cir. 2015) (Where a defendant presents an exculpatory defense, the lesser included instruction should nevertheless be given if the evidence presented by the prosecution provides a rational basis for a jury to find the defendant guilty of a lesser included offense.); United States v. Anello, 765 F.2d 253, 263 (1st Cir. 1985) (recognizing the lesser included offense, but ruling that the evidence did not warrant a lesser included instruction); United States v. Garcia-Duarte, 718 F.2d 42, 47 (2d Cir. 1983).  If the charge of simple possession is being presented to the jury as a lesser included offense of possession with intent to distribute, we suggest the following:

> If you find that the government has not proven beyond a reasonable doubt that on about [date], [defendant] possessed [controlled substance] with the intent to distribute it, you shall proceed to consider the lesser included offense of possessing [controlled substance] without the intent to distribute it.  To convict [defendant] of this crime, the government must prove beyond a reasonable doubt all the elements I have already described to you, except that it need not prove that [defendant] intended to distribute any of the [controlled substance].

(17)     In a case involving an analogue, read McFadden v. United States, ___ U.S. ___, 135 S. Ct. 2298, 2302 (2015), where the Court held that:

> § 841(a)(1) requires the Government to establish that the defendant knew he was dealing with "a controlled substance."  When the substance is an analogue, that knowledge requirement is met if the defendant knew that the substance was controlled under the CSA or the Analogue Act, even if he did not know its identity.  The knowledge requirement is also met if the defendant knew the specific features of the substance that make it a "'controlled substance analogue.'"  § 802(32)(A).

238

**4.21.841(a)(1)B        Distribution of a Controlled Substance, 21 U.S.C. § 841(a)(1)**

[Updated: 8/27/15]

[Defendant] is accused of distributing [controlled substance] on or about [date].  It is against federal law to distribute, that is, to transfer [controlled substance] to another person.  For you to find [defendant] guilty of this crime, you must be convinced that the government has proven each of the following things beyond a reasonable doubt:

> First, that on the date alleged [defendant] transferred [controlled substance] to another person;

> Second, that [he/she] knew that the substance was [controlled substance]; and

> Third, that [defendant] acted intentionally, that is, that it was [his/her] conscious object to transfer the controlled substance to another person.

It is not necessary that [defendant] have benefitted in any way from the transfer.

If you find [defendant] guilty, you will also have to answer one or more questions under the standard of proof beyond a reasonable doubt concerning the quantity of the substance involved, which may affect the potential sentence.

## Comment

(1)        The statute defines "distribute" as meaning "to deliver," 21 U.S.C. § 802(11), which in turn is defined as meaning "the actual, constructive, or attempted *transfer* of a controlled substance or a listed chemical, whether or not there exists an agency relationship," § 802(8) (emphasis added). Therefore, distribution includes both selling and buying.  United States v. Castro, 279 F.3d 30, 34 (1st Cir. 2002) (rejecting defendant's argument that facilitating the purchase of drugs did not constitute distribution).  However, the court may refuse to instruct on the meaning of the term "distribute" "because it is within the common understanding of jurors." United States v. Acevedo, 842 F.2d 502, 506-07 (1st Cir. 1988).

(2)        "[D]eliver[y] or transfer [of] possession of a controlled substance to another person" constitutes distribution regardless of whether the transferor has "any financial interest in the transaction."  United States v. Morales-Cartagena, 987 F.2d 849, 852 (1st Cir. 1993).  Thus, courts are in broad agreement that the mere sharing of narcotics can support a distribution charge.  See, e.g., United States v. Corral-Corral, 899 F.2d 927, 936 n.7 (10th Cir. 1990); United States v. Ramirez, 608 F.2d 1261, 1264 (9th Cir. 1979).  But in United States v. Swiderski, 548 F.2d 445, 450-51 (2d Cir. 1977),  the Second Circuit held that distribution does not include "the passing of a drug between joint possessors who simultaneously acquired possession at the outset for their own use."  The First Circuit had previously endorsed a narrow reading of Swiderski, see United States v. Rush, 738 F.2d 497, 514 (1st Cir. 1984) ("The Swiderski holding appears fully justified on the facts of that case . . . ."), although the Court cautioned against extending it "to situations where more than a couple of defendants and a small quantity of drugs are involved," id.  In a recent

case, however, the First Circuit has retreated from this endorsement stating, "We have never expressly decided whether <u>Swiderski</u> is good law in this circuit . . . ."  <u>United States v. Cormier</u>, 468 F.3d 63, 72 (1st Cir. 2006); <u>reaffirmed in</u> <u>United States v. Bobadilla-Pagán</u>, 747 F.3d 26, 32 n.10 (1st Cir. 2014).  <u>See also</u> <u>id</u>. at n.5 ("The only three cases in this circuit to have addressed <u>Swiderski</u> found that it was inapplicable to the facts." (citing <u>United States v. Reid</u>, 142 F. App'x 479, 482 (1st Cir. 2005); <u>Rush</u>, 738 F.2d at 514; <u>United States v. Taylor</u>, 683 F.2d 18, 21 (1st Cir. 1982))).  The First Circuit construes "distribute" broadly.  <u>See</u> <u>United States v. Cortés-Cabán</u>, 691 F.3d 1, 17-23 (1st Cir. 2012) (holding that § 841(a)(1) applies to police officers corruptly planting drugs on innocent civilians so as to justify their arrests).

(3)      "[I]ntent is an element of constructive possession, which 'exists when a person "knowingly has the power and intention at a given time to exercise dominion and control over an object, either directly or through others."'"  <u>United States v. Paredes-Rodriguez</u>, 160 F.3d 49, 54 (1st Cir. 1998) (citations omitted).

(4)      See Comment (2) to Instruction 4.21.841(a)(1)A concerning instructions in enhanced penalty cases based on drug quantity.

**4.21.841(a)(1)C      Manufacture of a Controlled Substance, 21 U.S.C. §§ 841(a)(1), 802(15)**
[Updated: 8/27/15]

[Defendant] is accused of manufacturing [controlled substance] on or about [date].  It is against federal law to manufacture, that is to produce or prepare, [controlled substance].  For you to find [defendant] guilty of this crime, you must be convinced that the government has proven each of the following things beyond a reasonable doubt:

> First, that [defendant] manufactured [controlled substance];

> Second, that [he/she] knew that the substance [he/she] was manufacturing was [controlled substance]; and

> Third, that [defendant] acted intentionally, that is, that it was [his/her] conscious object to manufacture the controlled substance.

The term "manufacture" as it relates to this case means the production, preparation, propagation, compounding or processing of a controlled substance, either directly or indirectly or by extraction from substances of natural origin.  The term "manufacture" includes the act of growing.

If you find [defendant] guilty, you will also have to answer one or more questions under the standard of proof beyond a reasonable doubt concerning the quantity of the substance involved, which may affect the potential sentence.

## Comment

(1)      The definition of manufacture includes other processes in addition to those listed above, *e.g.*, "independently by means of chemical synthesis or by a combination of extraction and chemical synthesis."  21 U.S.C. § 802(15).

(2)      Marijuana grown for personal use falls within the definition of "manufacture."  United States v. One Parcel of Real Property (Great Harbor Neck), 960 F.2d 200, 205 (1st Cir. 1992); see also 21 U.S.C. § 802(22) ("'[P]roduction' includes the manufacture, planting, cultivation, growing, or harvesting of a controlled substance.").

(3)      "[I]ntent is an element of constructive possession, which 'exists when a person "knowingly has the power and intention at a given time to exercise dominion and control over an object, either directly or through others."'"  United States v. Paredes-Rodriguez, 160 F.3d 49, 54 (1st Cir. 1998) (citations omitted).

(4)      See Comment (2) to Instruction 4.21.841(a)(1)A concerning instructions in enhanced penalty cases based on drug quantity.

**4.21.843(b)**          **Use of a Communication Facility to Commit a Controlled Substance Felony, 21 U.S.C. § 844**

[New: 8/29/12]

[Defendant] is accused of using a [specify the communication facility charged, such as telephone] in committing, causing, or facilitating the commission of a controlled substance felony.  It is against federal law to use a communication facility such as [specify the facility charged] in committing, causing, or facilitating a controlled substance felony.  For you to find [defendant] guilty of this crime, you must be convinced that the government has proven each of these things beyond a reasonable doubt:

> First, that at about the time and date charged, [defendant] knowingly or intentionally used a [specify the communication facility charged, such as telephone];

> Second, that [he/she] did so in committing, causing, or facilitating the commission of [specify the controlled substance felony in question]; and

> Third, that the controlled substance felony was in fact committed.

To "facilitate" means to make the commission of the controlled substance crime easier or less difficult.

["Use" in the case of a telephone means to place or receive a call.]

## Comment

(1)     The statute covers use of "any and all public and private instrumentalities used or useful in the transmission of writing, signs, signals, pictures, or sounds of all kinds and includes mail, telephone, wire, radio, and all other means of communication."  21 U.S.C. § 843(b).

(2)     The First Circuit has stated:  "The federal courts have uniformly held that, to obtain a conviction on a charge of telephone facilitation pursuant to section 843, the government must prove commission of the underlying offense."  United States v. Escobar-de Jesus, 187 F.3d 148, 163 (1st Cir. 1999).  It found no plain error in the trial court's failure to give such an instruction, but said that "we agree that an instruction would have clarified any potential ambiguity in section 843(b)'s language on that point."  Id. at 164.

(3)     The First Circuit has stated:  "We are aware of no authority which suggests the term 'use' in the statute refers solely to 'placing' calls and leaves unpunished use of the telephone by the receiver of a call.  We see no reason in this case to depart from the ordinary meaning of the word 'use.'"  United States v. Cordero, 668 F.2d 32, 43 n.16 (1st Cir. 1981) (citations omitted); accord United States v. Pagan-Vega, 1992 WL 183637, at *3 (1st Cir. Aug. 3, 1992) (unpublished).

242

**4.21.844**             **Possession of a Controlled Substance,**
                        **21 U.S.C. § 844**

[New: 10/23/06]

[Defendant] is charged with possession of [controlled substance] on about [date].  It is against federal law to have [controlled substance] in your possession [without a valid prescription or order].  For you to find [defendant] guilty of this crime, you must be convinced that the government has proven each of these things beyond a reasonable doubt:

> First, that [defendant] on or about that date possessed [controlled substance], either actually or constructively;
>
> Second, that [he/she] did so knowingly and intentionally; and
>
> [Third, that [he/she] did not possess the controlled substance pursuant to a valid prescription or order.]

The word "knowingly" means that the act was done voluntarily and intentionally and not because of mistake or accident.

The term "possess" means to exercise authority, dominion or control over something.  The law recognizes different kinds of possession.

["Possession" includes both actual and constructive possession.  A person who has direct physical control of something on or around his person is in actual possession of it.  A person who is not in actual possession, but who has both the power and the intention to exercise control over something is in constructive possession of it.  Whenever I use the term "possession" in these instructions, I mean actual as well as constructive possession.]

["Possession" [also] includes both sole possession and joint possession.  If one person alone has actual or constructive possession, possession is sole.  If two or more persons share actual or constructive possession, possession is joint.  Whenever I have used the word "possession" in these instructions, I mean joint as well as sole possession.]

**4.21.846**        **Conspiracy, 21 U.S.C. § 846**

[Updated: 12/22/14]

## Comment

(1)      For general conspiracy instructions and comments, see Instruction 4.18.371(1).

(2)      For specific drug conspiracy instructions and comments, see Instruction 4.21.841.  See also United States v. Pizarro, 772 F.3d 284, 294 (1st Cir. 2014) (for a "cocaine conspiracy conviction under § 841(b)(1)(A), which imposes a mandatory minimum of ten years and a statutory maximum of life imprisonment, the jury must now find that the defendant (1) conspired, § 846; (2) knowingly or intentionally to distribute cocaine, § 841(a)(1); (3) in a conspiracy that involved a total of five kilograms or more of cocaine, § 841(b)(1)(A); (4) where at least five kilograms of cocaine were foreseeable to the defendant, § 841(b)(1)(A)); Apprendi v. New Jersey, 530 U.S. 466, 490 (2000); Alleyne v United States, 570 U.S. 99 (2013); United States v. De La Cruz, 514 F.3d 121 (1st Cir. 2008) (in conspiracy where enhanced penalty was sought, defendant received statutory mandatory minimum based upon jury verdict following proof that a death was caused by use of heroin distributed by defendant's co-conspirators); United States v. Colón-Solís, 354 F.3d 101, 103 (1st Cir. 2004).

(3)      In a conspiracy involving more than two conspirators, individualized drug determinations are necessary.  United States v. Paladin, 748 F.3d 438 (1st Cir. 2014); United States v. Colón-Solis, 354 F.3d 101, 103 (1st Cir. 2004).  Whereas in a conspiracy involving two members, both are responsible for the amount they agreed to distribute.  United States v. Melendez, 775 F.3d. 50, 56 (1st Cir. 2014).

**4.21.853**             **Drugs—Forfeiture, 21 U.S.C. § 853**

[Updated:10/5/12]

In light of your verdict that [defendant] is guilty of the [drug crime], you must now also decide whether [he/she] should surrender to the government [his/her] ownership interest in certain property as a penalty for committing that crime.  We call this "forfeiture."

On this charge, federal law provides that the government is entitled to forfeiture, if it proves, by a preponderance of the evidence, that the property in question was proceeds of the crime or derived from proceeds of the crime.

Note that this is a different standard of proof than you have used for the [drug crime] charges.  A "preponderance of the evidence" means an amount of evidence that persuades you that something is more likely true than not true.  It is not proof beyond a reasonable doubt.

"Proceeds" are any property that [defendant] obtained, directly or indirectly, as the result of the crime.

If the government proves that property was acquired by [defendant] during the period of the [drug crime] or within a reasonable time after such period and there was no likely source other than the [drug crime] for the property, you may presume that the property is proceeds or traceable to the proceeds of the [drug crime].  You may presume this even if the government has presented no direct evidence to trace the property to drug proceeds, but you are not required to make this presumption.  [Defendant] may present evidence to rebut this presumption, but [he/she] is not required to present any evidence.

While deliberating, you may consider any evidence admitted during the trial. However, you must not reexamine your previous determination regarding [defendant]'s guilt of the [drug crime].  All of my previous instructions concerning consideration of the evidence, the credibility of witnesses, your duty to deliberate together and to base your verdict solely on the evidence without prejudice, bias or sympathy, and the requirement of unanimity apply here as well.

On the verdict form, I have listed the various items that the government claims [defendant] should forfeit.  You must indicate which, if any, [defendant] shall forfeit.

Do not concern yourselves with claims that others may have to the property.  That is for the judge to determine later.

## Comment

(1)     This forfeiture instruction can be used for most drug offenses.  21 U.S.C. § 853(a).

(2)     The First Circuit has held that it is proper to instruct that "[p]roceeds include the total amount of *gross proceeds* obtained by the defendant as a result of his drug trafficking and is not

reduced by any amounts the defendant paid for the drugs he later sold or for any other costs or expenses he incurred."  United States v. Bucci, 582 F.3d 108, 121-22 (1st Cir. 2009)

(3)      The right to a jury trial on a criminal forfeiture count is not constitutional.  Libretti v. United States, 516 U.S. 29, 48-49 (1995).  Instead, it is created solely by rule as follows:

> If a party timely requests to have the jury determine forfeiture, the government must submit a proposed Special Verdict Form listing each property subject to the forfeiture and asking the jury to determine whether the government has established the requisite nexus between the property and the offense committed by the defendant.

