```
                  UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF NEW HAMPSHIRE


* * * * * * * * * * * * * * * * *
                                *
UNITED STATES OF AMERICA        *
                                *   19-cr-251-01-LM
            v.                  *   February 4, 2020
                                *   9:10 a.m.
       JOHNATHON IRISH          *
                                *
* * * * * * * * * * * * * * * * *



             TRANSCRIPT OF CHAMBERS CONFERENCE
         BEFORE THE HONORABLE LANDYA B. MCCAFFERTY
```

APPEARANCES:


For the Government:    Anna Z. Krasinski, AUSA
                       Casey A. Weiland, AUSA
                       U.S. Attorney's Office



For the Defendant:     Benjamin L. Falkner, Esq.
                       Krasnoo, Klehm & Falkner, Esq.




Court Reporter:        Susan M. Bateman, RPR, CRR
                       Official Court Reporter
                       United States District Court
                       55 Pleasant Street
                       Concord, NH 03301
                       (603) 225-1453

```
 1                    P R O C E E D I N G S
 2           (In chambers conference before jury selection)
 3              THE COURT:  I'm handing out a very drafty,
 4   first drafty copy of the jury instructions so that you
 5   can take them and contemplate them and we can revisit
 6   anything on Thursday, but I wanted you to have just a
 7   draft copy.
 8              You'll see many things bolded because we don't
 9   know if we'll be actually giving the instruction, and I
10   know there were possibilities of stipulations, that kind
11   of thing, so you'll see mentions of those, to check back
12   in with you about those on Thursday.
13              Let me just -- I want to make sure I've got
14   all the agencies to tell this venire about.
15              As I see it, there are two agencies.  It's the
16   FBI and ATF?
17              MS. KRASINSKI:  Yes, your Honor.  Although
18   Task Force Officer LeBlanc I think is officially
19   employed by the state police, but he's assigned to FBI.
20              THE COURT:  Okay.  I think I'll just keep it
21   at FBI.
22              MS. KRASINSKI:  Okay.
23              THE COURT:  Because that's how he's involved
24   in the case, but his name obviously if somebody
25   recognizes it.
```

1              Attorney Esposito will be reading the witness
2    list so you don't have to read your own.
3              Donna, you know the pronunciation of some of
4    the names that are -- Duguay, is that how you say it?
5              MS. KRASINSKI:  Duguay.
6              THE CLERK:  Duguay.
7              THE COURT:  Duguay.  You know how to pronounce
8    these names.  And Tongbua?
9              MS. KRASINSKI:  Tongbua.
10             THE COURT:  Tongbua.
11             THE CLERK:  Okay.
12             THE COURT:  The rest seem phonetic.  Okay.
13             MS. KRASINSKI:  There are a couple names that
14   the jury might hear that we don't expect to call as
15   witnesses.  I printed out a list that includes their
16   names as well.
17             Would you like me to give that to --
18             THE COURT:  Why don't we to be overinclusive,
19   all right, so you have that complete list.
20             THE CLERK:  Okay.
21             THE COURT:  At some point I just describe the
22   case.  So here's what I'm going to say, but I'm open to
23   suggested edits:
24             This is a criminal case.  The grand jury has
25   returned a one count indictment against Johnathon Irish.

1  The indictment alleges that Mr. Irish -- the indictment
2  charges that Mr. Irish illegally possessed firearms and
3  ammunition knowing he had previously been convicted of a
4  crime punishable by imprisonment for a term exceeding
5  one year.
6           I can simplify it by simply saying:  The
7  indictment alleges the crime of illegal possession of a
8  firearm by a convicted felon.
9           MR. FALKNER:  I don't have it in front of me,
10 but I don't believe it charges ammunition.
11          THE COURT:  It says ammunition.  That was a
12 question that I was going to ask you.  It does include
13 ammunition, but it doesn't charge specific ammunition.
14          You'll see throughout the draft jury
15 instructions I've highlighted that word because I
16 wondered if you wanted to keep it.
17          MS. KRASINSKI:  I mean, I think technically it
18 probably is limited to the firearms because that's what
19 we specified.
20          MR. FALKNER:  Especially because it says, "The
21 following firearms and ammunition," which is I think why
22 I read it as only the firearms because then it lists the
23 specific following firearms, ammunition, and it lists
24 only the firearms.
25          THE COURT:  All right.  Are you okay with:

