**\*\*NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO 6-22-2020**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

```
* * * * * * * * * * * * * * * * *
                                *
UNITED STATES OF AMERICA        *
                                *   19-cr-251-LM-01
         v.                     *   February 12, 2020
                                *   1:40 p.m.
    JOHNATHON IRISH             *
                                *
* * * * * * * * * * * * * * * * *
```

TRANSCRIPT OF JURY TRIAL
DAY FOUR - AFTERNOON SESSION
BEFORE THE HONORABLE LANDYA B. MCCAFFERTY

APPEARANCES:


For the Government:        Anna Z. Krasinski, AUSA
                           Casey A. Weiland, AUSA
                           U.S. Attorney's Office




For the Defendant:         Benjamin L. Falkner, Esq.
                           Krasnoo, Klehm & Falkner, LLP




Court Reporter:            Susan M. Bateman, RPR, CRR
                           Official Court Reporter
                           United States District Court
                           55 Pleasant Street
                           Concord, NH 03301
                           (603) 225-1453

I N D E X

JUDGE'S CHARGE:                                    PAGE

By the Honorable Landya B. McCafferty              3


CHAMBERS CONFERENCE:                               29

CHAMBERS CONFERENCE:                               41

CHAMBERS CONFERENCE:                               46


JURY VERDICT:                                      49


JUDGE'S FORFEITURE INSTRUCTIONS:

By the Honorable Landya B. McCafferty              52

CLOSING ARGUMENTS ON FORFEITURE:

By Ms. Krasinski                                   56

By Mr. Falkner                                     57


JURY FORFEITURE VERDICT:                           59

```
1                    P R O C E E D I N G S
2              THE COURT:  You have now heard all the
3    evidence in this case and arguments by the lawyers.  It
4    is my duty at this point in the trial to instruct you on
5    the law that you must apply in reaching your verdict.
6    It is your duty to follow and apply the law as I give it
7    to you, but you alone are the judges of the facts.
8    Please do not consider any statement that I have made in
9    the course of trial or make in these instructions as any
10   indication that I have any opinion about the facts of
11   this case or what the verdict should be.  You should not
12   single out any one instruction but instead apply these
13   instructions as a whole to the evidence in this case.
14              You are the sole and exclusive judges of the
15   facts.  You must weigh the evidence that has been
16   presented impartially, without bias, without prejudice,
17   and without sympathy.  You must make a determination as
18   to what the facts are and what the truth is based upon
19   the evidence presented in this case.  You must decide
20   the case by applying the law as it is given to you in
21   these instructions to the facts as you find them to be
22   from the evidence.
23              You must apply the law regardless of any
24   opinion you may have as to what the law ought to be.  It
25   would be a violation of your sworn duty if you were to
```

1   base your verdict upon any view of the law other than

2   that reflected in these instructions just as it would be

3   a violation of your sworn duty as judges of the facts to

4   base a verdict upon anything but the evidence presented

5   in this case.

6          The fact that the prosecution is brought in

7   the name of the United States of America entitles the

8   government to no greater consideration than that

9   accorded to any other party to a litigation.  By the

10  same token, it is entitled to no less consideration.

11  All parties, whether government or individuals, stand as

12  equals at the bar of justice.

13         The weight of the evidence is not necessarily

14  determined by the number of witnesses testifying on

15  either side.  You should consider all the facts and

16  circumstances in evidence to determine which of the

17  witnesses are worthy of belief.  In reviewing the

18  evidence, you should consider the quality of the

19  evidence and not the quantity.  It is not the number of

20  witnesses or the quantity of testimony that is important

21  but the quality of the evidence that has been produced

22  that is important.  You must consider all of the

23  evidence no matter which side produced or elicited it.

24         The evidence in this case consists of the

25  sworn testimony of the witnesses, and all the exhibits

1    received in evidence, and any facts which have been

2    admitted or stipulated.

3            During your deliberations you must entirely

4    disregard any evidence to which an objection was

5    sustained by the Court and any evidence ordered stricken

6    by the Court.

7            During the trial you were told that the

8    government and the defendant agreed to certain facts.

9    We call this a stipulation.  A stipulation means that

10   the government and the defendant accept the truth of a

11   particular proposition or fact.  Because there is no

12   disagreement between the parties regarding stipulated

13   facts, there was no need for either side to introduce

14   evidence relating to those facts.  The parties needed

15   only to admit the stipulations into evidence.  You must

16   accept the stipulations as facts to be given whatever

17   weight you choose.

18           During the trial you heard a conversation that

19   was recorded.  This is proper evidence for you to

20   consider.  You were also given a transcript to read

21   along as the recording was played.  As the Court

22   instructed you at the time, that transcript was provided

23   solely to help you follow the recorded conversation.  If

24   you believe at any point the transcript said something

25   different from what you heard on the tape, remember it

1   is the tape that is the evidence, not the transcript.

2   Any time there's a variation between the tape and the

3   transcript, you must be guided solely by what you heard

4   on the tape and not by what you saw in the transcript.

5           Certain things are not evidence and cannot be

6   considered by you as evidence.

7           1.   Arguments and statements by the lawyers

8   are not evidence.  What they've said in their opening

9   statements, closing arguments, questions to the

10  witnesses, and at other times is intended to help you

11  interpret the evidence but it is not evidence.  If the

12  facts as you remember them differ from what the lawyers

13  have said about those facts, your memory controls.  If

14  the law as stated by the lawyers differs from the law as

15  stated by me, you must take the law from me.  You are

16  not to be concerned with the wisdom of any rule of law.

17          2.   Objections raised by the lawyers are not

18  evidence.  Lawyers have a duty to object when they

19  believe a question is improper under the rules of

20  evidence.  I must rule on objections, and I have not

21  intended to indicate in any way by my rulings what the

22  verdict should be in this case.  You should not be

23  influenced by the lawyers' objections or by my rulings

24  on those objections.

25          3.   Anything you may have seen or heard when

 1     the Court was not in session is not evidence.  You are

 2     to decide the case solely on the evidence received at

 3     trial.

 4              There are two types of evidence which you may

 5     properly use in deciding this case, direct and

 6     circumstantial.

 7              Direct evidence is the testimony given by a

 8     witness about what that witness has seen, has heard, or

 9     has observed, or what that witness knows based on

10     personal knowledge.  Direct evidence also includes any

11     exhibits that have been marked.

12              Evidence may also be used to prove a fact by

13     inference, and this is referred to as circumstantial

14     evidence.  In other words, from examining direct

15     evidence you may be able to draw certain inferences

16     which are reasonable and justified in light of your

17     daily experience.  Such inferences constitute

18     circumstantial evidence.  Circumstantial evidence may be

19     given the same weight by you as direct evidence.

20              During the course of the trial I instructed

21     you that certain evidence was being admitted for a

22     limited purpose.  It is your duty to follow these

23     instructions during your deliberations.

24              The fact that an indictment is returned

25     against an individual is not evidence of that person's

1    guilt.  An indictment is merely a formal method of

2    accusing an individual of a crime in order to bring that

3    person to trial.  It is you, the jury, who will

4    determine whether an individual is guilty or not guilty

5    of the offense charged based on a consideration of all

6    the evidence presented and the law applicable to the

7    case.  Therefore, you must not consider the indictment

8    in this case as any evidence of the guilt of the

9    defendant, nor should you draw any inference from the

10   fact that an indictment has been returned against him.

11          The defendant, although accused, begins a

12   trial with a clean slate with no evidence against him.

13   The law permits nothing but legal evidence presented

14   before the jury to be considered in support of any

15   charge against a defendant.  The law presumes every

16   defendant to be innocent until proven guilty beyond a

17   reasonable doubt.  The burden of proving a defendant

18   guilty rests entirely on the government.  The defendant

19   does not have to prove his innocence.  The defendant

20   enters the courtroom and is presumed to be innocent

21   until the government convinces you beyond a reasonable

22   doubt that he is guilty of every essential element of

23   the offense charged.

24          The presumption of innocence alone is

25   sufficient to acquit a defendant unless the jury is

1  satisfied beyond a reasonable doubt that the defendant

2  is guilty after a careful and impartial consideration of

3  all of the evidence in the case.

4          The burden is always on the government to

5  prove guilt beyond a reasonable doubt.  This burden

6  never shifts to a defendant.  The law does not impose

7  upon a defendant in a criminal case the burden or duty

8  of calling any witnesses or producing any evidence.

