*NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO 6/25/20

```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE


* * * * * * * * * * * * * * * * *
                                 *
UNITED STATES OF AMERICA         *
                                 *
                                 * No. 1:19-cr-00251-LM-1
          v.                     * February 6, 2020
                                 * 2:30 p.m.
                                 *
JOHNATHON IRISH,                 *
                                 *
                                 *
               Defendant.        *
                                 *
* * * * * * * * * * * * * * * * *



                    TELEPHONE CONFERENCE

           BEFORE THE HONORABLE LANDYA B. McCAFFERTY



APPEARANCES:


For the government:      AUSA Anna Z. Kraskinski
                         (Via telephone)
                         AUSA Kasey Weiland
                         (Via telephone)
                         United States Attorney's Office



For the Defendant:       Benjamin L. Falkner, Esq.
                         (Via telephone)
                         Krasnoo Klehm & Falkner LLP




Court Reporter:          Brenda K. Hancock, RMR, CRR
                         Official Court Reporter
                         United States District Court
                         55 Pleasant Street
                         Concord, NH 03301
                         (603) 225-1454
```

1       P R O C E E D I N G S

2           THE COURT: Good afternoon, Counsel. This is Judge

3   McCafferty. The case name for the court reporter is United

4   States of America versus Jonathan Irish, Criminal Number

5   19-cr-251-LM.

6           Counsel, just go ahead and introduce yourselves for

7   the court reporter.

8           MS. KRASINSKI: This is Anna Krasinski. Kase Weiland

9   is also here.

10          MR. FALKNER: And this is Benjamin Faulkner on behalf

11  of Mr. Irish.

12          THE COURT: All right. I just had some questions,

13  some follow-up questions, after the hearing, and so I thought I

14  would just get you on the phone rather quickly to resolve some

15  of these questions that I have.

16          Let me start by just getting some clarity with respect

17  to the issue of unanimity, jury unanimity. Now, the government

18  originally indicated it wanted an instruction that the jury was

19  not required to be unanimous with respect to each gun, that

20  they could find one gun and that was sufficient. At the

21  hearing today there seemed to be -- and I could be

22  misremembering this, but it seems to me that the government was

23  perhaps changing its position on that based on its desire that

24  there be a finding so that, if he is convicted, he could be

25  subject to the enhancement for three or more firearms.

|   |   |
|---|---|
| 1 | Is that correct, Attorney Krasinski? |
| 2 | MS. KRASINSKI: No, your Honor. |
| 3 | THE COURT: Thank you. Why don't you clarify that, |
| 4 | then, for me and my clerks. |
| 5 | MS. KRASINSKI: I think we still believe the unanimity |
| 6 | instruction is appropriate. It may mean -- |
| 7 | THE COURT: When you say "unanimity instruction is |
| 8 | appropriate," do you mean the one that you've proposed that no |
| 9 | unanimity is required? |
| 10 | MS. KRASINSKI: Correct, your Honor. I think that's |
| 11 | what the case law supports. |
| 12 | THE COURT: And I agree with that. I think the |
| 13 | confusion may stem from you saying, "I want a unanimity |
| 14 | instruction." So, that may be where ultimately I got confused. |
| 15 | You're asking for an instruction that unanimity is not |
| 16 | required? |
| 17 | MS. KRASINSKI: Correct. Maybe I should call it a |
| 18 | lack-of-unanimity instruction. |
| 19 | THE COURT: Okay. And, Attorney Faulkner, do you |
| 20 | disagree with that? |
| 21 | MR. FALKNER: Do I -- I think it may be something that |
| 22 | I would like to address in my briefing, since we're briefing |
| 23 | anyway. |
| 24 | THE COURT: Well, I thought I had included that issue, |
| 25 | but I think I included it simply because of my own confusion on |

1   the positions with respect to that instruction, and I'm not
2   sure -- my understanding is that the government does not --
3   that a unanimity request is not necessary in this case because
4   the guns were all found in the same box in the same place, they
5   were seized from the same -- seized at the same time and in the
6   same area.
7           MR. FALKNER:  And, your Honor, I think -- and I'm not
8   sure it's my position, and I think I do need to research it a
9   bit more and potentially brief it.  My concern is that in a lot
10  of these lack of unanimity instruction cases the guns are all
11  located together, but the guns are seized in the possession of
12  the defendant as opposed to the guns in this case, which are
13  never -- there may be some testimony that links them all
14  together as being in this box and they're seized later
15  together, but they're not seized directly from the possession
16  of the defendant all together, and there is some testimony that
17  separates the guns at various points in time or there is
18  expected to be.  So, for instance, there's expected to be some
19  testimony from the witness Dylan Roosa that Mr. Irish was seen
20  firing one of the weapons in the backyard, which would separate
21  that weapon from the other two weapons, if the other two
22  weapons were still in the box.  So, the weapons are not
23  necessarily always together in the same place, and I'm not sure
24  what the government's going to be able to establish as to that.
25          THE COURT:  Okay.  Well, then, I'll leave that to you

