UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.             ) | Criminal No: 19-cr-251-LM |
| ) | |
| JOHNATHON IRISH,         ) | |
|     Defendant           ) | |

**OBJECTION TO DEFENDANT'S MOTION FOR A NEW TRIAL**

I. Introduction.

After a jury trial, Defendant Johnathon Irish was convicted of the unlawful possession of two firearms. Displeased with the verdict, the defendant has filed a motion for a new trial claiming that his trial counsel was so bad that his conduct fell "below the wide range of professionally competent assistance" guaranteed by the Sixth Amendment, thereby entitling him to a new trial. *United States v. Constant*, 814 F.3d 570, 579 (1st Cir. 2016). *See Supplement to Defendant's Motion For a New Trial*, ECF No. 66.

Specifically, Irish claims that his attorney was ineffective because he failed to call Irish's wife as a witness to elicit evidence that she and her lover "set him up," failed to cross-examine other witnesses about whether he was framed, and failed to conduct an adequate investigation to develop this defense. To support this claim, Irish presents information provided by witness V.M.—ironically, the former girlfriend of Irish's wife's lover. But Irish does not establish, or even allege, that his wife would have waived the spousal testimonial privilege—essentially, he has failed to establish that she would have, in fact, testified at all. That dooms Irish's claims.

Irish presents a number of other claims, all of which also fail. He asserts that his attorney was ineffective by failing to object to prejudicial 404(b) evidence—the ammunition and other

items found inside the case with Irish's firearms. But this evidence was not subject to Rule 404(b). He claims that trial counsel was ineffective for failing to object to leading questions, but concedes that this alone was not prejudicial. Irish also asserts that trial counsel was ineffective by failing to impeach witnesses with inconsistent statements and by failing to abide by Irish's "orders NOT to object to specific evidence," but fails to develop these claims in any meaningful way. *Pro Se Motion for a New Trial*, ECF No. 42. Irish's motion should be denied.

II.     Background.

In December of 2014, Irish was convicted of a felony. Gov't Trial Exh. 36 (stipulation). Because of his felony conviction, Irish is legally prohibited from possessing firearms. Despite this, in October of 2017, Irish convinced a family friend, Roscoe Whitney—a man Irish refers to as "grandpa"—to give Irish two firearms that had previously belonged to him. ECF No. 48, at 84, ln. 5-12, 20-22; *Id.* at 85, ln. 17-20. In addition, Irish obtained a firearm that previously belonged to a friend. *See*, ECF No. 56, at 42, ln. 2-12; *Id.* at 47, ln. 11 – 48, ln. 4; *Id.* at 49, ln. 6 – 50, ln. 5. Irish's former friend Dylan Roosa, and mother-in-law Elizabeth Millett saw Irish with firearms on various occasions. ECF No. 56, at 7, ln. 1 – 8, ln. 14; *Id.* at 60, ln. 15 – 61, ln. 3; *Id.* at 66, ln. 21 – 67, ln. 2. Irish told his neighbor and boss, Peter Dugay, that he was armed and Irish cleared a pistol in Dugay's car. ECF No. 48, at 10, ln. 9-10; *Id.* at 12, ln. 15 – 14, ln. 5. Irish told a friend, David Marcotte, that he had a pistol in the house. ECF No. 56, at 45, ln. 6-10.

Then, in October of 2019, Irish learned that his wife had left him. In the aftermath of the breakup, Irish sought to get his firearms, ammunition, and other related items out of his home. First, he gave the guns, ammunition, and magazines to his cousin, Neil Prive. *See* ECF No. 48, at 41, ln. 5-9; *Id.* at 43, ln. 14 – 45, ln. 7; *Id.* at 47, ln. 10-13; *Id.* at 48, ln. 2-12. Then, using his mother as a conduit, he arranged for his cousin to transfer the items to another friend, Gerald

Roya. ECF No. 52, at 35, ln. 1 – 36, ln. 24; Exh. 29D1; Exh. 37. Irish sought to use the firearms as collateral for a loan from both Prive and Roya, but neither agreed. ECF No. 48, at 48, ln. 18 – 49, ln. 17; ECF No. 51, at 32, ln. 15-22. In addition, Irish asked for the guns back from Roya. Roya refused. ECF No. 51, at 38, ln. 9-19.

