UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| THE UNITED STATES OF AMERICA | |
|---|---|
| v. | No. 19-cr-00251-LM |
| JOHNATHON IRISH | |

REPLY TO GOVERNMENT'S OBJECTION TO MOTION FOR NEW TRIAL

The defendant, Johnathan Irish, through counsel, replies as follows to the government's Objection to Defendant's Motion for New Trial ("Objection"):

**The Government Fails to Identify Any Probative Value Added by the Large Volume of Ammunition and Other Evidence to Which Trial Counsel Should Have Objected.**

The defense argues that trial counsel should have objected to the many rounds of ammunition, the tactical vest and other evidence. As part of this argument, the defense noted that, whether under Rule of Evidence 404 or Rule 403, there is a point at which the probative value of the evidence must be weighed against the unfair prejudice it creates. In its response, the government detailed its argument that the evidence was part of the "res gestae." Objection, pp. 8-11. However, the substance of the government's response ends there. The defense argued that the witnesses identified the guns without challenge by the defense and thus the other ammunition and other items added no probative value to the government's case. The government has not responded to this argument.

There was no dispute during the trial about identification of the firearms at issue. Evidence of other items that accompanied the firearms during their travels added no additional probative value to the prosecution's case. However, it did add unfair prejudice. In the context of Rule 403, the First Circuit has recently explained the process of

1

curtailing the introduction of evidence which is of limited probative value and which presents a risk of unfair prejudice.

> [A] trial court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. This balance is sometimes difficult to strike. As a practical matter, nearly all evidence is offered for the purpose of prejudicing the factfinder's views, and Rule 403 is meant to stand as a sentinel, which can be alerted to screen out unfair prejudice. *See Sabean*, 885 F.3d at 38; *United States v. Rodriguez-Estrada*, 877 F.2d 153, 155-56 (1st Cir. 1989). Evidence presents a risk of unfair prejudice when it has "the capacity . . . to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief*, 519 U.S. at 180. Put another way, unfair prejudice ensues when particular evidence "serves only to evoke an improper emotional response" and distracts "from careful consideration of the relevant issues." *United States v. Fulmer*, 108 F.3d 1486, 1498 (1st Cir. 1997). Although there is no blanket prohibition against the admission of such evidence, a trial court faced with an objection to its introduction must strike a delicate balance between the government's need for the evidence (that is, its probative value) and the risk that the evidence will inflame the jurors' passions (that is, its unfairly prejudicial effect). *See id.* at 1497-98; see also Fed. R. Evid. 403.

*United States v. Kilmartin*, 944 F.3d 315, 335-36 (1st Cir. 2019). Here, the government's need for the evidence was minimal to nonexistent, as indicated by the failure of the government's objection to identify any probative value added by this evidence. On the other hand, the inflammatory nature of the evidence was so strong that prompted inquiries from the court before the trial even began. Thus, trial counsel should have objected. His failure to do so prejudiced Mr. Irish by encouraging the jurors to fear that Mr. Irish was hoarding weapons and ammunition, and was thus unstable or prone to violence.

**Stephanie Irish's Plan to Frame Mr. Irish Could Have Been Directly Connected to the Testimony of Witnesses Called by the Government.**

The government argues that there is "no evidence" connecting Stephanie Irish's plan to frame Mr. Irish to the testimony of the trial witnesses. *See* Objection, p. 7. This

2

argument is wrong. Stephanie's "constant contact" with FBI Special Agent Tongbua was part of her effort to build a case against Mr. Irish through other witnesses.

