UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOHNATHON IRISH,<br><br>     Defendant. | No. 1:19-cr-00251-LM |

**UNITED STATES' SUPPLEMENT TO ITS SENTENCING MEMORANDUM**

**I.     Introduction**

The Government submits this supplement to its sentencing memorandum to provide additional documentation demonstrating that defendant's possession of the Sig Sauer 515, 5.56 caliber rifle, serial no. 53E001626 (the "rifle") was "in or affecting commerce."

**II.    The rifle.**

In 2012, Sig Sauer received approval for a marking variance allowing AO Precision to manufacture firearm receivers with Sig Sauer markings. July 25, 2012 Letter, Exhibit 1. On February 15, 2013, Sig Sauer ordered over 46,000 lower receivers from AO Precision for a total price of over                      Blanket Purchase Order, Exhibit 2.

AO Precision Manufacturing, LLC, manufactured the lower receiver used in the rifle's assembly, and shipped it from Florida, to New Hampshire, on April 12, 2013. Packing Slip, Exhibit 3.   Sig Sauer received the lower receiver for the rifle, along with 595 other lower receivers, on April 18, 2013.   Receipt Traveler, Exhibit 4.   The rifle was fully assembled in New Hampshire.

On June 21, 2013, Irish purchased the rifle from the Sig Sauer Academy.   Receipt dated June 21, 2013, Exhibit 5.   That same day, he purchased two accessories for the rifle – a tactical

- 1 -

rifle bag and Magpul Magazines. *Id.*; Sig Sauer Invoice, Exhibit 6. Irish paid $64.97 for the rifle bag and $13.95 for each magazine. Exh. 5. The rifle bag was manufactured in China. Exh. 6. Magpul, at the time, had its headquarters in Erie, Colorado. Fox News, "US Gun Magazine Producer to Leave Colorado Over Gun Laws," December 14, 2019, *available at* https://foxnews.com/politics/us-gun-magazine-producer-to-leave-colo-over-gun-laws (last visited February 2, 2021); *see also* Military.com, "MagPul, Magazines and Colorado House Bill 13-1244, Feb. 19, 2013, *available at* https://www.military.com/kitup/2013/02/magpul-magazines-colorado-house.html (last visited February 2, 2021).

On October 1, 2013, Irish purchased a Stoplite Foregrip LED Flashlight with Red Laser from the Sig Sauer Academy Store. Receipt dated October 1, 2013, Exhibit 7; *see also* https://www.tacticalgeartrade.com/element-stl-300j-stoplite-foregrip-led-flashlight-with-red-laser.html (last visited February 2, 2021). Irish paid $172.00 for the flashlight. Exh. 7.

In 2015, FBI took custody of the rifle along with a rifle bag and multiple magazines. Receipt for Property, Exhibit 8, GX 3r.[1] In July of 2015, the defendant directed that the FBI release those firearms to Roscoe Whitney—a man the defendant refers to as "grandpa." In October of 2017, the defendant e-mailed Whitney some documentation that convinced Whitney that he could return the firearms. So, in October of 2017, Whitney returned the two firearms to the defendant. ECF No. 48, at 84, ln. 5-12, 20-22; *Id.* at 85, ln. 17-20.

Various friends and family members observed the defendant with firearms between 2018 and 2019. Dylan Roosa, a former friend, helped the defendant move a large box containing three firearms – a 1911 pistol, an AR-style rifle, and a Catamount shotgun – from the living room into

---

[1] GX refers to Government's Exhibits admitted at trial.

a bedroom closet. When describing the rifle, Dylan Roosa testified that it was "full-dressed" with "[a]ll the extra gadgets one could put on a gun," including "two sets of sights, grip, flashlight, laser." Tr. of Jury Trial Day Three, Feb. 11, 2020, at 61, ln. 11-16. The defendant explained to Roosa that the two sets of sights were for "shooting at different ranges, like 50 yards away, 100 yards away." *Id.* at 62, ln. 14-19.