Fed. R. Crim P. 32.2(b)(5)(B).  The language of the Rule seems to contemplate a bifurcated proceeding, see also 2000 Advisory Committee Note.  Pre-Libretti First Circuit caselaw left bifurcation to the trial judge's discretion.  See, e.g., United States v. Desmarais, 938 F.2d 347, 349-50 (1st Cir. 1991); United States v. Maling, 737 F. Supp. 684, 705 (D. Mass. 1990), aff'd. sub nom. United States v. Richard, 943 F.2d 115 (1st Cir. 1991); United States v. Saccoccia, 58 F.3d 754, 770 (1st Cir. 1995).

The First Circuit has held that Apprendi v. New Jersey, 530 U.S. 466 (2000) does not disturb the Libretti holding as it applies to forfeiture proceedings.  United States v. Keene, 341 F.3d 78, 85-86 (1st Cir. 2003) (Apprendi's requirements do not apply to criminal forfeitures issues under 21 U.S.C. § 853 because "forfeiture is not viewed as a separate charge, but as 'an aspect of punishment imposed following conviction of a substantive offense'") (citation omitted); see also United States v. Hall, 411 F.3d 651, 654 (6th Cir. 2005) ("Apprendi did not affect Libretti's holding that criminal forfeitures are part of the sentence alone. . . . To our knowledge, every other circuit to consider the issue after Apprendi has reached the same conclusion") (citing cases from the First, Fourth, Fifth, Seventh, Ninth and Eleventh circuits).  The First Circuit has not addressed whether United States v. Booker, 543 U.S. 220 (2005), affects the vitality of Libretti, but caselaw from other circuits hold that, like Apprendi, Booker does not apply to criminal forfeiture proceedings.  See United States v. Fruchter, 411 F.3d 377, 383 (2d Cir. 2005) (Because "[c]riminal forfeiture [under 18 U.S.C. § 3554] is, simply put, a different animal from determinate sentencing," Libretti remains the "determinative decision" post-Booker); Hall, 411 F.3d at 654-55 (holding that Booker does not "allow[ ] us to turn our back on the Supreme Court's prior ruling in this area (Libretti)" because criminal forfeiture [under 18 U.S.C. § 982(a)(2)] is "a form of indeterminate sentencing"); United States v. Tedder, 403 F.3d 836, 841 (7th Cir. 2005) ("There is no statutory maximum forfeiture, so Apprendi, and its successors, including Booker, do not alter this conclusion" that "the sixth amendment does not apply to forfeitures" under 18 U.S.C. § 982 (citations omitted)).

(4)      Rule 32.2 seems to indicate that the question of a money judgment is for the court only, and never for the jury.  The text of 32.2(b)(1) divides its description of the court's role:  "If the government seeks forfeiture of specific *property*, the court must determine whether the government has established the requisite nexus between the property and the offense.  If the government seeks a *personal money judgment*, the court must determine the amount of money that the defendant will be ordered to pay."  Fed. R. Crim. P. 32.2(b)(1) (emphasis added).  The jury's

role is limited to the nexus determination for property:  if a party timely requests to have the jury determine forfeiture, the government must submit a proposed Special Verdict Form listing each property subject to the forfeiture and asking the jury to determine whether the government has established the requisite nexus between the property and the offense committed by the defendant ["If a party timely requests to have the jury determine forfeiture, the government must submit a proposed Special Verdict Form listing each property subject to the forfeiture and asking the jury to determine whether the government has established the requisite nexus between the property and the offense committed by the defendant."], Fed. R. Crim. P. 32.2(b)(5)(b).  There is no reference to the jury's role in a money judgment.

The advisory committee notes for the 2000 adoption also support this distinction.  After explicitly taking no position on the correctness of allowing money judgments (the First Circuit permits them, see, e.g., United States v. Candelaria-Silva, 166 F.3d 19, 42 (1st Cir. 1999)), the notes go on to prescribe different decisional rules for the different kinds of judgments:  when forfeiture of property is asked for, the court determines the nexus; when a personal money judgment is asked for, the court determines the amount.  Fed. R. Crim. P. 32.2(b)(1), advisory committee's note.  Then, in discussing subdivision (b)(4), the notes state, "The *only* issue for the jury in such cases would be whether the government has established the requisite nexus between the property and the offense."  Fed. R. Crim. P. 32.2(b)(4), advisory committee's note (emphasis added).  No mention is made of a role for the jury with respect to personal money judgments.

This distinction has been noted by some commentators, see, e.g., 3 Charles Alan Wright, et al., Federal Practice and Procedure: Criminal § 573, at 421-22 (4th ed. 2011) ("This right [to a jury verdict] applies only when the government is seeking property; if the government is seeking a money judgment, the Rules provide no right to a jury verdict.  Similarly, this right does not apply to the forfeiture of substitute property.")  1 David B. Smith, Prosecution and Defense of Forfeiture Cases § 2-14.03A (2012) ("[T]here is *no* right to a jury trial of the forfeiture issue if . . . the government seeks a personal money judgment instead of an order forfeiting specific assets . . . .") (emphasis supplied), but has not been dealt with by the courts.  Although there is room for some uncertainty, this seems to be the best interpretation of the rule.

(5)    The First Circuit has held post-Apprendi that the standard of proof is preponderance of the evidence.  Keene, 341 F.3d at 85-86 (refusing to apply Apprendi's requirements to criminal forfeitures, and holding that the preponderance "evidentiary standard used to impose the forfeiture was proper" (citing United States v. Rogers, 102 F.3d 641, 647 (1st Cir. 1996) (observing with approval that "almost every circuit that has pronounced on the issue has held that the standard of proof under section 853 . . . is a preponderance of the evidence."))).

(6)    The rebuttable presumption comes from 21 U.S.C. § 853(d).

(7)    The rights of third parties are determined in an ancillary proceeding before the judge without a jury.  21 U.S.C. § 853(n)(2); 2000 Advisory Committee Note to Rule 32.2(b)(4).  Third parties only have a right to an ancillary proceeding when the forfeiture is of specific property.  See United States v. Zorrilla-Echevarría, 671 F.3d 1, 10 (1st Cir. 2011) ("[N]o ancillary proceeding is required to the extent that the forfeiture consists of a money judgment, because such a judgment 'is an *in personam* judgment against the defendant and not an order directed at specific assets in which any third party could have an interest.'" (citations omitted)).

**4.21.952**          **Importation of a Controlled Substance,**
                    **21 U.S.C. §§ 952, 960**

[Updated: 3/26/08]

[Defendant] is accused of importing [controlled substance]into the United States.  It is against federal law to import [controlled substance] into the United States.  For you to find [defendant] guilty of this crime, you must be convinced that the government has proven each of the following things beyond a reasonable doubt:

First, that [defendant] imported [controlled substance];

Second, that [defendant] did so knowingly or intentionally; and

Third, that [defendant] knew that the [controlled substance] came from outside the United States.

**Comment**

(1)     In United States v. Geronimo, 330 F.3d 67, 72 (1st Cir. 2002), the First Circuit confirmed that section 960 incorporates a scienter requirement into section 952 and that "to convict a principal actor of importing a controlled substance, the prosecution must prove that the accused knew the drugs were imported."  To do that, the court concluded that the government must prove that the defendant knew the drugs were of foreign origin.  In United States v. Mejia-Lozano, 829 F.2d 268 (1st Cir. 1987), however, the court held that the defendant need not know the destination of the drugs.  In Mejia, it was not a sufficient defense that the defendant did not know that her flight from Bogota, Columbia to Geneva, Switzerland, would stop in transit in San Juan, Puerto Rico.  "We hold that the offense was complete the moment defendant, knowingly in possession of cocaine, landed in this country with the contraband, regardless of her knowledge of the aircraft's itinerary or the planned terminus of her journey."  Id. at 272.

(2)     For a definition of "knowingly" see Instruction 2.15.  In regard to drug couriers, see United States v. Ayala-Tapia, 520 F.3d 66, 68-69 (1st Cir. 2008), for use of circumstantial evidence to infer the defendant "knowingly possessed" the controlled substance.

(3)     As the First Circuit observed in Geronimo, "[t]he term 'import' is defined in the statute as 'any bringing in or introduction of [an] article into any area (whether or not such bringing in or introduction constitutes an importation within the meaning of the tariff laws of the United States).'  21 U.S.C. § 951(a)(1)."  330 F.3d at 72 n.1.

**4.21.963**          **Conspiracy, 21 U.S.C. § 963**

[New:  2/20/07]

See Instruction 4.18.371(1).

**4.26.5861(d)**          **Possession of an Unregistered Firearm, 26 U.S.C. § 5861(d)**

[Updated: 1/25/19]

[Defendant] is charged with possession of an unregistered firearm.  It is against federal law for [defendant] to possess certain kinds of firearms that are not registered to [him/her] in the National Firearms Registration and Transfer Record.  For you to find [defendant] guilty of this crime, the government must prove each of the following things beyond a reasonable doubt:

>     First, that [defendant] knowingly possessed the firearm described in the indictment on about the date charged;

>     Second, that the firearm was of a kind that is required to be registered in the National Firearms Registration and Transfer Record.  I instruct you that the firearm that is [insert relevant characteristics from 26 U.S.C. § 5845] must be registered;

>     Third, that [defendant] knew that the firearm had these characteristics: [describe *e.g.*, shotgun having a barrel of less than 18 inches in length or an overall length less than 26 inches]; and

>     Fourth, that the firearm was not registered to [defendant] in the National Firearms Registration and Transfer Record.

The word "knowingly" means that the act was done voluntarily and intentionally, not because of mistake or accident.  The government is not required to show that [defendant] knowingly violated the law or knew that registration was required, but it must prove beyond a reasonable doubt that [defendant] knowingly possessed the firearm and knew that it was [insert relevant characteristics].

The term "possess" means to exercise authority, dominion or control over something.  It is not necessarily the same as legal ownership.

[Possession includes both actual and constructive possession.  A person who has direct physical control of something on or around his or her person is then in actual possession of it.  A person who is not in actual possession, but who has both the power and the intention to exercise control over something is in constructive possession of it.  Whenever I use the term "possession" in these instructions, I mean actual as well as constructive possession.]

[Possession [also] includes both sole and joint possession.  If one person alone has actual or constructive possession, possession is sole.  If two or more persons share actual or constructive possession, possession is joint.  Whenever I have used the word "possession" in these instructions, I mean joint as well as sole possession.]

## Comment

(1)     "The statute of conviction, 26 U.S.C. § 5861(d), as construed in  Staples [v. United States, 511 U.S. 600 (1994)], requires only that a defendant have knowledge that the weapon has the

characteristics which subject it to registration, rather than knowledge of the registration requirement. Staples, 511 U.S. at 618-19. The prosecution thus must prove only that the defendant knew 'of the characteristics of his weapon that br[ought] it within the scope of the Act,' not that the defendant knew the weapon was subject to a registration requirement under federal law." United States v. Giambro, 544 F.3d 26, 29 (1st Cir. 2008) (quoting Staples, 511 U.S. at 615 n.11). In United States v. Shaw, 670 F.3d 360, 363 (1st Cir. 2012), the court assumed, without deciding, "that Staples' scienter requirement applies in this case involving a sawed-off weapon." It also described the circuit caselaw on the issue. Id. n.1.

(2)    "Firearm" may require definition for the jury. There are eight categories of firearms defined in 26 U.S.C. § 5845(a). Separate provisions of section 5845 give the detailed definitions for each of the eight categories of firearms. 26 U.S.C. § 5845(b), (c), (d), (e). For machine guns, rifles, shotguns, and other weapons, except destructive devices, the government must generally prove that the firearm is operable or may be readily restored to operating condition. 26 U.S.C. § 5845(b), (c), (d), (e).

It is not clear whether the firearm's operability is a feature or characteristic for which the defendant's knowledge is required under Staples. In the Third, Fifth, Eighth, and Tenth Circuits' pattern instructions no knowledge of operability is required. The Seventh, Ninth, Eleventh, and D.C. Circuits' pattern jury instructions do not address the issue. The First Circuit has no case on point, but in United States v. Rivera, ___ F.Supp.3d ___, 2018 WL 1221156 (D. Ma. Mar. 8, 2018), the court held that the defendant did not need knowledge of the firearm's operability. I note that the court in Rivera did not discuss the attributes that further define the firearms that are described in § 5845(b), (c), (d), and (e). Specific reference to "operability" has been removed from the pattern instruction.

(3)    In United States v. Musso, 914 F.3d 26, 30 (1st Cir. 2019), the First Circuit, rejecting the argument that grenades with inoperable fuses were "redesigned" so as not to be weapons under National Firearms Act exclusion, held that grenades with inoperable fuses were explosive grenades and satisfied the definition of destructive devices under the National Firearms Act.

**4.26.7201**          **Income Tax Evasion, 26 U.S.C. § 7201**

[Updated: 3/25/15]

[Defendant] is charged with attempting to evade and defeat the [assessment][payment] of [his/her] federal income taxes for [tax year].  It is against federal law to try to evade or defeat the [assessment] [payment] of federal income tax.  "Assessment" is the determination of a person's federal income tax liability.  For you to find [defendant] guilty of this crime, the government must prove the following things beyond a reasonable doubt:

> First, that [defendant] owed substantially more federal income tax for the year[s] [_____] than was indicated as due on [his/her] federal income tax return, or substantially more than zero if [he/she] filed no return;

> Second, that [defendant] willfully attempted to evade or defeat the [assessment][payment] of this tax; and

> Third, that [defendant] committed an affirmative act in furtherance of this willful attempt.

The government need not prove that the Internal Revenue Service relied on [defendant]'s conduct.

A person may not be convicted of attempting to evade or defeat the federal income tax [assessment][payment] on the basis of a willful omission alone, such as mere failure to file a Form 1040 or mere failure to pay the tax due; he or she must have undertaken an affirmative act of evasion.  The affirmative act requirement can be met by the filing of a frivolous tax return that substantially understates taxable income, by the filing of a false Form W-4, or by other affirmative acts of concealment of taxable income such as keeping a double set of books, making false entries or alterations or false invoices or documents, destroying books or records, concealing assets or covering up sources of income, handling one's affairs so as to avoid keeping customary records, and/or other conduct whose likely effect would be to mislead the Internal Revenue Service or conceal income.  If a motive to evade or defeat the tax assessment or payment plays any part in an affirmative act, you may consider it even if the affirmative act serves other purposes as well, such as [privacy; concealment].

To prove that [defendant] acted "willfully," the government must prove that the law imposed a duty on him, that [he/she] knew of the duty, and that he voluntarily and intentionally violated that duty.