1 The crime of illegal possession of a firearm by a
2 convicted felon, just simplifying it?
3     MS. KRASINSKI: Yes.
4     THE COURT: Okay.
5     MR. FALKNER: Could it just -- shouldn't it
6 just be possession of a firearm by a convicted felon,
7 because that is in and of itself the crime?
8     THE COURT: Crime of possession of a firearm
9 by a convicted felon?
10     MR. FALKNER: (Nods affirmatively.)
11     THE COURT: Okay. All right.
12     And we'll take ammunition then out of the
13 remainder of the draft instructions.
14     Okay. Let me go through quickly here -- we
15 agreed that Tuesday we would have a different schedule.
16 My memory is start at noon and go to 5:00.
17     Is that what we agreed?
18     (All nod affirmatively.)
19     THE COURT: Is everybody still good with that
20 schedule? And I'll meet you guys at 11 a.m. that day.
21     Okay. All right.
22     MR. FALKNER: I don't believe we discussed
23 this, but certainly it seems possible that it could lead
24 into Wednesday, but we would just follow the normal
25 trial schedule.

1    THE COURT: I'm telling them Monday through
2 Wednesday. I would rather give them the worst case
3 scenario rather than promise them they'll be done by
4 Tuesday.
5    Okay. All right. The jury instructions
6 obviously focus on the indictment and the elements, if
7 you would. Be particularly ready to discuss those on
8 Thursday.
9    No voir dire was requested. Any specific
10 things you want me to ask? I think my general questions
11 cover I think what would be most of your concerns.
12    MR. FALKNER: Just any publicity.
13    THE COURT: I ask that question, yeah. Was
14 there publicity?
15    MS. KRASINSKI: My understanding is that there
16 were some articles online by a seacoast newspaper.
17    THE COURT: Okay.
18    MS. KRASINSKI: And I learned that by
19 listening to jail calls, so I'm not familiar with how
20 widely published they were or if they were anything
21 other than online.
22    THE COURT: Okay. All right. Anything else?
23    You know how I do sidebar. I explained that
24 to you.
25    MR. FALKNER: Oh, I'm sorry, your Honor. I

1   would just say publicity about Mr. Irish or this case,
2   because he did have a previous case and I think there
3   were articles about the previous case as well.  I'm
4   sorry.
5             THE COURT:  Okay.  All right.  I'll make a
6   note of that.  I will do that.
7             So you actually want me to ask them if they've
8   heard anything about Mr. Irish specifically, because
9   doesn't that suggest --
10            MR. FALKNER:  Or maybe just the defendant or
11  this case.  I think if it's more just generally if
12  they've ever -- I understand the problem.
13            THE COURT:  If you can come up with something
14  that would require a yes answer to get at the question,
15  let me know, but right now I just ask:
16            Have you read anything about this case in the
17  newspaper or on the Internet?  Have you heard anything
18  about it on the radio or television or heard or
19  participated in any conversations about it?
20            MR. FALKNER:  I think that's fine, your Honor.
21            THE COURT:  Okay.  All right.  Anything else?
22            MS. KRASINSKI:  No.  I did actually file
23  amended jury instructions this morning, your Honor.
24            THE COURT:  You did?  Okay.  All right.  Well,
25  we'll look at those and compare what we've come up with.

1  MS. KRASINSKI: It adds one additional
2  proposed instruction. The rest is identical to what
3  I've previously submitted.
4  THE COURT: Okay. All right.
5  And there was an issue with respect to a
6  couple of witnesses neither of you seemed that inclined
7  to call that might have fit the limine issues. Are
8  those off the table at this point? And I don't remember
9  what their names are other than Mr. Whitney, and we've
10 covered him.
11 MR. FALKNER: They're not on this list, your
12 Honor.
13 THE COURT: Okay.
14 MR. FALKNER: The other witness that we had
15 discussed was Nancy Haskell, who is the defendant's
16 mother, but she's not on my witness list and not on
17 theirs.
18 THE COURT: Okay. And you don't have any
19 other names?
20 MR. FALKNER: No, your Honor.
21 THE COURT: Okay. And I thought there was
22 also an issue of his ex-wife or --
23 MS. KRASINSKI: Current wife, I think, still.
24 But either way, we don't intend to call her as a
25 witness.