9          If after careful and impartial consideration

10  of all the evidence in this case you have a reasonable

11  doubt that the defendant is guilty of the charge set

12  forth in the indictment, you must find the defendant not

13  guilty.  A jury must never find a defendant guilty based

14  on mere suspicion, conjecture, or guess.  Rather, you

15  must decide the case on the evidence that is before you

16  and on the reasonable inferences that can be drawn from

17  that evidence.

18          In determining what the facts are and what the

19  truth is, you must necessarily assess the credibility of

20  each witness and determine what weight you will give to

21  each witness's testimony.  By credibility, I mean the

22  believability or truthfulness of a witness.

23          You should carefully scrutinize all the

24  testimony given, the circumstances under which each

25  witness has testified, and every matter in evidence

1  which tends to show whether a witness is worthy of

2  belief or not worthy of belief.  For example:

3          Consider each witness's intelligence, motive,

4  state of mind, demeanor, and manner while testifying.

5          Consider the witness's ability to observe or

6  to know the matters about which that witness has

7  testified and whether the witness impresses you as

8  having an accurate recollection of those matters.

9          Consider whether the witness had any reason

10  for telling the truth or not telling the truth, whether

11  the witness had an interest in the outcome of the case,

12  whether the witness had anything to gain or lose as a

13  result of his or her testimony, whether the witness had

14  any friendship, relationship, or animosity towards other

15  individuals involved in the case, whether the witness's

16  testimony was consistent or inconsistent with itself or

17  with the testimony of other witnesses.

18          Consider the extent, if any, to which the

19  testimony of each witness is either supported or

20  contradicted by other evidence in the case.

21          The testimony of a witness may be discredited,

22  or as we sometimes say impeached, by showing that the

23  witness previously made statements that are different

24  than or inconsistent with his or her testimony here in

25  court.

1        Inconsistent or contradictory statements which

2   are made by a witness outside of court may be considered

3   only to discredit or impeach the credibility of the

4   witness and not to establish the truth of these earlier

5   out-of-court statements.

6        You must decide what weight, if any, should be

7   given the testimony of a witness who has made prior

8   inconsistent or contradictory statements.  In making

9   this determination, you may consider whether the witness

10  purposely made a false statement or whether it was an

11  innocent mistake, whether the inconsistency concerns an

12  important fact or whether it had to do with only a small

13  detail, whether the witness had an explanation for the

14  inconsistency and whether that explanation appealed to

15  your common sense.

16       You should give the testimony of each witness,

17  both on direct and cross-examination, the weight you

18  think it deserves.  You're not required to believe the

19  testimony of any witness simply because that witness was

20  under oath.  You may believe or disbelieve all or part

21  of the testimony of any witness.  It is within your

22  province to determine what testimony is worthy of belief

23  and what testimony may not be worthy of belief.

24       You've heard the testimony of witnesses who

25  have provided evidence under agreements with the

1   government, received money from the government in

2   exchange for providing information, or testified under a

3   grant of immunity.  Specifically as to the witness who

4   testified under a grant of immunity, Roscoe Whitney,

5   immunity means that his prior statements to the FBI and

6   the testimony he gave in this trial may not be used

7   against him in any subsequent criminal proceeding.

8   However, if he testified untruthfully, he could be

9   prosecuted for perjury or making a false statement even

10  though he was testifying under a grant of immunity.

11          Some people in these positions, that is, some

12  people who have provided evidence under an agreement

13  with the government, received money for providing

14  information to the government, or who received a grant

15  of immunity, are entirely truthful when testifying.

16  Still, you should consider the testimony of such

17  witnesses with particular caution.  The witnesses may

18  have had reason to make up stories or exaggerate what

19  others did because they wanted to help themselves.  You

20  must determine whether the testimony of such witnesses

21  has been affected by any interest in the outcome of this

22  case, any prejudice for or against the defendant, or by

23  any of the benefits these witnesses have received from

24  the government.

25          During the course of this trial you've heard

1   several law enforcement agents testify.  You should

2   consider the testimony of a law enforcement agent the

3   same as the testimony of any other witness in the case.

4   In evaluating the credibility of a law enforcement

5   agent, you should use the same tests which you apply to

6   the testimony of any other witness.  In no event should

7   you give the testimony of a law enforcement agent any

8   more credibility or any less credibility simply because

9   of that witness's position.

10          You've heard testimony from a person described

11  as an expert.  An expert witness has special knowledge

12  or experience that allows the witness to give an

13  opinion.

14          You may accept or reject such testimony.  In

15  weighing the testimony, you should consider the factors

16  that generally bear upon the credibility of a witness as

17  well as the expert witness's education and experience,

18  the soundness of the reasons given for the opinion, and

19  all other evidence in the case.

20          Remember that you alone decide how much of a

21  witness's testimony to believe and how much weight it

22  should be given.

23          After assessing the credibility of each

24  witness you will assign as much weight to his or her

25  testimony as you deem proper.  You may believe or

1    disbelieve all or part of the testimony of any witness.

2    You determine what testimony is worthy of belief and

3    what testimony may not be worthy of belief.  The

4    testimony of a single witness may be sufficient to prove

5    any fact, even if a greater number of witnesses may have

6    testified to the contrary, if after considering all the

7    other evidence you believe that single witness.

8           The fact that the defendant did not testify

9    must not be considered by you in any way or even

10   discussed in your deliberations.  He has an absolute

11   right not to take the witness stand, and you must not

12   draw any inferences from the fact that he exercised that

13   right.

14          You are not to give any consideration to

15   potential punishments or sentences in deciding this

16   case.  The punishment provided by law for the offense

17   charged in the indictment is a matter exclusively within

18   the province of the Court and should never be considered

19   by the jury in any way in arriving at an impartial

20   verdict.  You must decide this case based on the

21   evidence you've seen and heard and on the law as I give

22   it to you and not on any punishment you believe the

23   defendant might receive or could receive.

24          The indictment consists of one count charging

25   the defendant with possessing firearms in or affecting

1    interstate commerce after having been convicted of a

2    crime punishable by imprisonment for more than one year

3    in violation of 18 U.S.C. Sections 922(g)(1).

4           I'll describe the charge against the defendant

5    in more detail in a moment.

6           The indictment alleges that the crime the

7    defendant is charged with occurred "on or about" certain

8    dates.  The government does not have to prove with

9    certainty the exact date or dates of the alleged

10   offense.  It is sufficient if the government proves

11   beyond a reasonable doubt that the offense occurred on a

12   date reasonably near the dates alleged.

13          In the indictment the government alleges that

14   from December 26, 2018, to on or about November 17,

15   2019, the defendant knowingly possessed certain firearms

16   while also knowing that he had previously been convicted

17   of a felony, that is, a crime punishable by imprisonment

18   for a term exceeding one year.  Specifically, the

19   government alleges that the defendant possessed the

20   following firearms that were in or affecting interstate

21   commerce:  A Sig Sauer, Model 1911, .45 caliber pistol,

22   S/N, or serial number, GS 34120; and a Zijiang Machinery

23   Company, Model Catamount Fury, 12-gauge shotgun, serial

24   number CAT-002586.

25          In order for you to find the defendant guilty

of the crime charged, the government must prove each of

the following elements beyond a reasonable doubt:

First, that the defendant has been convicted

in any court of at least one felony, that is, a crime

punishable by imprisonment for a term exceeding one

year;

Second, that the defendant knew he had been

convicted of a felony;

Third, that after being convicted of a felony

the defendant knowingly possessed the firearms charged

in the indictment; and

Fourth, that the firearms charged in the

indictment were in or affecting interstate commerce.

I'll now give you a bit more detail about each

of these elements.

To find the defendant guilty of the offense

charged, the first element that the government must

prove to you beyond a reasonable doubt is that the

defendant has been convicted in any court of a crime

punishable by imprisonment for a term exceeding one year

and that the conviction occurred prior to the date on

which the defendant is alleged to have possessed the

firearms described in the indictment.

The parties have stipulated, or agreed, that

on December 11, 2014, the defendant was convicted of a

1  crime that is punishable by imprisonment for a term

2  exceeding one year.  Because the parties agree on this

3  fact, there was no need for the government to introduce

4  any evidence relating to it.  As I explained earlier,

5  you must accept this stipulation as a fact to be given

6  whatever weight you choose.