1   in terms of your briefing, and perhaps that is essentially a
2   factual question that ultimately I'll have to determine once we
3   hear all the evidence in the case.
4          Can you shed some light on that, Attorney Krasinski?
5          MS. KRASINSKI:  I anticipate there's going to be
6   testimony that during the time frame alleged in the indictment
7   that the defendant stored all three of these firearms in the
8   box, that he showed them in the box to at least one witness,
9   that he tended on occasion to carry the pistol either on his
10  person or take it out shooting, but that sort of as a general
11  matter he stored all three firearms together in this box in his
12  closet.
13         THE COURT:  Okay.  All right.  Now, let me ask also a
14  question that I have lingering from our hearing this morning
15  with respect to the nexus theory.  My question is one of the
16  three guns, one of the rifles, only one of the three guns has
17  this interstate nexus issue, is my understanding, and it's
18  because that one gun never traveled in interstate commerce nor
19  did any portion of the gun.  I'm sorry.  One of the guns didn't
20  travel in interstate commerce, but a portion of it, the
21  receiver, may have.
22         MS. KRASINSKI:  Correct, your Honor.  The other two
23  firearms we anticipate demonstrating nexus through the
24  traditional way that it is established, that the firearm was
25  shipped or transported in interstate commerce.

1    THE COURT: Okay. And so, with respect to the firearm
2 at issue, there would be sort of three theories. One isn't
3 available, that the firearm at issue traveled in interstate
4 commerce. You don't have that theory available to you. Number
5 two would be, based on the Ohio -- well, actually, not based on
6 the Ohio case -- just based on case law, fairly established
7 case law, that if part of the gun travels in interstate
8 commerce there is a sufficient nexus. And then the third
9 theory was the theory that you were articulating, Attorney
10 Krasinski, about modifications made to the rifle could provide
11 a nexus.
12   So, I just need clarity on the theory, the nexus
13 theory that you intend to argue, and the reason I need to get
14 clarity on this before I receive your briefing is I really want
15 to have an understanding of what I'm going to be putting in
16 jury instructions. Obviously, I will wait to get your briefing
17 before I finalize those, and we'll obviously have our closing
18 conferences on jury instructions, but I want to know what the
19 government needs to prove before the case starts.
20   So, tell me, are you going to argue both of those
21 nexus theories, Attorney Krasinski, or just one?
22   MS. KRASINSKI: So, I think our argument is going to
23 be that his possession of the firearm was in or affecting
24 commerce. I do not intend to argue that because a portion of
25 it traveled in interstate commerce before the firearm was

1  manufactured that that is sufficient.  I'm not going to argue
2  that.
3          THE COURT:  Okay.
4          MS. KRASINSKI:  I do intend to argue that his
5  possession of the firearm was in or affecting commerce both
6  because he added aftermarket firearm accessories and had to buy
7  aftermarket accessories that affected interstate commerce and
8  sort of more broadly that possession and manufacture of
9  firearms is an economic activity involving a pervasively
10 regulated commodity, which, in the aggregate, affects
11 interstate commerce.
12         THE COURT:  We have looked at that fairly -- I mean,
13 obviously, we've been looking into it since the hearing.  That
14 theory I'm going to need briefing on, which, obviously, I did
15 ask you for.  I'm a little concerned about that theory.  But
16 hold on one second.
17                            (Pause)
18         THE COURT:  Yeah.  We have been studying this issue
19 somewhat, and the second theory, the theory that a part travels
20 in interstate commerce, is sufficient to find nexus for the
21 whole.  There is case law supporting that, and I'm not sure
22 there is case law on this sort of novel Gonzalez possession in
23 or affecting theory.  But, again, you obviously think that is
24 the stronger theory to use in this case, but I'm going to need
25 to see briefing on that and, obviously, my clerks will be

1  studying that issue until we get to the trial on Monday and
2  throughout.
3          MS. KRASINSKI:  And, your Honor, if I can find first
4  -- I guess I'm just not aware of case law suggesting that if a
5  part was transported in interstate commerce that that is
6  sufficient.  If I can find that case law and I'm comfortable
7  with that, I will intend to argue it.
8          THE COURT:  Okay.  I know that my clerks thought that
9  there was case law supporting that, I think a Second Circuit
10 decision involving a pipe bomb and part of a pipe bomb.  A
11 Fifth Circuit case.
12         So, in any event, I will, then -- I guess we'll keep
13 the further briefing with respect to this nexus theory, and I
14 would, if you do the research, Attorney Krasinski, and you come
15 to the conclusion that you do want to argue this part of the
16 firearm traveling is sufficient, if that part of the firearm
17 has traveled in interstate commerce while the whole firearm has
18 not, if you want to argue that, please include that in that
19 further briefing.
20         MS. KRASINSKI:  Yes, your Honor.
21         THE COURT:  Okay.  So, we'll keep those two issues,
22 then.
23         One other question that jumped out at me after the
24 hearing, and I apologize that I noticed it after the hearing,
25 now, at our conference that we had before jury selection the