In an attempt to obfuscate the fact that he had the guns, Irish, with the help of his mother,[2] got Whitney and Roya to sign a transfer note indicating that Whitney gave these items to Roya in October of 2019. Exh. 29D; Exh. 29F; Exh. 30. The note was false—Whitney had not had the firearms years before Roya obtained them from Irish's cousin. *See* ECF No. 48, at 84, ln. 5-12, 20-22; *Id.* at 85, ln. 17-20.

After hearing all the evidence, the jury found Irish guilty of the unlawful possession of two firearms.

### III. Irish Cannot Demonstrate Ineffective Assistance of Counsel.

#### A. Standard of Review.

To prevail on an ineffective assistance of counsel claim, the defendant must meet a two-pronged test, namely that (1) that trial counsel's "representation fell below an objective standard of reasonableness" under the circumstances, and (2) prejudice. *Strickland,* 466 U.S. at 688, 694; *See also U.S. v. Márquez–Pérez*, 835 F.3d 153, 165 (1st Cir. 2016); *Mello v. DiPaulo*, 295 F.3d 137, 142 (1st Cir. 2002); *Scarpa v. DuBois,* 38 F.3d 1, 8 (1st Cir. 1994). Prejudice means that, but for counsel's unprofessional errors, there is a reasonable probability that the result of the trial would have been different. *Harrington v. Richter*, 562 U.S. 86, 104 (2011). A reasonable

---

1 Exhibits refer to exhibits admitted at trial.
2 Irish's mother arranged the transfer of the firearms and arranged for Roya to sign the falsified transfer document by text message. In a recorded jail visit, Irish said that the text messages made it look like she conspired with him to hide the guns. When she rhetorically asks "who told me to write the text messages?", Irish responds "I told you not to f*cking text anybody…I told you to f*cking call." Exh. 37.

probability is one sufficient to undermine confidence in the outcome; "it is not enough to show that the errors had some conceivable effect on the outcome." *Turner v. U.S.*, 699 F.3d 578, 584 (1st Cir. 2012) (internal quotation marks omitted). Although a defendant must prove both prongs, a court need not address both requirements if the evidence as to either is lacking because failure to establish either prong dooms the claim. *Sleeper v. Spencer*, 510 F.3d 32, 39 (1st Cir. 2007); *see also Tevlin v. Spencer*, 621 F.3d 59, 66 (1st Cir. 2010).

Although defendants typically raise claims for ineffective assistance of counsel through collateral challenges under 28 U.S.C. § 2255, a district court may, under limited circumstances, adjudicate an ineffective assistance of counsel claim in the context of a motion under Rule 33, which authorizes the court to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. *See United States v. Ortiz-Vega*, 860 F.3d 20, 30 (1st Cir. 2017)(noting that when a defendant raises a pre-judgment ineffective assistance of counsel claim, "the district court may, and at times should, consider the claim."). In determining whether to exercise its discretion to adjudicate an ineffective assistance of counsel claim raised in a Rule 33 motion, district courts consider: (1) the potential disruption of the proceedings; (2) status of counsel, including whether new counsel must be appointed; (3) whether "the defendant's claim is broad-based and the evidentiary record to consider it is sorely lacking;" and (4) "whether the interests of justice and judicial economy would be served by delaying" proceedings to "conduct an immediate hearing on an under-developed motion." *Id.* at 30-31 (internal quotation marks and alterations omitted).

Here, the record is not sufficiently developed to determine whether trial counsel's perceived failures were, in fact, strategic choices. Rather, to determine whether counsel's performance was deficient in some way, the Court would need to conduct an evidentiary hearing.

4

Because of the broad nature of Irish's claims and that time and testimony that would be required to determine whether counsel's performance were sufficient, delaying sentencing to hold significant evidentiary hearings would not serve the interests of judicial economy or efficiency. The Court, however, should deny Irish's petition without holding such a hearing—even if Irish were able to demonstrate that trial counsel's performance was somehow defective, he cannot establish prejudice. Alternatively, the Court should dismiss the motion without prejudice and Irish should raise these claims in a more appropriate forum—a 2255 petition.

      B. Irish cannot demonstrate prejudice by trial counsel's purported failures to conduct an adequate investigation and to call Irish's wife as a trial witness.