### *Roosa*

The government identifies Dylan Roosa as a key witness, naming him as one of the two people who allegedly saw Mr. Irish in possession of a firearm. *Id*. By Special Agent Tongbua's own account, Roosa was in direct contact with and under the influence of Stephanie Irish. Moreover, Stephanie Irish was directly involved in the handling of Roosa as a witness for the government, apparently at Tongbua's behest. We know this because Tongbua wrote the following in a November 13, 2019 report:

> Stephanie had been in contact with Dylan Roosa (Roosa). He requested that the FBI not bother him at work. He typically worked every day except Tuesday and Wednesday. She indicated she would contact Roosa again to advise him he was not in any trouble and to request his cooperation with law enforcement. Roosa and Jenn Skoczylas (Skoczylas) offered to temporarily look after Stephanie and Johnathon's children in order to keep them all together and hopefully prevent them from entering the DCYF system.

*See* Government Discovery, p. 19R456 REP-000146. From this passage in Agent Tongbua's report it is clear that:

- Stephanie represented the FBI in communications with Roosa.
- Stephanie was arranging the details of FBI contact with Roosa, including making sure he was not "bothered" at work.
- Stephanie sought Roosa's cooperation with the FBI, an effort which would directly dovetail with her plot against Mr. Irish.
- Roosa was in fact working with Stephanie in regard to the DCYF investigation and Stephanie's effort to keep custody of the children for herself and to deny Mr. Irish custody.

Thus, far from there being "no evidence" that Stephanie was influencing government witnesses, there is direct evidence of such influence on Roosa from the government's

own reports. The jury should have heard this evidence, and would have, if the defense Mr. Irish sought had been presented.

### *Whitney*

Similarly, in an effort to show no influence by Stephanie Irish, the government portrays Roscoe Whitney as a friend who Mr. Irish called "grandpa." *Id*. Here again, the government's own reports under cut its position. In a "one-party" recorded phone conversation, between Stephanie and Whitney, it is clear that Whitney is loyal to Stephanie and that she uses his loyalty to her advantage while working with the FBI to build a case against Mr. Irish.  *See* Government Discovery, 19R456 REP-000430-01—08. In the recorded call, Stephanie tells Whitney that she is "very nervous" about going home, after which Whitney says, "… if he hurts you, I'll wring his neck." Stephanie responds that she appreciates Whitney's concern and "that's honestly, honestly you know why part of why I'm scared to go back." She also tells Whitney that "he's trying to use the kids . . . to lure me back." They end the conversation a short time later, with Whitney saying, "Love you hon," and Stephanie responding, "I love you too, take care of yourself."

It is impossible to read the transcript of this conversation and not see that Roscoe Whitney is protective of and loyal to Stephanie. Presentation of evidence of Stephanie's plans accompanied by cross-examination of Whitney regarding his loyalty to Stephanie would have directly supported Mr. Irish's argument that he was set up.

### *Millett*

The idea that Elizabeth Millett was not supportive of her daughter's efforts against Mr. Irish needs the least attention. She admitted in detail her various objections to

Mr. Irish and his marriage to her daughter. (Day 3, Doc. 56 at 5-31). She was so unhappy with the marriage that she too was working with the FBI hoping to build a case against Mr. Irish. *Id.* at 12-13. She acknowledged on-going disputes with Stephanie during the marriage, *id.* at 17-31, but admitted that when Stephanie left Mr. Irish, they began speaking again as mother and daughter, and that she provided financial support for Stephanie and the children. In this context, if the jury had heard significant evidence regarding Stephanie's efforts to frame Mr. Irish, it would have been reasonable for the jurors to believe, or at least have doubts, about whether Millett's testimony was colored by her efforts to advance her daughter's agenda.

**The Government Wrongly Invokes the Spousal Privilege on Behalf of Stephanie Irish.**

Mr. Irish claims that he had the right to face and challenge the person who instigated his investigation and prosecution, his estranged wife, Stephanie Irish. He seeks a new trial on the grounds that his trial lawyer failed to subpoena Stephanie and call her as a witness so that she could be questioned regarding her animus against him, her efforts to have him prosecuted, and her connection to other government witnesses. The government objects that this claim must fail because Mr. Irish has not established that Stephanie Irish would waive the spousal privilege. The government objection fails on multiple points.