When the rifle was recovered from Irish's cousin, the rifle was "full-dressed," just as Roosa described:



Photograph, Exhibit 9, GX 28C.   The rifle had a Magpul grip and trigger guard and Trijicon sights, depicted in the images below:



Most of Trijicon products are manufactured at the company's facilities in Wixom, Michigan, or Auburn, California. Trijicon, Made in the USA, https://trijicon.com/our-story/about-trijicon (last visited February 3, 2021). Some, however, including riflescopes, have significant components purchased in Japan or are manufactured in Japan. *Id.* The Energizer batteries are labeled "Energizer Brands, LLC, St. Louis, Mo."

In addition, the rifle was equipped with the Stoplite Foregrip LED Flashlight Irish purchased in October of 2013. The flashlight contained eight Energizer batteries. Images of the Flashlight and batteries are below:

 

### III. Defendant's possession of the Sig Sauer 516, 5.56 caliber rifle affected interstate and foreign commerce.

Under federal law, it is unlawful for any person who has been convicted of a felony to "possess in or affecting commerce, any firearm or ammunition" 18 U.S.C. § 922(g)(1). As detailed in the United States' Sentencing Memorandum, defendant's possession of the firearm was "in or affecting commerce" for two distinct reasons: (1) because the manufacture of any firearm is an

economic activity involving a pervasively regulated commodity, which in the aggregate affects interstate commerce, and (2) because this firearm affected interstate commerce as at least one component of the firearm was manufactured in Florida by another company. Moreover, the defendant's possession of the firearm affected interstate and foreign commerce because he added after-market components to the firearm that had traveled in interstate commerce and purchased other accessories manufactured outside of New Hampshire and outside of the United States. *See, e.g., United States v. Roszkowski*, 700 F.3d 50, 58 (1st Cir. 2012) ("Section 922(g)(1) forbids convicted felons from possessing a firearm 'in or affecting commerce," which includes the possession of a gun that previously traveled interstate."); *United States v. Stewart*, 451 F.3d 1071, 1076 (9th Cir. 2006) ("[T]he proper focus is not [the defendant] and his homemade machineguns, but all homemade machineguns manufactured intrastate…The market for machineguns is established and lucrative, like the market for marijuana."); *Montana Shooting Sports Association v. Holder*, 727 F.3d 975, 982 (9th Cir. 2013), ("Congress could have rationally concluded that the manufacture of unlicensed firearms, even if initially sold only within the State of Montana, would in the aggregate substantially affect the interstate market for firearms. Under *Raich* and *Stewart*, [this is] within the reach of the long arm of federal law.").

Records readily demonstrate that the manufacture of the firearm affected interstate commerce, and thus the defendant's purchase and possession of the rifle affected interstate commerce. In addition, records, testimony, and recovery of the firearm establish that the defendant's possession of the rifle affected interstate and foreign commerce because he purchased after-market accessories for the product. *See, e.g.*, *United States v. Wilkerson*, 362 F.3d 717 (2d Cir. 2004) (finding that interstate commerce element met where defendants purchased goods in-

state that originated from out-of-state in Hobbs Act case).   This *de minimis* effect on commerce is sufficient.

## IV. Conclusion

The government has demonstrated, by a preponderance of the evidence, that defendant's possession of the rifle was unlawful because his possession affected interstate and foreign commerce.   Therefore, the base offense level is properly 20 and the two-level enhancement for the offense involving three firearms under 2K2.1(b)(1)(A) applies.

Dated:   February 9, 2021                                         Respectfully submitted,

SCOTT W. MURRAY
United States Attorney

By: */s/ Anna Z. Krasinski*
Anna Z. Krasinski
Assistant U.S. Attorney
W.V. Bar # 12762
53 Pleasant Street, 4th Floor
Concord, NH 03301
(603) 225-1552
anna.krasinski@usdoj.gov