Federal law imposes the following duties:  [Insert relevant duties]

If [defendant] acted in good faith, [he/she] did not act willfully.  The burden to prove [defendant]'s state of mind, as with all other elements of the crime, rests with the government.  This is a subjective standard:  what did [defendant] actually believe, not what a reasonable person should have believed.  However, you may consider the reasonableness of the belief in deciding whether [defendant] actually held the belief.  Innocent mistakes caused by the complexity of the Internal Revenue Code or negligence, even gross negligence, are not enough to meet the "willfulness" requirement.  But philosophical disagreement with the law or a belief that the tax laws are invalid

or unconstitutional does not satisfy good faith and does not prevent a finding of willfulness.  You must, therefore, disregard views such as those no matter how sincerely they are held.  It is the duty of every person to obey the law.

A state of mind may not ordinarily be proven directly because there is no way of directly scrutinizing the workings of the human mind.  In determining what [defendant] knew or intended, you may consider any statements [he/she] made or things [he/she] did and all other facts and circumstances in evidence that may aid in your determination of [his/her] state of mind.  You may infer, but you certainly are not required to infer, that a person intends the natural and probable consequences of acts knowingly done.  It is entirely up to you, however, to decide what facts are proven by the evidence.

[In deciding whether [defendant] knew of a duty, you may infer that [he/she] had knowledge of it if you find that [he/she] deliberately closed [his/her] eyes to something that otherwise would have been obvious to [him/her].  In order to infer knowledge, you must find that two things have been established.  First, that [defendant] was aware of a high probability that the duty existed.  Second, that [defendant] consciously and deliberately avoided learning of the duty; that is to say, that [defendant] willfully made [himself/herself] blind to the existence of the duty.  It is entirely up to you to determine whether [he/she] deliberately closed [his/her] eyes to the duty and, if so, what inference, if any, should be drawn.  Mere recklessness, negligence or mistake in failing to learn of the duty is not sufficient.  There must be a deliberate effort to remain ignorant of the duty.  But you may not find that [defendant] acted willfully if you find that [he/she] actually believed that [he/she] had no duty and that [his/her] belief was not based on philosophical disagreement with the tax laws or a belief that the tax laws are invalid or unconstitutional.]

## Comment

(1)     This instruction covers two distinct felony crimes under section 7201.  A defendant may be charged with a "willful attempt to evade or defeat" either "the 'assessment' of a tax" or "the 'payment' of a tax."  United States v. Hogan, 861 F.2d 312, 315 (1st Cir. 1988) (citing Sansone v. United States, 380 U.S. 343, 354 (1965)).  "The elements of both crimes are the same."  Id.  It is sufficient on that point to instruct the jury that to convict, "it must find 'that the defendant had a substantial tax due and owing.'"  United States v. Stierhoff, 549 F.3d 19, 25 (1st Cir. 2008).  It is incorrect to charge the jury "that being a person subject to the tax code is an element of the offense."  Id.

(2)     The definition of "assessment" given in this instruction was crafted by reference to 26 U.S.C. § 6203 and 26 C.F.R. § 301.6203-1, which together describe the "Method of Assessment."  The definition is also supported by case law.  See United States v. Toyota of Visalia, 772 F. Supp. 481, 488 (E.D. Cal. 1991) ("Assessment, under the Code, is essentially a bookkeeping notation made when the Secretary or his delegate establishes an account against the taxpayer on the tax rolls." (citations omitted)); In re Western Trading Co., 340 F. Supp. 1130, 1133 (D. Nev. 1972) ("An assessment is an administrative determination of tax liability.").

(3)    This instruction does not cover an evasion of payment charge arising out of an alleged attempt to evade payment *without* under-reporting income.  For example, the instruction does not address a scenario in which the defendant filed an accurate return, failed to pay the tax owed, and took at least one affirmative step in furtherance of the evasion (e.g., concealing assets).  The First Circuit has not considered such a case, but other circuits have concluded that "filing . . . accurate returns [does] not preclude . . . prosecution under § 7201 for . . . subsequent willful acts of attempting to evade payment of the taxes . . . computed on those returns."  United States v. Schoppert, 362 F.3d 451, 456 (8th Cir. 2004).  See also United States v. McGill, 964 F.2d 222, 230 (3d Cir. 1992); United States v. Conley, 826 F.2d 551, 556 (7th Cir. 1987); United States v. Hook, 781 F.2d 1166, 1170 (6th Cir. 1986).

(4)    The felony of tax evasion under section 7201 is distinguishable from the misdemeanor of failing to file a tax return under section 7203 in that it requires an affirmative "attempt to evade or defeat taxes."  Sansone, 380 U.S. at 351.  See also United States v. Waldeck, 909 F.2d 555, 559 (1st Cir. 1990).  "A mere willful failure to pay a tax" is not sufficient.  Sansone, 380 U.S. at 351.  "Section 7201 encompasses two kinds of affirmative behavior: the evasion of assessment and the evasion of payment."  McGill, 964 F.2d at 230.  Recently, in Kawashima v. Holder, 565 U.S. 478, 132 S. Ct. 1166, 1175 (2012), the Supreme Court recognized that "the elements of tax evasion pursuant to § 7201 do not *necessarily* involve fraud or deceit," as in the case of "a taxpayer who files a truthful tax return, but who also takes steps to avoid payment by moving his assets beyond the reach of the Internal Revenue Service."

The list of affirmative acts is by way of illustration, not limitation, and comes from Spies v. United States, 317 U.S. 492, 499 (1943) ("keeping a double set of books, making false entries of alterations, or false invoices or documents, destruction of books or records, concealment of assets or covering up sources of income, handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or to conceal").  See also Lawn v. United States, 355 U.S. 339, 343 n.5 (1958) ("The evasion of payment was in general accomplished by delaying disclosure of income tax liabilities through the filing of returns from 5 to 15 months late; by failing to withhold income taxes on salaries; by concealment of the individual assets of [the defendants]; and by the misappropriation, conversion and diversion of corporate assets."); McGill, 964 F.2d at 230 ("Affirmative acts of evasion of *payment* include: placing assets in the name of others; dealing in currency; causing receipts to be paid through and in the name of others; and causing debts to be paid through and in the name of others."); United States v. Johnson, 893 F.2d 451, 453 (1st Cir. 1990) (filing false W-4); Waldeck, 909 F.2d at 559 (filing a false W-4 and substantially understated returns).  Relying on the previously cited language from Spies, the Court of Appeals for the First Circuit held that because section 7201 prohibits conduct that misleads or conceals, a "literal truth" instruction is not appropriate.  United States v. Schussel, 291 F. App'x 336, 348-49 (1st Cir. 2008) (unpublished).  Specifically, the court stated that unlike the crimes of perjury, false statements and obstruction of justice "[t]he plain language of the statute covers a broader range of conduct than [the proposed literal truth] instruction would reflect."  Id.

"If the tax-evasion motive plays any part in such conduct the offense may be made out even though the conduct may also serve other purposes such as concealment of other crime."  Spies, 317 U.S. at 499.  An affirmative act need not be illegal, so long as the act is done with the intent to evade taxes.  See United States v. Brooks, 174 F.3d 950, 956 (8th Cir. 1999) (citing Spies, 317 U.S. at 499); United States v. Jungles, 903 F.2d 468, 474 (7th Cir. 1990) ("[An act,] even

though a lawful activity in-and-of-itself, can serve as an 'affirmative act' supporting a conviction under § 7201 if it is done with the *intent to evade income tax*.").

(5)      A lesser included offense instruction under section 7203 is warranted when the elements of the lesser offense are a subset of the elements in the greater offense.  See Schmuck v. United States, 489 U.S. 705, 715-18 (1989) ("The elements test . . . permits lesser offense instructions only in those cases where the indictment contains the elements of both offenses . . . ." Id. at 718). "Where there is, in a § 7201 prosecution, a disputed issue of fact as to the existence of the requisite affirmative commission in addition to the § 7203 omission, a defendant would, of course, be entitled to a lesser-included offense charge based on § 7203." Sansone, 380 U.S. at 351.  See also United States v. Snyder, 766 F.2d 167, 171 (4th Cir. 1985); United States v. Buckley, 586 F.2d 498, 504 (5th Cir. 1978); United States v. Rosenthal, 454 F.2d 1252, 1255 (2d Cir. 1972). But see United States v. Becker, 965 F.2d 383, 391 (7th Cir. 1992) (finding that failing to file a return is not necessary for the completion of the offense of tax evasion under section 7201, therefore section 7203 is not a lesser-included offense of section 7201); United States v. Nichols, 9 F.3d 1420, 1422 (9th Cir. 1993) (per curiam) (failing to file a tax return is not "necessarily included" in the offense of tax evasion).

(6)      The government must prove the existence of a tax deficiency.  Sansone, 380 US at 351 ("[T]he elements of § 7201 are willfulness; the existence of a tax deficiency; and an affirmative act constituting an evasion or attempted evasion of the tax." (citations omitted)); Lawn, 355 U.S. at 361; United States v. George, 448 F.3d 96, 98 n.2 (1st Cir. 2006).  In place of the term "tax deficiency," the First Circuit sometimes uses the phrase "an additional tax due and owing." United States v. Sorrentino, 726 F.2d 876, 879 (1st Cir. 1984) ("The elements of attempted tax evasion under § 7201 are (1) an additional tax due and owing, (2) an attempt to evade or defeat that tax, and (3) willfulness." (citing Sansone, 380 U.S. at 351)).  In a case in which the defendant disputed whether a deficiency existed, the Supreme Court held that a recipient of a corporate distribution who is "accused of criminal tax evasion may claim return-of-capital treatment [for the distribution] without producing evidence that either he or the corporation intended a capital return when the distribution occurred."  Boulware v. United States, 552 U.S. 421, 424 (2008).

(7)      Although section 7201 does not contain an explicit "substantiality" requirement, most circuits require the government to prove that the amount of tax evaded was substantial.  See, e.g., United States v. Gonzales, 58 F.3d 506, 509 (10th Cir. 1995); United States v. Romano, 938 F.2d 1569, 1571 (2d Cir. 1991); United States v. Goodyear, 649 F.2d 226, 227 (4th Cir. 1981); United States v. Burkhart, 501 F.2d 993, 995 (6th Cir. 1974); McKenna v. United States, 232 F.2d 431, 436 (8th Cir. 1956).  But see United States v. Marashi, 913 F.2d 724, 735-36 (9th Cir. 1990).  The First Circuit appears to follow this majority approach.  See Sorrentino, 726 F.2d at 879, 880 n.1 (showing of substantiality required under net-worth method of proof) (citing United States v. Nunan, 236 F.2d 576 (2d Cir. 1956) (showing that a substantial tax was evaded required generally in section 7201 cases)); United States v. Morse, 491 F.2d 149, 152 n.3 (1st Cir. 1974) (showing of a substantial discrepancy required under bank-deposits method of proof).  But the Government need not prove the exact amount due.  Morse, 491 F.2d at 152 n.3; Sorrentino, 726 F.2d at 880 n.1 (citing Nunan, 236 F.2d 576).

(8)     "Willfulness" is an element of several of the crimes in 26 U.S.C. §§ 7201-07.  That term has been defined in the context of criminal tax cases as "requir[ing] the Government to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty."  Cheek v. United States, 498 U.S. 192, 201 (1991).  See also United States v. Allen, 670 F.3d 12, 14-15 & n.1 (1st Cir. 2012); United States v. Lavoie, 433 F.3d 95, 98 (1st Cir. 2005); United States v. Boulerice, 325 F.3d 75, 80 (1st Cir. 2003) ("The government need not present direct evidence of willfulness; rather, circumstantial evidence of willfulness can be sufficient to sustain a conviction."); United States v. Zanghi, 189 F.3d 71, 78 (1st Cir. 1999) ("Sole or exclusive intent to evade taxes is not required under § 7201."); United States v. Olbres, 61 F.3d 967, 970 (1st Cir. 1995).   Mistake, negligence and gross negligence are not sufficient to meet the willfulness requirement of these tax crimes.  Hogan, 861 F.2d at 316; United States v. Aitken, 755 F.2d 188, 191-93 (1st Cir. 1985).  The government has the burden of "negating a defendant's claim of ignorance of the law or a claim that because of a misunderstanding of the law, he had a good-faith belief that he was not violating any of the provisions of the tax laws." Cheek, 498 U.S. at 202.  The court need not include lack of good faith as a separate element of the offense.  Id. at 201 ("We conclude[ ] that after instructing the jury on willfulness, '[a]n additional instruction on good faith was unnecessary.'" (quoting United States v. Pomponio, 429 U.S. 10, 13 (1976) (per curiam))).  A defendant has a valid good-faith defense "whether or not the claimed belief or misunderstanding is objectively reasonable." Id. at 202.  See also Aitken, 755 F.2d at 190-92.  However, philosophical objections to tax laws and beliefs that the tax statutes are unconstitutional are irrelevant to the issue of willfulness.  United States v. Bonneau, 970 F.2d 929, 931-32 (1st Cir. 1992) (citing Cheek, 498 U.S. at 206).  In United States v. Adams, 740 F.3d 40, 45, 45 n.4 (1st Cir. 2014), the court referred approvingly to the following language:

> [A] "defendant's intent must be determined by a subjective standard. . . . A good-faith but mistaken belief as to what the tax laws require is not enough to have the required knowledge and intent."
> . . . .
> [The jury] "must decide what a particular defendant actually knew and believed, not what a reasonable person in his position should have known or believed"; and that "[a] good-faith belief is one honestly held."

In Hogan, the First Circuit approved an instruction "allowing the jury to consider the [defendant's] attitude toward the IRS as an indication of willfulness."  861 F.2d at 316 (citing United States v. Turano, 802 F.2d 10, 12 (1st Cir. 1986) for the proposition that "evidence of a personal philosophy and activity as tax protestor is relevant and material to the question of intent.").  As long as intent remains determined by the subjective standard, this approval of the evidence the jury can consider on that subject should survive Cheek, and the Third Circuit quoted this part of Hogan approvingly in 2007.  United States v. McKee, 506 F.3d 225, 237 (3d Cir. 2007) ("jury was properly allowed to consider animosity toward the IRS as an indication of defendant's willfulness").

(9)     The First Circuit has acknowledged "the defense of good faith reliance on the advice of counsel" against a claim of fraudulent intent or willfulness.  United States v. Powers, 702 F.3d 1, 9 (1st Cir. 2012); see also United States v. DeSimone, 488 F.3d 561, 571 (1st Cir. 2007); Janeiro v. Urological Surgery Prof'l Ass'n, 457 F.3d 130, 140 (1st Cir. 2006); United States v. Christopher,

142 F.3d 46, 55 (1st Cir. 1998).  It has stated that a generalized good-faith instruction does not "invariably eliminate[ ] the need for a court to consider an advice-of-counsel instruction," but it has held that a defendant suffered no prejudice from the denial of an advice-of-counsel instruction when the court gave good-faith instructions that "adequately conveyed that an absence of intent to defraud, or an honest belief that taxes were not owed, would shield defendants from conviction." Powers, 702 F.3d at 10.  This line of caselaw stems from a 1908 Supreme Court opinion in which the Court said that the following jury charge "went as far in favor of the accused as it was possible for [the trial judge] to go consistently with right":

> [I]f a man honestly and in good faith seeks advice of a lawyer as to what he may lawfully do . . ., and fully and honestly lays all the facts before his counsel, and in good faith and honestly follows such advice, relying upon it and believing it to be correct, and only intends that his acts shall be lawful, he could not be convicted of crime which involves willful and unlawful intent; even if such advice were an inaccurate construction of the law.  But, on the other hand, no man can willfully and knowingly violate the law, and excuse himself from the consequences thereof by pleading that he followed the advice of counsel.