1       THE COURT: And you don't either?
2       MR. FALKNER: I do not.
3       THE COURT: Okay. All right. Anything else?
4       MR. FALKNER: Your Honor, we intend to
5  stipulate as to the fact that Mr. Irish was convicted of
6  a crime punishable by more than a year of imprisonment
7  and that he knew about it.
8       The government has said in the proposed
9  stipulation, which Mr. Irish will sign, but I did ask
10 the government if we could at least broach the subject
11 with you.
12      The issue is that on the date that he was
13 convicted he was convicted of two crimes in this court,
14 and so the government wishes the stipulation to be that
15 he was convicted of two crimes on that date as opposed
16 to convicted of a crime on that date. And my concern is
17 just that it's unduly prejudicial to say two crimes.
18 Obviously, he may well be able to be impeached with the
19 two crimes.
20      THE COURT: Right.
21      MR. FALKNER: But I think under 403 there's no
22 reason to tell the jury he was convicted of two crimes
23 as opposed to what they have to prove, which is a crime.
24      THE COURT: Right.
25      MS. KRASINSKI: I think there are a couple

1 issues.
2          So the first is that there may be witness
3 testimony that he's going around telling people that he
4 was never actually convicted or that, you know, he's not
5 prohibited from possessing firearms.
6          We talked a little bit about saying one or
7 more.  I think that would be more prejudicial to him
8 because then it could be more than two.  And here it's
9 the same judgment.  It's the same -- it seems to me that
10 saying he was convicted of a crime is not -- it's not
11 accurate, and I don't know that we want to agree to a
12 stipulation that's not accurate.
13          THE COURT:  Right, but saying he was convicted
14 of a crime is true.  He was convicted of two crimes.
15 You only need a crime.  If he takes the stand and says
16 something otherwise, you obviously can impeach, but the
17 stipulation is something I read to the jury and I don't
18 see why they need -- he's stipulating.  He's agreeing to
19 that element.  That accomplishes the result.  And why
20 add a dose of significant prejudice?
21          So I would agree that a stipulation that
22 admits the element is sufficient.
23          MS. KRASINSKI:  Okay.
24          THE COURT:  And I wouldn't want to inject
25 prejudice by telling the jury it's not just one crime;

1  he's convicted of two.  They don't really need to know
2  that.
3              MS. KRASINSKI:  Okay.
4              THE COURT:  All right.
5              When is it I read those stipulations to the
6  jury?  When does that happen, at the beginning of the
7  case?
8              MS. WEILAND:  I think they can be offered at
9  anytime during --
10             MS. KRASINSKI:  It can be read at anytime.
11             THE COURT:  You ask me to read it at a certain
12 time?
13             MS. KRASINSKI:  Yeah.
14             THE COURT:  Okay.
15             MS. KRASINSKI:  And we may want to do that at
16 the beginning of the case here.
17             THE COURT:  Okay.  All right.  Good.
18             MR. FALKNER:  I don't have any problem so long
19 as it's at any point during the government's case in
20 chief.  I don't think it should be done before opening
21 statements or something like that.
22             THE COURT:  Okay.  We won't do it before
23 opening but when you start your case or you decide when
24 you want me to read it.
25             MS. KRASINSKI:  We have discussed if he takes

12

1  the stand we do intend to impeach him with both.
2              THE COURT:  Absolutely.
3              MS. KRASINSKI:  Particularly given that one is
4  1001, lying to a federal agent.
5              So if he testifies, we do intend to impeach
6  him with both convictions.
7              THE COURT:  That is understood.
8              MR. FALKNER:  I guess we can cross that bridge
9  when we get to it.
10             THE COURT:  All right.  Anything else?
11             MS. KRASINSKI:  (Nods negatively.)
12             THE COURT:  All right.  Okay.
13             Then I will see you on Thursday.  I think it's
14 early in the morning.  Thursday at 9:00.
15             All right.  Good.
16     (Conclusion of chambers conference at 9:25 a.m.)

C E R T I F I C A T E

I, Susan M. Bateman, do hereby certify that the foregoing transcript is a true and accurate transcription of the within proceedings, to the best of my knowledge, skill, ability and belief.

Submitted: 3-24-20     /s/   Susan M. Bateman
                       SUSAN M. BATEMAN, RPR, CRR