7  The second element the government must prove

8  beyond a reasonable doubt is that the defendant knew he

9  had been convicted of a felony offense, that is, he knew

10  he had been convicted in any Court of a crime punishable

11  by imprisonment for a term exceeding one year.

12  Knowledge in this context means that the

13  defendant was aware that he had been convicted of a

14  crime punishable by imprisonment for a term exceeding

15  one year.

16  The parties have stipulated, or agreed, that

17  at the time the defendant is alleged to have committed

18  the charged offense he knew that he had previously been

19  convicted of a crime punishable by imprisonment for a

20  term exceeding one year.  Because the parties agree on

21  this fact, there was no need for the government to

22  introduce any evidence relating to it.  As I stated

23  before, you must accept this stipulation as a fact to be

24  given whatever weight you choose.

25  The third element that the government must

1   prove beyond a reasonable doubt is that after his felony

2   conviction, between December 26, 2018, and November 17,

3   2019, the defendant knowingly possessed the firearms

4   charged in the indictment.

5        The word knowingly means that the act was done

6   voluntarily and intentionally, not because of mistake or

7   accident.  You may consider evidence of the defendant's

8   words, acts, or omissions, along with all of the other

9   evidence in deciding whether the defendant acted

10  knowingly.  The government does not have to prove,

11  however, the defendant knew his conduct was illegal.  It

12  must prove only that he knowingly possessed the firearms

13  and knew he had been convicted of a felony prior to that

14  possession.

15       The term firearm means any weapon which will,

16  is designed to, or may readily be converted to expel a

17  projectile by the action of an explosive.  The term

18  firearm also includes the frame or receiver of any such

19  weapon.

20       The term possess means to exercise authority,

21  dominion, or control over something.  It is not

22  necessarily the same as legal ownership.  The law

23  recognizes different kinds of possession.

24       Possession includes both actual and

25  constructive possession of a gun.

1    A person who has direct physical control of a
2  gun on or around his person is then in actual possession
3  of it.  Actual possession is the state of immediate,
4  hands-on physical possession of a gun.

5    A person who is not in actual possession of a
6  gun but who has both the power and the intention to
7  exercise control over a gun is in constructive
8  possession of it.  Constructive possession exists where
9  a person has the power and intention of exercising
10  authority, dominion, or control over a gun.  With
11  respect to constructive possession, a person must have
12  actual knowledge of the presence of a firearm in order
13  to have constructive possession of it.

14    Whenever I use the term possession in these
15  instructions, I mean actual as well as constructive
16  possession.

17    Mere proximity to a gun is not sufficient to
18  prove either actual or constructive possession, but
19  proximity to a gun is a factor to be weighed and
20  considered along with all of the other circumstances you
21  find to have existed in determining the issue of
22  possession.  While brief contact with a gun does not
23  preclude a finding of possession, the length of contact
24  is a factor to be weighed and considered along with all
25  the other circumstances you find to have existed in

1    determining the issue of possession.

2          Possession also includes both sole and joint

3    possession.  If one person alone has actual or

4    constructive possession, possession is sole.  If two or

5    more persons share actual or constructive possession,

6    possession is joint.  Whenever I have used the word

7    possession in these instructions, I mean joint as well

8    as sole possession.

9          The indictment alleges that the defendant

10   possessed two firearms.  However, the government is not

11   required to prove that the defendant possessed both of

12   the firearms.  You may find that the government has met

13   its burden on possession if you find that the defendant

14   knowingly possessed one of the two firearms charged in

15   the indictment.  To find that the government has proven

16   this, you must agree unanimously on which firearms the

17   defendant knowingly possessed.

18          Finally, the government must prove that the

19   firearms charged in the indictment were in or affecting

20   interstate commerce.  A firearm is in or affecting

21   interstate commerce if the firearm has traveled at some

22   time from one state to another.  The travel need not

23   have been connected to the charge in the indictment,

24   need not have been in furtherance of any unlawful

25   activity, and need not have occurred while the defendant

1    possessed the firearms.

2             When you retire to the jury room to

3    deliberate, you may take with you this charge and the

4    exhibits admitted into evidence.

5             You will also take with you a form on which to

6    record your verdict.  You will be able to view the

7    documentary exhibits in this case through an electronic

8    system called JERS.  J-E-R-S stands for Jury Evidence

9    Recording System.  In your deliberation room is a plasma

10   television.  You will be able to view the exhibits from

11   that plasma television screen.  It is operated by touch.

12   The courtroom deputy will show you a brief tutorial.

13            You should understand that you will also have

14   all documentary exhibits in paper copy to examine as

15   well.  The JERS system is simply another way for you to

16   view the exhibits.  The advantage is that you can all

17   see the exhibit on the screen and discuss that exhibit

18   while seeing it displayed on the screen.  You may

19   consider any and all exhibits in the JERS system.  You

20   can also use the JERS system to zoom in to an exhibit so

21   that all jurors can see an exhibit up close.

22            It is easy to use, especially after you see

23   the tutorial, but if you have a question about JERS, as

24   with any other question you might have, you must put it

25   in writing.  Even if you need some sort of technical

1    assistance with JERS, you will need to put your request

2    in writing so that the court security officer can

3    present it to me.  Before resolving any of your

4    questions, I show your written question to the lawyers.

5            The principles of law set forth in these

6    instructions are intended to guide you in reaching a

7    fair and just result in this case, which is important to

8    all of the parties.  You are to exercise your judgment

9    and common sense without prejudice and without sympathy

10   but with honesty and understanding.  You should be

11   conscientious in your deliberations and seek to reach a

12   just result in this case because that is your highest

13   duty as judges of the facts and officers of this court.

14   Remember also that the question before you can never be,

15   will the government win or lose the case.  The

16   government always wins when justice is done regardless

17   of whether the verdict be guilty or not guilty.

18           When you have considered and weighed all of

19   the evidence, you must make one of the following

20   findings with respect to the offense charged:

21           1.  If you have a reasonable doubt as to

22   whether the government has proved any one or more of the

23   elements of the crime charged, it is your duty to find

24   the defendant not guilty.

25           2.  If you find the government has proved all

1  the elements of the crime charged beyond a reasonable

2  doubt, then you may find the defendant guilty.

3          As I explained before, the punishment provided

4  by law for the offense charged in the indictment is a

5  matter exclusively within the province of the Court and

6  should never be considered by you in any way in arriving

7  at an impartial verdict.

8          When you retire, you shall elect one member of

9  the jury as your foreperson.  That individual will act

10  very much like the chairperson of a committee, seeing to

11  it that the deliberations are conducted in an orderly

12  fashion and that each juror has a full and fair

13  opportunity to express his or her views, positions, and

14  arguments.

15          The verdict must represent the considered

16  judgment of each juror.  In order to return a verdict,

17  it is necessary that each juror agrees thereto.  Your

18  verdict must be unanimous.

19          It is your duty as jurors to consult with one

20  another and to deliberate with a view to reaching an

21  agreement if you can do so without violence to

22  individual judgment.  Each of you must decide the case

23  for yourself, but do so only after an impartial

24  consideration of the evidence in the case with the other

25  jurors.  In the course of your deliberations, do not

1    hesitate to reexamine your own views and to change your

2    opinion if convinced it is erroneous, but do not

3    surrender your honest conviction as to the weight or

4    effect of the evidence solely based on the opinion of

5    the other jurors or merely for the purpose of returning

6    a verdict.  Remember at all times that you are not

7    partisans.  You are judges.  Judges of the facts.  Your

8    only interest is to seek the truth from the evidence in

9    this case.

10            If during your deliberations it becomes

11   necessary to communicate with me, please give a written

12   message to the court security officer who will bring it

13   to me.  I will then respond as promptly as possible

14   either in writing or by meeting with you in the

15   courtroom.  I will always first show the attorneys your

16   question and my response before I answer your question.

17   This procedure for asking questions in written form also

18   applies to any questions you might have concerning the

19   JERS system even if your question pertains to obtaining

20   technical assistance with the system.

21            Now, this is very important.  You must never

22   disclose to anyone, including the Court, how the jury

23   stands numerically or otherwise on the matters you are

24   deciding until after you have reached a unanimous

25   verdict or have been discharged.  In other words, if the

1    jury is split say six to six on some issue, the

2    existence of that split or the number on one side or the

3    other must not be disclosed to anyone, including me.