1  government agreed to remove ammunition from consideration
2  before the jury, so we have removed that from the jury
3  instructions, any references to it.  I notice, however, that
4  the Exhibits 9a through 17, 19 through 26 and 27a through 27f
5  are pieces of ammunition, and so I'm just wondering how we
6  square that where that's not something that the jury is going
7  to be considering.
8       MS. KRASINSKI:  Although it's not charged, it is a
9  part -- it's part and parcel to the investigation and the
10 transfer, possession and discovery of everything here.  So, the
11 firearms were stored in a very large, black case, almost like a
12 hard kind of Rubbermaid container, and all of those items were
13 in the case with the firearms.  There were additional items in
14 there as well, a BB gun, a gas mask, a very large size -- I'm
15 trying to think of the -- tactical vest.  So, all of it was
16 found together.  Witnesses will testify that they saw all of it
17 together, that where the defendant stored the firearms he also
18 had all of these other items.
19      We believe it's *res gestae*, although I have to say,
20 your Honor, we did, out of an abundance of caution, include it
21 in our 404(b) notice that we submitted to defense.  And so,
22 it's just part of the conduct here.  It's part of the course of
23 events.  I think it would be really difficult to separate out,
24 which is why we did include it in our 404(b) notice and it is
25 included as items of evidence here.

1       THE COURT: Okay. And, Attorney Faulkner, you don't
2  object?
3       MR. FALKNER: If I could come up with a good basis to
4  do so -- I mean, they're in the box, in the same box with the
5  guns. He's not charged with them, and I don't think that --
6  you know, I think the more prejudicial aspect of all of this is
7  the guns, and I'm not sure that I can argue the guns are
8  unfairly prejudicial.
9       THE COURT: All right. That issue is resolved. All
10 right. Because I note that the ID has been stricken from I
11 think all of the ammunition. So, I just wanted to ask about
12 that.
13      All right. Another question of a sort of similar
14 nature is just going to help clarify for me how some of this
15 evidence comes in. The original seizure of the firearms
16 occurred in November of 2013, because I think that's the date
17 of Government's Exhibit 1, which is the first stipulation --
18 no, I'm sorry. I think the first stipulation is 2015.
19      MS. KRASINSKI: The first stipulation is 2015. Yes,
20 your Honor. The firearms were seized from the defendant, I
21 believe, November 1st, 2013.
22      THE COURT: Right, right. The stipulation is dated
23 2015, but it has the date November 2013 in here as the date of
24 the seizure, and so what I'm wondering is how does the jury
25 square that? His guns are taken from him in November 2013, but

1  he's not a felon.  So, how are you planning on explaining that
2  to the jury, and is there an agreement between you and Attorney
3  Faulkner?  I just want to have that clarified for me.
4          MS. KRASINSKI:  So, I did discuss this with Attorney
5  Faulkner, and we discussed having the agents, you know, just
6  say, "These are the firearms I seized from the defendant, and
7  then they were in FBI's possession until 2015."  You know, "On
8  this particular day I met with the defendant.  He signed this."
9  And I guess we come up with a word other than "stipulation."
10 This document --
11         THE COURT:  Agreement, maybe.
12         MS. KRASINSKI:  Agreement saying that they were his
13 firearms but directing that they be released to Roscoe Whitney
14 and that they were released to Roscoe Whitney.  So, what we
15 discussed was sort of generally laying it out but not going
16 into the details and really not discussing the criminal case,
17 just that the FBI seized the firearms from the defendant, held
18 onto them and then in 2015 released them to Roscoe Whitney at
19 the defendant's direction.
20         THE COURT:  Okay.
21         MR. FALKNER:  Your Honor, if I may?
22         THE COURT:  Yeah.
23         MR. FALKNER:  There's no indication that they were
24 seized because of a criminal charge, and it may be helpful to
25 just have an instruction at the time that anything is discussed