Irish maintains a fanciful notion that he was "set up" by his wife and her lover, and claims that his attorney was ineffective for both failing to adequately investigate this defense and failing to call his wife as a witness. Even assuming that Irish could demonstrate unreasonable performance in these regards, he cannot establish prejudice.[3]

      1. Irish has failed to demonstrate that his wife would have waived the spousal testimonial privilege or the privilege against self-incrimination.

Although Irish claims trial counsel could have called Irish's wife as an adverse witness at trial, Irish fails to establish that his wife would have testified rather than invoke the spousal testimonial privilege. Similarly, he fails to establish that she would have waived her privilege against self-incrimination. Irish's claim fails on this ground alone.

The spousal testimonial privilege "allows one spouse to refuse to testify adversely against the other in criminal or related proceedings." *United States v. Pineda-Mateo*, 905 F.3d 13, 21 (1st Cir. 2018) (quoting *United States v. Breton*, 740 F.3d 1, 9-10 (1st Cir. 2014)) (internal

---

[3] The government does not concede unreasonable performance on the defendant's arguments. But determining whether there was unreasonable performance would require an evidentiary hearing in which the defendant's trial counsel would testify about his decision making. In the government's view, the prejudice prong can be decided on the papers, thereby obviating the need for an evidentiary hearing. If the

quotation marks omitted). The witness-spouse alone has the privilege to refuse to testify and cannot be compelled to testify. *Id.* (quoting *Trammel v. United States*, 445 U.S. 40, at 53 (1980).

And if Irish's fantasy that his wife framed him were true, her testimony would incriminate her. "The Fifth Amendment privilege against self-incrimination is an essential constitutional protection that is widely regarded as a cornerstone of our adversarial system of criminal justice." *United States v. Castro*, 129 F.3d 226, 229 (1st Cir. 1997). For the privilege to attach, "questions and answers need not be directly incriminating. If a reply to a seemingly innocuous question reasonably will tend to sculpt a rung in the ladder of evidence leading to prosecution, the privilege appropriately may be invoked." *Id.*

Here, Irish has failed to demonstrate—by proffer or affidavit—that his wife would have agreed to waive any applicable privilege. Because he cannot show that she would have testified, he cannot demonstrate that there was a "reasonable probability" that "the result of the proceeding would have been different" if she had been subpoenaed as a witness. *See United States v. Wilkerson*, 251 F.3d 273, 279 (1st Cir. 2001).

> 2. Irish cannot demonstrate prejudice from trial counsel's perceived failure to investigate Irish's claim that his wife set him up.

Irish presents three pieces of evidence to support his claim that trial counsel failed to adequately investigate the defense that he was set-up by his wife: (1) information from V.M., Irish's wife's lover's ex-girlfriend, that Irish's wife wanted "put [Irish] away"; (2) video of Irish's wife allegedly assaulting Irish; and (3) deleted body-camera footage of police interactions with Irish's wife. Even with this information, Irish cannot demonstrate prejudice.

According to Irish, the "significant" value of this information would have been in "a cross-examination" of his wife. *See*, ECF No. 66, at 21. But because he cannot establish that she would have waived her spousal testimonial privilege, he cannot establish that any of this

information would have been admissible at trial. (And some of it, like the video of the alleged assault, would have been inadmissible even if she did testify.)

Moreover, while the information shows bias, it does not directly relate to a plot to frame Irish for the illegal possession of firearms. V.M. reported only that Irish's wife made a vague statement of needing Irish "put away" at some point in 2018. *Affidavit of Investigator*, ECF No. 66-1, at 2. Similarly, video of Irish's wife "assaulting" Irish has no relation to whether she framed Irish for the unlawful possession of firearms. Finally, without information about what was on the deleted body camera footage from Littleton Police interactions with Irish's wife, there is no information from which the Court could determine whether they contained relevant information.

Irish claims that this information would have also undermined the credibility of two witnesses—Irish's mother-in-law and Roosa. But there is no evidence that either Irish's mother-in-law or Roosa were aware of any "plot," so there would not have been a good-faith basis to ask them about one.