Whether a privilege applies is governed by common law as interpreted by the federal courts. *See* Rule of Evi. 501; *Bassett v. United States*, 1979 U.S. Dist. LEXIS 8142, at 7 (D. N.H.). "[A] privilege should only apply in a particular case if it 'promotes sufficiently important interests to outweigh the need for probative evidence.'" *United States v. Pineda-Mateo*, 905 F.3d 13, 21 (1st Cir. 2018) (quoting *Univ. of Pa. v. EEOC*,

5

493 U.S. 182, 189 (1990)). The adverse spousal testimony[1] privilege is justified by "its perceived role in fostering the harmony and sanctity of the marriage relationship," *Trammel v. United States*, 445 U.S. 40, 44 (1980), and is designed to protect that marital harmony by ensuring that a husband and wife will not be forced to bear witness against each other.

First, the government wrongly puts the burden on the defense to establish that the privilege does not apply. The government has it backwards. "[T]he party asserting a privilege bears the burden of showing that the privilege applies." *United States v. Breton*, 740 F.3d 1, 9-10 (1st Cir. 2014). Therefore, it is the government which has the burden of showing that some invocation of a privilege would result in the exclusion of otherwise admissible evidence.

Second, the government cites no authority for the proposition that a privilege intended to promote marital harmony would apply when asserted by a wife (or by the government on behalf of a wife) who faces questioning about framing her soon-to-be ex-husband for a crime. Application of the privilege in that instance does nothing to promote the purpose of the privilege. Moreover, it would defy common sense, on the facts of this case, to say that Stephanie Irish could be in "constant contact" with FBI Agent Tongbua, could send him pictures purporting to implicate Mr. Irish, and could recruit Dylan Roosa as a witness for the FBI, then avoid cross-examination about her activities by raising as a shield a privilege designed to promote marital harmony with Mr. Irish. To say the least, her activities waived and forfeited any claim to the privilege or its goals.

---

[1] There is also a privilege relating to confidential communications between spouses but that that version of the "spousal privilege" is not at issue in this case.

6

Third, the government correctly states that the privilege is to refuse to testify "adversely" to a spouse, see *United States v. Peneda-Mateo*, 905 F.3d 13, 21 (1st Cir. 2018), but then ignores that very language. Mr. Irish does not seek to have Stephanie Irish testify <u>adversely</u> to him. To the contrary, he will call her under cross-examination, see Rule of Evi. 611(c)(2), and, though she may be hostile, the defense questioning of her will require her to admit facts which support the defense theory of the case – that she set up Mr. Irish. The privilege is not available unless the anticipated testimony "would in fact be adverse" to the non-witness spouse. *United States v. Smith*, 742 F.2d 398, 401 (8th Cir. 1984).

Finally, the government is wrong in claiming that an assertion of the privilege would relieve Stephanie Irish from having to testify at all. Blanket assertions of the privilege are not favored. *See In re Lochiatto*, 497 F.2d 803, 805 n.3 (1st Cir. 1974): "The privilege is not a general one. It must be asserted as to particular questions." *Id*.

## **CONCLUSION**

For these reasons, as outlined in the prior supplemental motion, trial counsel's failures, considered independently and together, were unreasonable and resulted in prejudice to Mr. Irish such that justice was not served. The Court should, therefore, order a new trial.

The government, through Assistant United States Attorney Anna Krasinski, has objected to the requested relief.

No additional memorandum is submitted because all legal authority needed to act on this request is contained herein.

WHEREFORE, the defense respectfully requests that the Court schedule a hearing on this motion, vacate Mr. Irish's conviction, and order a new trial.

Date: July 31, 2020

Respectfully submitted,

*/s/ Richard Guerriero*
Richard Guerriero, Esq.
N.H. Bar ID. 10530
Lothstein Guerriero, PLLC
Chamberlain Block Building
39 Central Square, Suite 202
Keene, NH 03431
Telephone: (603) 352-5000

CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered Participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on the date the document was signed by me.

*/s/ Richard Guerriero*