Williamson v. United States, 207 U.S. 425, 453 (1908).

The same analysis applies to an accountant's advice.  The defendant must show "that the information necessary to the accountant's advice was known to the accountant before rendering the advice."  DeSimone, 488 F.3d  at 571; Janeiro, 457 F.3d at 140 ("The defense of good-faith reliance on advice is not available to one who omits to disclose material information to advisors or dictates imprudent outcomes to advisors." (footnote and citation omitted)); Powers, 702 F.3d at 10 ("In light of the evidence that [the lawyer] was not told needed information and was given false information, the instruction was unavailable.").  Several other circuits have elaborated upon the defense.  See, e.g., United States v. Bishop, 291 F.3d 1100, 1106-07 (9th Cir. 2002); United States v. McClatchey, 217 F.3d 823, 832 (10th Cir. 2000); United States v. Evangelista, 122 F.3d 112, 118 (2d Cir. 1997); United States v. Charroux, 3 F.3d 827, 831-33 (5th Cir. 1993); Liss v. United States, 915 F.2d 287, 291 (7th Cir. 1990); United States v. Kelley, 864 F.2d 569, 572-73 (7th Cir. 1989); United States v. Meyer, 808 F.2d 1304, 1306 (8th Cir. 1987); United States v. Mitchell, 495 F.2d 285, 288 (4th Cir. 1976).  Sand et al. suggests the following charge as meeting those other circuits' requirements:

> [Defendant] has introduced evidence showing that he consulted with an [accountant or attorney] prior to the preparation of the tax return in question, and that the return was prepared pursuant to that advice. If you find that [defendant] sought the advice of an [accountant or attorney] whom he considered competent, and made a full and accurate report to that [accountant or attorney] of all the material facts available to him, and acted strictly in accordance with the [accountant or attorney]'s advice without having any reasonable basis to believe that the advice was incorrect, then you must find [defendant] not guilty.

Sand, et al., Instruction 59-9.

(10)    In the First Circuit, the court may add an instruction on conscious avoidance or willful blindness even after <u>Cheek</u> with respect to the duty to pay taxes, <u>United States v. Anthony</u>, 545 F.3d 60, 64-66 (1st Cir. 2008), or with respect to the falsity of tax return statements, <u>United States v. Griffin</u>, 524 F.3d 71, 78-79 (1st Cir. 2008).   Other circuits agree.   <u>See, e.g.</u>, <u>United States v. Dean</u>, 487 F.3d 848, 851 (11th Cir. 2007) (per curiam); <u>United States v. Willis</u>, 277 F.3d 1026, 1031-32 (8th Cir. 2002); <u>United States v. Hauert</u>, 40 F.3d 197, 203 (7th Cir. 1994); <u>United States v. Wisenbaker</u>, 14 F.3d 1022, 1027 (5th Cir. 1994); <u>United States v. Bussey</u>, 942 F.2d 1241, 1249 (8th Cir. 1991) ("<u>Cheek</u> did not involve a willful blindness instruction and is therefore irrelevant to [a] willful blindness issue on appeal.").   Although <u>Anthony</u>, 545 F.3d at 64-66, said that it was not error to omit the word "recklessness," the Supreme Court's decision in <u>Global-Tech</u> teaches that the instruction should state that recklessness is insufficient.   <u>See</u> Comment 2 to Instruction 2.16 ("'Willful Blindness' As a Way of Satisfying 'Knowingly'").   Willful blindness is not to be used as a substitute for willfulness.

(11)    The language "It is the duty of every person to obey the law" comes from 3 L. Sand, et al., <u>Modern Federal Jury Instructions—Criminal</u>, Inst. 59-8 (2011).

**4.26.7203**          **Failure to File a Tax Return, 26 U.S.C. § 7203**

[Updated: 3/3/08]

[Defendant] is charged with willful failure to file a tax return for the year[s] [_____].  It is against federal law to engage in such conduct.  For you to find [defendant] guilty of this charge, the government must prove each of the following three things beyond a reasonable doubt:

> First, that [defendant] was required to file an income tax return for the year[s] [_____];

> Second, that [defendant] failed to file an income tax return for the year[s] in question; and

> Third, that [defendant] acted willfully.

To act "willfully" means to violate voluntarily and intentionally a known legal duty to file, not to act as a result of accident or negligence.

## Comment

(1)     Failure to file a tax return under section 7203 is a misdemeanor.  In the appropriate circumstances, the charge can be used as a lesser included offense for the crime of willful tax evasion under section 7201.  See Spies v. United States, 317 U.S. 492, 497-99 (1943).  "Willful but passive neglect of the statutory duty may constitute the lesser offense, but to combine with it a willful and positive attempt to evade tax in any manner or to defeat it by any means lifts the offense to the degree of felony."  Id. at 499.  See also Sansone v. United States, 380 U.S. 343, 351 (1965).

(2)     See Comment to Instruction 4.26.7201 (Income Tax Evasion) for a discussion of willfulness, good faith, and deliberate ignorance in the context of tax crimes.  See also United States v. Turano, 802 F.2d 10, 11 (1st Cir. 1986) (stating that trial court's instruction on good-faith defense did not "improperly inject[ ] an objective element into the subjective willfulness inquiry"); United States v. Sempos, 772 F.2d 1, 2 (1st Cir. 1985) ("Financial or domestic problems . . . do not rule out willfulness . . . ." (citations omitted)).

(3)     Under section 7203, it is also a misdemeanor to willfully fail to pay any tax or estimated tax owed, or to willfully fail to keep records or supply information as required by statute or regulation.  See 26 U.S.C. § 7203; Spies, 317 U.S. at 498.  The instruction can be modified to cover any of these charges.

**4.26.7206**          **False Statements on Income Tax Return, 26 U.S.C. § 7206(1)**

[Updated: 4/18/08]

[Defendant] is charged with willfully filing a false federal income tax return.  It is against federal law to engage in such conduct.  For you to find [defendant] guilty of this charge, the government must prove each of the following things beyond a reasonable doubt:

> First, that [defendant] made or caused to be made, a federal income tax return for the year in question that [he/she] verified to be true;

> Second, that the tax return was false as to a material matter;

> Third, that [defendant] signed the return willfully and knowing it was false; and

> Fourth, that the return contained a written declaration that it was made under the penalty of perjury.

A "material" matter is one that is likely to affect the calculation of tax due and payable, or to affect or influence the IRS in carrying out the functions committed to it by law, such as monitoring and verifying tax liability.  A return that omits material items necessary to the computation of taxable income is not true and correct.

"Willfully" means a voluntary, intentional violation of a known legal duty.

### Comment

(1)     The elements come directly from United States v. Boulerice, 325 F.3d 75, 79-80 (1st Cir. 2003).  They are somewhat redundant and arguably depart from the statutory language (which applies to anyone who "[w]illfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter . . . ." Id. at 79 (quoting 26 U.S.C. § 7206(1)), but it seems safest to use the elements as approved.  The four elements have a long lineage (see string citation in Boulerice) and seem to go back to a charge by Judge Shadur, approved by the Seventh Circuit in 1982.  United States v. Oggoian, 678 F.2d 671, 673 (7th Cir. 1982).

(2)     Materiality is a question for the jury, and the definition of materiality here comes largely from United States v. DiRico, 78 F.3d 732, 735-36 (1st Cir. 1996).  See also United States v. Griffin, 524 F.3d 71, 76-77 (1st Cir. 2008).  The standard is objective.  United States v. Romanow, 509 F.2d 26, 28 (1st Cir. 1975).  The government need not prove the taxpayer's knowledge of the materiality.  Griffin, 524 F.3d at 77 n.3; Boulerice, 325 F.3d at 82.

(3)     The definition of "willfully" is from Boulerice, 325 F.3d at 80.  Accord Griffin, 524 F.3d at 77-78.  See Comment to Instruction 4.26.7201 (Income Tax Evasion) for a discussion of willfulness, good faith, and deliberate ignorance in the context of tax crimes.  See also United

States v. Pomponio, 429 U.S. 10, 11-13 (1976); United States v. Bishop, 412 U.S. 346, 360 (1973); United States v. Drape, 668 F.2d 22, 26 (1st Cir. 1982) ("Intent may be established where a taxpayer 'chooses to keep himself uninformed as to the full extent that (the return) is insufficient.'") (quoting Katz v. United States, 321 F.2d 7, 10 (1st Cir. 1963)) (alteration in original)).

(4)      The defendant's signature on the tax return is sufficient to support a finding by the jury that he or she read the return and knew its contents.  United States v. Olbres, 61 F.3d 967, 971 (1st Cir. 1995); Drape, 668 F.2d at 26; Romanow, 509 F.2d at 27.

(5)      The instruction can be modified to apply to a willful omission of material facts on a tax return.  See Siravo v. United States, 377 F.2d 469, 472 (1st Cir. 1967) ("[A] return that omits material items necessary to the computation of income is not 'true and correct' within the meaning of section 7206.").

(6)      "[T]he intent to induce government reliance on a false statement or to deceive the government is *not* an element of 26 U.S.C. § 7206(1)."  Griffin, 524 F.3d at 81.

**4.26.7212** [1]        **Attempts to Interfere with Administration of Internal Revenue Laws, 26 U.S.C. § 7212(a)—Intimidation**

[New: 3/21/18]

[Defendant] is charged with [corruptly/forcibly] trying to impede the administration of Internal Revenue Laws on about [date]. It is against federal law [corruptly/forcibly] to try to impede the administration of Internal Revenue laws. For you to find [defendant] guilty of this crime, the government must prove the following things beyond a reasonable doubt:

> First, that on about the date charged, [defendant] [took the action of _____] in an effort to intimidate or impede an officer or employee of the United States acting in an official capacity under the Internal Revenue laws; and

> Second, that [he/she] did so [corruptly/forcibly].

[To act "corruptly" means to act with the intent to secure an unlawful advantage or benefit or financial gain either for oneself or for another. The actions need not themselves be illegal.]

[To act "forcibly" means to act with the intent to cause bodily harm to a person.]

To "obstruct or impede" means to hinder, interfere with, create obstacles or make difficult.

The government does not have to prove that the effort succeeded.

## Comment

(1)     The essential elements are crafted from § 7212(a). In United States v. Marek, 548 F.3d 147, 150 (1st Cir. 2008) (citations omitted), the court said: "the plain language of the statute supports an interpretation requiring proof that the defendant 1) corruptly, 2) endeavored, 3) to obstruct or impede the due administration of the Internal Revenue laws."

(2)     The definition of "corruptly" comes from United States v. Reeves, 752 F.2d 995, 998 (5th Cir. 1985). Other circuits have used this definition as well. See, e.g., United States v. McBride, 362 F.3d 360, 372 (6th Cir. 2004); United States v. Kelly, 147 F.3d 172, 177 (2d Cir. 1998); United States v. Winchell, 129 F.3d 1093, 1098 (10th Cir. 1997); United States v. Valenti, 121 F.3d 327, 331 (7th Cir. 1997); United States v. Dykstra, 991 F.2d 450, 453 (8th Cir. 1993); United States v. Mitchell, 985 F.2d 1275, 1278 (4th Cir. 1993); United States v. Popkin, 943 F.2d 1535, 1540 (11th Cir. 1991). In Floyd, the First Circuit recognized the definition as reflecting "consensus among the courts of appeals." United States v. Floyd, 740 F.3d 22, 31. The First Circuit has also stated that the "thrust of the term" corruptly, as used in 18 U.S.C. § 1503(a), is "simply having the improper motive or purpose of obstructing justice." United States v. Brady, 168 F.3d 574, 579 n.3 (1st Cir. 1999) (quoting 2 Sand, et al., Modern Federal Jury Instructions, Instr. 46-6, at 46-24 (1998)).

(3)     The definition of "forcibly" listed in this instruction is derived directly from the statute.   26 U.S.C. § 7212(a).

(4)     The definition of "obstruct or impede" is crafted from the listing for "obstruction" in Black's Law Dictionary (9th ed. 2009).  The Eleventh Circuit defines "obstruct or impede" as "to hinder, prevent, delay, or make more difficult the proper administration of the Internal Revenue laws."    11th Cir. Pattern Jury Instr. 111 (2003) (criminal cases) (citing no authority for its definition).

(5)     It is sufficient to prove an attempt to impede—it need not be successful.  United States v. Rosnow, 977 F.2d 399, 410 (8th Cir. 1992).

(6)     "The filing of false tax documents to mask an organization's non-charitable purposes falls within the purview of § 7212."  United States v. Mubayyid, 658 F.3d 35, 61 (1st Cir. 2011) (citation omitted).

(7)     The First Circuit has not addressed whether a good faith/Cheek instruction, see 4.26.7201 comments (8), (9), is appropriate.  The Tenth Circuit has squarely addressed the issue and concluded that a Cheek defense is not available, United States v. Williamson, 746 F.3d 987, 991-92 (10th Cir. 2014), reasoning that Cheek "was not a constitutional decision requiring a particular state of mind before one could be convicted of a tax offense."  Id. at 991.   See also United States v. Kelly, 147 F.3d 172, 176 (2d Cir. 1998).

**4.26.7212** [2]          **Attempts to Interfere with Administration of Internal Revenue Laws, 26 U.S.C. § 7212(a)—Obstruction Under the Omnibus Clause**

[New: 3/21/18]

[Defendant] is charged with [corruptly/forcibly] trying to obstruct or impede the administration of Internal Revenue Laws on about [date]. It is against federal law [corruptly/forcibly] to try to obstruct or impede the administration of Internal Revenue laws. For you to find [defendant] guilty of this crime, the government must prove the following things beyond a reasonable doubt:

> First, that on about the date charged, [defendant] [took the action of _____] in an effort to obstruct or impede the administration of the Internal Revenue laws;

> Second, that [he/she] did so [corruptly/forcibly]; and

> Third, that there is a connection between [defendant]'s conduct and the [targeted administrative action].

[To act "corruptly" means to act with the intent to secure an unlawful advantage or benefit or financial gain either for oneself or for another. The actions need not themselves be illegal.]

[To act "forcibly" means to act with the intent to cause bodily harm to a person.]

To "obstruct or impede" means to hinder, interfere with, create obstacles or make difficult.

The government does not have to prove that the effort succeeded.

## Comment

(1)     The essential elements are crafted from § 7212(a). In United States v. Marek, 548 F.3d 147, 150 (1st Cir. 2008) (citations omitted), the court said: "the plain language of the statute supports an interpretation requiring proof that the defendant 1) corruptly, 2) endeavored, 3) to obstruct or impede the due administration of the Internal Revenue laws." The third element is based on Marinello v. United States, 584 U.S. ___, 138 S. Ct. 1101, 1109 (2018), which held that "to secure a conviction under the Omnibus Clause, the Government must show (among other things) that there is a 'nexus' between the defendant's conduct and a particular administrative proceeding, such as an investigation, an audit, or other targeted administrative action." The Court in Marinello went on to explain that nexus requires a "relationship in time, causation, or logic with the [administrative] proceeding." Id. (quoting United States v. Aguilar, 515 U.S. 593, 599 (1995)).