4         If we recess during your deliberations, you

5    must follow all the instructions I have given you

6    concerning your conduct during the trial.  In

7    particular, do not discuss the case with anyone other

8    than your fellow jurors in the jury room when everyone

9    is present.

10        You were permitted to take notes during this

11   trial, and I want to remind you of the instructions I

12   gave you about your notes.  Do not use your notes as

13   authority to persuade other jurors.  Your notes should

14   be used only as aids to your own memory and must not be

15   used as authority to persuade the other jurors as to

16   what the evidence was during the trial.  In the end,

17   each juror must rely on his or her own recollection or

18   impression as to what the evidence was.

19        You each have a paper copy of my jury

20   instructions to take with you into the jury room.

21   Attached to your individual copy of the jury

22   instructions is a copy of the verdict form.  The verdict

23   form is self-explanatory and it contains all the

24   questions you need to answer as well as step-by-step

25   instructions.  Read that verdict form carefully and

1    follow the instructions on it.  The verdict form is

2    consistent with the instructions I have given to you.

3    Feel free to consult the paper copy of the jury

4    instructions as you deliberate.  After you've reached

5    your unanimous verdict your foreperson must complete,

6    sign, and date the official verdict form.  The official

7    verdict form will be given to you with an envelope and

8    will be marked with the word "original" at the top of

9    the form.  After you have reached a verdict you are not

10   required to talk to anyone about the case unless I

11   direct you to do so.

12          Let me once again tell you that nothing said

13   in these instructions is intended to suggest in any way

14   what your verdict should be.  The verdict is the

15   exclusive responsibility of the jury, not the judge.

16          When you have arrived at a verdict, notify the

17   court security officer, and you will be brought back

18   into the courtroom where the foreperson will render the

19   verdict orally.

20          Counsel, please approach.

21          (SIDEBAR)

22          MR. FALKNER:  Your Honor, I would reiterate my

23   request for the missing witness instruction.  I believe

24   all of the predicates have been met and that it's an

25   appropriate instruction in the case.

1                    And secondly, I reiterate my request for a

2      special verdict form.  I think, especially in light of

3      the difference in interstate commerce testimony as to

4      the two firearms, it's necessary, and the difference in

5      the evidence as to the possession of the firearms.

6                    THE COURT:  All right.  I deny those requests

7      on the basis I denied them earlier.  Anything else?

8                    MS. KRASINSKI:  No, your Honor.

9                    THE COURT:  We have 13 in the box.  I'm going

10     to choose 14 as our alternate.

11                   MR. FALKNER:  The last juror?

12                   THE COURT:  Yes, unless you tell me -- it's

13     got to be --

14                   MR. FALKNER:  I believe she was selected as an

15     alternate.

16                   THE COURT:  Right.  13 and 14 are alternates.

17                   MR. FALKNER:  Oh, I'm sorry.  My understanding

18     would be that 13 would sit on the jury and 14 would be

19     the alternate.

20                   THE COURT:  I don't know what to say when this

21     happens, but I'm going to choose 14 unless you give me

22     another reason.

23                   MR. FALKNER:  14 to be the alternate?

24                   THE COURT:  Yes.

25                   MR. FALKNER:  Yes, I agree.  Thank you.

1          THE COURT:  All right.

2          (CONCLUSION OF SIDEBAR)

3          THE COURT:  I hope you're not tired of that

4    music.

5          All right.  Now, before the courtroom deputy

6    actually swears in the jury (sic), you'll notice that

7    there are 13 of you in the box, and a jury consists of

8    12.  One of you is designated the alternate.  It is

9    Juror No. 14.

10          Now, an alternate is still a juror and you

11   must still follow all my instructions.  You probably

12   should stay here.  And if you have to leave for any

13   reason, make sure that the courtroom deputy has a way of

14   contacting you immediately so that you could be brought

15   back to the courthouse.  So she'll need just contact

16   information if you were to leave.  But as an alternate,

17   you must follow all the instructions, I'm not going to

18   repeat them to you again, but all those instructions

19   about communication, research, et cetera.

20          So Juror No. 14 is an alternate and Juror No.

21   14 needs to retrieve whatever belongings that you have

22   in the deliberation room.  There can be no discussion of

23   the case until Juror No. 14 leaves, and then you may

24   begin your deliberations.

25          Would the courtroom deputy now swear in the

1   court security officer.

2             (Deputy clerks swears in court security

3   officer)

4             (Jury begins deliberation)

5             (Chambers Conference)

6             THE COURT:  This is only in the event,

7   obviously, there is a conviction.  I just want to go

8   over these with you and make sure we consider anyone's

9   objections.

10            Now, let me just highlight the bold on page 3.

11  I'm going to remove that.  I'm assuming you're not going

12  to bring in any additional evidence.

13            MS. KRASINSKI:  We had discussed this, whether

14  or not there was going to be an objection as to whether

15  there needed to be nexus testimony as to the firearms --

16  or as to the ammunition.  I don't think there needs to

17  be.  If the Court does, I will recall Agent Forte and

18  have him examine the ammunition, but my understanding is

19  that that is not required.  If the Court agrees, I do

20  not intend to put the jury through that.

21            THE COURT:  Okay.  I don't know the answer to

22  that so that's something I have to look at.

23            What is the case law on that?

24            MR. FALKNER:  Your Honor, I was just looking

25  through Judge Torresen's model instructions, and I guess

1   what concerns me is the definition, so to speak, of

2   "involved in."  So in terms of "used in," I think

3   ammunition that has been loaded into one of the firearms

4   involved in the offense and fired would clearly be used

5   in the offense, but there's not necessarily any evidence

6   of that and they're simply possessed alongside.

7          So I'm just looking right now.  There's a

8   definition of "involved in" for the money laundering

9   forfeiture instruction, and I haven't even had a chance

10  to read it in full, but it's about two sentences long,

11  and perhaps it doesn't appear to bear directly but might

12  shed some light on what we should do here:

13         Property involved in a money laundering

14  transaction means the money being laundered, any

15  commissions or fees paid to the launderer, and any

16  property used to facilitate the laundering.  Mingling

17  tainted funds with legitimate funds exposes the

18  legitimate funds to forfeiture as well if the mingling

19  was done for the purpose of concealing the nature or

20  source of the tainted funds.  In other words, to

21  facilitate the money laundering.

22         I think what we might draw out of that is that

23  ammunition that somehow facilitated the offense of

24  possession of one of the firearms at issue -- I'm not

25  even sure whether that means that all .45 caliber

1   ammunition would necessarily be forfeitable, but perhaps

2   some of that ammunition may be if it was used somehow to

3   facilitate it or, like I said, was used in the gun or

4   something to that affect.

5          Ammunition for the rifle, I'm not sure how

6   that in any way facilitates this offense or was used in

7   this offense.  It was merely simultaneously possessed,

8   but that doesn't, I don't think, further the possession

9   of the other items.

10          And so I'm concerned at least as to the

11   ammunition that the government has some burden I think

12   to demonstrate not just all of the ammunition but to

13   demonstrate what ammunition should be seized, if any,

14   and that there has to be some definition to the jury of

15   what it means to be involved in the offense.

16          MS. KRASINSKI:  Your Honor, I think all of the

17   ammunition, the evidence established, was stored in this

18   case with the charged firearms.  I think the evidence

19   established, assuming a guilty verdict, that the

20   defendant then took everything in that case, the

21   firearms and all of the ammunition, and gave that

22   together to someone.  He possessed all of it together.

23   He sought to hide his possession of all of it.

24          I think -- and the forfeiture allegation

25   includes the ammunition seized on that day, not specific

1   caliber that day.  I don't think there's any requirement

2   that it be a certain type of caliber that fits the

3   firearm.  It's whether or not it was involved in the

4   offense.  Here "involved in the offense" would include

5   involved in the defendant's attempting to transfer, hide

6   his possession, hide his ownership of all of the

7   contents of the case, including the firearms.

8           So I don't think there needs to be a further

9   definition of "involved in," but more importantly, I

10  think all of the ammunition, because all of it is

11  identified in the forfeiture allegation, is potentially

12  subject to forfeiture.