1  about this original seizure that the jury isn't to speculate as
2  to why the FBI may have seized these weapons, something to that
3  effect that doesn't suggest whether it is or is not criminal.
4  I mean, I think it would be unfair, potentially, to suggest
5  that it's not criminal, but that they are just simply not to
6  even speculate as to whether it was criminal or not criminal
7  whatsoever, just they were seized, and that's a fact, and they
8  don't need to worry about why they were seized.
9              THE COURT:  Okay.  All right.  And you agree with
10 that, Attorney Krasinski, an instruction?
11             MS. KRASINSKI:  I don't have a problem with it, your
12 Honor.  I could also elicit -- I mean, at the time they were
13 seized he was not -- I'm fine with an instruction.
14             THE COURT:  Okay.  All right.  If you both come up
15 with some other way to handle this, that's fine.  Let me know.
16 It just struck me as something that was confusing to me.  I
17 don't understand.  Why were they seized?  Can you explain it to
18 me, just so I'm prepared in case something inadvertently gets
19 disclosed?
20             MS. KRASINSKI:  It was seized in relation to the
21 underlying investigation and his ultimate -- he was arrested
22 and charged with aiding and abetting a straw purchase and lying
23 to a federal agent, so it was seized in connection with his
24 underlying felony conviction with that investigation.
25             THE COURT:  All right.  Well, gosh, that seems like --

1   so, the impression that I got -- of course, I know nothing
2   about the case, and the jury is going to sit there and hear
3   this evidence, obviously, and wonder I think the same thing.
4   There's a seizure on November 2013, I think the convictions are
5   in 2014, and then there's this case.  I think the jury is going
6   to wonder what was involved in that first seizure, what
7   activity, what criminal activity potentially is going on there,
8   and so I wonder if there's a way -- because, obviously, it's
9   just sequential confusion, in essence, because the seizure
10  occurred before the convictions, but because they are related
11  I'm just wondering why you wouldn't tell the jury that.  He's
12  conceding he's a felon.  He's conceding --
13          MR. FALKNER:  Your Honor, if I may?
14          THE COURT:  Yeah.  No, that doesn't -- go ahead.
15          MR. FALKNER:  I'm concerned with telling -- with
16  sending a message to the jury that his convictions have
17  anything to do with the seizure of these firearms --
18          THE COURT:  Right.
19          MR. FALKNER:  -- because I think that's potentially
20  extraordinarily unfairly prejudicial.
21          THE COURT:  Yeah.  No, I agree.  Because the
22  convictions are false statements, right?
23          MS. KRASINSKI:  A false statement and, yes, aiding and
24  abetting this false statement in connection with the purchase
25  of a firearm.  I don't have a problem if the way we want to

```
1    handle this is elicit that at the time they were seized his
2    possession of them was lawful but at the time of release,
3    because we have got the stipulation, we've got the date of
4    conviction, he was a felon and so he couldn't have them back.
5              THE COURT:  Yeah.
6              MS. KRASINSKI:  If that's the way, I'm happy to do it
7    that way.
8              THE COURT:  Yeah.
9              MR. FALKNER:  I think that would be great.
10             MS. KRASINSKI:  I don't have a problem with that.
11   That's fine.
12             THE COURT:  All right.  Well, why don't you guys put
13   together a stipulation to that effect that could be introduced
14   at the same time the testimony is coming in.
15             MS. KRASINSKI:  Do you want us just to elicit that
16   through the agent?
17             THE COURT:  That's fine.  However the two of you want
18   to get that in, that's fine.  If it's a stipulation, obviously,
19   we'll deal with it.  If you just agree to elicit it, that's
20   fine, too.
21             MS. KRASINSKI:  Okay.
22             THE COURT:  All right.  I think that covers it.  Oh,
23   I've thought further about the download from the phone, Quick
24   Facts Felon in Possession of a Firearm, and I am going to grant
25   the motion to exclude that.  I just think the evidence is only
```

1  minimally relevant on consciousness of guilt.  It sounds as
2  though the government has reams of evidence on consciousness of
3  guilt, people who are going to testify that Mr. Irish told them
4  various things and made admissions, and I think it has the
5  potential to confuse and mislead the jury and then potentially
6  cause the jury to speculate about the document in a manner
7  potentially prejudicial to the defendant.  So, I am going to
8  grant Document Number 18.
9          I am going to issue a short order just summarizing the
10 hearing and the two issues that there's going to be further
11 briefing on, and I appreciate you being able to do this
12 telephone conference on short notice.
13          Is there anything else?
14          MR. FALKNER:  No, thank you, your Honor.
15          MS. KRASINSKI:  No, thank you.
16          THE COURT:  Thank you all for clarifying those things
17 for me.  I'll see you Monday.  Court's adjourned.
18       (WHEREUPON, the proceedings adjourned at 2:58 p.m.)

C E R T I F I C A T E

I, Brenda K. Hancock, RMR, CRR and Official Court Reporter of the United States District Court, do hereby certify that the foregoing transcript constitutes, to the best of my skill and ability, a true and accurate transcription of my stenotype notes taken in the matter of United States v. Johnathon Irish, No. 19-cr-251-01-LM.

Date: ___3/27/20      /s/ *Brenda K. Hancock*
                      Brenda K. Hancock, RMR, CRR
                      Official Court Reporter