And even if true, this argument ignores the fact that many of the witnesses who testified about Irish's possession of firearms were Irish's friends and relatives, including Prive (Irish's cousin), Marcotte (Irish's acquaintance), Dugay (Irish's boss and neighbor), Roya (Irish's friend), and Whitney (the man Irish referred to as "grandpa"). For all of these reasons, Irish cannot establish prejudice even if trial counsel failed to properly investigate whether Irish was framed.

      C. Evidence related to the ammunition and other items Irish stored with the firearms was not 404(b) evidence, and was properly admitted at trial.

Irish claims that his counsel was ineffective for failing to object to introduction of other items found in the crate with the firearms, including ammunition, a gas mask, and a tactical vest.

To evaluate his claim it is necessary to explain the history and context of these items presented at trial.

1. Background relating to the magazines, ammunition, and other items.

In 2013, police seized two firearms, including the charged Sig Sauer .45 caliber 1911 pistol, and ammunition from Irish:

> (2) The Sig Sauer .45 caliber 1911 type pistol bearing serial number GS34120, which is depicted in the photographs marked as MMG0034.JPG, MMG0035.JPG, MMG0036.JPG, MMG0037.JPG, MMG0038.JPG, belonged to me. I possessed that firearm ~~throughout 2013, up to and including October of 2013~~. in November 2013.
>
> Date: 7 July 2015  Signature: [signed]
>
> (3) The ammunition depicted in the photographs marked as MMG002.JPG, MMG003.JPG, MMG005.JPG, MMG006.JPG, MMG0017.JPG, MMG0018.JPG, MMG0019.JPG, which was manufactured by Winchester and other manufacturers, belonged to me. I personally possessed that ammunition in the Fall of 2013.
>
> Date: 7 July 2015  Signature: [signed]

Exh. 1; *see also* ECF No. 51, at 63, ln. 12-21. Because Irish could no longer possess these items as a convicted felon, Irish directed the FBI to release them to Whitney in 2015. ECF No. 51, at 70, ln. 9-12; *Id.*, at 73, ln. 9-18; Exh. 1; Exh. 2. The items seized from Irish and released to Whitney included the evidence Irish complains about here:

> 5- 30 round AR magazines loaded with green tip ammunition
> 1- P226 magazine empty
> 12 rounds .40 caliber S&W ammunition
> 1 round of .40 caliber Federal ammunition in magazine
> 3 AR magazines loaded with 88 rounds of Lake City .223 ammunition
> 2 rounds of Red tip ammunition
> 24 rounds of .45 caliber ammunition marked PAC
> 8 rounds of .45 Winchester ammunition
> 2 AR magazines (30 round magazines - empty)
> 1 AR magazine loaded with 18 rounds of blank ammunition
> 12 rounds of .40 caliber in P226 magazine
> 1 green ammunition can with 3 boxes of Winchester .45 ammunition (41 rounds, 71 rounds, 100 rounds)
> 1 empty 10 round AR magazine
> 1 yellow box 25 rounds .45 Speer ammunition
> 1 1911 pistol magazine
> 9 5.56 tracer rounds

> 3- 30 round AR magazines (empty)
> 1- 30 round AR magazine w/ 20 rounds of blank .223 ammunition

Exh. 3, at 2-3; *see also* ECF No. 51, at 76, ln. 23 – 77, ln. 8. Despite being legally prohibited from possessing firearms, Irish e-mailed Whitney paperwork purporting to show that he was no longer prohibited. ECF No. 49, at 80, ln. 13 – 81, ln. 17. In October of 2017, Whitney returned the firearms to Irish. ECF No. 48, at 84, ln. 5-12, 20-22; *Id.* at 85, ln. 17-20.

Two years later, Irish's mother asked Whitney to sign a form purporting to show that Whitney transferred the firearms and ammunition to another individual, Gerald Roya, in October of 2019. ECF No. 48, at 88, ln. 18-23; *see id.*, at 108, ln. 21 – 109, ln. 2; Exh. 30. The false transfer document includes "Misc. Magazines and ammunition":



Exh. 30; *see also* ECF No. 48, at 93, ln. 1-9. Although he signed the document, Whitney was not in possession of the firearms, magazines, or ammunition in 2019, and never gave these items to Roya. *Id.*, at 93, ln. 17-24.