(2)     The definition of "corruptly" comes from United States v. Reeves, 752 F.2d 995, 998 (5th Cir. 1985). Other circuits have used this definition as well. See, e.g., United States v. McBride, 362 F.3d 360, 372 (6th Cir. 2004); United States v. Kelly, 147 F.3d 172, 177 (2d Cir. 1998); United States v. Winchell, 129 F.3d 1093, 1098 (10th Cir. 1997); United States v. Valenti, 121 F.3d 327, 331 (7th Cir. 1997); United States v. Dykstra, 991 F.2d 450, 453 (8th Cir. 1993); United States v.

264

Mitchell, 985 F.2d 1275, 1278 (4th Cir. 1993); United States v. Popkin, 943 F.2d 1535, 1540 (11th Cir. 1991).  In Floyd, the First Circuit recognized the definition as reflecting "consensus among the courts of appeals."  United States v. Floyd, 740 F.3d 22, 31.  The First Circuit has also stated that the "thrust of the term" corruptly, as used in 18 U.S.C. § 1503(a), is "simply having the improper motive or purpose of obstructing justice."  United States v. Brady, 168 F.3d 574, 579 n.3 (1st Cir. 1999) (quoting 2 Sand, et al., Modern Federal Jury Instructions, Instr. 46-6, at 46-24 (1998)).

(3)     The definition of "forcibly" listed in this instruction is derived directly from the statute.  26 U.S.C. § 7212(a).

(4)     The definition of "obstruct or impede" is crafted from the listing for "obstruction" in Black's Law Dictionary (9th ed. 2009).  The Eleventh Circuit defines "obstruct or impede" as "to hinder, prevent, delay, or make more difficult the proper administration of the Internal Revenue laws."  11th Cir. Pattern Jury Instr. 111 (2003) (criminal cases) (citing no authority for its definition).

(5)     It is sufficient to prove an attempt to impede—it need not be successful.  United States v. Rosnow, 977 F.2d 399, 410 (8th Cir. 1992).

(6)     "The filing of false tax documents to mask an organization's non-charitable purposes falls within the purview of § 7212."  United States v. Mubayyid, 658 F.3d 35, 61 (1st Cir. 2011) (citation omitted).

(7)     The First Circuit has not addressed whether a good faith/Cheek instruction, see 4.26.7201 comments (8), (9), is appropriate.  The Tenth Circuit has squarely addressed the issue and concluded that a Cheek defense is not available, United States v. Williamson, 746 F.3d 987, 991-92 (10th Cir. 2014), reasoning that Cheek "was not a constitutional decision requiring a particular state of mind before one could be convicted of a tax offense."  Id. at 991.  See also United States v. Kelly, 147 F.3d 172, 176 (2d Cir. 1998).

**4.31.5322**          **Money Laundering—Illegal Structuring,**
                       **31 U.S.C. §§ 5322, 5324**

[Updated: 10/5/12]

[Defendant] is charged with violating that portion of the federal money laundering statute that prohibits structuring a transaction to avoid reporting requirements.  It is against federal law to structure transactions for the purpose of evading the reporting requirements.  For [defendant] to be convicted of this crime, the government must prove the following things beyond a reasonable doubt:

> First, [defendant] structured or assisted in structuring [attempted to structure or assist in structuring] a transaction with one or more domestic financial institutions; and

> Second, [defendant] did so with the purpose of evading the reporting requirements of federal law affecting the transactions.

Federal law requires that transactions in currency of more than $10,000 be reported by a financial institution to the Internal Revenue Service.

A [withdrawal; deposit; etc.] from a [_____] is a financial transaction.


## **Comment**

(1)      Congress deleted the statutory willfulness requirement for structuring offenses in response to the Supreme Court's decision in Ratzlaf v. United States, 510 U.S. 135, 136-37 (1994) (holding that the government must prove not only the defendant's purpose to evade a financial institution's reporting requirements, but also the defendant's knowledge that structuring itself was unlawful).  See Act of Sept. 23, 1994, Pub. L. No. 103-325, § 411, 108 Stat. 2160, 2253 (codified at 31 U.S.C. §§ 5322(a) & (b), 5324(c)); see also United States v. Morales-Rodríguez, 467 F.3d 1, 11 (1st Cir. 2006); abrogated on other grounds by Cuellar v. United States, 553 U.S. 550 (2008); United States v. Hurley, 63 F.3d 1, 14 n.2 (1st Cir. 1995).  The amendments restore:

> the clear Congressional intent that a defendant need only have the
> intent to evade the reporting requirement as the sufficient mens rea
> for the offense. The prosecution would need to prove that there was
> an intent to evade the reporting requirement, but would not need to
> prove that the defendant knew that structuring was illegal.
> However, a person who innocently or inadvertently structures or
> otherwise violates section 5324 would not be criminally liable.

H.R. Conf. Rep. No. 103-652, 147, 194 (1994), reprinted in 1994 U.S.S.C.A.N. 1977, 2024.  (For criminal acts after September 23, 1994, the amendments also moot the debate over whether United States v. Aversa, 984 F.2d 493 (1st Cir. 1993), vacated and remanded by Donovan v. United States, 510 U.S. 1069 (1994), which had held that "reckless disregard" was sufficient to satisfy the now

defunct willfulness requirement, survived <u>Ratzlaf</u>.  <u>See</u> <u>United States v. London</u>, 66 F.3d 1227, 1245 (1st Cir. 1995) (Torruella, J., dissenting from denial of petition for rehearing en banc)).

(2)     The requirements for currency transaction reports are set forth at 31 U.S.C. § 5313; 31 C.F.R. § 1010.311 (2012).

**4.42.408(a)(7)(B)      Social Security Fraud, 42 U.S.C. § 408(a)(7)(B)**

[Updated: 7/2/18]

[Defendant] is charged with social security fraud.  It is against federal law to engage in social security fraud.  For you to find [defendant] guilty of this crime you must be convinced that the government has proven each of these things beyond a reasonable doubt:

> <u>First</u>, that [defendant] willfully and knowingly represented to someone, for any purpose, that the social security number described in the Indictment had been assigned to [him/her] by the commissioner of social security;

> <u>Second</u>, that the social security number, in fact, had not been assigned to [defendant]; and

> <u>Third</u>, that [defendant] made such representation with the intent to deceive.

<u>**Comment**</u>

(1)      There are other forms of social security fraud (*e.g.*, using a social security number obtained on the basis of false information; altering or counterfeiting; buying or selling, 42 U.S.C. § 408(a)(7)).

(2)      In <u>United States v. Acosta-Joaquin</u>, 894 F.3d 60 (1st Cir. 2018), the defendant challenged his conviction under § 408(a)(7)(B) arguing that he truthfully represented that the social number provided on the payment notice for the traffic infraction belonged to the individual to whom the number had been assigned where he presented as the other individual and signed the other individual's name.  The court held that this was "as clean and complete a violation as one can imagine" for fraudulent use of a social security number not his own where the defendant falsely tendered the number as having been assigned to him, knowing that it had not been assigned to him but rather was a number that he purchased from a third party in order to disguise his own identity. <u>Id</u>. at 63.  <u>See</u> <u>United States v. Manning</u>, 955 F.2d 770, 773 (1st Cir. 1992) (construing precursor provision, 42 U.S.C. § 408(g)(2)), <u>abrogated on other grounds by</u> <u>United States v. Yermian</u>, 468 U.S. 63, 73 (1984), <u>as recognized in</u> <u>United States v. Gonsalves</u>, 435 F.3d 64, 72 (1st Cir. 2006).

(3)      The "for any purpose" language can include obtaining a new identity so as to remain a fugitive from justice.  <u>United States v. Persichilli</u>, 608 F.3d 34, 39 (1st Cir. 2010) (prosecution under § 408(a)(7)(C)).  The statute also includes specific purposes in addition to the catchall phrase "for any other purpose."  One such purpose is "for the purpose of obtaining anything of value from any person."  <u>Persichilli</u> held that the word "person" includes a governmental agency and thus can include the purpose of obtaining a driver's license.  <u>Id</u>. at 37-39 (under § 408(a)(7)(C)).

**4.46.70503**      **Possessing a Controlled Substance On Board a Vessel Subject to United States Jurisdiction With Intent to Distribute,**
**46 U.S.C. § 70503** (previously 46 U.S.C. App. § 1903)

[Updated: 12/1/10]

[Defendant] is charged with illegally possessing [controlled substance] while on board a vessel subject to United States jurisdiction, intending to distribute it to someone else. It is against federal law to have [controlled substance] in your possession while on board a vessel subject to United States jurisdiction, with the intention of distributing all or part of the [controlled substance] to someone else. I have determined that [name of vessel] was subject to United States jurisdiction on [date charged]. For you to find [defendant] guilty of this crime you must be convinced that the government has proven each of these things beyond a reasonable doubt:

> First, that on the date charged [defendant] was on board [name of vessel] and at that time possessed [controlled substance], either actually or constructively;

> Second, that [he/she] did so with a specific intent to distribute the [controlled substance] over which [he/she] had actual or constructive possession;

> Third, that [he/she] did so knowingly and intentionally.

The term "possess" means to exercise authority, dominion or control over something. The law recognizes different kinds of possession.

["Possession" includes both actual and constructive possession. A person who has direct physical control of something on or around his or her person is then in actual possession of it. A person who is not in actual possession, but who has both the power and the intention to exercise control over something is in constructive possession of it. Whenever I use the term "possession" in these instructions, I mean actual as well as constructive possession.]

["Possession" [also] includes both sole possession and joint possession. If one person alone has actual or constructive possession, possession is sole. If two or more persons share actual or constructive possession, possession is joint. Whenever I have used the word "possession" in these instructions, I mean joint as well as sole possession.]

## **Comment**

(1)    The statute provides:

> Jurisdiction of the United States with respect to a vessel subject to this chapter is not an element of an offense. Jurisdictional issues arising under this chapter are preliminary questions of law to be determined solely by the trial judge.

46 U.S.C. § 70504(a).  The effect was "to remove from the jury and confide to the judge" this issue.  United States v. Gonzalez, 311 F.3d 440, 443 (1st Cir. 2002); see also United States v. Bravo, 489 F.3d 1, 8 (1st Cir. 2007) (error to let jury hear testimony regarding jurisdiction; harmless error in that case); United States v. Rodríguez-Durán, 507 F.3d 749, 774 (1st Cir. 2007) ("The issue of jurisdiction was for the district court to decide." (citations omitted)).  The First Circuit has held that "there is no constitutional infirmity" in removing this issue from the jury's consideration.  United States v. Vilches-Navarrete, 523 F.3d 1, 19 (1st Cir. 2008) (Lynch & Howard, JJ., concurring, and for this proposition giving the opinion of the court).  The burden of proof on jurisdiction is preponderance of the evidence.  United States v. Matos-Luchi, 627 F.3d 1, 5 (1st Cir. 2010).

(2)      See Comment (2) to Instruction 4.21.841(a)(1)(A) concerning instructions in enhanced penalty cases.

**PART 5        FINAL INSTRUCTIONS:  DEFENSES AND THEORIES OF DEFENSE**

5.01        Alibi                                                        [Updated: 6/14/02]

5.02        Mental State That Is Inconsistent with the Requisite Culpable
            State of Mind                                                [Updated: 6/14/02]

5.03        Intoxication                                                 [Updated: 6/14/02]

5.04        Justification:  Self-Defense, Duress, Necessity              [Updated: 11/25/15]

5.05        Entrapment                                                   [Updated: 1/13/17]

5.06        Insanity [18 U.S.C. § 17]                                    [Re-numbered: 2/20/07]

5.07        Abandonment                                                  [Re-numbered: 2/20/07]

**5.01**　　　　**Alibi**

[Updated: 6/14/02]

One of the issues in this case is whether [defendant] was present at the time and place of the alleged crime.  If, after considering all the evidence, you have a reasonable doubt that [defendant] was present, then you must find [defendant] not guilty.

## **Comment**

A defendant is entitled to a special instruction that on the issue of alibi a reasonable doubt is sufficient to acquit.  See, e.g., Duckett v. Godinez, 67 F.3d 734, 743-45 (9th Cir. 1995); United States v. Simon, 995 F.2d 1236, 1243 (3d Cir. 1993); United States v. Hicks, 748 F.2d 854, 858 (4th Cir. 1984); United States v. Burse, 531 F.2d 1151, 1153 (2d Cir. 1976); United States v. Megna, 450 F.2d 511, 513 (5th Cir. 1971).

**5.02**      **Mental State That Is Inconsistent with the Requisite Culpable State of Mind**
[Updated: 6/14/02]

Evidence has been presented of [defendant]'s [carelessness; negligence; ignorance; mistake; good faith; abnormal mental condition; etc.]. Such [_____] may be inconsistent with [the requisite culpable state of mind]. If after considering the evidence of [_____], together with all the other evidence, you have a reasonable doubt that [defendant] acted [requisite culpable state of mind], then you must find [defendant] not guilty.

### Comment

(1)      This instruction may be given whenever the evidence of defendant's mental state, if believed, would tend to raise a reasonable doubt about the requisite culpable state of mind. See United States v. Batista, 834 F.2d 1, 6 (1st Cir. 1987) (approving an instruction that "the jury . . . consider the statements and acts of appellant or any other circumstance in determining his state of mind, and to make sure that they were convinced beyond a reasonable doubt that appellant acted willfully and knowingly"); cf. United States v. Sturm, 870 F.2d 769, 777 (1st Cir. 1989) ("Jury instructions that allow a conviction even though the jury may not have found that the defendant possessed the mental state required for the crime constitute plain error." (citations omitted)). However, this instruction is a reinforcement of—not a substitute for—language instructing the jury on the exact mental state required for conviction under the relevant statute.

(2)      A defendant's abnormal mental condition, just like ignorance, mistake or intoxication, may raise a reasonable doubt that the defendant acted with the requisite culpable state of mind. As the Court of Appeals for the First Circuit held in United States v. Schneider, 111 F.3d 197, 201 (1st Cir. 1997), "in principle there should be no bar to medical evidence that a defendant, although not insane, lacked the requisite state of mind." In practice, the trial judge must screen such evidence for relevance, potential for confusion, reliability and helpfulness. Id.

(3)      For a discussion of the "tax-crime exception" to the general proposition that ignorance of the law is no defense, see United States v. Aversa, 984 F.2d 493, 500-01 (1st Cir. 1993) (citing Cheek v. United States, 498 U.S. 192, 199-201 (1991)), vacated and remanded on other grounds by Donovan v. United States, 510 U.S. 1069 (1994).

273

**5.03**          **Intoxication**

[Updated: 6/14/02]


You have heard evidence that [defendant] was intoxicated.  "Intoxicated" means being under the influence of alcohol or drugs or both.  Some degrees of intoxication may prevent a person from having [the requisite culpable state of mind].  If after considering the evidence of intoxication, together with all the other evidence, you have a reasonable doubt that [defendant] had [the requisite culpable state of mind], then you must find [defendant] not guilty.