13          THE COURT:  All right.  Go ahead.

14          MR. FALKNER:  I just reiterate I think what I

15  had already said, which is just because -- the crime is

16  possessing the firearm.  The crime charged isn't hiding

17  the possession or anything like that.  Even if it were,

18  ammunition being in that box doesn't in any way

19  facilitate or make it easier to hide that crime.

20          THE COURT:  Let me ask you this.  There was

21  evidence from at least Roya, and perhaps there was

22  another, but evidence that the defendant offered the

23  case as collateral for money, and wouldn't that

24  facilitate in some way the interest of the receiving

25  person to take the case because there would be a lot

1    more in it and the ammunition would be part of that, the

2    entirety of the collateral?

3              MR. FALKNER:  So with regard to Mr. Roya, his

4    testimony was that he was surprised by and he got more

5    than he bargained for and that that wasn't what he

6    thought he was going to get.  So I'm not sure that that

7    works with regard to him.

8              With regard to Mr. Prive the collateral issue,

9    as I recall, came up only after Mr. Prive had taken

10   possession of the box and that Mr. Irish was no longer

11   in possession at that time.

12             THE COURT:  Remind me exactly how it came in

13   with Prive.

14             MR. FALKNER:  I think -- I'm not positive, but

15   the best of my memory is that at the time -- he went to

16   Mr. Irish's house.  Mr. Irish said, take the box.  At

17   that point there had been no evidence of any discussions

18   about money.  It was, get it out of my house essentially

19   so nobody gets hurt.

20             And then later at some point there were

21   discussions about Mr. Irish borrowing money from him,

22   and it was at that time that the idea of the firearms as

23   collateral had been broached.

24             THE COURT:  Was it brought up by -- was the

25   testimony from Prive that the defendant offered it as

1  collateral?

2          MS. KRASINSKI:  I believe Prive's testimony

3  was that the defendant asked him if he would buy it, and

4  then it sort of transitioned to using those items as

5  collateral.

6          But I would just note that I would argue that

7  given the defendant's direction and control or the

8  transfer of the case and all of its contents from Prive

9  to Mr. Roya, that although Mr. Prive had the case that

10  it was still the defendant that had constructive

11  possession of those items because he was directing and

12  controlling their location and where they went.

13          THE COURT:  Okay.  What I think I'm going to

14  do is just research this just a teeny bit.  I'm leaning

15  toward finding that "involved in" or "used in" does not

16  need to be further clarified.  Although -- I mean,

17  facilitating the charged crime, would you have any

18  objection to adding that?  Involved in or used in --

19  clearly it wasn't used.  There wasn't any evidence that

20  the ammo was used.

21          MS. KRASINSKI:  I think there was testimony

22  that the defendant had shot the 1911, and so potentially

23  in that context.

24          Your Honor, I have to say I would like ten or

25  fifteen minutes now that I know what the particular

1    issue is to consult with our forfeiture AUSA.

2              THE COURT:  And I will consult with my brain

3    trusts sitting right there, and you can consult with

4    your brain trusts.

5              So we'll look at this, and we can come back to

6    it.

7              The questions I need to decide are, first of

8    all, what if any ammunition should be seized.

9              And I think you're saying that really there

10   isn't enough evidence that any of the ammo should be up

11   for seizure.

12             MR. FALKNER:  I think -- yes, I think it's

13   two-part.  One is the argument that there isn't enough

14   evidence that any of it should be seized, but to the

15   extent that there is sufficient evidence to go to the

16   jury, that they do need to be instructed sufficiently as

17   to what "involved in the offense" means so that they can

18   intelligently make a determination as opposed to just --

19   otherwise "involved in the offense" is sort of

20   meaningless without some kind of further definition as

21   to what it means because, as I said, without a

22   definition it could mean anything from just simply being

23   possessed alongside it to somehow facilitating the

24   offense, and I think that there needs to be some

25   evidence that it in some way facilitated the offense.

1          It may be that it's, you know, sufficient that

2     it's used as collateral after the fact could have made

3     it somehow involved in the offense.  I'm not conceding

4     that, but it may be that that's the case.  And if that's

5     true, I think the jury needs to at least be instructed

6     that --

7               THE COURT:  Facilitation?

8               MR. FALKNER:  That there's some facilitation.

9               THE COURT:  Okay.  All right.  All right then.

10              MS. KRASINSKI:  I did note one typo maybe in

11    question 3 in the special verdict form.  I don't think

12    that the indictment specifies magazines.  So I think we

13    need to take out two words, "magazines and".  I believe

14    the forfeiture allegation specifies only ammunition.

15              THE COURT:  So was miscellaneous ammunition

16    involved -- or would that be were?

17              MR. FALKNER:  I'm not really sure whether

18    that's a plural or a singular.

19              THE COURT:  I don't think it matters.  I'm not

20    going to worry about it at this juncture in the

21    narrative.

22         Okay.  And so you're also -- tell me about the

23    interstate issue.  You're thinking the ammo needs

24    interstate connection through calling Forte?

25              MR. FALKNER:  Well, if the only theory by

1   which it's used in or involved in the offense is its

2   mere possession simultaneous to the possession of the

3   firearms and he were convicted of possession of the

4   firearms and the offense is the unlawful possession of

5   the firearms, then I think the possession of the

6   ammunition would have to be unlawful in and of itself

7   because otherwise it's not necessarily involved in the

8   offense.

9           THE COURT:  Okay.  But if the collateral -- if

10  facilitation is there, you think that would be

11  sufficient?  It would be facilitating; thereby, it

12  doesn't need the separate interstate evidence.

13          MR. FALKNER:  If the evidence of facilitation

14  were sufficient, I'm not sure that I've got a valid

15  argument that it would independently need to be

16  possessed in interstate commerce because it's somehow

17  then actually involved in or used in the offense.

18          THE COURT:  Are there -- I've never done a

19  forfeiture.  I've never done a felon in possession

20  either.  There's no further argument, is there?  It's

21  simply just giving them the instruction after the

22  evidence comes in?  Do you know?

23          MS KRASINSKI:  I have done it both ways.  My

24  preference typically is not to have additional argument

25  because I just generally think the jury is saturated by

1      that time.

2              THE COURT:  If in fact they convict, they will

3      slump and pout and I can't imagine because -- especially

4      with the weather coming and other issues.

5              All right.  So do you both see it that way

6      then or would you want to be able to argue?

7              MR. FALKNER:  I think in part it depends on

8      the jury instructions that you intend to give.  I think

9      if they're instructed specifically on facilitation, I

10     would like to be able to make some argument that

11     certain -- well, it's in part one of the problems with

12     not having a special verdict in terms of the two

13     firearms either.  Because if they found him guilty as to

14     the pistol or guilty as to the shotgun, it's unclear

15     again whether one of those is involved in the other

16     crime, in the possession of the other weapon, and

17     whether that somehow facilitated that.

18              But especially with regard to the ammunition,

19     I think that to be able to make some kind of argument

20     that it didn't somehow facilitate the offense because

21     that's obviously not the focus of the trial or any of

22     the arguments at trial given the different focus.

23              Some opportunity to be able to call the jury's

24     attention to relevant evidence that pertains to those

25     instructions I think might be warranted.

1          THE COURT:  And could you both agree to limit

2     it to say five, ten minutes?

3          MR. FALKNER:  Oh, absolutely.

4          THE COURT:  That way I can tell the jury it's

5     limited, it's only five minutes or it's only ten

6     minutes.

7          And if I decide we're just going to keep

8     "involved in" or "used in," which is I think the pattern

9     instruction, then you don't see any need for argument,

10    it's if facilitation is added, or do you feel you want

11    to make arguments either way?

12         MR. FALKNER:  That's a very good point.  I

13    feel I would want to make an argument either way.

14         THE COURT:  Okay.

15         MR. FALKNER:  I suppose what I really meant

16    was the arguments that I make would depend on the way

17    that they were instructed as opposed to whether I would

18    want to make argument.

19         THE COURT:  Okay.  All right.

20         And so I guess we need to know, too, whether

21    or not there would be additional evidence offered.

22         MS. KRASINSKI:  I need to go back and verify

23    this, but my recollection is that the government need

24    not establish nexus for forfeiture of ammunition in

25    relation to a firearms case.  If my recollection is

1    correct, I am not putting the jury through that.