In actuality, Irish transferred a case containing the firearms as well as a "heavy vest you put on and ammo boxes and magazines and stuff like that" to his cousin in November of 2019. *See* ECF No. 48, at 41, ln. 5-9; *Id.* at 43, ln. 14 – 45, ln. 7; *Id.* at 47, ln. 10-13; *Id.* at 48, ln. 2-12.

Irish's cousin then transferred the case with the firearms, ammunition, magazines, and

9

other items to Roya. ECF No. 52, at 35, ln. 1 – 36, ln. 24. Roya inventoried the items in the case and found that, in addition to the firearms, it contained a BB gun, a respirator, a "chem" suit, a "flap" jacket, magazines, and ammunition. ECF No. 52, at 37, ln. 10 – 38, ln. 4.

      2. This evidence was properly admitted at trial and was not subject to Rule 404(b).

Evidence of prior bad acts are inadmissible to prove later "action in conformity therewith." Fed. R. Evid. 404(b). "That prohibition, however, typically refers to evidence that is extrinsic to the crime charged, and is introduced for the purpose of showing villainous propensity." *United States v. Roszkowski*, 700 F.3d 50, 56 (1st Cir. 2012). Rule 404(b) does not prohibit introduction if evidence that is intrinsic or "part and parcel of the core events undergirding" the charged crime. *Id.* (holding that the fact that defendant discharged a weapon was "part and parcel" to felon in possession charge and was not 404(b) evidence); *United States v. Epstein*, 426 F.3d 431, 438-39 (1st Cir. 2005) (finding that trial court properly allowed introduction of defendant's prior tax return "as intrinsic to the crime and not governed by Rule 404(b)" where the return was "part and parcel of the crime" because it reported income defendant received from the fraudulent scheme).

Here, Irish possessed the firearm, ammunition, magazines, tactical vest, and other items together in a single crate. Many of these items belonged to him in 2013, they were seized, released to a family friend, and then returned to Irish together. Irish collectively gave all of these items to his cousin. The items where then collectively transferred again from Irish's cousin to Irish's friend. Here, Irish's possession of the ammunition, tactical vest, and other items in the crate were "part and parcel" of the charged crime. Rule 404(b) does not apply and trial counsel was not ineffective for not objecting to them on this ground.

This evidence was also not excludable under Rule 403, which permits exclusion of

evidence whose "probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. Here, this evidence linked the firearms to Irish, making it more likely that he possessed the firearms. It was also linked to the "chain of events leading to the weapons' recovery by law enforcement." *Roskowski*, 700 F.3d at 56. Moreover, this probative value was not substantially outweighed by the danger of unfair prejudice. In light of Irish's collective possession and transfer of these items, their probative value was not outweighed by danger of any unfair prejudice. As such, Irish can show neither that trial counsel was ineffective for failing to object to this evidence nor that Irish suffered any prejudice for this failure.

      D. Irish cannot establish prejudice for trial counsel's perceived failure to object to leading questions.

Citing generally to the redirect examination of three witnesses, Irish also claims his counsel was ineffective for failing to object to leading questions. Assuming that Irish could demonstrate unreasonable performance in this regards, he could not establish prejudice.[4] Indeed, Irish concedes that this perceived failure is not "dispositive on its own." *Supplement to Defendant's Motion For a New Trial*, at 26. None of Irish's claims are meritorious and, thus, the cumulative effect is not a basis for relief.

      E. Irish's *pro se* claims also fail.

Irish alleged two additional claims of ineffective assistance of counsel in his *pro se* motion for a new trial. *Pro se motion for a new trial*, at 2-3. Though he fails to provide a single example, Irish claims that his attorney was constitutionally ineffective by failing to impeach

---

4 Again, the government does not concede unreasonable performance. But determining whether there was unreasonable performance would require an evidentiary hearing and, in the government's view, the prejudice prong can be decided on the papers. *See United States v. Vazques-Larrauri*, 778 F.3d 276, 293-94 (1st Cir. 2015) (declining to review defendant's ineffective assistance of counsel claim premised on trial counsel's failure to object to leading questions and other testimony, and noting that "why counsel acted as he did is information rarely developed in the existing record, and this information is crucial to resolve an ineffective assistance claim." (internal quotation marks, citations, and alterations omitted)).

witnesses with inconsistent statements and by failing to abide by Irish's "orders NOT to object to specific evidence." *Id.*, at 3. Although Irish generally alleges that he "feels" that the "outcome of the trial would have been different," his vague allegations fail to establish prejudice. *See Pro se motion for a new trial*, at 3. To succeed on his claims, Irish would have to *show* that the outcome of trial would have been different. Without providing any information on precisely what inconsistent statements witnesses should have been impeached with or what evidence Irish wishes his trial counsel had not objected to, he cannot meet his burden to establish prejudice.