## Comment

"Voluntary" intoxication may rebut proof of intent in a "specific intent" but not a "general intent" crime.  United States v. Sewell, 252 F.3d 647, 650-51 (2d Cir. 2001); United States v. Oakie, 12 F.3d 1436, 1442 (8th Cir. 1993).  The burden of proof to support the necessary intent, however, remains with the government.  United States v. Burns, 15 F.3d 211, 218 (1st Cir. 1994).  In Burns, the court declined to rule on whether intoxication is a diminished capacity defense barred by the Insanity Reform Act of 1984, 18 U.S.C. § 17.  15 F.3d at 218 n.4.

**5.04**      **Justification:  Self-Defense, Duress, Necessity**

[Updated: 11/25/15]

If you find that the government has proven beyond a reasonable doubt all the elements of the crime, you must then determine whether [defendant] has proven by a preponderance of the evidence that [he/she] committed the crime only because of justification.  For you to find [defendant] not guilty only because of justification, you must be persuaded that [defendant] has proven each of these things by a preponderance of the evidence:

> <u>First</u>, [defendant] acted under an immediate threat of serious bodily injury or death;

> <u>Second</u>, [defendant] had a well-grounded belief that the threat will be carried out;

> <u>Third</u>, [defendant] had no reasonable opportunity to escape, or otherwise frustrate the threat.

"Preponderance of the evidence" is evidence that considered in light of all the facts, leads you to believe that what [he/she] claims is more likely true than not.

## <u>Comment</u>

(1)      The United States Supreme Court has stated that "[t]here is no federal statute defining the elements of the duress defense," and that "[w]e have not specified the elements of the defense." <u>Dixon v. United States</u>, 548 U.S. 1, 5 n.2 (2006).  In <u>Dixon</u>, the Court used a four-element test applied by the district court, but stated that it merely "presume[d] the accuracy of the District Court's description of these elements."  <u>Id</u>.  The four-element test provides:

> First, [defendant] acted under an unlawful and immediate threat that would provoke a well-grounded apprehension of serious bodily injury or death;
> Second, [defendant] did not recklessly [or negligently] place [himself/herself] in such a situation;
> Third, [defendant] had no reasonable, legal alternative, that is, no chance both to refuse to perform the criminal act and to avoid the threatened harm; and
> Fourth, [defendant] committed the crime only because of the threat.

<u>Dixon</u>, 548 U.S. at 5 n.2.  In a felon-in-possession case, the First Circuit "adopt[ed] the four-part framework for justification discussed by the Supreme Court in <u>Dixon</u>," <u>United States v. Leahy</u>, 473 F.3d 401, 409 (1st Cir. 2007), and applied it as a generic "justification" defense, stating that self-defense, duress, and necessity all fit "under a single, unitary rubric: justification."  <u>Id</u>. at 406. <u>Leahy</u> did not say that its unitary rubric and four-element test were limited to felon-in-possession cases.  It did state that "although we believe it is useful to speak of a single justification defense, we caution that different factual scenarios may require variations in the phrasing of the four-factor

275

test. . . .  Those nuances remain to be developed in future cases." Id. at 409.  Soon thereafter, in a drug distribution case, the First Circuit reverted to its previous three-factor test for duress without any reference to Leahy, a unitary justification defense, or a four-element test.  See United States v. Bravo, 489 F.3d 1, 10 (1st Cir. 2007).  More recently, the First Circuit has again used the three-part test in United States v. Lebreault-Feliz, 807 F.3d 1, 3-4 (1st Cir. 2015) (duress three-factor test); United States v. Navedo-Ramirez, 781 F.3d 563, 569 (1st Cir. 2015), and United States v. González-Pérez, 778 F.3d 3, 13 (1st Cir. 2015) (citing United States v. Díaz-Castro, 752 F.3d 101 (1st Cir. 2014) (applying the three-element test to the defendant's duress defense); United States v. Arthurs, 73 F.3d 444, 448 (1st Cir. 1996) (listing the three-element test for the duress defense).  It seems that the First Circuit is more comfortable with the three-element test for the duress defense.

(2)　　　　　　In assessing whether a defendant has established sufficient grounds to mount a duress defense, courts do not examine the defendant's subjective perceptions about whether the threat was likely to be acted upon or whether escape was possible.  Rather, as suggested by our use of the qualifiers "well-grounded" and "reasonable" in describing the elements of the defense, the inquiry hypothesizes a defendant of ordinary firmness and judgment and asks what such a defendant was likely to have experienced or how such a defendant was likely to have acted.

United States v. Castro-Gomez, 360 F.3d 216, 219 (1st Cir. 2004) (citation omitted); accord United States v. Vázquez, 724 F.3d 15, 28 (1st Cir. 2013).  Dixon, however, uses only the adjective "well-grounded."  548 U.S. at 5 n.2.

(3)　　In Dixon, the Court held squarely that the burden of proof in a duress defense rests upon the defendant, and the standard is proof by a preponderance.  548 U.S. at 17.  The First Circuit recognizes the availability of a justification defense in a federal felon-in-possession case, and assigns the burden of proof to the defendant.  Leahy, 473 F.3d at 409.  There may be a narrow exception where the duress affects the mens rea for the crime.  See id. (burden of proof holding is limited to justification defenses that "do not go to the elements of the [crime]").  In Dixon, however, the mens rea was knowledge of falsity or knowledge of law-breaking, and the Court held that perceived duress did not negate that required state of mind.  548 U.S. at 6.

(4)　　"A necessity instruction is appropriate only where there is evidence sufficient to create a triable issue that a defendant 'had no legal alternative but to violate the law.'"  United States v. Holliday, 457 F.3d 121, 128 (1st Cir. 2006) (quoting United States v. Ayala, 289 F.3d 16, 26 (1st Cir. 2002)).

(5)　　Before the justification defense can go to the jury, the court must determine that the defendant has met the "entry-level burden" of producing enough evidence to support the defense's elements.  United States v. Lebreault-Feliz, 807 F.3d 1, 4 (1st Cir. 2015) (necessity); Ayala, 289 F.3d at 26 (necessity); United States v. Maxwell, 254 F.3d 21, 26 (1st Cir. 2001) (same); see also United States v. Sued-Jiménez, 275 F.3d 1, 6 (1st Cir. 2001); United States v. Arthurs, 73 F.3d 444, 448 (1st Cir. 1996); United States v. Amparo, 961 F.2d 288, 291 (1st Cir. 1992).  The entry-level burden is a burden of production, not persuasion.  United States v. Bailey, 444 U.S. 394, 415 (1980); cf. Amparo, 961 F.2d at 291 (describing the burden of production necessary to support the defense of duress).

276

## 5.05          Entrapment

[Updated: 1/13/17]

[Defendant] maintains that [he/she] was entrapped.  A person is "entrapped" when he or she is induced or persuaded by law enforcement officers or their agents to commit a crime that he or she was not otherwise ready and willing to commit.  The law forbids his or her conviction in such a case. However, law enforcement agents are permitted to use a variety of methods to afford an opportunity to a defendant to commit an offense, including the use of undercover agents, furnishing of funds for the purchase of controlled substances, the use of informers and the adoption of false identities.

For you to find [defendant] guilty of the crime with which [he/she] is charged, you must be convinced that the government has proven beyond a reasonable doubt that [defendant] was not entrapped.  To show that  [defendant] was not entrapped, the government must establish beyond a reasonable doubt one of the following two things:

> One, that [the officer] did not improperly persuade or talk [defendant] into committing the crime.  Simply giving someone an opportunity to commit a crime is not the same as persuading [him/her], but persuasion, false statements or excessive pressure by [the officer] or an undue appeal to sympathy can be improper; OR

> Two, that [defendant] was ready and willing to commit the crime without any persuasion from [the officer] or any other government agent.  You may consider such factors as: (a) the character or reputation of the defendant; (b) whether the initial suggestion of criminal activity was made by the government; (c) whether the defendant was engaged in the criminal activity for profit; (d) whether the defendant showed reluctance to commit the offense, and whether that reluctance reflects the conscience of an innocent person or merely the caution of a criminal; (e) the nature of the persuasion offered by the government; and (f) how long the government persuasion lasted.  In that connection, you have heard testimony about actions by [defendant] for which [he/she] is not on trial. You are the sole judges of whether to believe such testimony.  If you decide to believe such evidence, I caution you that you may consider it only for the limited purpose of determining whether it tends to show [defendant]'s willingness to commit the charged crime or crimes without the persuasion of a government agent.  You must not consider it for any other purpose. You must not, for instance, convict  [defendant] because you believe that [he/she] is guilty of other improper conduct for which [he/she] has not been charged in this case.

## Comment

(1)     "A criminal defendant is entitled to an instruction on his theory of defense so long as the theory is a valid one and there is evidence in the record to support it.  In making this determination, the district court is not allowed to weigh the evidence, make credibility determinations, or resolve conflicts in the proof.  Rather, the court's function is to examine the evidence on the record and to draw those inferences as can reasonably be drawn therefrom, determining whether the proof, taken in the light most favorable to the defense can *plausibly* support the theory of the defense.  This is not a very high standard to meet, for in its present context, to be 'plausible' is to be 'superficially reasonable.'"  United States v. Gamache, 156 F.3d 1, 9 (1st Cir. 1998) (citations omitted).  The

Circuit sometimes suggests a higher standard, however, requiring "some hard evidence."  E.g., United States v. González-Pérez, 778 F.3d 3, 11 (1st Cir. 2015); United States v. Vasco, 564 F.3d 12, 18 (1st Cir. 2009); see also United States v. Young, 78 F.3d 758, 760 (1st Cir. 1996) ("The record must show 'hard evidence,' which if believed by a rational juror, 'would suffice to create a reasonable doubt as to whether government actors induced the defendant to perform a criminal act that he was not predisposed to commit.'" (quoting United States v. Rodriguez, 858 F.2d 809, 814 (1st Cir. 1988))).

(2)     In United States v. Hinkel, 837 F.3d 111, 121 (1st Cir. 2016), the First Circuit approved the use of the pattern instruction for entrapment.  In Hinkel, the court stated that the pattern entrapment instruction "accurately describe[es] the general defense and correctly outlin[es] the elements."  Id. at *5.  I note that the current Pattern Criminal Jury Instruction, First Circuit, § 5.05 is identical to the 1998 version approved by the court in Hinkel.  See also United States v. Prange, 771 F.3d 17, 30-31 (1st Cir. 2014); United States v. Nishnianidze, 342 F.3d 6, 17-18 (1st Cir. 2003); United States v. LaFreniere, 236 F.3d 41, 44-45 (1st Cir. 2001); Gamache, 156 F.3d at 9-12; United States v. Montañez, 105 F.3d 36, 38 (1st Cir. 1997); United States v. Acosta, 67 F.3d 334, 337-40 (1st Cir. 1995); United States v. Gendron, 18 F.3d 955, 960-64 (1st Cir. 1994); United States v. Gifford, 17 F.3d 462, 467-70 (1st Cir. 1994); United States v. Hernandez, 995 F.2d 307, 313 (1st Cir. 1993); United States v. Reed, 977 F.2d 14, 18 (1st Cir. 1992); see also United States v. Pion, 25 F.3d 18, 20 (1st Cir. 1994).   We have intentionally avoided using the word "predisposition," a term that has proven troublesome to some jurors.  See, e.g., United States v. Rogers, 121 F.3d 12, 17 (1st Cir. 1997).  See also United States v. Tom, 330 F.3d 83, 91-92 (1st Cir. 2003), where the First Circuit seems to approve an alternate formulation (incorrectly labeled an entrapment "offense" rather than defense).  Although at one point the First Circuit said merely that there  is "nothing wrong in using the term 'improper[ly]'" as an adverb before the verb "persuade" in the first factor, United States v. DePierre, 599 F.3d 25, 28 (1st Cir. 2010) (citing United States v. Santiago, 566 F.3d 65, 68 (1st Cir. 2009)), more recently it seems to require it.  United States v. Djokich, 693 F.3d 37, 46 n.5 (1st Cir. 2012) ("Djokich's proposed instruction was an inaccurate account of what would constitute inappropriate persuasion or inducement by the government, as it suggests that *any* inducement by the government is inappropriate.  That is not the case; a defendant is only entrapped where the government utilizes *wrongful* persuasion or inducement." (citation omitted)).

(3)     "Beyond showing that the government afforded him the opportunity to commit the crime, the defendant must adduce evidence that the government engaged in some find of 'overreaching conduct.'"  United States v. Montoya, 844 F.3d 63, 67 (1st Cir. 2016) (quoting United States v. Diaz-Maldonado, 727 F.3d 130, 138 (1st Cir. 2013)).  "Such conduct might include, for example, intimidation, threats, relentless insistence, or excessive pressure to participate in a criminal scheme."  Id.

(4)     "[H]olding out the prospect of illicit gain is not the sort of government inducement that can pave the way for an entrapment defense."  United States v. Sánchez-Berríos, 424 F.3d 65, 76 (1st Cir. 2005).

(5)     The defendant's "bare assertion that [the informant] called him several times and [the defendant] declined previous invitations to commit offenses does not amount to inducement." United States v. González-Pérez, 778 F.3d 3, 12 (1st Cir. 2015).  "In analyzing whether there was improper inducement, the method of purportedly inducing a defendant is more important than the number of solicitations."  Id.

(6)      It may be necessary to conform the charge to the defendant's theory of defense:

>Of course, the district court has a great deal of latitude in formulating a charge.  But taken as a whole, the examples given were *all* either coercion examples or involved abstractions ("dogged insistence") rather far from the examples of inducement by an undue appeal to sympathy, which the defendant expressly requested and which were more pertinent to his defense.  By omitting any "sympathy" examples, the trial court may well have left the jury with the mistaken impression that coercion is a necessary element of entrapment and, in this case, such a misunderstanding could well have affected the outcome.

Montañez, 105 F.3d at 39; see also United States v. Terry, 240 F.3d 65, 70 (1st Cir. 2001); Gamache, 156 F.3d at 9-11.

(7)      "[T]he government cannot prove predisposition if the defendant's willingness to commit the crime was itself manufactured by the government in the course of dealing with the defendant before he committed the crime charged."  United States v. Alzate, 70 F.3d 199, 201 (1st Cir. 1995) (citing Jacobson v. United States, 503 U.S. 540, 549 & n.2 (1992)).  If that is the issue, a more precise instruction is advisable.  See id.  But, although the predisposition must exist before the contact with government agents, behavior after the contact can be used as evidence of the pre-existing predisposition.  Rogers, 121 F.3d at 17.

(8)      For the elements of third-party or derivative entrapment, see United States v. Rivera-Ruperto, 846 F.3d 417, 429 (1st Cir. 2017) (quoting United States v. Luisi, 482 F.3d 43, 55 (1st Cir. 2007)):

>Under this theory, the conduct of a middleman is only attributable to the government where: (1) a government agent specifically targeted the defendant in order to induce him to commit illegal conduct; (2) the agent acted through the middleman after other government attempts at inducing the defendant had failed; (3) the government agent requested, encouraged, or instructed the middleman to employ a specified inducement, which could be found improper, against the targeted defendant; (4) the agent's actions led the middleman to do what the government sought, even if the government did not use improper means to influence the middleman; and (5) as a result of the middleman's inducement, the targeted defendant in fact engaged in the illegal conduct.