2           THE COURT:  Okay.  Well, we will let you

3    refresh your recollection.  What we can do is just --

4    you notify Donna as soon as you can so we can get this

5    figured out so we don't have to make the jury wait if in

6    fact they do reach a verdict.

7           And I'm planning on -- just so you know, I'm

8    planning on telling them -- at a point in time where

9    maybe it's coming to the end of the case, just letting

10   them know that I'm going to let them decide how late

11   they stay, because the snow is supposed to come at like

12   midnight, 1:00 in the morning, and if they want to

13   deliberate longer here, I just think they should be

14   allowed to do that, and so we should all just be

15   prepared to stay nearby.  Obviously I have to let the

16   marshals know because the Court obviously has to stay.

17   It's an open proceeding.

18          MR. FALKNER:  I'm prepared to do whatever your

19   Honor wishes.

20          Just for simplification, my argument in the

21   morning was taken off the reserve list so I'm not --

22   there's no indication I need to be in Boston in the

23   morning.

24          THE COURT:  Okay.  All right.  Excellent.

25          Okay.  So let's go back.  We'll reconvene in

1    maybe fifteen minutes.  The sooner the better,

2    obviously, so we can get this done.

3              MR. FALKNER:  Thank you, your Honor.

4              MS. KRASINSKI:  Thank you.

5              (Conclusion of chambers conference)

6              (Chambers conference)

7              THE COURT:  We have a juror question, and I

8    have a proposed answer as well.  It came in as you were

9    gathering.

10             (Question given to counsel for review)

11             THE COURT:  All right.  Just for the record,

12   jury question No. 1:

13             Is there any documentation or documented

14   evidence that can be provided to substantiate the ATF

15   testimony regarding confirmation of interstate commerce

16   of the firearms?

17             My proposed answer is:

18             No, you may only consider the evidence that

19   was presented at trial.

20             That seems fairly straightforward.

21             MS. KRASINSKI:  Well, the only question that I

22   have is that they could look at -- they would have to do

23   it in the courtroom, but theoretically they could look

24   at the markings on Government's Exhibit 7 themselves

25   that show the marking related to it being imported from

1    China, and that is in evidence.

2              THE COURT:  How about then instead of saying

3    no I say:

4              You may only consider the evidence that was

5    presented at trial.

6              MR. FALKNER:  I think that's fine, your Honor.

7              THE COURT:  Is that sufficient?

8              MS. KRASINSKI:  (Nods affirmatively.)

9              THE COURT:  It takes the "no" out of it, which

10   obviously would exclude that, but that's okay?

11             MS. KRASINSKI:  I think so, your Honor.

12             THE COURT:  There were also photographs that

13   were presented of the gun, so "you may only consider the

14   evidence that was presented at trial" would encompass

15   that.

16             MR. FALKNER:  I think that's the only proper

17   answer, your Honor.

18             THE COURT:  Does the government agree?

19             MS. KRASINSKI:  (Nods affirmatively.)

20             THE COURT:  Okay.  All right.

21             Let me hear -- do you have any other

22   information for me on this forfeiture, these forfeiture

23   issues?

24             MS. KRASINSKI:  So ATF counsel informs us that

25   we are required to prove nexus related to ammunition

1   even in just the forfeiture context.

2           Candidly, I'll tell the Court that if the jury

3   comes back today, I am not putting the jury through

4   that.  If the jury continues their deliberations into

5   tomorrow, I think that is something that I can

6   streamline very quickly through Agent Forte.  But if

7   they come back today, I'm not going to do that.

8           ATF counsel tells us, I don't have a case to

9   cite for the Court, that "involved in", it typically

10  uses its common meaning, but that it usually means

11  seized in the same context on the same date, and that's

12  the best we could do in limited time.

13          THE COURT:  All right.  And what I've found

14  thus far in terms of research, what they've found, is

15  that the phrase "involved in" is given expansive

16  interpretation, and so facilitation would narrow the

17  definition as opposed to expand it.

18          So at this point at least that's what we've

19  found.  We're still looking.

20          But if that is the case and that bears out in

21  the law, it seems to me that narrowing that definition

22  doesn't make sense.

23          We did find case law, though, that requires

24  there be a substantial connection, and I don't know if

25  that is included in these instructions.

1          We're still looking at this.  I haven't

2    resolved it finally yet.

3          Did you have anything further?

4          MR. FALKNER:  I spent a good amount of the

5    time that we were out trying to research the issue, and

6    so far I'm coming up relatively empty-handed.

7          THE COURT:  Okay.  All right.

8          MR. FALKNER:  I would just ask vis-à-vis the

9    jury question if when Mr. Irish is brought into the

10   courtroom, if I can have a moment to consult with him to

11   see whether he has any other input.  I did inform him

12   that he would have some input.

13         THE COURT:  Here's what we're going to do on

14   that.  My practice is to keep the jury in the

15   deliberation room unless there's some reason to bring

16   them to the courtroom because it just takes so much time

17   to orchestrate that.  It takes away from their ability

18   to continue deliberating.

19         So what I intend to do is to make sure you

20   have a copy for your client and your records of the

21   actual question and then a copy of the instruction I

22   intend to send back into the deliberation room.

23         If there's some reason that we would need to

24   bring them out and have me speak to them, I'll do it.  I

25   want to make sure he obviously has access to everything,

1    but ultimately I don't see this as something I want to
2    interrupt deliberations for.
3              MR. FALKNER:  So you intend to send a written
4    response rather than respond orally?
5              THE COURT:  Correct.  Correct.
6              And I want to make sure I have my JA type up
7    and print out for you and your client the actual answer
8    that I'll give.  So this is obviously not the actual
9    answer that we'll send in.
10             MR. FALKNER:  Understood.
11             THE COURT:  All right.
12             Okay.  So let me get you the final version of
13   this and bring you copies so that you can take that down
14   to him.
15             MR. FALKNER:  Thank you, your Honor.
16             THE COURT:  So just go ahead and stay here, if
17   you would.
18             And I don't think we need our court reporter
19   to just transfer those.  We'll just make sure that
20   everybody gets the final copy of that document I'm
21   sending in to the jury to answer that question.
22             And we're all in agreement that the answer
23   that we've proposed is okay with everybody, we're all in
24   agreement on it?
25             MS. KRASINSKI:  Yes.

1            MR. FALKNER:  Yes.

2            THE COURT:  Okay.  Remove the word "no."

3            MR. FALKNER:  Thank you, your Honor.

4            (Conclusion of chambers conference)

5            (Chambers Conference)

6            THE COURT:  All right.  So we're looking

7    further at the forfeiture issue, studying this, and I

8    think we've come full circle and think that I should

9    rely on the statutory language that's there.

10           The substantial connection language comes from

11   a wholly different statute.  So "involved in or used

12   in."

13           I do have a proposal for the government though

14   in terms of just making this even simpler, which would

15   be to just decide not to go after the ammo.

16           MS. KRASINSKI:  That's fine, your Honor.

17           THE COURT:  You're willing to do that?

18           MS. KRASINSKI:  I am, your Honor.

19           THE COURT:  Because then it's just you would

20   be arguing on forfeiture.  The arguments would be more

21   limited.  And it's going to depend obviously on which

22   gun they find or ultimately they would have to make a

23   separate forfeiture finding.  We won't know which gun.

24           I've tried to come up with a special verdict

25   form that might work, and there's just nothing that

1  wouldn't create unanimity problems, because in this case

2  they only have to find one gun and if the special

3  verdict form is written to separate out findings with

4  respect to each gun, it's a very, very complicated thing

5  to do without suggesting to a jury that they have to

6  make unanimous findings either not guilty or guilty with

7  respect to each gun, and ultimately the government

8  simply needs to prove one gun.

9        So I have contemplated a special verdict, we

10  have tried writing one, and each time I've studied it it

11  seems to raise more problems than it solves.

12        I agree that knowing which gun might make your

13  forfeiture argument somewhat more simple, but at least

14  we wouldn't have to have added evidence.

15        MS. KRASINSKI:  That's fine, your Honor.

16        THE COURT:  All right.

17        MS. KRASINSKI:  I really have heartburn about

18  putting the jury through it anyway just as a practical

19  matter.

20        THE COURT:  It's me they're going to be upset

21  with.  Don't worry.  I'll take the hit.