      IV.      Irish Will Be Barred From Raising Additional Ineffective Assistance Allegations in a Future Collateral Attack on His Conviction.

The basis for Irish's motion for a new trial rests on his claim that trial counsel provided ineffective assistance. Because he is raising this issue in a Rule 33 motion, he will likely be barred from raising additional ineffective assistance allegations in a future collateral attack on his conviction.

While this issue has not arisen in the Rule 33 context to the best of the government's knowledge, courts have addressed the question where the defendant raises an ineffective assistance of counsel claim on direct appeal and then seeks to raise different ineffective assistance of counsel allegations in a later collateral attack. In this context, the Seventh Circuit held that the law of the case doctrine barred the piecemeal litigation of ineffective assistance of counsel allegations between direct appeal and § 2255. *Peoples v. United States*, 403 F.3d 844, 848 (7th Cir. 2005).

The *Peoples* Court explained that "ineffective assistance of counsel is a single ground for relief no matter how many failings the lawyer may have displayed. Counsel's work must be assessed as a whole; it is the overall deficient performance, rather than a specific failing, that constitutes the ground of relief." 403 F.3d at 848. The Court analogized the situation to a claim

that an involuntary confession was improperly admitted. There are multiple reasons that a confession could be involuntary (psychological coercion or physical coercion) but the claim is the improper admission of the involuntary confession; the nature of the coercion merely provides the factual predicate for the single claim. "Just as one who makes and loses a contention that a confession is involuntary because of physical coercion cannot start over by adding an allegation of psychological coercion, one who makes and loses a contention that counsel was ineffective for four reasons cannot start over by choosing four different (or four additional) failings to emphasize." *Id.*

Not all courts agree with *Peoples*.[5] But the First Circuit has positively cited *Peoples* for the proposition that the law of the case doctrine precludes a defendant from raising a new argument in a collateral attack when the defendant could (and should) have raised it either in the district court or on direct appeal or both. *United States v. Matthews*, 643 F.3d 9, 15 (1st Cir. 2011). Thus, in the government's view, *Peoples* provides the correct rule.

Irish has had counsel appointed who specifically reviewed the record and has raised allegations of ineffective assistance of counsel by the original trial counsel. Irish has chosen to raise four discrete ineffective assistance allegations now by a Rule 33 motion instead of following the usual course of waiting until the § 2255 proceeding to raise an ineffective assistance of counsel claim. That choice entails risk. *United States v. Flores*, 739 F.3d 337, 341 (7th Cir. 2014). If Irish loses, he should be deemed to have forfeited the opportunity to raise other ineffective assistance allegations. Thus, in a § 2255 proceeding, additional ineffective assistance allegations would be procedurally defaulted. *Oakes v. United States*, 400 F.3d 92, 95 (1st Cir. 2005). To overcome that default, Irish would have to show cause and prejudice. *Id.* He

---

5 *Yick Man Mui v. United States*, 614 F.3d 50 (2d Cir. 2010); *United States v. Galloway*, 56 F.3d 1239, 1242 (10th Cir. 1995).

could possibly do so by showing that his present lawyer was constitutionally ineffective for failing to raise additional ineffective assistance allegations in the Rule 33 motion. *Prou v. United States*, 199 F.3d 37, 47 (1st Cir. 1999). But short of that extraordinary showing, any new allegations would be barred.

V.  Conclusion

Even assuming that Irish could demonstrate that trial counsel's representation fell below an objective standard of reasonableness, he cannot establish prejudice. Irish's motion for a new trial should be denied.

Respectfully submitted,

Scott W. Murray
United States Attorney

Date: July 24, 2020

/s/ Anna Krasinski
Anna Krasinski
Assistant U.S. Attorney
West Virginia Bar # 12762
53 Pleasant Street, 4th Floor
Concord, NH 03301
603-225-1552
anna.krasinski@usdoj.gov