Except with respect to the "target" reference, the First Circuit approved the following instruction for "vicarious entrapment" as "consistent with our case law on the third-party entrapment defense":

>Inducement by a codefendant constitutes some vicarious entrapment by the government if the following three elements are met:

> First, that a government agent specifically identified the defendant as the desired target of the inducement or pressure;
>
> second, that the government agent encouraged the codefendant to induce or pressure the defendant to commit the crime, or his government agent's handlers condoned the use of coercive inducements or pressure by the codefendant; and
>
> third, the codefendant, in fact, applied pressure or an improper inducement to overcome the defendant's reluctance to become involved.

United States v. Turner, 501 F.3d 59, 70 (1st Cir. 2007) ("[E]ven if there was error [in the target requirement], and we are not saying that there was, the error was harmless").

(9)     There is a separate defense known as entrapment by estoppel:

> Entrapment by estoppel requires [defendant] to establish: (1) that a government official told him the act was legal; (2) that he relied on the advice; (3) that the reliance was reasonable; and (4) that, given the reliance, prosecution would be unfair.

United States v. Ellis, 168 F.3d 558, 561 (1st Cir. 1999); accord United States v. Bunnell, 280 F.3d 46, 49-50 (1st Cir. 2002).  On this defense, the defendant has the burden of proof.  United States v. Villafane-Jimenez, 410 F.3d 74, 80 (1st Cir. 2005).  The first element requires an "affirmative representation" that the conduct was legal.  Id. at 80 n.7.  According to United States v. Sousa, 468 F.3d 42, 46 (1st Cir. 2006) (citations omitted):

> A successful entrapment by estoppel defense generally requires that the misleading statement come from an official representing the sovereign bringing the prosecution, i.e., a federal official.  We did hold open the possibility in [United States v. Caron, 64 F.3d 713, 716-17 (1st Cir. 1995)] that entrapment by estoppel could be a defense to a federal crime where a state official affirmatively provides the defendant with misleading advice on the requirements of federal law.

(10)    The Ninth Circuit has held that in light of Apprendi v. New Jersey, 530 U.S. 466 (2000), and Alleyne v. United States, 133 S. Ct. 2151 (2013), sentencing entrapment is a jury issue where it would result in a lower statutory sentencing range, United States v. Cortes, 732 F.3d 1078, 1091 (9th Cir. 2013), and suggested language for such an instruction.  For First Circuit discussion of the judicial doctrine of sentencing entrapment or manipulation, see, e.g., United States v. Woods, 210 F.3d 70, 75 (1st Cir. 2000); United States v. Montoya, 62 F.3d 1, 3-5 (1st Cir. 1995).

**5.06**          **Insanity [18 U.S.C. § 17]**

[Re-numbered: 2/20/07]

If you find that the government has proven beyond a reasonable doubt all the elements of the crime, you must then determine whether [defendant] has proven by clear and convincing evidence that [he/she] was legally insane at the time.  For you to find [defendant] not guilty only by reason of insanity, you must be convinced that [defendant] has proven each of these things by clear and convincing evidence:

> <u>First</u>, that at the time of the crime [defendant] suffered from severe mental disease or defect; and

> <u>Second</u>, that the mental disease or defect prevented [him/her] from understanding the nature and quality or wrongfulness of [his/her] conduct.

Clear and convincing evidence is evidence that makes it highly probable that [defendant] had a severe mental disease or defect that prevented [him/her] from understanding the nature and quality of wrongfulness of [his/her] conduct.

You may consider evidence of [defendant]'s mental condition before or after the crime to decide whether [he/she] was insane at the time of the crime.  Insanity may be temporary or extended.

In making your decision, you may consider not only the statements and opinions of the psychiatric experts who have testified but also all of the other evidence.  You are not bound by the statements or opinions of any witness but may accept or reject any testimony as you see fit.

You will have a jury verdict form in the jury room on which to record your verdict.  You have three choices.  You may find [defendant] not guilty, guilty, or not guilty only by reason of insanity.  If you find that the government has not proven all the elements of the crime beyond a reasonable doubt, you will find [defendant] *not guilty*.  If you find that the government has proven all the elements of the crime  beyond a reasonable doubt and that [defendant] has proven by clear and convincing evidence that [he/she] was legally insane at the time of the crime, you will find [him/her] *not guilty only by reason of insanity*.  If you find that the government has proven all the elements of the crime beyond a reasonable doubt and that [defendant] has not proven by clear and convincing evidence that [he/she] was legally insane at the time of the crime, you will find [him/her] *guilty*.

<u>**Comment**</u>

(1)      The constitutionality of placing the burden on the defendant to prove insanity is settled.  <u>See</u> <u>United States v. Pryor</u>, 960 F.2d 1, 3 (1st Cir. 1992) (citing <u>Leland v. Oregon</u>, 343 U.S. 790 (1952) and <u>Rivera v. Delaware</u>, 429 U.S. 877 (1976)).

(2)      A trial judge is not required to instruct a jury on the consequences of a verdict of not guilty by reason of insanity, <u>United States v. Tracy</u>, 36 F.3d 187, 196 (1st Cir. 1994), except "under

certain limited circumstances," such as when a prosecutor or witness has said before the jury that the defendant will "go free."  Shannon v. United States, 512 U.S. 573, 587 (1994); see also Tracy, 36 F.3d at 196 n.8.

(3)      The phrase "nature and quality [of defendant's conduct]" can be troublesome.  It is not apparent what difference, if any, there is between the words "nature" and "quality."  But given the lineage of the phrase to at least M'Naghten's Case, 8 Eng. Rep. 718 (H.L. 1843), and its presence in the governing statute, 18 U.S.C. § 17, the safer course would be not to truncate the phrase.

A more troublesome issue arises when the defendant raises both the insanity defense and a *mens rea* defense based on abnormal mental condition.  If evidence tends to show that a defendant failed to understand the "nature and quality" of his or her conduct, that evidence will not only tend to help prove an insanity defense but it will also typically tend to raise reasonable doubt about the requisite culpable state of mind.  See Instruction 5.02.  In Martin v. Ohio, 480 U.S. 228, 234 (1987), the Supreme Court held that the trial judge must adequately convey to the jury that evidence supporting an affirmative defense may also be considered, where relevant, to raise reasonable doubt as to the requisite state of mind.  This "overlap" problem may be solved by adequate instructions.  Id.  But the "overlap" problem may be *avoided* by omitting the "nature and quality" phrase from the insanity instruction unless the defendant wants it.

**5.07**         **Abandonment**

[Re-numbered: 2/20/07]

**Comment**

(1)      The First Circuit "expressly" has not decided "(1) whether the Model Penal Code defense of abandonment is ever available for an attempt crime, and (2) whether, if the answer to the first question were 'yes,' 18 U.S.C. § 2423(b) is sufficiently like an attempt crime that such an affirmative defense could in theory be applicable."  United States v. Buttrick, 432 F.3d 373, 377 (1st Cir. 2005). That case, however, discusses the burden of proof if such an instruction is ever appropriate.

**PART 6**          **FINAL INSTRUCTIONS:  DELIBERATIONS AND VERDICT**

6.01          Foreperson's Role; Unanimity                    [Updated: 6/14/02]

6.02          Consideration of Evidence                        [Updated: 4/29/13]

6.03          Reaching Agreement                               [Updated: 6/14/02]

6.04          Return of Verdict Form                           [Updated: 10/23/06]

6.05          Communication with the Court                     [Updated: 10/5/12]

6.06          Charge to a Hung Jury                            [Updated: 5/31/16]

**6.01**          **Foreperson's Role; Unanimity**

[Updated: 6/14/02]

I come now to the last part of the instructions, the rules for your deliberations.

When you retire you will discuss the case with the other jurors to reach agreement if you can do so. You shall permit your foreperson to preside over your deliberations, and your foreperson will speak for you here in court.  Your verdict must be unanimous.

**6.02**          **Consideration of Evidence**

[Updated: 4/29/13]

Your verdict must be based solely on the evidence and on the law as I have given it to you in these instructions. However, nothing that I have said or done is intended to suggest what your verdict should be—that is entirely for you to decide.

## **Comment**

(1)      In United States v. Díaz-Arias, 717 F.3d 1, 22-23 (1st Cir. 2013), the First Circuit upheld the refusal to give the following instruction:

> It would be improper for you to consider, in reaching your decision as to whether the government sustained its burden of proof, any personal feelings you may have about the defendant's race or ethnicity, or national origin, or his or any witness' immigration status.

Instead, the trial judge instructed:

> You should determine what facts have been shown or not based solely on a fair consideration of the evidence. That proposition means two things, of course. First of all, you'll be completely fair-minded and impartial, swayed neither by prejudice, nor sympathy, by personal likes or dislikes toward anybody involved in the case, but simply to fairly and impartially judge the evidence and what it means.

Id. The court held that the instruction given was sufficient on impartiality, but noted:

> Our decision does not foreclose the possibility that, on facts not presented here, we would take up and reconsider the issue in the future. While the surveys and studies cited by Díaz-Arias present legitimate concerns, the record does not reflect that the jurors in this case were afflicted with the kind of bias said studies point to. In addition, we are confident the district courts will remain vigilant when it comes to detecting possible signs of jury bias, particularly during the jury selection stage of the proceedings.

Id. at *18, n.13.

**6.03**         **Reaching Agreement**

[Updated: 6/14/02]

Each of you must decide the case for yourself, but you should do so only after considering all the evidence, discussing it fully with the other jurors, and listening to the views of the other jurors.

Do not be afraid to change your opinion if you think you are wrong.  But do not come to a decision simply because other jurors think it is right.

This case has taken time and effort to prepare and try.  There is no reason to think it could be better tried or that another jury is better qualified to decide it.  It is important therefore that you reach a verdict if you can do so conscientiously.  If it looks at some point as if you may have difficulty in reaching a unanimous verdict, and if the greater number of you are agreed on a verdict, the jurors in both the majority and the minority should reexamine their positions to see whether they have given careful consideration and sufficient weight to the evidence that has favorably impressed the jurors who disagree with them.  You should not hesitate to reconsider your views from time to time and to change them if you are persuaded that this is appropriate.

It is important that you attempt to return a verdict, but, of course, only if each of you can do so after having made your own conscientious determination.  Do not surrender an honest conviction as to the weight and effect of the evidence simply to reach a verdict.

## Comment

This is *not* an <u>Allen</u> charge for a deadlocked jury.  <u>See</u> Instruction 6.06.  Some authority outside the First Circuit, however, holds that an instruction like this in the general charge makes a later supplemental charge to a deadlocked jury more sustainable.  <u>United States v. Brown</u>, 634 F.2d 1069, 1070 (7th Cir. 1980) (requiring this type of charge as a precondition for a later supplemental charge); Comment to Eighth Circuit Instruction 10.02 ("preferable"); <u>accord</u> <u>United States v. Rodriguez-Mejia</u>, 20 F.3d 1090, 1091-92 (10th Cir. 1994); <u>United States v. Williams</u>, 624 F.2d 75, 76-77 (9th Cir. 1980); <u>see also</u> Comment to Sixth Circuit Instruction 8.04.

**6.04**         **Return of Verdict Form**

[Updated: 10/23/06]

I want to read to you now what is called the verdict form.  This is simply the written notice of the decision you will reach in this case.

[Read form.]

After you have reached unanimous agreement on a verdict, your foreperson will fill in the form that has been given to you, sign and date it, and advise the jury officer outside your door that you are ready to return to the courtroom.

After you return to the courtroom, your foreperson will deliver the completed verdict form as directed in open court.

## Comment

The First Circuit prefers asking the jury to write "guilty" or "not guilty" on each count, rather than yes/no questions: "Although we have not adopted a flat rule against special interrogatories in criminal cases, they pose special dangers. . . . They also sometimes offer benefits, notably in very complex criminal cases, where they can reduce risk of juror confusion. . . . The present appeal better illustrates the dangers than the benefits."  United States v. Edelkind, 467 F.3d 791, 794 (1st Cir. 2006) (citations omitted).

288

**6.05          Communication with the Court**

[Updated: 10/5/12]

If it becomes necessary during your deliberations to communicate with me, you may send a note through the jury officer signed by your foreperson or by one or more members of the jury.  No member of the jury should ever attempt to communicate with me on anything concerning the case except by a signed writing, and I will communicate with any member of the jury on anything concerning the case only in writing, or orally here in open court.  If you send out a question, I will consult with the parties as promptly as possible before answering it, which may take some time.  You may continue with your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.

## <u>Comment</u>

(1)      Although <u>Rogers v. United States</u>, 422 U.S. 35, 39 (1975), could be read as requiring any response to a deliberating jury's questions to occur orally in open court in the defendant's presence, the First Circuit seems to permit a written response, so long as the lawyers are shown the jury's note and have the opportunity to comment on the judge's proposed response.  <u>See, e.g.</u>, <u>United States v. Maraj</u>, 947 F.2d 520, 525-26 (1st Cir. 1991).  The First Circuit has held that "[a] district court's failure to attempt to inform defense counsel about the existence of a jury note, and further failure to solicit defense counsel's input regarding any response to such a note, violates Rule 43 of the Federal Rules of Criminal Procedure."  <u>United States v. Gonzalez-Melendez</u>, 570 F.3d 1, 2 (1st Cir. 2009).

(2)      "[I]t is always best for the trial judge not to know the extent and nature of a division among the jurors and to instruct the jury not to reveal that information.  Nevertheless, 'if the jury does volunteer its division, the court may rely and act upon it.'"  <u>United States v. Rengifo</u>, 789 F.2d 975, 985 (1st Cir. 1986) (quoting <u>United States v. Hotz</u>, 620 F.2d 5, 7 (1st Cir. 1980)).

## 6.06          Charge to a Hung Jury

[Updated: 5/31/16]

I am going to instruct you to go back and resume your deliberations.  I will explain why and give you further instructions.

In trials absolute certainty can be neither expected nor attained.  You should consider that you are selected in the same manner and from the same source as any future jury would be selected.  There is no reason to suppose that this case would ever be submitted to 12 men and women more intelligent, more impartial or more competent to decide it than you, or that more or clearer evidence would be produced in the future.  Thus, it is your duty to decide the case, if you can conscientiously do so without violence to your individual judgment.

The verdict to which a juror agrees must, of course, be his or her own verdict, the result of his or her own convictions, and not a mere acquiescence in the conclusion of his or her fellow jurors.  Yet, in order to bring 12 minds to a unanimous result, you must examine the questions submitted to you with an open mind and with proper regard for, and deference to, the opinion of the other jurors.

In conferring together you ought to pay proper respect to each other's opinions and you ought to listen with a mind open to being convinced by each other's arguments.  Thus, where there is disagreement, jurors favoring acquittal should consider whether a doubt in their own mind is a reasonable one when it makes no impression upon the minds of the other equally honest and intelligent jurors who have heard the same evidence with the same degree of attention and with the same desire to arrive at the truth under the sanction of the same oath.

On the other hand, jurors favoring conviction ought seriously to ask themselves whether they should not distrust the weight or sufficiency of evidence which fails to dispel reasonable doubt in the minds of the other jurors.