22        So ultimately I think I'm going to take the

23  ammo out of the forfeiture instruction, but basically

24  we're going to keep it as I had originally proposed, and

25  I'll get rid of "together with any additional evidence

1    offered."

2              That's my ruling.  I'm going to go try to

3    finalize that.

4              Does anybody want to say anything else?  Have

5    you been enlightened any further?  Anything you can

6    share with me?

7              MR. FALKNER:  I haven't, your Honor.

8              I would just -- I guess I object and ask for

9    the language as to that it be used in facilitating the

10   offense.

11             I understand your ruling.  I'm just objecting

12   for the record.

13             THE COURT:  And I understand.

14             Just for the record, too, if we could come up

15   with a special verdict form that made it clear which gun

16   and the jury were to convict and find both guns, there

17   would be no need for forfeiture, right?

18             MR. FALKNER:  Right.

19             THE COURT:  That was my motivation for coming

20   up with a special verdict form.  In addition, you

21   requested it and I thought perhaps the government would

22   agree to it, but ultimately I have not been able to come

23   up with a form that wouldn't introduce unanimity

24   problems and confusion so --

25             MR. FALKNER:  I don't know if it's too late

1  and if your Honor would consider giving them a new

2  verdict form when you've already given them a verdict

3  form.

4          THE COURT:  Well, that would be another issue

5  we would obviously all have to talk about.  So that

6  raises concerns as well.

7          It's the ammo and the issue of the forfeiture

8  that made me start to think about the possibility of a

9  special verdict form helping you make your arguments,

10 but ultimately I think we've got to divide this up.

11 Ultimately the first question for them is more simple

12 and they don't have to make findings as to which gun.

13 They simply need to find with respect to one gun.

14          (Note is brought in and given to the Court)

15          Okay.  They have a verdict.  So I'm glad we

16 finalized this.  Now we'll just need to type it if in

17 fact there's a conviction.

18          You were able to talk with your client?

19          MR. FALKNER:  About the question, yes.

20          THE COURT:  Okay.  All right.

21          All right.  Thank you.

22          (Conclusion of chambers conference)

23          (IN COURT - JURY PRESENT)

24          THE COURT:  All right.  I understand the jury

25 has reached a verdict.

1           Who is the jury foreperson?

2           (Juror raises his hand)

3           THE COURT:  All right.  And has the jury

4   reached a unanimous verdict?

5           THE JURY FOREPERSON:  Yes.

6           THE COURT:  All right.  Would you please hand

7   the verdict form to the courtroom deputy.

8       (Deputy clerk gives the verdict form to the Court)

9           THE COURT:  All right.  Your verdict will now

10  be read aloud by the courtroom deputy.  Please listen

11  carefully, because after the verdict is read aloud the

12  lawyers may ask to poll the jury, which means that the

13  courtroom deputy would just ask each one of you

14  individually if the verdict as read aloud is your

15  individual verdict.

16          THE CLERK:  The United States District Court

17  for the District of New Hampshire, United States of

18  America versus Johnathon Irish, criminal case number

19  19-cr-251-LM, verdict form:

20      We, the jury, in the above captioned case return the

21  following verdict:

22          Question 1:  As to Count 1, which charges the

23  defendant with being a prohibited person in possession

24  of a firearm, guilty.

25          Signed by the foreperson on today's date.

1          THE COURT:  Would counsel like to have the

2    jury polled?

3          MR. FALKNER:  Please, your Honor.

4          THE COURT:  All right.

5          THE CLERK:  Foreperson and members of the

6    jury, listen to the verdict as the Court has recorded

7    it.  I will read it again, and then I will ask you each

8    individually if this is your verdict.

9          Verdict:  We, the jury in the above captioned

10   case, return the following verdict:

11         As to Count 1, which charges the defendant

12   with being a prohibited person in possession of a

13   firearm:  Guilty.

14         Juror No. 1, is that your verdict?

15         THE JUROR:  Yes.

16         THE CLERK:  Juror No. 3, is that your verdict?

17         THE JUROR:  Yes.

18         THE CLERK:  Juror No. 4, is that your verdict?

19         THE JUROR:  Yes.

20         THE CLERK:  Juror No. 5, is that your verdict?

21         THE JUROR:  Yes.

22         THE CLERK:  Juror No. 6, is that your verdict?

23         THE JUROR:  Yes.

24         THE CLERK:  Juror No. 7, is that your verdict?

25         THE JUROR:  Yes.

1          THE CLERK:  Juror No. 8, is that your verdict?

2          THE JUROR:  Yes.

3          THE CLERK:  Juror No. 9, is that your verdict?

4          THE JUROR:  Yes.

5          THE CLERK:  Juror No. 10, is that your

6   verdict?

7          THE JUROR:  Yes.

8          THE CLERK:  Juror No. 11, is that your

9   verdict?

10          THE JUROR:  Yes.

11          THE CLERK:  Juror No. 12, is that your

12   verdict?

13          THE JUROR:  Yes.

14          THE CLERK:  Juror No. 13, is that your

15   verdict?

16          THE JUROR:  Yes.

17          THE COURT:  All right.  In view of your

18   verdict that the defendant, Johnathon Irish, is guilty

19   of being a prohibited person, a felon, in possession of

20   a firearm, you have one more task to perform before I

21   discharge you.  You must now decide whether the

22   defendant should surrender to the government his

23   ownership interest in certain property as a penalty for

24   committing a crime.  We call this a forfeiture.  The

25   government alleges that the defendant should have to

1    surrender the following property to it:  a Sig Sauer

2    pistol and a Catamount Fury shotgun.

3            Under federal law, any person who is convicted

4    of being a felon in possession of a firearm shall

5    forfeit any firearm "involved in or used in" that

6    violation.  Therefore, the government is entitled to

7    forfeiture if it proves by a preponderance of the

8    evidence that the firearms listed above were involved in

9    or used in the offense for which you've already found

10   the defendant guilty.

11           Note that this standard of proof is different

12   than the one you used in determining whether the

13   defendant was guilty of the crime charged.  My previous

14   instructions on the government's burden of proof

15   regarding your verdict on the guilt of the defendant do

16   not apply to your deliberations at this phase of the

17   proceedings regarding forfeiture.  In deliberating and

18   deciding your verdict on forfeiture, I instruct you that

19   the government need only prove by a preponderance of the

20   evidence that the specified firearms were involved in or

21   used in the defendant's crime.  The government is not

22   required to prove forfeiture beyond a reasonable doubt.

23           I repeat, the government must establish by a

24   preponderance of the evidence that the firearms the

25   government alleges are subject to forfeiture were

1   involved in or used in the defendant's crime.  This

2   burden of proof is easier to meet than the burden of

3   proof you applied in the guilt phase of your

4   deliberations, which was beyond a reasonable doubt.  To

5   meet this burden, the government must convince you that

6   it is more likely than not that the firearms described

7   were involved in or used in the crime for which you

8   found the defendant guilty.

9            While deliberating, you may consider any

10  evidence, including testimony, admitted during the

11  trial.  All of my previous instructions regarding direct

12  and circumstantial evidence, credibility of witnesses,

13  and your duty to deliberate apply with respect to your

14  deliberations regarding forfeiture.  However, you must

15  not re-examine your previous determination regarding the

16  defendant's guilt for the crime charged.  I instruct you

17  specifically not to discuss in your forfeiture

18  deliberations whether the defendant is guilty or not

19  guilty of the firearms violation.

20           I further instruct you that you should not

21  consider what might happen to the property in

22  determining whether it is subject to forfeiture.  For

23  example, you should disregard any claims that other

24  persons may have to the property.  Such issues will be

25  resolved by the Court at a later time.  Your sole

1    concern is whether the government has proven that it is

2    more likely than not that the firearms described were

3    involved in or used in the crime for which you have

4    found the defendant guilty.

5           You will render your verdict using a special

6    verdict form.  The special verdict form lists each of

7    the items of property the government alleges are subject

8    to forfeiture, the Sig Sauer pistol and the Catamount

9    Fury shotgun, and asks whether each item is subject to

10    forfeiture.  You may answer each question on the special

11    verdict form by simply putting an "X" or a check mark in

12    the space provided next to the words "YES" or "NO."

13           You must reach a unanimous verdict as to

14    whether the government has met its burden of proof

15    regarding forfeiture on each individual item.  That is,

16    everyone must agree that the government did or did not

17    prove by a preponderance of the evidence that the

18    individual item listed was used in or involved in the

19    defendant's crime.