Not only should jurors in the minority re-examine their positions, but jurors in the majority should do so also, to see whether they have given careful consideration and sufficient weight to the evidence that has favorably impressed the persons in disagreement with them.

Burden of proof is a legal tool for helping you decide.  The law imposes upon the prosecution a high burden of proof.  The prosecution has the burden to establish, with respect to each count, each essential element of the offense, and to establish that essential element beyond a reasonable doubt.  And if with respect to any element of any count you are left in reasonable doubt, the defendant is entitled to the benefit of such doubt and must be acquitted.

It is your duty to decide the case, if you can conscientiously do so without violence to your individual judgment.  It is also your duty to return a verdict on any counts as to which all of you agree, even if you cannot agree on all counts.  But if you cannot agree, it is your right to fail to agree.

I now instruct you to go back and resume your deliberations.

**Comment**

(1)     This charge contains all the elements of the modified <u>Allen</u> charge, <u>Allen v. United States</u>, 164 U.S. 492, 501-02 (1896), approved in <u>United States v. Nichols</u>, 820 F.2d 508, 511-12 (1st Cir. 1987).   In the interest of clarity, these elements have been rearranged and clearer language substituted.   The elements satisfy the requirements contained in <u>United States v. Hernandez-Albino</u>, 177 F.3d 33, 38 (1st Cir. 1999) and <u>United States v. Paniagua-Ramos</u>, 135 F.3d 193, 197 (1st Cir. 1998):  the instruction must be carefully phrased (1) to place the onus of reexamination on the majority as well as the minority, (2) to remind the jury of the burden of proof, and (3) to inform the jury of their right to fail to agree.  According to <u>United States v. Angiulo</u>, 485 F.2d 37, 40 (1st Cir. 1973), "whenever a jury first informs the court that it is deadlocked, any supplemental instruction which urges the jury to return to its deliberations must include the three balancing elements stated above."  In <u>United States v. Amaro-Santiago</u>, 824 F.3d 154, 165 (1st Cir. 2016), the First Circuit emphasized "the importance of district courts, in accord with [ ] prior admonitions, hewing to the pattern instruction when giving an <u>Allen</u> charge."  In <u>Paniagua-Ramos</u>, the court found plain error in an <u>Allen</u> charge that started with the pattern charge but emphasized the need to agree and did not clearly refer to the jury's right to fail to agree.  135 F.3d at 198-99.

In <u>United States v. Peake</u>, 804 F.3d 81, 98-99 (1st Cir. 2015), the court found that the district judge's response to the jury, instructing it to "continue deliberations" was not an <u>Allen</u> charge.

(2)     The First Circuit has found such a charge proper upon a *sua sponte* jury report of deadlock after nine hours of deliberation over two days, <u>Nichols</u>, 820 F.2d at 511-12, and after over six hours of deliberation over two days, <u>United States v. Vanvliet</u>, 542 F.3d 259, 269 (1st Cir. 2008), but improper after three hours of deliberation with no jury report of difficulties in agreeing, <u>United States v. Flannery</u>, 451 F.2d 880, 883 (1st Cir. 1971).  But the court has said that "[t]here is no per se minimum period of deliberation that must expire before a mistrial may be declared on account of a hung jury."  <u>United States v. McIntosh</u>, 380 F.3d 548, 555 (1st Cir. 2004), and the court has made clear that "the timing of an <u>Allen</u> charge is left to the district court's sound discretion," <u>Vanvliet</u>, 542 F.3d at 269; <u>United States v. Peake</u>, 804 F.3d 81, 98-99 (1st Cir. 2015) (where the jury had deliberated "only hours" on Friday and sent two notes on Monday—the first full day of deliberations after a nine-day trial—the court noted that the <u>Allen</u> chage would have been premature).

(3)     It used to be thought that a direct charge like this must be used once the jury indicates deadlock, rather than an indirect response to a question that may imply an obligation to deliberate indefinitely.  <u>United States v. Manning</u>, 79 F.3d 212, 222-23 (1st Cir. 1996) (finding it improper to respond to jury question whether it was obliged to reach a verdict by asking "Would reading any portion of the testimony to you assist you in reaching a decision?").  Moreover, it was said that *any* supplemental charge that urges the jury to return to its deliberations must contain all three elements referred to in  Comment (1).  <u>Hernandez-Albino</u>, 177 F.3d at 38.  In <u>United States v. Figueroa-Encarnacion</u>, 343 F.3d 23, 31-32 (1st Cir. 2003), however, the court upheld the following instruction under plain-error review:

> The court received a note from you that basically says that
> you have not been able to reach an agreement.  And you also state

that even if you deliberate more time you're not going to reach an agreement.

Well, after a 12 day trial some days we worked eight hours, some days we only worked four hours.  But it's still 12 days of receiving evidence.  I think it is too premature for the judge after 12 days of receiving evidence to accept that there is a deadlock.  These matters do occur, and they occur sometimes more times than we would like, but they occur.

So, what the Court is going to do is to send you home, relax, not think about the case and come back tomorrow at 9:30 AM and at which time I will provide you an instruction.  Please do not begin any deliberation until you come back here tomorrow morning.

The jury note had stated:  "We wish to advise you that up to this moment we have not been able to reach an agreement.  We understand that even if we stay deliberating for more time we will not be able to reach a verdict."  Id. at 31.  The First Circuit upheld the instruction because "the judge did not perceive the jury to be deadlocked" and the instruction "did not imply a duty to achieve unanimity, nor was it addressed to jurors holding a minority viewpoint."  Id. at 32 (citation omitted).  According to the First Circuit, "[i]t stands to reason that if a district court's instruction lacks the coercive elements of an Allen charge, it need not include the Allen cure."  Id.

(4)     In United States v. Barone, 114 F.3d 1284, 1304 (1st Cir. 1997), the First Circuit cautioned against using the Allen charge a second time because "[a] successive charge tends to create a greater degree of pressure."  Although the First Circuit declined to create a per se rule against issuing a second charge, id. at 1305, it has recently indicated that a second charge may be warranted in only the most unique and extreme circumstances.  In United States v. Keene, 287 F.3d 229, 235 (1st Cir. 2002) (citations omitted), the court stated that "the giving of successive Allen charges is an extraordinary measure—and one that should be shunned absent special circumstances."  In that case, the jurors had deliberated for about as long as evidence had been presented, the dispute to be resolved by the jury was sharply focused, the first Allen charge had been unsuccessful, and the jury was increasingly adamant, in its notes to the trial court, that it was irretrievably deadlocked.  The court indicated that, in other settings, the party desiring a second Allen charge must be able to identify "special circumstances" that would "favor[] the utterance of yet another modified Allen charge," but did not offer an indication of what those circumstances might be.  Id.

(5)     In ultimately ordering a mistrial over defendant's objection, the standard is "manifest necessity."  McIntosh, 380 F.3d at 553.  To avoid dismissal for double jeopardy, the government bears the burden of establishing manifest necessity, but "a hung jury is the paradigmatic example of manifest necessity."  Id.  The First Circuit has identified three factors that are particularly relevant:  "(1) whether the court provided counsel an opportunity to be heard; (2) whether the court considered alternatives to a mistrial; and (3) whether the court's decision was made after adequate reflection."  United States v. Brown, 426 F.3d 32, 37 (1st Cir. 2005) (citation omitted); accord United States v. Lara-Ramirez, 519 F.3d 76, 85 (1st Cir. 2008); United States v. Charlton, 502 F.3d 1, 5 (1st Cir. 2007).  See also Fed. R. Crim. P. 26.3 ("Before ordering a mistrial, the court must give each defendant and the government an opportunity to comment on the propriety of the order, to state whether that party consents or objects, and to suggest alternatives.").

# AFTERWORD:  HOW TO DRAFT A CHARGE

Traditionally, jury instructions have been lengthy and have repeated various elements of the charge several times and in different ways.  That custom may have something to do with the fact that judges are former lawyers and therefore accustomed to using many words when one would do.  More charitably, the practice may have instinctively reflected the concern that lay jurors could not easily absorb an oral charge on complicated legal issues and remember all such issues in the jury room unless the law was drummed into them.

These pattern charges are premised on the assumption that at the beginning of the 21st century there is no good reason to deny a lay juror a written set of instructions to guide deliberations in the jury room.  If a written jury charge is provided, any given element need be stated only once, for the jury can use the written charge as a reference in the jury room.  Furthermore, the various steps in deciding the case or the elements of the crime, as the case may be, should be laid out in a logical, sequential order so that the jury can easily follow them.  If these premises are accepted, the result is a charge that the judge can deliver orally while the jurors simultaneously read the written document silently to themselves in approximately 30 minutes in most cases.  The jurors will not become bored nor will they be frightened that they will be unable to remember or follow the law during their deliberations.  Instead, they can retire to the jury room with confidence.

It is for these reasons that the language in these pattern instructions is succinct, if not terse.  We have tried to use plain English, although others can undoubtedly suggest improvements.  We have attempted to follow the spirit of the appellate caselaw without wholesale adoption of the language, which tends to be judges' and lawyers' language not easily comprehensible by a lay juror.

We have presented charges for the types of crimes and the types of issues that seem to arise most frequently in the First Circuit.  We will be pleased to add to these as other judges provide proposed language or as experience demonstrates that others are needed.

Since instances will frequently come up, however, where there is no pattern charge for a particular crime, we offer the following suggested approach for writing a new charge.  It is only a suggestion, but it may be a useful outline for a new judge confronted with a new crime.  This should be done at the outset of the trial so that a draft charge is ready for the lawyers when the trial ends.

1.      First, look at the statute in question.  The specific elements of the offense usually will be obvious from a reading of the statute.  They can then be listed as the separate numbered elements the government must prove beyond a reasonable doubt.  There will commonly be a jurisdictional element (for example, interstate commerce or federal insurance of a financial institution); one or more "forbidden conduct" elements; and a "*mens rea*" (e.g., knowingly, willfully) element.  One can generally begin an instruction as follows:

> [Defendant] is charged with [possession with intent to distribute, possession of a firearm by a convicted felon, etc.].  It is against federal law to [fill in the prohibition].  For you to find the defendant

guilty of this offense the government must satisfy you beyond a reasonable doubt of the following elements:

[Proceed to number and describe the elements.]

Bear in mind that although some elements may be stipulated (for example, the jurisdictional element such as the insured status of a bank or the effect on interstate commerce), it is safest to list them for the jury's consideration nevertheless. See Comment to Instruction 2.01.

Dictate or write your first rough draft now.

2.   Next, look at the pattern instructions from other circuits and the Federal Judicial Center. They often will suggest alternative language, and the comments may alert you to relevant caselaw. Those who drafted the pattern instructions—the Federal Judicial Center Pattern Instructions in particular—have made a conscious attempt to write in plain English and to keep the instructions simple. You may also want to consult the several academic writers on jury instructions, although sometimes their suggestions tend to depend more heavily on abstruse appellate caselaw language. Do your first rewrite now.

3.   Next, consult the proposed jury instructions submitted by the prosecution lawyer and the defense lawyer to see whether their reading of the statute is different from yours. Do this with an open mind, for they frequently will pick out matters that you have missed. Make appropriate changes to your draft. Be careful, however, of the lawyers' tendency to use legalese that juries cannot understand, or to copy from a form book or a charge in a different case, without taking the time to ponder what is appropriate in this case.

4.   Now read the cases cited in the lawyers' proposed jury instructions, the comments to the pattern instructions or the academic treatises and the annotations to the statute in question. Primarily, of course, you must search for U.S. Supreme Court and First Circuit precedent; if there is no such precedent on point, then you will have to assess other circuits' approaches. Make any necessary corrections to your charge.

5.   Be careful of the thorny issue of "intent." In 1952, Justice Robert Jackson sketched out the dimensions of the problem in the landmark case of Morissette v. United States, 342 U.S. 246 (1952). He described the "variety, disparity and confusion of [the] definitions of the requisite but elusive mental element." Id. at 252. That year, the American Law Institute (ALI) began its ten-year quest to remedy the problem, culminating in the promulgation of the Model Penal Code in 1962. The ALI found that there were two reasons why the mental element was so elusive. The first was the reason given by Justice Jackson: There were just too many verbal formulas in circulation, none of which had precise meaning. The second reason was more subtle: The mental element might vary for the different elements of a crime.

The Model Penal Code remedied both problems. First, it reduced the number of mental states to four ("purposely," "knowingly," "recklessly" and "negligently") and gave

relatively precise definitions of each.  See Model Penal Code § 2.02(2).  Second, it made clear that the state-of-mind analysis should apply *separately* to each element of the crime, and it drafted crimes accordingly.  See id. § 2.02(1).

The Model Penal Code found favor with the vast majority of the states—around 40 of them—but not with Congress.  Thus, federal judges still must struggle with pre-Model Penal Code statutory tools.  Federal criminal statutes present a "variety, disparity and confusion" of numerous verbal formulas; even where meaning can be ascribed to the mental element, its application to other elements of the crime may remain unclear.

In 1989, then Attorney General Richard Thornburgh described the situation as follows:

> [W]ithin Title 18, in describing the general criminal intent or mens rea that must accompany conduct before it is considered criminal, the Congress, over the course of 200 years, has provided 78 different terms, ranging from "wantonly" to "without due . . . circumspection," to help clarify the subject. . . .
>
> As a body of jurisprudence, our federal criminal law is thus not only stultifying but borders on the embarrassing.  Far worse, it is seriously inefficient. . . .

Address at the 66th Annual Meeting (May 19, 1989), in A.L.I. Proc. 405, 408 (1989).

Thus, inspection of a federal statute for the state-of-mind requirement must be made with the understanding that issues of interpretation are likely to be lurking, that they are issues of "common law," and that case law must be consulted.

The trickiest issue of interpretation is that of which mental state applies to each element of the crime.  This has remained at the heart of a long line of post-Morissette cases in the Supreme Court.  See, e.g., United States v. X-Citement Video, Inc., 513 U.S. 64, 68-78 (1994); Ratzlaf v. United States, 510 U.S. 135, 140-49 (1994), superseded by statute on other grounds, 31 U.S.C. §§ 5322(a) & (b), 5324(c); Cheek v. United States, 498 U.S. 192, 199-204 (1991); Liparota v. United States, 471 U.S. 419, 423-33 (1985); United States v. Int'l Minerals & Chem. Corp., 402 U.S. 558, 560-65 (1971); United States v. Freed, 401 U.S. 601, 607-10 (1971).

In cases where no appellate decision has helpfully interpreted the statute at hand, you will have to engage in the same kind of analysis the Supreme Court undertook in X-Citement Video, namely, carefully examine the statutory text and context; test each proffered interpretation against criminal law principles; examine cognate case law; search the legislative history; consider applicable canons of construction; finally, make an additional overarching inquiry: which interpretation provides the jury with a more helpful test of the defendant's possible blameworthiness?  X-Citement Video, 513 U.S. at 68-78.

6.      When you have finished these steps, go back and re-work your charge to simplify the language.  Use shorter words, avoid legalese, eliminate subordinate clauses and the passive voice where possible and speak in simple declarative sentences.  Say it once, clearly and simply, rather than several times in a convoluted fashion.  Now distribute it to the lawyers for their consideration—ideally before the trial is even over, and perhaps even at the outset.