20           When you have arrived at a verdict, you will

21    notify the court security officer and you'll be brought

22    back into the courtroom where the foreperson will render

23    the verdict orally, just as you did with respect to the

24    guilt phase of the trial.

25           Obviously, we're coming close to 5:00 p.m.

1    You're going to hear no more than five minutes of

2    argument by counsel, and then you will retire to the

3    deliberation room and you will take with you a copy of

4    my instructions that I just read to you.  You'll have

5    the verdict form, you'll have the original verdict form

6    for forfeiture as well, and you will follow that verdict

7    form to answer the questions you are deliberating.

8           Now you will decide -- I'm going to let you

9    decide as a group whether you continue to stay through

10   later today.  I've made arrangements if in case you do

11   want to stay.  There is snow in the forecast.  It is

12   supposed to hit, I've been told, around midnight

13   tonight.  So if there is snow tomorrow, we may start

14   later in the day tomorrow.  I'll obviously be

15   communicating that with you through the court reporter

16   (sic), but I'm going to let you make that decision with

17   respect to your deliberations with respect to

18   forfeiture.

19          You're now going to hear no more than five

20   minutes from counsel, and I will be timing that.  I will

21   interrupt if it goes beyond five minutes.

22          Attorney Krasinski.

23          MS. KRASINSKI:  Ladies and gentlemen, I'm not

24   going to rehash all the evidence that we discussed

25   earlier.  I'll just simply say the evidence establishes

1  by a preponderance of the evidence that both the pistol

2  and the shotgun were involved in this offense.

3          Thank you.

4          THE COURT:  Attorney Falkner.

5          MR. FALKNER:  I also will be substantially

6  shorter than the time allotted.

7          I don't know which firearm you have found that

8  he possessed, or both.  I have no way to know that.  I

9  simply point out to you when you're considering whether

10  a firearm was involved in the offense, I don't think

11  that it's enough for you to simply say, well, he

12  possessed both, if you do not think that he possessed

13  one of the firearms or you do not think one of the

14  firearms was in interstate commerce.  I think in order

15  for you to find that it was involved in the offense,

16  obviously you will heed the Judge's instructions, but I

17  just ask you to look carefully -- if you found him

18  guilty based only on one of those two firearms, to

19  carefully consider whether that other firearm actually

20  was indeed involved in the offense and not to just

21  simply say, well, both were found together and that's

22  enough.

23          Thank you.

24          THE COURT:  Thank you.

25          All right.  You will return to the

1   deliberation room.  You will be given a copy of the

2   instructions and begin your deliberations.

3         And you will communicate to the court security

4   officer, my courtroom deputy, whether you want to stay

5   longer to continue deliberating or whether you want to

6   leave.

7         If we do leave and we come back, then again

8   the same -- my same instructions apply and you will not

9   be allowed to talk about the case with anyone and we

10  will come back and I'll give you a time on that for

11  tomorrow, but I want you to be able to decide whether or

12  not you stay past 5:00 o'clock.  All right?

13        MR. FALKNER:  Your Honor, may we be seen

14  before the jury is sent out?

15        THE COURT:  Yes.

16        (SIDEBAR)

17        MR. FALKNER:  I just wanted to state my

18  objection for the record to the instructions as given

19  before the jury was sent out to deliberate in the sense

20  that I had requested a clear and convincing evidence and

21  intention to use the firearm in the offense instruction

22  previously which were overruled.

23        And finally, that I had requested a more

24  expansive definition of "involved in the offense," and I

25  wanted to preserve those objections.

1          THE COURT:  I appreciate that.  Each is

2    preserved and overruled.

3          MR. FALKNER:  Thank you, your Honor.

4          (CONCLUSION OF SIDEBAR)

5          THE COURT:  Okay.  All right.  Let the jury

6    begin deliberations on the forfeiture.

7          (Jury deliberates)

8          (IN COURT - JURY PRESENT)

9          THE COURT:  All right.  I understand the jury

10   has reached a verdict.

11         I'm going to ask the foreperson, has the jury

12   reached a unanimous verdict?

13         THE JUROR FOREPERSON:  Yes, your Honor.

14         THE COURT:  All right.  Would you please hand

15   the verdict form to the courtroom deputy.

16      (Courtroom deputy gives verdict form to the Court)

17         All right.  The same rules apply.  It will be

18   read aloud.  Listen carefully because if a lawyer wants

19   to poll the jury, the same process will be used.

20         THE CLERK:  The United States District Court

21   for the District of New Hampshire, United States of

22   America versus Johnathon Irish, criminal case number

23   19-cr-251-LM, special verdict form regarding forfeiture:

24         We, the jury, return the following special

25   verdict as to the following properties in which the

1    government has alleged that the defendant, Johnathon

2    Irish, has an interest:

3            1.   Was one Sig Sauer 1911 .45 caliber pistol,

4    serial number GS 34120, involved in or used in the crime

5    for which the defendant was convicted in Count 1?

6            Answer:  Yes.

7            Question 2:  Was one Zijiang Machinery Co.,

8    Model Catamount Fury, 12-gauge shotgun, serial number

9    CAT-002586, involved in or used in a crime for which the

10   defendant was convicted in Count 1?

11           Answer:  Yes.

12           Signed by the foreperson on today's date,

13   February 12, 2020.

14           THE COURT:  Would you like the jury polled,

15   either counsel?

16           MR. FALKNER:  Please, your Honor.

17           THE COURT:  All right.

18           THE CLERK:  Foreperson and members of the

19   jury, I'm going to poll you as to the special verdict I

20   just read aloud.

21           Juror No. 1, is that your verdict?

22           THE JUROR:  Yes.

23           THE CLERK:  Juror No. 3, is that your verdict?

24           THE JUROR:  Yes.

25           THE CLERK:  Juror No. 4, is that your verdict?

1          THE JUROR:  Yes.

2          THE CLERK:  Juror No. 5, is that your verdict?

3          THE JUROR:  Yes.

4          THE CLERK:  Juror No. 6, is that your verdict?

5          THE JUROR:  Yes.

6          THE CLERK:  Juror No. 7, is that your verdict?

7          THE JUROR:  Yes.

8          THE CLERK:  Juror No. 8, is that your verdict?

9          THE JUROR:  Yes.

10          THE CLERK:  Juror No. 9, is that your verdict?

11          THE JUROR:  Yes.

12          THE CLERK:  Juror No. 10, is that your

13 verdict?

14          THE JUROR:  Yes.

15          THE CLERK:  Juror No. 11, is that your

16 verdict?

17          THE JUROR:  Yes.

18          THE CLERK:  Juror No. 12, is that your

19 verdict?

20          THE JUROR:  Yes.

21          THE CLERK:  Juror No. 13, is that your

22 verdict?

23          THE JUROR:  Yes.

24          THE COURT:  All right.  We have come to the

25 end of the day and the end of your service.

1          I want to thank you publicly for your service.

2     It's not often that we as citizens get to serve our

3     country, but you really are serving your country by

4     serving as a juror in this case.

5          You are officers of the court, and we all

6     honor your service.

7          You probably noticed when you walk into the

8     courtroom or leave the courtroom, everyone in this room

9     stands, including me.  We are very thankful to you for

10    your time, your attention.

11         I'm going to ask you just to stay one second

12    longer so that I can just thank you personally and come

13    in and say goodbye to you, so if you would just wait for

14    me for a very short moment so I can send you off

15    properly, but thank you very much.

16              (IN COURT - NO JURY PRESENT)

17              THE COURT:  All right.  The sentencing hearing

18    date in this case is May 28th, this year, at 10:00 a.m.

19              Anything further?

20              MS. KRASINSKI:  No, your Honor.

21              MR. FALKNER:  No, your Honor.

22              THE COURT:  All right.  The defendant is

23    remanded and Court is adjourned.

24              (Jury trial concluded at 5:10 p.m.)

25

63

C E R T I F I C A T E

1

2

3

4        I, Susan M. Bateman, do hereby certify that

5    the foregoing transcript is a true and accurate

6    transcription of the within proceedings, to the best of

7    my knowledge, skill, ability and belief.

8

9

10   Submitted: 3-24-20          /s/   Susan M. Bateman   ___
                                 SUSAN M. BATEMAN, RPR, CRR
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25